FILED

2003 NOV 14  A 11: 59

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GLYNN,                            :

    Plaintiff,                         :        CIVIL ACTION NO.:
                                       :        302CV1802 (AVC)
v.                                       :
                                       :
BANKERS LIFE AND                         :
CASUALTY COMPANY,                        :

    Defendant                          :        NOVEMBER 13, 2003

## <u>OBJECTION TO DEFENDANT'S MOTION TO DISMISS</u>

The plaintiff hereby objects to the defendant's Motion to Dismiss the Second and

Third Counts of the plaintiff's Complaint.  This most recent Motion to Dismiss is dated

October 29, 2003.  The plaintiff objects on the basis that he asserts valid causes of action

in the Second and Third Counts of his Complaint.  The reasons for this objection are

more fully set out in the attached memorandum of law, as well as in the memorandum of

law filed by the plaintiff in opposition to the defendant's first Motion to Dismiss.

PLAINTIFF

BY _____
    Everett H. Madin, Jr.
    RISCASSI & DAVIS, P.C.
    131 Oak Street
    Hartford, CT  06106
    Phone: (860) 522-1196
    Fed. Bar No. CT 12297

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Objection was sent via First Class mail, postage prepaid, on this 13th day of November, 2003:

John T. Shaban, Esq.
Whitman, Breed, Abbott & Morgan
100 Field Point Road
P O Box 2250
Greenwich, CT 06830

Katherine Creenan, Esq.
Skadden, Arps, Slate, Meagher, & Flom, LLP
One Newark Center
Newark, NJ 07102

_____
Everett H. Madin, Jr.

## ORDER

The foregoing Objection to the Defendant's Motion to Dismiss, having been duly heard and for good cause shown, is hereby ORDERED:

SUSTAINED / OVERRULED

this _____ day of _____, 2003

BY THE COURT,

_____(J.)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GLYNN,                          :

    Plaintiff,                     :        CIVIL ACTION NO.:
                                   :        302CV1802 (AVC)
v.                                     :
                                   :
BANKERS LIFE AND                       :
CASUALTY COMPANY,                      :
                                   :
    Defendant                      :        NOVEMBER 13, 2003

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The plaintiff hereby submits this Memorandum of Law in opposition to the defendant's Motion to Dismiss, dated October 29, 2003. The plaintiff has made several of the same arguments in his opposition to the defendant's first Motion to Dismiss, dated June 20, 2003, however, the plaintiff will restate theses arguments below for the court's convenience.

## I.   FACTS & HISTORY

The plaintiff's decedent, Peter Glynn, was covered under an insurance contract with the defendant, Bankers Life and Casualty Company, providing for accidental death benefits. The insurance policy was funded by his employer, Johnson & Johnson. On June 8, 2001, Peter Glynn was killed in a motor vehicle crash. As a result, his beneficiary, Peter Glynn, who is the plaintiff in this action, attempted to claim the

benefits under the accidental death policy. The defendant, Bankers Life and Casualty Company, denied the claim and refused to pay on the policy. After requesting an appeal, which was denied, the plaintiff filed suit in state court. The defendant removed the case to the District Court on October 10, 2002. On June 20, 2003, the defendant filed a Motion to Dismiss the plaintiff's state law claims of breach of contract, bad faith, and state statutory CUTPA and CUIPA counts. The plaintiff objected to the Motion. The plaintiff also filed a Second Amended Complaint, dated July 18, 2003, which alleged a count under ERISA, and two state statutory counts, under CUTPA and CUIPA, and deleted the common law breach of contract and bad faith claims. To date, the defendant's first Motion to Dismiss and the plaintiff's objection to this Motion have yet to be heard. The defendant then filed a second Motion to Dismiss the CUTPA and CUIPA counts of the plaintiff's complaint. The plaintiff now files this objection.

II.    **STANDARD OF LAW**

In deciding a Motion to Dismiss, the court must accept as true all material facts alleged in the complaint and must draw all reasonable inferences in the nonmovant's favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (1995). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support [his] claim." *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D.Conn.1990) (*citing Scheuer v. Rhodes*, 416 U.S. 232,

RISCASSI & DAVIS, P. C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

232 (1974)).   A motion to dismiss a complaint *cannot* be granted unless the defendant demonstrates "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The plaintiffs' burden in resisting a motion to dismiss for failure to state a cause of action is a relatively slight one." *Williams v. Wheeling Steel Corp.*, 266 F. Supp. 651, 654 (D.C.W.Va. 1967).

