UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GLYNN                    :
  Plaintiff,                    :
                                :
v.                              : Civil No. 302CV 1802 (AVC)
                                :
BANKERS LIFE AND                :
CASUALTY COMPANY                :
  Defendant.                    :

## RULING ON THE DEFENDANT'S MOTION TO DISMISS

This is an action for damages in which the plaintiff, Philip

Glynn, the beneficiary of an insurance policy, claims that the

defendant, Bankers Life and Casualty Insurance Company ("Bankers

Life") wrongfully refused to make payments in accordance with the

policy.   The action is brought pursuant to the Employment

Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, the

Connecticut Unfair Insurance Practices Act (CUIPA), Conn. Gen.

Stat. § 38a-815, and the Connecticut Unfair Trade Practice Act

(CUTPA), Conn. Gen. Stat. § 42-110b.   Bankers Life has filed the

within motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

arguing that the CUTPA and CUIPA causes of action fail to state a

cause of action.[1]

The issues presented are: 1) Whether the CUTPA cause of

action is preempted by ERISA; and, 2) if so, whether the so

called "savings clause" of ERISA saves the plaintiff's cause of

---

[1] The defendant has not challenged the ERISA cause of action.

1

action from preemption; and 3) whether the complaint states a
CUIPA cause of action.  For the reasons hereinafter set forth,
the court concludes that: 1) the plaintiff's CUTPA cause of
action is preempted by ERISA; 2) the savings clause does not
protect the plaintiff's CUTPA cause of action; and 3) the
complaint fails to state a CUIPA cause of action. Accordingly,
the motion to dismiss (document no. 48) is GRANTED.

**FACTS**

The second amended complaint alleges the following: On or
about June 8, 2001, Philip Glynn, father of the decedent, Peter
Glynn, was the sole beneficiary of a group accident insurance
policy issued by Bankers Life to the decedent's employer, Johnson
& Johnson.  Johnson & Johnson provided the policy as part of an
employee benefit plan as defined by ERISA.  The group life
insurance policy provided for benefits payable upon an employee's
accidental death.

On or about June 8, 2001, the plaintiff's decedent, Peter
Glynn, died as a result of injuries sustained in a motor vehicle
collision.  Bankers Life subsequently refused to make payment in
accordance with the group accident insurance policy. The benefit
plan did not grant discretionary authority to Bankers Life to
determine eligibility for benefits or to construe the plan's
terms.

2

## STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)
involves a determination as to whether the plaintiff has stated a
claim upon which relief may be granted.  <u>Fischman v. Blue Cross
Blue Shield</u>, 755 F. Supp. 528 (D. Conn. 1990).  The motion must
be decided solely on the facts alleged.  <u>Goldman v. Belden</u>, 754
F.2d 1059, 1065 (2d Cir. 1985).  A court must assume all factual
allegations in the complaint to be true and must draw all
reasonable inferences in favor of the non-moving party.  <u>Scheuer
v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90
(1974).  Such a motion should be granted only when no set of
facts consistent with the allegations could be proven which would
entitle the plaintiff to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41,
45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The issue is not
whether the plaintiff will prevail, but whether he should have
the opportunity to prove his claims.  <u>Id</u>.

## DISCUSSION

1.  <u>ERISA Preemption</u>

Bankers Life first argues that "plaintiff's state law claims
are preempted by ERISA."  Specifically, the defendant argues that
ERISA Section 514 (a) preempts the plaintiff's CUTPA cause of
action.

Glynn responds that the "[United States] Supreme Court has
recently begun to limit the broad reach of ERISA preemption."

Specifically, the plaintiff argues that in light of the recent opinion by the Supreme Court in <u>New York State Blue Cross Plans v. Travelers Ins. Co</u>, 514 U.S. 645, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995), and its progeny, "[which] limit the broad reach of ERISA preemption," ERISA no longer preempts a CUTPA causes of action.

