UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       :
PHILIP GLYNN,                                          :   CIVIL NO. 3-02CV1802 (AVC)
                                                       :
        Plaintiff,                                     :
                                                       :
v.                                                     :
                                                       :
BANKERS LIFE AND CASUALTY CO.,                         :
                                                       :
        Defendant.                                     :   MARCH 8, 2004
-------------------------------------------------------x
```

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

       Pursuant to Fed.R.Civ.P. 33, Fed.R.Civ.P. 34, Fed.R.Civ.P. 37 and L.Civ.R. 37, defendant Bankers Life and Casualty Company ("Bankers") respectfully submits the within memorandum of law in opposition to plaintiff's motion for relief addressed to Bankers' interrogatory answers and responses to requests for documents in response to discovery served by the plaintiff, Philip Glynn, ("Plaintiff") on or about March 18, 2003.  At that time, Plaintiff sought discovery on the only claim raised in his then Complaint – a state claim for breach of contract.  See Complaint dated September 10, 2002, ¶ 9 ("Bankers has breached the contract of accidental insurance coverage").  Bankers had removed this matter to this Court five months before the discovery was served, on or about October 10, 2002, on the express ground that the action was governed by the Employment Retirement Security Act of 1974 ("ERISA").  On or about

ORAL ARGUMENT REQUESTED

May 16, 2003, Bankers responded to Plaintiff's discovery.  It is this response to discovery to which Plaintiff now objects.

After serving discovery, Plaintiff amended his complaint three times to assert additional state law claims for violations of the Connecticut Unfair Insurance Practices Act, Conn. Gen Stat. §38-815 *et seq*. ("CUIPA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. §41-110b *et seq*. ("CUTPA"), as a bad faith claim, as well as an ERISA claim.  <u>See</u> Amended Complaint dated June 3, 2003; Amended Complaint dated July 18, 2003.  On December 12, 2003, this Court granted Banker's motion to dismiss the state court claims, limiting the complaint to the ERISA claim.

Plaintiff's final form of Complaint was established on January 14, 2004 when this Court granted Plaintiff's motion to amend his complaint to reword ¶ 7 of the First Count of the Complaint.  Issue was joined on or about February 3, 2004 when Bankers served and filed its Answer.

Put another way, when served, Plaintiff's discovery addressed the only claim he then alleged – a state claim for breach of contract.  Now, after the Complaint was amended three times to eventually assert only an ERISA claim, Plaintiff pretends that he is somehow entitled to a fishing expedition regarding Bankers general insurance business.  <u>See</u> <u>Fidelity and Deposit Company of Maryland v. McCulloch</u>, 168 F.R.D. 516, 526 (E.D. Pa. 1996).

Plaintiff incorrectly asserts that his pending motion regarding interrogatories and document requests is a permitted refiling of his earlier motion to determine the sufficiency of Bankers' responses to requests for admissions.  (Pb 3).  This Court denied that motion addressed to admissions, permitting Plaintiff to refile it

2

"provided the discovery sought is relevant to his ERISA cause of action." Rather than refiling that motion, Plaintiff moves for entirely different relief regarding interrogatories and document requests, wholly unrelated to Plaintiff's earlier motion addressed to admissions.

But like the prior motion, Plaintiff again seeks discovery entirely irrelevant to his ERISA claim. The vast majority of Plaintiff's discovery requests at issue seek discovery on Bankers' general insurance business, related to his now-dismissed state claims and not to his ERISA claim.

Given the narrow scope of discovery permitted on an ERISA claim, Bankers believes that its discovery responses are proper because (1) Fed.R.Civ.P. 33(b) permits a party to object to an interrogatory and then answer it to the extent it is not objectionable; (2) Fed.R.Civ.P. 34(b) permits the responding party to object to a request for production; and (3) only the ERISA-governed employee benefit plan and policy in issue are relevant – Bankers' general insurance business, other company's ERISA-governed employment benefit plans, and other policies issued by Bankers are irrelevant. Furthermore, Bankers has offered to produce documents – it is Plaintiff who has not scheduled a review of the proffered documents. See Bankers Response to Request Nos. 1, 2 and 9.

## NATURE OF THE CASE

## FACTS

This is an action brought under ERISA. Plaintiff's decedent, Peter Glynn, died on June 8, 2001 in a single car collision. He was driving while intoxicated. In his Amended Complaint, Plaintiff seeks to recover benefits under Group Accident Policy No.