## III.     LAW AND ARGUMENT

### A.  The Supreme Court Has Recently Narrowed The Extent of Preemption Under ERISA

ERISA is a federal body of law which regulates employee welfare and benefit plans by controlling the administration of the plans through establishing disclosure mandates, participation and vesting requirements, and fiduciary responsibilities. *New York State Blue Cross Plans v. Travelers Ins.*, 514 U.S. 645, 651 (1995). It is a comprehensive Act which "envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme." *Id.* To this end, 29 U.S.C. § 1144(a) provides that ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan..." (emphasis added).

3

Initially, the Supreme Court interpreted the "relate to" language of 29 U.S.C. §
1144 very broadly. "A law 'relates to' an employee benefit plan, in the normal sense of
the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air
Lines, Inc.*, 463 U.S. 85, 96-7 (1983). *See also Metropolitan Life Ins. Co. v. Taylor*, 481
U.S. 58, 62 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-8 (1997); *Ingersoll-
Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990). This "broad common-sense
meaning" of the "relate to" language eventually resulted in the expansion of ERISA's
preemptive reach to cover state laws "even if the law is not specifically designed to affect
such plans, or the effect is only indirect." (internal citations omitted) *Ingersoll-Rand,*
498 U.S. at 139. Further, overly extending the preemptive reach of the "relate to"
language negated the traditional rule of preemption, which presumes that Congress did
not intend to displace state laws unless there is a "clear and manifest purpose" to do so.
*See New York State Blue Cross Plans v. Travelers Ins*, 514 U.S. at 654-55.

However, the Supreme Court has recently begun to limit the broad reach of
ERISA preemption, recognizing that its prior attempts to define the "relate to" language
were not helpful in defining preemption under ERISA. *Id* at 655. *See also California
Labor Stds. Enf. v. Dillingham Construction*, 519 U.S. 316, 325 (1997); *DeBuono v.
NYSA-ILA Medical Services Fund*, 520 U.S. 806, 813 (1997); *Rush Prudential HMO, Inc.
v. Moran*, 536 U.S. 355, 364-5 (2002) ("[A]pplying the 'relate to' provision according to
its terms was a project doomed to failure, since, as many a curbstone philosopher has

4

observed, everything is related to everything else."); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 323 (2003) ("As the Supreme Court has recognized, however, ERISA's nearly limitless 'relates to' language offers no meaningful guidelines to reviewing judges."). The current analysis by which the Supreme Court determines ERISA preemption focuses upon the  objectives and policies underlying ERISA, along with adherence to the normal preemption rules. *DeBuono*, 520 U.S. at 813-814 (ERISA's "relate to" language unequivocally does not modify "the starting presumption that Congress does not intend to supplant state law"); *Dillingham Construction*, 519 U.S. at 325 (To determine whether ERISA preempts state law, "we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans."); *Gerosa*, 329 F.3d at 323 (In determining ERISA preemption, the court should begin at the presumption that 'Congress does not intend to supplant state law,' a presumption made stronger when the area to be preempted is a field of "traditional state regulation."); *Stankewich v. Vanguard Fiduciary Trust Co.*, 2001 WL 359039 (Conn. Super.) (attached as Exhibit 1) ("ERISA preemption has by no means disappeared, but it has been considerably more nuanced.  Under the Supreme Court's current jurisprudence, 'unless congressional intent to preempt clearly appears, ERISA will not…[preempt].'").  Very recently, one Connecticut court recognized the Supreme Court's attempts at contracting the breadth of ERISA preemption when it stated that "the defendant seriously misstates the scope of ERISA

5

preemption, citing cases before the United States Supreme Court cut back the reach of the 'related to' language…" *Collins v. Anthem Health Plans, Inc.*, Judicial District of Waterbury at Waterbury, Complex Litigation Docket, No. CV 99 015198S, pg. 6 (July 8, 2003, Hodgson, J.) (attached as Exhibit 14).

In short, the Court has begun to retreat from its earlier expansive position of ERISA preemption, instead looking to a more reasonable approach of determining congressional intent.