ERISA Section 514 (a) provides in relevant part that ERISA supercedes "any and all state law claims in so far as they may now or hereafter relate to any employment benefit plan." 29 U.S.C. § 1144(a). In <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) the United States Supreme Court held that: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." <u>Shaw</u>, 463 U.S. at 96-97. Thereafter, in <u>Travelers</u> the United States Supreme Court stated that "if 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course. . . . We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." <u>Travelers Ins. Co.</u>, 514 U.S. 645, 655-56, 115 S. Ct. 1671, 1677, 131 L. Ed. 2d 695 (1995).

In <u>Plumbing Industry  Board, Plumbing Local Union No. 1 v.</u>

4

E.W. Howell Co., Inc., 126 F.3d 61 (2nd Cir. 1997) the Court of

Appeals for the Second Circuit, citing Travelers, stated that:

> "[A]nalysis under ERISA's preemption clause
> must begin with the starting presumption that
> Congress does not intend to supplant state
> law. . . . The Supreme Court [however] has
> identified several ways in which the anti-
> preemption presumption can be overcome.
> First, preemption will apply where a state
> law clearly "refers to" ERISA plans in the
> sense that the measure acts immediately and
> exclusively upon ERISA plans or where the
> existence of ERISA plans is essential to the
> law's operation.  Second, a state law is
> preempted even though it does not refer to
> ERISA or ERISA plans if it has a clear
> connection with a plan in the sense that it
> mandates employee benefit structures or their
> administration or provides *alternative
> enforcement mechanisms*."

Plumbing Indus. Bd., 126 F.3d at 67 (emphasis added) (citing

California Division of Labor Standards Enforcement v. Dillingham

Constr., N. A., Inc., 519 U.S. 316, 325, 117 S. Ct. 832, 838, L.

Ed. 2d 791 (1997) and Travelers Ins. Co., 514 U.S. at 654-58)

(internal quotations omitted).

    With regard to an "alternative enforcement mechanism" the

second circuit explained that "§ 502(a)[, codified at 29 U.S.C. §

1132(a),] was intended to be the exclusive remedy for rights

guaranteed under ERISA. . . . Simply put, § 502(a) sets forth a

comprehensive civil enforcement scheme that reflects the

legislature's desire to include certain remedies and exclude

others, and states are not free to add or subtract additional

remedies to the mix, even if doing so would be helpful to the

interests of plan beneficiaries or participants." <u>Plumbing Indus.</u> <u>Bd.</u>, 126 F.3d 61, 68 (citations and internal quotation marks omitted). Consequently, a state cause of action is preempted under ERISA as an alternative enforcement mechanism if the state cause of action conflicts with an ERISA cause of action in that it "aim[s] to redress, through other means, violations of rules that § 502(a) is designed to enforce." <u>Plumbing Indus. Bd.</u>, 126 F.3d 61, 69-70; <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697, 700 (1st Cir. 1994).

Pursuant to these principles, the district court in <u>Case v.</u> <u>Hospital of St. Raphael</u>, 38 F. Supp. 2d 207 (D. Conn. 1999), concluded that the plaintiff's CUTPA claim was preempted because it was an alternative enforcement mechanism. In <u>Case</u>, the plaintiff alleged that the defendants improperly withheld benefits under an ERISA plan. <u>Case</u>, 38 F. Supp. 2d at 208. The court concluded that the plaintiff's CUTPA claim "provides an alternative mechanism for enforcing the rights protected by ERISA's civil enforcement scheme." <u>Case</u>, 38 F. Supp. 2d at 208. Thus, because the plaintiff was using CUTPA's civil enforcement provisions to enforce his rights under the ERISA plan, a remedy specifically granted under ERISA, it was preempted as an alternative enforcement scheme. <u>Case</u>, 38 F. Supp. 2d at 208. Likewise, in <u>Levine v. Hartford Insurance Co.</u>, No. 3:02CV0081(CFD), 2002 WL 1608330, at *2 (June 28, 2002 D. Conn.),

6

the district court concluded that the plaintiff's CUTPA and CUIPA

claims were preempted under ERISA because they sought, by way of

the civil enforcement provisions of CUTPA, to enforce rights

under the plan, a cause of action clearly provided for under

ERISA.  See also Lechleiter v. Clairol Inc., 245 F. Supp. 2d 432,

435-36 (CFEPA claim preempted because it "could easily be cast as

a claim for violation of ERISA")

Applying these principles, the court concludes that,

although CUTPA does not specifically refer to ERISA, the CUTPA

cause of action is preempted as it has a clear connection with a

plan in that it provides an alternative enforcement mechanism.