3

SR84,0001 (the "Policy") issued by Bankers to Johnson & Johnson ("J&J"), the employer of plaintiff's decedent. The Policy was part of J&J's employee welfare plan subject to ERISA (the "Plan"). Amended Complaint, First Count, ¶ 1. As administrator of the Plan, Bankers had the discretion to deny the claim. See Amended Complaint, First Count, ¶ 7. Bankers denied the claim, relying upon ERISA federal common law that deems death resulting from driving while intoxicated to be not accidental.

In March 2003, Plaintiff served, and Bankers responded to, 37 interrogatories and 22 requests for production of documents. Plaintiff sought overly-broad discovery addressed to his now-dismissed state law claims and Bankers' general insurance business. Pursuant to Fed.R.Civ.P. 33(b) and Fed.R.Civ.P. 34(b), in May 2003 Bankers objected to certain interrogatories and requests and answered them to the extent they were not objectionable. Now, eight months after Bankers served its responses addressed to discovery of dismissed claims, Plaintiff demands entitlement to that outdated discovery notwithstanding that a different and narrower standard applies to discovery of ERISA claims. Plaintiff's discovery requests go far beyond the J&J Plan and Policy – a level of inquiry not permitted in an ERISA action.

Depositions have yet to be held in this matter and the parties' counsel are scheduling them.

## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint in Connecticut Superior Court in or about September 2002. In October 2002, Bankers removed the matter to this Court on the ground that it was an ERISA action. Plaintiff did not then amend his complaint. On March 18, 2003 Plaintiff served the discovery now in issue addressed to the now-

4

dismissed state claims. On April 10, 2003, Plaintiff moved to amend his complaint to assert additional state claims, namely a Second Count (CUIPA), a Third Count (CUTPA), and a Fourth Count (bad faith). On May 16, 2003, Bankers served its responses to the discovery in issue. By Order dated May 29, 2003, this Court permitted Plaintiff to amend his complaint. But Plaintiff had yet to assert an ERISA claim. Thereafter, Plaintiff moved twice more to amend his Complaint – on July 18, 2003 and November 17, 2003 – finally asserting an ERISA claim. On October 29, 2003 Bankers filed a motion to dismiss the state court claims alleged in the Amended Complaint on the ground that they were preempted by ERISA. By Order dated December 9, 2003, this Court granted Bankers' motion to dismiss all state claims. On January 14, 2004, this Court permitted the further amendment of Paragraph 7 of the Third Amended Complaint.

### LISTING OF THE ITEMS OF DISCOVERY THAT PLAINTIFF DISPUTES

A. <u>Interrogatory Responses</u>

Plaintiff disputes Bankers' responses to Interrogatories Nos. 1, 2, 5, 7-11 and 13-37 because Bankers raised objections before answering the interrogatories. (Pb3). Despite controlling federal case law to the contrary, Plaintiff asserts that "the defendant should be compelled to provide full, non-evasive answers to these interrogatories." (Pb4).

<u>Interrogatory Nos. 1, 2 and 5</u>

Interrogatory No. 1 was broad enough to cover Bankers' attorneys, and Bankers objected on that ground, and fully answered the interrogatory. Interrogatory No. 2 was confusing, vague and ambiguous because it referred to "the denial of the payment of policy SR 84001." That policy is a <u>group</u> accident policy, and there has been no

5

demand for the payment of the entire policy. After asserting the appropriate objection, Bankers fully answered the interrogatory.

Interrogatory No. 5 is unintelligible. After asserting an appropriate objection, Bankers fully answered the interrogatory as if Plaintiff had asked whether any persons named in the answer to Interrogatory No. 4 were in favor of paying Plaintiff's claim.

<u>Interrogatory Nos. 8 to 11</u>

Bankers objected to these interrogatories because they are directed to all denials of claims under <u>all</u> Bankers' policies from 1998 to the present (Interrogatory Nos. 8 and 9), and <u>all</u> policies issued by Bankers since 1998 with specific alcohol exclusions (Interrogatory Nos. 10 and 11). These interrogatories are addressed to Bankers' general insurance business and not to the ERISA Plan and Policy in issue.