B. <u>The Plaintiff's CUTPA and CUIPA Claims Fall Under ERISA's 'Savings Clause,' and Therefore, Should Not Be Preempted</u>

In addition to the preemptive section, ERISA also contains a "savings clause" for state laws that regulate insurance, exempting these types of laws from preemption.[1] In the past, determining whether a state law "regulates insurance," and thereby avoids preemption, has not been an easy task. *See Kentucky Assn. Of Health Plans, Inc. v. Miller*, 123 S.Ct. 1471, 1478 (2003). Prior to this year, the Supreme Court has directed lower courts to look to the case law and analysis interpreting §§ 2(a) and 2(b) of the McCarran-Furguson Act[2] for guidance in determining ERISA preemption. *Id.*

---

[1] "Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. §1144(b)(2)(A).
[2] This analysis included looking to three factors: "*first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the

6

However, the Supreme Court has very recently recognized the confusion that this analysis posed:

> We believe that our use of the McCarran-Ferguson case law in the ERISA context has misdirected attention, failed to provide clear guidance to lower federal courts, and, as this case demonstrates, added little to the relevant analysis.

*Id.* The Court went on to expressly abandon the old test and articulate a new test for determining ERISA preemption:

> Today we make a clean break from the McCarran-Ferguson factors and hold that for a state law to be deemed a 'law...which regulates insurance' under §1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. Second,...the state law must substantially affect the risk pooling arrangement between the insurer and the insured. (internal citations omitted)

*Id* at 1479. Ultimately, the Court overruled the Appellate Court and held that the Kentucky state statutes at issue, which prohibit the insurer from discriminating against certain providers and chiropractors,[3] were *not* preempted under ERISA. *Id.*

There is no appellate authority as to whether a state law CUIPA or CUTPA claim falls under ERISA's "savings clause."[4] Although District Courts have held that CUTPA

---

insurance industry." (emphasis in original, internal citations omitted) *Kentucky Ass'n. of Health Plans, Inc. v. Miller*, 123 S.Ct. 1478.

[3] The "Any Willing Provider" provisions of Kentucky Health Care Reform Act prohibit "[a] health insurer [from] discriminat[ing] against any provider who is...willing to meet the terms and conditions for participation established by the...insurer," and require a "health benefit plan that includes chiropractic benefits [to]...[p]ermit any licensed chiropractor who agrees to abide by the terms [and] conditions...of the...plan to serve as a participating primary chiropractic provider." (quotations and brackets in original) *Kentucky Ass'n. of Helath Plans, Inc. v. Miller*, 123 S.Ct. at 1472.

[4] There is one Second Circuit Appellate level case that finds a plaintiff's CUTPA claim to be preempted under ERISA, however, this claim was brought against the employer who administered the self-funded plan, and the plaintiff did not argue that ERISA's "savings clause" applied. *DeGrooth v. General*

and CUIPA claims are preempted,[5] the plaintiff urges the court to reconsider this position, in light of the recent Supreme Court rulings and new test for preemption. Together, the Supreme Court's new test for preemption, coupled with the trend of the Supreme Court towards restricting the once extremely broad preemptive sweep of ERISA, lead to the conclusion that the plaintiff's CUTPA and CUIPA counts should be covered by ERISA's "savings clause," because they are laws that "regulate insurance."

The Connecticut Unfair Insurance Practices Act (CUIPA), C.G.S. §38a-815, *et seq.*, states that "no person shall engage in this state in any trade practice which is defined [in the following sections] to be, an unfair method of competition or an unfair or deceptive act or practice *in the business of insurance…*" *See* C.G.S. §38a-815. It is undisputed that CUIPA applies exclusively to legal entities "in the business of insurance." *See Mead v. Burns*, 199 Conn. 651, 659 (1986) (CUIPA stems from the federal McCarran-Ferguson Act and the "legislative history…demonstrates that the legislature intended to preserve state regulation of insurance practices."). Thus, the first prong of the two prong test articulated in *Kentucky Ass'n. of Health Plans* has been met.

---

*Dynamics Corp.*, 837 F.Supp. 485 (1993), *aff'd by* 28 F.3d 103 (2d Cir. (Conn.) 1994), *cert. denied* 513 U.S. 1043 (1994).
[5] *See Levine v. Hartford Life Ins. Co.*, 2002 WL 1608330 (D.Conn., Droney, J.); *Lazaroff v. Blue Cross and Blue Shield of Connecticut, Inc.*, 1989 WL 235958 (D.Conn., Daly, Dist. Judge); *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61 (D.Conn., Burns, C.J., 1990); *Fischman v. Blue Cross & Blue Shield of Connecticut*, 755 F.Supp. 528 (D.Conn., Dorsey, Dist. Judge, 1990); *Cote v. Durham Life Ins. Co.*, 754 F. Supp. 18 (D.Conn., Dorsey, Dist. Judge, 1991).