The alleged conduct underlying Glynn's CUTPA claim is that

Bankers Life unfairly administered the plan and thereby altered

his rights and benefits under the plan.  In other words, Glynn is

using CUTPA to enforce the rights and benefits that are allegedly

due him pursuant to the plan.  This is precisely the type of

cause of action that may be brought pursuant to § 502(a) of

ERISA.  See 29 U.S.C. § 1132(a)(1)(B) (ERISA action may be

brought "to recover benefits due . . . under the terms of his

plan, to enforce . . . rights under the terms of the plan, or to

clarify . . .  rights to future benefits under the terms of the

plan"); see also Case v. Hospital of St. Raphael, 38 F. Supp. 2d

207 (D. Conn. 1999).  Likewise, to the extent that the CUTPA

cause of action alleges improper processing of a claim, this is a

7

cause of action provided for under ERISA. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 50, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) (ERISA is "exclusive vehicle for actions by ERISA . . . beneficiaries asserting improper processing of a claim for benefits"). Consequently, because the CUTPA cause of action is being used as an alternative enforcement mechanism, the court concludes that Glynn's CUTPA claim is preempted by ERISA. See Case v. Hospital of St. Raphael, 38 F. Supp. 2d 207 (D. Conn. 1999) (rejecting plaintiff's argument that CUTPA claim was not preempted in light of Travelers and its progeny because, inter alia, CUTPA provided an alternative enforcement mechanism).

2.   The ERISA "Savings Clause"

     Glynn next maintains that "the CUTPA [cause of action falls] under ERISA's 'savings clause' and therefore, should not be preempted." Specifically, Glynn argues that the two-prong savings clause analysis, recently articulated by the United States Supreme Court in Kentucky Ass'n of Health Plans, Inc. v. Miller, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003), now precludes preemption of his CUTPA cause of action. In other words, Glynn contends that, not only does the CUTPA cause of action affect risk pooling, but it relies on allegations of a breach of CUIPA, a statute purportedly directed at the insurance industry; consequently, his cause of action is "saved" from preemption.

8

The ERISA "savings clause," 29 U.S.C. § 1144 (b)(2)(A),

provides in relevant part that "except as provided in

subparagraph (B), nothing in this subchapter shall be construed

to exempt or relieve any person from any law of any State which

*regulates insurance*, banking, or securities." (Emphasis added.)

In <u>Rush Prudential HMO, Inc. v. Moran</u>, 536 U.S. 355, 366,

122 S. Ct. 2151, L. Ed. 2d 375 (2002) the United States Supreme

Court stated that:

> "[I]n deciding whether a law 'regulates
> insurance' under ERISA's saving clause, we
> start with a 'common-sense view of the matter
> under which a law must not just have an
> impact on the insurance industry, but must be
> specifically directed toward that industry.'
> We then test the results of the common sense
> enquiry by employing the three factors used
> to point to insurance laws spared from
> federal preemption under the McCarran-
> Ferguson Act[2], 15 U.S.C. § 1011 *et seq*."

<u>Rush Prudential</u>, 536 U.S. at 365-66 (citing <u>Pilot Life Ins. Co.</u>

<u>v. Dedeaux</u>, 481 U.S. 41, 50, 107 S. Ct. 1549, 95 L. Ed. 2d 39

(1987)) (internal quotations omitted).

Thereafter, in <u>Kentucky Ass'n of Health Plans, Inc. v.</u>

<u>Miller</u>, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003), the United

---

[2] The "three criteria that have been used to determine whether a practice falls under the 'business of insurance' for the purposes of the McCarran-Ferguson Act [are]: First, whether the practice has the effect of transferring or spreading the policy holder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 48-49, 107 S. Ct. 1549, 1553-54, 95 L. Ed. 2d 39 (1987).