<u>Interrogatory Nos. 13 to 29</u>

These interrogatories are addressed to Bankers' affirmative defenses. Bankers objects to each of Interrogatory Nos. 13, 17, 19, 21, 23, 24, 25 and 27 on the ground that they improperly demanded "the specific legal basis" for the defense. In addition, Bankers objected to answering Interrogatory Nos. 13 to 29 because "discovery in this action is not yet completed, and the interrogatory is premature because additional bases for the affirmative defense will likely be confirmed before discovery is closed." <u>See</u> Bankers' Response to Interrogatory No. 13. Furthermore, except for its responses to Interrogatory Nos. 17, 18, 26, and 27, Bankers answered each and every interrogatory to the extent that it was not objectionable.

Interrogatory Nos. 30 to 32

Bankers objected to these interrogatories because they are addressed to Bankers' general insurance business and not to the ERISA Plan and Policy in issue. Interrogatory Nos. 30 and 31 demand information about "each and every lawsuit" alleging a failure to pay a claim to which Bankers was a party since January 1995. Interrogatory Nos. 32 and 33 demand information for the past 10 years regarding Bankers' relationship with state insurance regulators in all states in which it is authorized to issue policies.

Interrogatory Nos. 35 to 37

These interrogatories demand that Bankers "describe the specific locations of the motor vehicle crash" in issue (No. 35), to "describe the condition of the roadway on which Peter Glynn was killed" (No. 36), and to "describe the characteristics of the roadway, in detail" (No. 37). Bankers justifiably objected to answering these interrogatories on the ground that it has no first-hand knowledge of the motor vehicle crash in issue, and then responded by relying upon the factual descriptions set forth in the June 8, 2001 Accident Report issued by the Bristol Police Department.

B.      Responses to Requests for Documents

At the time Plaintiff served his discovery, the only claim he asserted was a state claim for breach of contract. See Complaint dated September 10, 2002, ¶ 9. Now, the only claim Plaintiff asserts is an ERISA claim. As to that claim, Plaintiff's document requests were so irrelevant, so vague and generalized, that Bankers had no choice but to resist the fishing expedition with objections.

Many of Plaintiff's requests were objected to because they were related to the now-dismissed breach of contract, CUIPA and CUTPA claims:

> Request 4.     List of Bankers policies since January 1998 that were denied for reasons similar to the denial at issue.
>
> Request 5.     Bankers' policies that contain the same exclusions as the Policy.
>
> Request 6.     Bankers' policies that contain an alcohol exclusion.
>
> Request 14.     Training and seminar materials on denial of alcohol claims (not limited to Bankers).
>
> Request 15.     Identical to Request 14.
>
> Request 19.     Documents regarding Bankers' changes to future or existing policies similar to the Policy.
>
> Request 20.     List of lawsuits since 1995.
>
> Request 21.     Documents related to disciplinary action by any state insurance regulator.
>
> Request 22.     Documents related to revocation and reinstatement by any state insurance regulator.

In many instances, Bankers responded that "no responsive documents exist":

> Request 3.     Copies of written reports of investigations of the denial in issue.
>
> Request 4.     A list of Bankers' policies issued since January 1998 that were denied for similar reasons.
>
> Request 8.     The chain of command for denying Plaintiff's claim.

8

Request 9.   Bankers' internal memoranda and records of meetings when the decision to deny the claim was mentioned.

Request 11.  Copies of photographs of the accident site.

Request 14.  Training or seminar materials covering the denial of claims involving alcohol (not limited to Bankers).

Request 15.  Identical to Request 14.

Some documents requested were fatally overly broad:

Request 5.   Copies of any other Bankers' policies that contain the same exclusions of the Policy.

Request 6.   Copies of other Bankers' policies that contain an alcohol exclusion.

Some requests were objectionable because they were not limited to Bankers. See Requests 3, 7, 12, 13, 14, and 15. Some document demands required Bankers to prepare lists as well as documents. See Request 4 (provide a list of policies).

Furthermore, Plaintiff served document requests that sought the production of Bankers' litigation work product. See Request 7 (documents regarding process of denying coverage); Request 16 (documents related to meetings about the denial dated after the denial); Request 17 (documents about the denial dated after the denial); Request 18 (changes to the Policy after the denial).

Certain of Plaintiff's requests sought to violate the privacy of other Bankers' insureds, who are strangers to this litigation. See Request 5 (copies of other insureds' policies); Request 6 (copies of other insureds' policies), Request 12 (documents related to the denial of other insureds' claims); Request 13 (documents regarding the handling of other insured's alcohol claims).