8

*See Kentucky Ass'n. of Health Plans, Inc.*, 123 S.Ct. at 1479 ("[f]irst, the state law must be specifically directed toward entities engaged in insurance").

The second prong of the test articulated in *Kentucky Ass'n. of Health Plans* is that the "state law must substantially affect the risk pooling arrangement between the insurer and the insured." 123 S.Ct. at 1479. This new prong of the Supreme Court's test is a "departure from previous case law." *Anderson v. Continental Casualty Co.*, 258 F.Supp.2d 1127, 1131 (E.Dist. CA, 2003) (attached as Exhibit 2). In fact, this new test *broadens* the first prong of the old McCarran-Ferguson test. *Kentucky Ass'n of Health Plans, Inc.*, 123 S.Ct. at 1478, n. 3. The new test "requires only that the state law substantially *affect* the risk pooling arrangement between the insurer and insured; it does not require that the state law actually spread the risk." *Id.* In *Kentucky Ass'n. of Health Plans*, the Court refers to a Ninth Circuit decision in which a "notice-prejudice rule" was held to be preempted because it was found that it did not "spread the policyholder's risk" under the first factor of the McCarran-Ferguson test, and specifically states that under the newly articulated test, the "notice-prejudice" rule would *not* be preempted. *Id. See also Cisneros v. UNUM Life Ins. Co.*, 134 F.3d 939, 945-6 (1998), *aff'd. in part, remanded in part* at *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358 (1999). The CUIPA statutes clearly "affect the risk pooling arrangement between the insurer and the insured" under the new *Kentucky Ass'n. of Health Plans* test.

9

CUIPA generally prohibits entities engaged in insurance from "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." *See* C.G.S. §38a-816. Barring things such as making misrepresentations or giving false information about the policy, "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," and "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds," CUIPA clearly affects the "risk pooling arrangement between the insurer and the insured." *See* C.G.S. §38a-816. These and other CUIPA mandates provide protections for the policyholder, thereby decreasing the policyholder's risk. In fact, the Supreme Court specifically pointed out, when explaining the new test for preemption, that a 'notice-prejudice'[6] rule which was upheld as preempted in 1999, would no longer be preempted under the new test. *Kentucky Ass'n. of Health Plans, Inc.*, 123 S.Ct. at 1478 n.3. Similar to the 'notice-prejudice' rule, CUIPA dictates conditions that anyone conducting the business of insurance in the state of Connecticut must obey. Of the "All Willing Providers" Kentucky state statutes, the Supreme Court stated:

> [w]e have never held that state laws must alter or control the actual terms of insurance policies to be deemed 'laws...which regulat[e] insurance' under §1144(b)(2)(A); it suffices that they substantially affect the risk pooling

---

[6] The 'notice-prejudice' rule at issue "governs whether or not an insurance company must cover claims submitted late, which dictates to the insurance company the conditions under which it must pay for the risk it has assumed." *Kentucky Ass'n of Health Plans, Inc.*, 123 S.Ct. at 1478, n.3.

10

> arrangement between insurer and insured. By expanding the number of providers from whom an insured may receive health services, [All Willing Provider] laws alter the scope of permissible bargains between insurers and insureds in a manner similar to the mandated-benefit laws we upheld in *Metropolitan Life*, the notice-prejudice rule we sustained in *UNUM* and the independent-review provisions we approved in *Rush Prudential*.

*Kentucky Ass'n. of Health Plans, Inc.*, 123 S.Ct. at 1477-8. CUIPA "alter[s] the scope of permissible bargains between insurers and insureds" in the same way therefore, it is now clear that CUIPA fits into ERISA's "savings clause" and is not preempted.