States Supreme Court overruled <u>Rush</u> to the extent that <u>Rush</u>

required consideration of the three McCarran-Ferguson factors.

Thus, consideration of the McCarran-Ferguson factors is no longer

a component of savings clause analysis.  <u>Kentucky Ass'n of Health</u>

<u>Plans, Inc. v. Miller</u>, 123 S. Ct. 1471, 1479.  The <u>Kentucky Ass'n</u>

court provided the following new test for the savings clause

analysis:

> "[F]or a state law to be deemed a 'law…which
> regulates insurance' under § 1144(b)(2)(A),
> it must satisfy two requirements.  First, the
> state law must be specifically directed
> toward entities engaged in insurance.
> Second, the state law must substantially
> affect the risk pooling arrangement between
> the insurer and the insured."

<u>Kentucky Ass'n of Health Plans</u>, 123 S. Ct. at 1479 (internal

citations omitted).  Any state law that satisfies this two part

test is "saved" from preemption.

There is, however, a limited exception to the applicability

of the savings clause.  That exception provides that, even if the

state law, or more particularly the state cause of action, falls

within the savings clause, it may nevertheless be preempted where

it conflicts with the civil enforcement provisions of ERISA.  The

exception finds its genesis in <u>Pilot Life Ins. Co. v. Dedeaux</u>,

481 U.S. 41 (1987), wherein the United States Supreme Court held

that a bad faith cause of action was preempted regardless of the

fact that the savings clause may have protected it from

10

preemption.  The court reasoned that the civil enforcement provisions of ERISA are the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."  Pilot Life Ins. Co. V. Dedeaux, 481 U.S. 41, 52 (1987).  Thus, congress intended to "displace state causes of action." Pilot Life Ins. Co. V. Dedeaux, 481 U.S. 41, 57 (1987).  Accordingly, any state cause of action that added to the remedies available under ERISA conflicted with the express provisions of ERISA and was therefore preempted regardless of the savings clause.  Pilot Life Ins. Co. V. Dedeaux, 481 U.S. 41, 56-7 (1987).

Although the United States Supreme Court subsequently trimmed the scope of the Pilot Life exception, see UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 376 n.7, 119 S. Ct. 1380, 143 L.Ed.2d 462 (1999), it nevertheless reaffirmed its validity in Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 122 S.Ct. 2151, 153 L. Ed.2d 375 (2002).  In Rush, the court explained the Pilot Life exception by stating that the "saving clause had to stop short of subverting congressional intent clearly expressed through the structure and legislative history, that the federal remedy displace state causes of action."  Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 377.  Consequently, the court reaffirmed the proposition that state causes of action that provide a "form of ultimate relief in a judicial forum that added

11

to the judicial remedies provided by ERISA" are preempted under
Pilot Life regardless of the savings clause.  Rush Prudential
HMO, Inc. v. Moran, 536 U.S. 355, 379.

The Second Circuit has yet to address the applicability of
the Pilot Life exception to the savings clause in connection with
a CUTPA cause of action.  Nevertheless, the circuits that have
addressed similar issues agree that an unfair trade practice act
cause of action is barred under Pilot Life regardless of the
savings clause's applicability.  See, e.g., Hotz v. Blue Cross &
Blue Shield of Massachusetts, Inc., 292 F.3d 57, 60-1 (1st Cir.
2002) (Massachusetts unfair trade practice cause of action barred
under Pilot Life regardless of savings clause); Ramirez v. Inter-
Continental Hotels, 890 F.2d 760, 763-64 (5th Cir. 1989) (Texas
unfair insurance practices act cause of action barred under Pilot
Life); see also In Re Life Insurance Company of North America,
857 F.2d 1190, 1194-95 (8th Cir. 1988) (Missouri vexatious
refusal to pay insurance benefits statutory cause of action
barred under Pilot Life).