9

In addition, Bankers sought to protect the disclosure of its proprietary material by objecting on the ground that a protective order was necessary. See Requests 18 and 19 (changes to policies after the denial).

## ARGUMENT

**I.  FEDERAL PROCEDURE PERMITS BANKERS TO OBJECT TO A DISCOVERY REQUEST, AND RESPOND THERETO TO THE EXTENT IT IS NOT OBJECTIONABLE.**

Plaintiff demands that this Court compel Bankers to answer interrogatories without objections. (Pb 4). Plaintiff's demand flies in the face of established law and procedure.

First, it is undisputed that Fed.R.Civ.P. 33(b)(1) expressly permits a party to object to an interrogatory and then answer it to the extent unobjectionable:

> (1) Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

Fed.R.Civ.P. 33(b)(1).

Second, the rule governing production of documents also expressly permits a party to object to a production demand:

> . . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

Fed. R. Civ. P. 34(b).

Third, Plaintiff's counsel has not met the requirement under Rule 37 (a) to confer before filing this motion:

> The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

Fed.R.Civ.P. 37(a)(2)(A). Counsel's letter sent nine months ago in May 2003 does not constitute a good faith effort to confer on a motion served in February 2004. Furthermore, the May 21, 2003 letter was sent before Plaintiff's state claims were dismissed and before he asserted an ERISA claim. Plaintiff's counsel made no effort to consult by telephone about the issues raised in this motion in the past several months. See Affidavits of John Shaban, Andrew Muscato and Katherine Creenan. Accordingly, Plaintiff has not met the predicate for filing this motion. See also L.Civ.R. 37(a)(2).

## II.   BECAUSE PLAINTIFF'S STATE CLAIMS WERE DISMISSED, PLAINTIFF'S DISCOVERY REQUESTS ARE IRRELEVANT TO HIS ERISA CLAIM.

The general scope of discovery in a federal civil action is limited by Rule 26(b)(1) to matters relevant to the claims and defenses raised in the action:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the clam or defense of any party.

Fed.R.Civ.P. 26(b)(1). In an ERISA action, the scope of discovery is narrower than in other civil actions. Specifically, in the case of a plan administrator like Bankers, discovery is limited to the materials considered by the plan administrator. See Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995)(observing that in the Second Circuit, only the evidence before the plan administrator is considered); Piscottano v. Metropolitan Life Ins. Co., 118 F. Supp. 2d 200, 210 (D. Conn. 2000)(only the record before the plan

11

administrator when it made its decision is required); Sheehan v. Metropolitan Life Ins. Co., 2002 U.S. Dist. LEXIS 11789, 2002 WL 1424592, at *4 (S.D.N.Y. June 28, 2002)(noting that a plaintiff must demonstrate a conflict of interest or other good cause to obtain evidence outside the plan administrator's administrative record); Bayonne v. Pitney Bowes, Inc., 2004 WL 169285 (D. Conn. January 12, 2004)(observing that the scope of discovery for an ERISA action relates to the plaintiff's denial of coverage).

Federal courts uniformly limit inquiry in an ERISA-governed action to the ERISA plan and policy in issue. See, e.g., Moench v. Robertson, 62 F.3d 553, 567 (3d Cir. 1995) (limiting scrutiny of past practices to the plan documents at issue in the case and finding that they had not been interpreted consistently); Cooper Tire & Rubber v. St. Paul Fire & Marine, 48 F.3d 365, 371 (8th Cir. 1995) (limiting its scrutiny to the plan in issue, the Court found that "there is evidence that Cooper Tire has interpreted the subrogation provision [of the plan in issue] inconsistently"); Finley v. Special Agents Mut. Ben. Ass'n, 957 F.2d 617, 621 (8th Cir. 1992) (limiting its scrutiny to the plan in issue, and finding that "[t]here is no suggestion that the SAMBA board has not consistently interpreted [the term] 'confrontational situation'"); McCall v. Metropolitan Life Ins. Co., 956 F.Supp. 1172, 1183 (D.N.J. 1996) (declaring that "scrutiny is confined to the provisions of the Plan" and that the issue is "whether the plan administrator interpreted the provision in question consistently") (emphasis supplied).