Connecticut's Unfair Trade Practices Act (CUTPA), 42-110a, *et seq.*, allows "[a]ny person who suffers any ascertainable loss of money or property…as a result of the use or employment of a method, act or practice prohibited by section 42-110b [defining unfair trade practices]" to bring an action and recover damages. *See* C.G.S. §42-110g. The Connecticut Supreme Court has determined that an action brought under CUTPA as against an entity that falls under CUIPA *must* meet the elements of CUIPA in order for the CUTPA action to survive. *Marion Lees v. Middlesex Insurance Co.*, 229 Conn. 842 (1994). In other words, the way to bring a CUTPA action against an insurance company is to meet the elements necessary under CUIPA. *Id.* In fact, in *Lees*, the Connecticut Supreme Court upheld the trial court's granting of summary judgment *expressly because* the "plaintiff's CUTPA claim *could not survive* the failure of her CUIPA claim." *Id* at 851. As a result, although CUTPA itself is not directed only towards insurance entities, a CUTPA claim against an insurance entity *can only* survive if it is brought as a CUIPA

11

claim under CUTPA, thereby satisfying the requirement that the "law…be specifically directed toward entities engaged in insurance." *See Kentucky Ass'n. of Health Plans, Inc.*, 123 S.Ct. at 1479 (for the first factor to avoid preemption under ERISA's saving clause). The fact that a law may affect other entities in addition to insurers is not enough alone to find that it does not meet the first prong of the savings clause test. *Id* at 1475-6. If the only way that a claim under CUTPA can survive as against an insurance company is to plead violations of CUIPA, then a CUTPA claim as against an insurance company *is* specifically directed toward insurance entities, by virtue of the fact that CUIPA is exclusive to insurance companies. Once this first prong of the preemption test is met, the analysis of the second prong is identical to the analysis of a CUIPA claim, since the allegations must mirror each other.

The plaintiff's decedent's employer purchased an insurance policy for its employees' benefit through the defendant, Banker's Life and Casualty Company. This insurance policy provided for a lump sum payment in the event of the plaintiff's decedent's death. In addition, Bankers Life and Casualty Company remained the administrator of the policy and the plan did not give Bankers Life and Casualty Company discretion to pay or to deny claims. The plaintiff now alleges violations of CUTPA and CUIPA, state laws directed at regulating insurance. In light of the recent Supreme Court trend towards decreasing the preemptive reach of ERISA, along with the recently articulated test for preemption, the plaintiff respectfully requests that this Court deny the

12

defendant's Motion to Dismiss.  The plaintiff alleges state law claims that are not preempted, as ERISA's "savings clause" prohibits preemption.

### C. The Plaintiff States A Valid Cause Of Action, As Connecticut Courts Have Allowed A Private Cause of Action Under CUIPA

The defendant states that [u]nder Connecticut law, CUIPA does not provide this plaintiff with a private cause of action." Defendant's Memorandum of Law, pg. 6.  In fact, the Connecticut Supreme Court has not yet decided whether a private cause of action exists under the Connecticut Unfair Insurance Practices Act,[7] however, well-reasoned lower court precedents hold that such a cause of action *does* arise under CUIPA.

The *Restatement (Second) of Torts*, Section 874a provides significant guidance on the issue. It states in full:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

---

[7] See generally *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, (1982); *Mead v. Burns*, 199 Conn. 651, 657 n. 5 (1986); *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 847 n. 4, (1994).

13

In order to determine whether a private cause of action exists when the language of the statute is silent on the issue, Section 874a, Comment d of the *Restatement (Second) of Torts* states that courts often continue to seek the intent of the legislature, however:

> '[i]ntent' here has a different meaning. It is sometimes thought of as referring to how the legislative body 'would have dealt with the concrete situation' if it had had the situation before it in a way in which it is now before the court. Perhaps more frequently, the figurative search for legislative intent involves looking for policy behind the legislative provision, attempting to perceive the purpose for which it was enacted, and then, having ascertained that policy or purpose, determining the most appropriate way to carry it out and identifying the remedy needed to accomplish that result.

Factors for determining whether a private cause of action is consistent with the "intent" of the legislation and, therefore, should be judicially recognized are listed in the *Restatement (Second) of Torts*, Section 874a, Comment h.  These factors include the specificity of the conduct being proscribed or required, thus providing notice that liability may exist; the adequacy of existing remedies; the extent to which a private cause of action will aid or hinder existing remedies and other means of enforcement; the extent of the resulting change in tort law; and the burden on the judicial machinery.