Recently, the ninth circuit, in Elliot v. Fortis Benefits
Insurance Comp., 337 F.3d 1138 (9th Cir. 2003), addressed the
validity of the Pilot Life exception in connection with a cause
of action brought under the Montana Unfair Trade Practice Act
("UTPA").  In Elliot, the plaintiff was denied long term
disability benefits under an ERISA plan.  Elliot v. Fortis

Benefits Insurance Comp., 337 F.3d 1138, 1141.  Elliot filed suit
alleging, inter alia, that the defendant had violated UTPA by
denying her benefits.  Elliot sought compensatory and punitive
damages under UTPA.  The ninth circuit concluded that her UTPA
claim "involv[ed] the sort of additional claim or remedy
exemplified in Pilot Life" because it relied on the civil
enforcement provisions of UTPA and sought damages beyond those
authorized under ERISA.  Elliot v. Fortis Benefits Insurance
Comp., 337 F.3d 1138, 1147 (quoting Rush Prudential HMO, Inc. V.
Moran, 536 U.S. 355, 380).  Consequently, the claim was preempted
regardless of the savings clause.

        Applying these principles the court concludes that,
regardless of the savings clause, the CUTPA cause of action is
preempted under Pilot Life.  First, Glynn's cause of action is
brought pursuant to the civil enforcement provisions of CUTPA.
Moreover, the complaint indicates that Glynn is seeking
compensatory and punitive damages pursuant to CUTPA.  Such
damages are not permitted under ERISA.  Consequently, the CUTPA
cause of action conflict directly with the civil enforcement
provisions and therefore is preempted notwithstanding the savings
clause.

3.    The CUIPA Cause of Action

        Bankers Life next argues that the complaint does not state a
CUIPA cause of action.  Specifically, the defendant argues that

Connecticut law does not provide for a private cause of action under CUIPA.

Glynn responds that a valid CUIPA cause of action is stated. Specifically, the plaintiff argues that several lower courts have held that a private cause of action does arise under CUIPA.

In <u>Lander v. Hartford Life & Annuity Insurance Co.</u>, 251 F.3d 101 (2001) the Court of Appeals for the Second Circuit held that "Although not yet conclusively decided by the Connecticut Supreme Court, most federal and Connecticut state courts have determined that the Connecticut Unfair Insurance Practices Act . . . does not provide a private cause of action." <u>Lander</u>, 251 F.3d at 118-19; <u>see also</u> <u>Martin v. American Equity Ins. Co.</u>, 185 F. Supp. 2d 162, 166 (D. Conn. 2002); <u>Peterson v. Provident Life & Acc. Ins. Co.</u>, No. 3:96CV2227(AHN), 1997 WL 527369, at *1-2 (D. Conn. July 17, 1997); <u>Thompson & Peck, Inc. v. Reliance Ins. Co.</u>, No. CV990267591S, 2001 WL 1178596, at *2 (Conn. Super. Ct. Aug. 30, 2001); <u>Chieffo v. Yanielli</u>, No. CV000159940, 2001 WL 950286, at *4 (Conn. Super. Ct. July 10, 2001); <u>Joseph v. Hannan Agency Inc.</u>, No. 323310, 1997 WL 15424, at *1 (Conn. Super. Ct. Jan. 9, 1997); <u>Stabile v. S. Conn. Hosp. Sys., Inc.</u>, No. 326120, 1996 WL 651633, at *3 n. 6 (Conn. Super. Ct. Aug. 24, 1995).

The court of appeals further stated that: "[I]n <u>Mead v. Burns</u>, 199 Conn. 651, 509 A.2d 11 (Conn. 1986), the Connecticut Supreme Court characterized CUIPA as a penal statute requiring a

14

construction 'limiting rather than expanding civil liability' -
further supporting the proposition that no private cause of
action is available under the statute." <u>Lander v. Hartford Life
& Annuity Insurance Co.</u>, 251 F.3d 101 at 119 (2001).

In accordance with <u>Lander</u> this court concludes that CUIPA
does not provide a private cause of action and therefore Bankers
Life's motion to dismiss the CUIPA cause of action is granted.

### CONCLUSION

Based on the foregoing reasons, the defendant's motion to
dismiss (document no. 48) is GRANTED.

It is so ordered, this ___9TH___ day of December, 2003, at
Hartford, Connecticut.

Alfred V. Covello
United States District Judge

15