". . . [P]arties should not be permitted to roam in shadow zones of relevancy and to explore matters that do not presently appear germane in the theory that it might conceivably become so." In re Surety Ass'n of America, 388 F.2d 412, 414 (2d Cir. 1967). To the extent that Plaintiff's interrogatories and document requests are not limited

to the Plan and Policy in issue, they may be not answered.   Bankers has been marketing insurance since 1879.  Under the guise of seeking discovery of Bankers past practices to prove his state court claims, now dismissed, Plaintiff has served irrelevant discovery requests, not permitted under governing case law.

By requesting information since the 1990s about Bankers' denials of coverage because of an insured's intoxication under <u>any</u> policy issued by Bankers, and by requesting copies of <u>any</u> policies Bankers issued since the 1990s that contain exclusions for driving while intoxicated, Plaintiff grossly exceeds the limits of the inquiry into Bankers' past practices under the Plan and the Policy as permitted by federal law.  <u>See</u> <u>Miller</u>; <u>Sheehan</u>; <u>Cooper</u>; <u>Finley</u>; <u>see</u> <u>also</u> <u>Liston v. UNUM Corporation Officer Severance Plan</u>, 330 F.3d 19, 25-26 (1st Cir. 2003); <u>Winters v. UNUM Life Insurance Company of America</u>, 232 F.Supp.2d 918, 920-21 (W.D. Wisc. 2002); <u>Lake v. Hartford Life and Accident Ins. Co.</u>, 218 F.R.D. 260 (M.D. Fla. 2003)(plaintiff is entitled to conduct discovery as to all facts known to the administrator at the time its decision was made).  Those cases demonstrate that an ERISA plaintiff's discovery is limited to the insurer's past practices under the ERISA plan in issue.

Here, the issues in this action are

"(1) whether [Bankers'] interpretation is consistent with the goals of the <u>plan</u>;

(2) whether it renders any language in the <u>plan</u> meaningless or intentionally inconsistent;

(3) whether it conflicts with the substantive or procedural requirements of the ERISA statute;

(4)  whether [Bankers as administrator] interpreted the provision at issue consistently; and

13

>    (5) whether the interpretation is contrary to the clear
>    language of the plan."

Cooper Tire, 48 F.3d at 371 (applying the five-prong test and limiting its scrutiny to the plan in issue, the Court found that "there is evidence that Cooper Tire has interpreted the subrogation provision [of the plan in issue] inconsistently"); Finley, 957 F.2d at 621 (applying the five-prong test, limiting its scrutiny to the plan in issue, and finding that "[t]here is no suggestion that the SAMBA board has not consistently interpreted 'confrontational situation.'").  By demanding that Bankers answer objectionable interrogatories and document requests regarding Bankers' denials of coverage other than under this Plan and Policy, without stating objections as permitted by law, Plaintiff exceeds the limits of the inquiry into past practices under the Plan and the Policy as permitted by law.

"Whether discovery [is] warranted depends in part on if and in what respect *it matters* whether others were treated better than [Glynn] . . . the central issue must always be what the plan promised to [the Decedent] and whether the plan delivered."  Liston, 330 F.3d at 25 (emphasis added).  Here, the issue is whether Bankers as plan administrator inconsistently interpreted the provisions of the J&J plan.  It matters not whether Bankers paid benefits under non-J&J policies for accidental deaths resulting from driving while intoxicated (Interrogatory Nos. 8, 9; Document Request No. 4), or under policies not governed by ERISA (Interrogatory Nos. 8, 9; Document Request Nos. 5, 6), or whether Bankers issued non-ERISA, non-J&J plan policies that contained a specific alcohol exclusion (Interrogatory Nos. 10, 11, Document Request Nos. 5, 6), or whether Bankers was a party to any lawsuit from 1995 – four years before the Policy came into existence (Interrogatory Nos. 30, 31).  If the subject of Plaintiff's discovery has

14

no application whatsoever to the Plaintiff's sole viable claim – his ERISA claim – then it is objectionable as a matter of law.

A reading of Plaintiff's May 21, 2003 letter (Pb, Exhibit 2) demonstrates that his discovery demands are irrelevant to Plaintiff's ERISA claim. For example, Plaintiff states:

- as to Interrogatories Nos. 8 and 9, "these interrogatories are absolutely relevant to the issues raised in the amended complaint regarding violations of CUTPA and CUIPA." (Pb, Exhibit 2 at 2).

- as to Interrogatories Nos. 32 and 33, he is "entitled to seek information which may record a pattern and practice of substantially similar behavior [including] public filings of complaints brought against [Bankers] by state agencies." (Pb, Exhibit 2 at 2).