When CUIPA is analyzed under these factors, it becomes clear that a private cause of action is consistent with the legislative intent and should be judicially recognized.  CUIPA provides very specific and express guidance as to what conduct is being proscribed and thus, places insurers on notice of the potential liability for acting

14

contrary to these specific and expressly stated actions described in the act. *See* C.G.S. § 38a-816 (6). As to the second factor, existing remedies, *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, (1982), provides significant guidance. In *Griswold*, the court found that the "pertinent statutes do not authorize the commissioner to award damages to an aggrieved person, nor does he have the authority to determine a private right to damages." *Id* at 520. The court continues: "[I]t appears, therefore, that the plaintiffs had *no* practical or adequate administrative remedy which would require exhaustion." (emphasis added) *Id.*

Further, the judicial recognition of a private cause of action will not hinder existing remedies and other means of enforcement, but will aid in proscribing the conduct listed under the act. Private plaintiffs will help to ensure that violations of CUIPA are addressed more consistently than if the Insurance Commissioner alone enforced the statute. Individuals injured by the unfair insurance practices of an insurer presumably have no practical knowledge of the Insurance Commissioner's role in enforcing CUIPA violations. Allowing a private cause of action encourages injured individuals to seek legal counsel and pursue such remedies as may be determined by the courts to be available. In addition, judicial recognition of a private cause of action will not drastically change the existing tort law, in fact, it simply amplifies the common law cause of action under the tort of bad faith and the statutory cause of action authorized by the Connecticut Unfair Trade Practices Act (CUTPA).

15

The burden on the judicial machinery imposed by the recognition of a private cause of action for CUIPA has been dismissed by *Episcopal Diocese of Connecticut v. Continental Casualty Co.*, Judicial District of Hartford/New Britain at Hartford, No. CV 93 0529203 (Jun. 7, 1994, Corradino, J.) (attached as Exhibit 3). The *Episcopal* court stated that "since actions against insurance companies for CUIPA violations may be maintained under the Connecticut Unfair Trade Practices Act, allowance of a direct CUIPA action will not burden the judiciary or interfere with the regulatory scheme any more than it already has been burdened."

Recognizing the merits of the above arguments and rationale for creating a private cause of action, many courts *have* recognized a private cause of action under CUIPA. See, e.g., *Cirrito v. Crawford & Co.*, Judicial District of New Haven at New Haven, No. CV01 0456052S (Dec. 23, 2002, Zoarski, Judge Trial Referee) (attached as Exhibit 4) ("This court has previously permitted plaintiffs to allege CUIPA violations as a private cause of actionand has held similar allegations sufficient to survive a motion to strike."); *Edelman v. Pacific Employers Ins. Co.*, Judicial District of Hartford-New Britain at New Britain, No. 533463 (Oct. 21, 1994, Hennessey, J.) (attached as Exhibit 5) ("The court chooses to follow the first line of cases which allow a private cause of action under CUIPA."); *Agency Rent A Car v. ITT Hartford*, Judicial District of Hartford-New Britain at New Britain, No. 530573 (Sept. 26, 1994, Corradino, J.) (attached as Exhibit 6) ("Rightly or wrongly I believe CUIPA *does* allow a private cause of action in our state . .

16

" (emphasis added)); *Polchlopek v. Aetna Life Ins. Co.*, Judicial District of Hartford-New Britain at New Britain, No. 530360 (June 3, 1994, Hennessey, J.) (attached as Exhibit 7) ("The court follows the line of cases that allow a private cause of action under CUIPA."); *Schott v. Great American Ins. Co.*, Judicial District of New London at New London, No. 526057 (Sept. 1, 1993, Hendel, J.) (attached as Exhibit 8) ("Several cases hold that a private cause of action is maintainable under CUIPA . . . These cases represent the better reasoned view of the law and therefore, the plaintiffs may maintain a private cause of action under CUIPA." (Citations omitted.)); *Covino v. Jacovino*, Judicial District of Waterbury, No. 107889 (July 20, 1993, Sullivan, J.) (attached as Exhibit 9) ("the court finds that CUIPA allows a private cause of action"); *Sansone v. Esis*, Judicial District of New Haven at New Haven, No. 327409 (Jan. 4, 1993, Maiocco, J.) (attached as Exhibit 10) ("It is now established that Connecticut courts have construed CUIPA to imply a private cause of action for monetary damages against an insurer for alleged unfair trade practices."), quoting *Cecere v. EBI Indemnity*, Judicial District of Hartford-New Britain at New Britain, No. 356260 (Oct. 2, 1990, Hammer, J.) (attached as Exhibit 11); *Sambuco v. Aetna Casualty & Surety Co.*, Judicial District of Stamford-Norwalk at Stamford, No. 100637 (May 14, 1991, Karazin, J.) (attached as Exhibit 12) (employing the same quote from *Cecere* that the *Sansone* case used); *Cecere v. EBI Indemnity Co.*, *supra*, ("It is now established that Connecticut courts have construed CUIPA to imply a private cause of action for monetary damages against an insurer for alleged unfair trade

17

practices . . . Accordingly, the plaintiff may bring a private cause of action against the defendant insurance company under CUIPA." (Citations omitted.)).