Furthermore, a party may properly object based upon the need for additional discovery (see Storie v. United States, 142 F.R.D. 317, 319 (E.D. Mo. 1991)), and because post-accident materials are not discoverable (see In re Air Crash Disaster at Detroit Metropolitan Airport, 130 F.R.D. 641, 645 (E.D. Mich. 1989)).

As to document requests, Rule 34(b) requires Plaintiff to describe the items to be inspected "with reasonable particularity." Fed.R.Civ.P. 34(b) ("The requirement shall set forth . . . the items to be inspected and describe each with reasonable particularity."). By demanding discovery of other policies and/or plans, from the 1990s to the present, regardless of the nature of the Bankers' product lines, Plaintiffs' discovery demands are unfocused, and too broad and ambiguous to meet the "reasonable particularity" standard of Fed.R.Civ.P. 34(b). See Motton v. Owens, 128 F.R.D. 72, 73 (M.D. Pa 1989); see also Robbins v. Camden City Bd. of Ed., 105 F.R.D. 49, 60 (D.N.J. 1985)(request for all documents to any agency was held overbroad). For example,

15

Plaintiff's Request Nos. 21 and 22 are the sort of unfocused demands criticized in the Robbins decision as too broad and ambiguous to meet the "reasonable particularity" standard of Fed.R.Civ.P. 34(b).  Robbins, 105 F.R.D. at 60.

Secondly, Plaintiffs' unfocused inquiry into other policies is not relevant to Plaintiff's claims or Bankers' defenses.  See Fed. R. Civ. P. 26(b) ("[p]arties may obtain discovery regarding any matter . . . that is relevant to the claim or defense of any party"). The issue here is Bankers' denial of Plaintiff's claim under the terms of the Policy as written. Plaintiff is required to tailor his discovery to meet his reasonable needs on this ERISA claim. Robbins, 105 F.R.D. at 60.  An examination of the terms of other policies will have absolutely no bearing upon the claims and defenses raised in this matter with respect to a specific policy, the Policy in issue.  Whatever Bankers' other contracts of insurance may state is simply not reasonably calculated to lead to the discovery of evidence admissible on Plaintiff's claim brought under the J&J Plan.  See Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 274 (S.D.N.Y. 1995)(". . . discovery rules . . . do not permit discovery of matters that are neither relevant to issues raised in the case nor calculated to lead to relevant and admissible evidence.").

Furthermore, an 8-year period, going back as far as 1995 is not the relevant time period for a Policy issued that came into existence four years later, effective January 1, 1999.  The very failure to limit the document requests to the relevant time period also renders the requests overbroad.  See Motton, 128 F.R.D. at 73; see also Robbins, 105 F.R.D. at 49.

Many of Plaintiff's requests in issue are addressed to Bankers' insurance policies outside of the scope of ERISA.  See Interrogatory Nos. 8, 9, 10, 11, 30, 31, 32

16

and 33; Document Requests Nos. 4, 5, 6, 7, 12, 13, 14, 15, 20, 21 and 22.  Bankers objects to the discovery requests in issue because they are related to Plaintiff's dismissed state claims that required proof that the insurer acted "with such frequency as to indicate a general business practice."  See Lees v. Middlesex Ins. Co., 229 Conn. 842, 849-50 (1994); Conn. Gen. Stats. § 42-11b (unfair business practices proscribed).  Those claims having been dismissed by this Court, discovery on Bankers' general insurance business is proscribed.

## **CONCLUSION**

Because Plaintiff's state court claims are preempted by ERISA, making the discovery in issue irrelevant, Bankers respectfully requests that this Court deny Plaintiff's motion in its entirety.

>
> THE DEFENDANT
> BANKERS LIFE AND CASUALTY
> COMPANY
>
>
> BY_____
> John T. Shaban, ct14075
> Maciej A. Piatkowski, ct21555
> Whitman Breed Abbott & Morgan LLC
> 100 Field Point Rd.
> Greenwich, CT 06830
> 203-869-3800 (telephone)
> 203-869-1951 (facsimile)
> jshaban@wbamct.com
> mpiatkowski@wbamct.com
>
> and
>
> Andrew Muscato ct15073
> Skadden Arps, Slate, Meager &
> Flom LLP
> One Newark Center
> Newark, New Jersey 07102
> 973-639-6817 (telephone)
> 973-848-0878 (facsimile)