Recognizing the need for appellate review of this issue as a reason to recognize a private cause of action under CUIPA, the court in *Webster v. U.S. Fidelity & Guaranty Co.*, Judicial District of Tolland at Rockville, No. 051784 (Mar. 21, 1995, Shaughnessy, J.) (attached as Exhibit 13), held that "[t]he best way to obtain . . . guidance [from the Appellate Courts] is to deny the defendant's motion [to strike] and hope that the state Appellate Courts will accept their responsibility for deciding the issue and, in so doing, provide guidelines which the trial court judges could use in carrying out their responsibilities."

D.    The Plaintiff Alleges A Valid CUIPA Count

The defendant contends that the plaintiff's CUIPA claim is insufficient because the elements of the claim have not been properly alleged.  Specifically, the defendant contends that the plaintiff has failed to adequately allege that the defendant committed the wrongful acts with such frequency as to indicate a general business practice.  The issue has been addressed by the Connecticut Supreme Court in *Meade v. Burns*, 199 Conn. 651 (1986) and *Lees v. Middlesex Ins. Co.*, 229 Conn. 842 (1994).  The Connecticut Appellate Court has also addressed the issue in *Quimby v. Kimberly Clark*, 28 Conn. App. 660, 672 (1992)

18

In *Meade*, the court held that "[c]laims of unfair settlement practices under CUIPA require a showing of more than a single act of insurer misconduct." 199 Conn. at 659. The *Meade* court struck the plaintiff's CUIPA claim because "he did not allege that the insurer's conduct constituted a general business practice of refusal to pay claims without a reasonable investigation." *Id.* at 655. The CUIPA claim in *Meade* was stricken because of the absence of the specific language of Connecticut General Statutes Section 38a-816 (6), "committing or performing with such frequency as to indicate a general business practice," in the plaintiff's complaint. In the current case, no such pleading defect exists in the complaint. The plaintiff, Philip Glynn, has alleged that the

> violations were committed or performed *with such frequency as to indicate a general business practice* of the defendant, Bankers Life and Casualty Company, including, but not limited to the general business practice of denying claims involving alcohol-related motor vehicle collisions under policies governed by ERISA and paying claims under a similar policy and facts when the plan is not governed by ERISA. (emphasis added)

Amended Complaint, Second Count, ¶ 11. Furthermore, allegations that the defendant's wrongful conduct was committed with such frequency as to indicate a general business practice can be found throughout the specific allegations of misconduct set forth in Paragraph 10 of the Second Count.

In the plaintiff's Second Count, Paragraph 10, subsection a, the plaintiff alleges that the defendant

> [m]isrepresented insurance policy provisions relating to coverage provided by the policy to the plaintiff *and others*, including, but not limited to, *having a general*

19

*business practice of denying claims* involving alcohol-related motor vehicle collisions under plans governed by ERISA and paying claims under a similar policy and fact scenario when the policy is *not* governed by ERISA (emphasis added)

In that same count and paragraph, subsection b, the plaintiff alleges that the defendant "refused to pay claims to the plaintiff *and others under similar fact scenarios as that of the plaintiff...*" (emphasis added) In subsection c of the same count and paragraph, the plaintiff alleges that the defendant "did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims made by the plaintiff *and others* in which liability has become reasonably clear." (emphasis added) In the Second Count, Paragraph 10, subsection d, the plaintiff alleges that the defendant "failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance *policies.*" (emphasis added) All of this language clearly refers to multiple claims, sometimes even explicitly referring to the defendant's general business practices.

In the Second Count, Paragraph 10, subsection f, the plaintiff alleges that the defendant "[a]ttempted to settle a claim for less than the amount to which a reasonable man would have believed he was entitled *by reference to written or printed advertising material accompanying or made part of an application.*" (emphasis added) Since written or printed advertising material is generally distributed to all, or a large number of insureds, alleging that the defendant made representations in such written or printed advertising material certainly indicates a general business practice.

20

In *Quimby*, the court held that "[u]nder the guidelines set forth in *Mead v. Burns*…for a plaintiff to allege CUIPA and CUTPA violations successfully the plaintiff must allege more than a singular failure to settle a plaintiff's claim fairly. The plaintiff must allege that the defendant committed the alleged wrongful acts with such frequency as to indicate a general business practice." 28 Conn. App. at 672. The *Quimby* court affirmed the trial court's decision to strike because the plaintiff failed to allege that "the defendant has failed to settle similar claims by other claimants properly." *Id.* As demonstrated above, such a pleading deficit is clearly absent from the complaint filed by the plaintiff, Philip Glynn.

Many trial courts have refused to strike complaints that properly allege the requisite statutory language, that is, that the acts were committed with such frequency as to indicate a general business practice. In *Martin v. Reliance Insurance Co.*, 954 F. Supp. 476 (D. Conn. 1997) (attached as Exhibit 15), the court denied the defendant's motion to dismiss because the plaintiff alleged sufficient facts to satisfy the general business requirement as set forth in *Mead* and *Quimby*. The *Martin* court stated that contrary to the defendant's contention that the plaintiff did not adequately allege a general business requirement, "count five specifically alleges that the conduct of Reliance toward plaintiffs was not an isolated incident, asserting that the acts were a part of a general business practice of the defendant, which included similar acts with other claimants." 954 F. Supp. at 482. The *Martin* court continues, stating that such allegations are sometimes

21

interpreted by judges as being too broad to meet the general business practice, but that "[t]he weight of authority holds that such allegations suffice to prevent the striking of CUIPA and CUTPA claims." *Id.* See also *Carpentino v. Transport Ins. Co.*, 609 F.Supp. 556, 562-63, (D. Conn. 1985) (attached as Exhibit 15); *Seeds v. AIG Life Ins. Co.*, Docket No. 375958, Judicial District of New Haven at New Haven (Dec. 6, 1996, Zoarsky, J.) (attached as Exhibit 17); *Cloutier v. Liberty Mut. Ins. Co.*, Docket No. CV 90278184S, Judicial District of Fairfield at Bridgeport, (Aug. 9, 1996, Thim, J.) (attached as Exhibit 18); *Martin v. New England Masonry*, 4 Conn.L.Rptr. 551 (May 6, 1991, Murray, J.) (attached as Exhibit 19).

In the instant case, the plaintiff, Philip Glynn, has alleged that the violations "were committed or preformed with such frequency as to indicate a general business practice." *See* Amended Complaint, Second Count, ¶ 11. As a result, the plaintiff's allegations are legally sufficient to maintain a cause of action under CUIPA.

E.    The Plaintiff's CUTPA Count States A Valid Cause Of Action Under Connecticut Law

In *Mead*, the court held that "the legislature has manifested an intention to make insurance practices the subject of two regulatory statutes, CUIPA and CUTPA." 199 Conn. at 663. As a result, a violation of CUIPA provides a basis for a CUTPA claim. *Id.* The plaintiff's Second Count, alleging a violation of CUIPA, states that the defendant engaged in unfair claims settlement practices with such frequency as to indicate a general

22

business practice.  The above argument that this is a legally sufficient complaint on which to base a CUIPA claim, *see* infra Part III, D, is equally applicable to the CUTPA claim alleged in the Third Count.

## CONCLUSION

For all of the above reasons, the plaintiff respectfully requests that the defendant's Motion to Dismiss be denied.

PLAINTIFF,

By _____

Everett H. Madin, Jr.
RISCASSI & DAVIS, P.C.
131 Oak Street
Hartford, CT  06106
Phone:  (860) 522-1196
Fed. Bar. No. CT 12297

23

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss was sent via first class mail, postage prepaid, this 13th day of November, 2003, to the following:

John T. Shaban, Esq.
Maciej A. Piatkowski
Whitman Breed Abbott & Morgan LLC
100 Field Point Road
Greenwich, CT  06830

Katherine Creenan, Esq.
Skadden Arps, Slate, Meager & Flom LLP
One Newark Center
Newark, NJ  07102

_____
Everett H. Madin, Jr.

24