UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

PHILIP GLYNN                                    :
                                                :
          Plaintiff,                            :
                                                :
V.                                              :        CIVIL ACTION NO.:
                                                :        302CV1802 (AVC)
                                                :
BANKERS LIFE AND                                :
CASUALTY COMPANY,                               :
                                                :
          Defendant                             :        August 5, 2004


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**I.      FACTS AND PROCEDURAL HISTORY**

  This case arises from the defendant's, Bankers Life and Casualty

Company's, refusal to pay accidental death benefits to the plaintiff, Philip Glynn,

the sole beneficiary under such policy.  The policy was provided to the decedent,

Peter J. Glynn, as part of an employee welfare benefit offered by his employer,

Johnson & Johnson.  On June 8, 2001, Peter J. Glynn died as the result of injuries

sustained in an accidental motor vehicle collision.  Thereafter, the defendant,

Bankers Life and Casualty Company, has refused to make payment to the

beneficiary of the accidental death benefits provided, due to the decedent's blood

alcohol content at the time of his accident.  The defendant admits that no

expressed exclusion exists in the policy involving the factual circumstances of decedent's accident.

The plaintiff's operative complaint brings action pursuant to the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*, specifically under 29 U.S.C. § 1132 (a)(1)(B). The plaintiff now moves for summary judgment, as the accidental death policy did not contain an exclusion for motor vehicle collisions involving a decedent with an elevated blood alcohol content, and ERISA does not change the terms of an insurance contract. In addition, the defendant was not granted discretionary authority to interpret the terms of the policy, the defendant agrees that the plaintiff's interpretation of the policy is not unreasonable, and even if it was decided that the defendant had discretionary authority to interpret the terms of the plan, Bankers Life and Casualty Company denied the plaintiff's benefits without reason or substantial evidence, and therefore was arbitrary and capricious.

## II.     **STANDARD FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) states:

> [summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"Summary judgment is utilized to eliminate the delay and expense of a trial where there is no issue to be tried." *Weinstock v. Wilk*, 296 F.Supp.2d 241, 245

(D.Conn. 2003) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d. Cir.

2000). The court must "view the evidence in the light most favorable to the party

opposing summary judgment." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

"Still, '[t]he existence of a scintilla of evidence in support of the [defendant's]

position will be insufficient; there must be evidence on which the jury could

reasonably find for the [defendant].'" *Dawson v. County of Westchester*, No. 03-

7858 (2d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986).

## III.    LAW AND ARGUMENT

### A. THE ACCIDENTAL DEATH BENEFITS SHOULD BE PAID PURSUANT TO THE TERMS OF THE INSURANCE CONTRACT DRAFTED AND ISSUED BY THE DEFENDANT

The defendant admits that "accident" is not defined in the policy in

question. (*See,* Accidental Death Insurance Policy, hereinafter Exhibit A, at

D007; Krol depo, hereinafter Exhibit B, at 89). The defendant could have written

a provision into the decedent's accidental death policy that excluded deaths

resulting from his driving while intoxicated. (*See e.g.* Exhibit C. at 15-16; *See,*

*Bishop v. National Health Ins. Co.*, 344 F.3d 305, 306 ("policy provided coverage

for certain medical expenses for [the insured]. But the policy excluded coverage

for 'any loss incurred while [the insured was] legally [i]ntoxicated,' defining

'[i]ntoxicated' as 'a level of blood alcohol content that is specified in the laws

defining [i]ntoxication in the state where the loss or cause of loss occurred.'");

RISCASSI & DAVIS, P. C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

*Bullard v. Daughters of Charity National Health Systems, Inc.*, 2003 WL 22213127 (E.D.Mich. 2003) ("This policy excludes any loss caused in whole or in part by, or resulting in whole or in part from the Insured Person being under the influence of intoxicants..."); *Cates v. Metropolitan Life Ins. Co., Inc.*, 14 F.Supp.2d 1024, 1025 (E.D. Tenn. 1996) ("will not pay for any Covered Loss . . . *if it in any way results from, or is caused by or contributed by* . . . (e) the use of any drug or medicine.") (emphasis in original); *Smith v. Life Ins. Co. of North America*, 872 F.Supp. 482 (W.D. TN 1994) (involving a policy that stated "We agree to pay benefits for loss from bodily injuries: a) caused by an accident....No benefits will be paid for...7. Voluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of, a licensed physician.").

　　The defendant, Bankers Life and Casualty Company, designated Robert Krol as its corporate designee. (*See* Re-Notice of Deposition, hereinafter Exhibit D.). Mr. Krol's definition of "accident" at the time he denied the plaintiff's claim was something unforeseen or unexpected, (*See* Exhibit B. at 93), and he agrees that the decedent's death satisfied this definition. (*Id* at 103-04). Further, the defendant consistently pays claims involving the death of intoxicated drivers pursuant to the language of the policy when the policy is not part of a group employee benefit plan. (*See* Exhibit B. at 24-25). Therefore, it can be assumed that the defendant, Bankers Life and Casualty Company believes that the

RISCASSI & DAVIS, P. C.   •   *ATTORNEYS-AT-LAW*   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

decedent's death was accidental under the policy's language.  There is nothing in the ERISA statutes which change the terms of insurance contracts; therefore, the plaintiff's benefits should be paid according to the contract's terms.

"The benefit provisions of an ERISA regulated [plan] must be interpreted under principles of federal substantive law." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57 (1987); *Massella v. Blue Cross & Blue Shield of Connecticut Inc.*, 936 F.2d 98, 107 (2d Cir. 1991).  "A claim under § 1132(a)(1)(B), 'in essence, is the assertion of a contractual right.'" *Feifer v. Prudential Ins. Co. of America*, 306 F.3d 1202, 1210 (2d. Cir. 2002).  "[E]RISA federal common law is largely informed by state law principles." *Lifson v. INA Ins. Co. of New York*, 333 F.3d 349, 352-353 (2d Cir. 2003).

"[F]ederal common law on the issue of insurance benefits … 'must embody common-sense canons of contract interpretation.'" *Pilot Life*, 481 U.S. at 56-57.  The starting point for contract interpretation is "the terms of the policy contract itself." *Id.* These expressed terms "must be given their plain meanings, meanings which comport with the interpretations given by the average person." *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir. 1990); *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002); *Passkowski v. Prudential Ins. Co. of America*, 182 F.Supp. 819 (D.Conn. 1960).

RISCASSI & DAVIS, P.C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

"[A]mbiguities in a contract are resolved against the party responsible for its drafting, and [ ] this canon is more rigorously applied in the context of insurance contracts." *Israel v. State Farm Mutual Auto. Ins. Co.*, 259 Conn. 503, 512 (2002) (citing *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 548 (1996)); *Lifson*, 333 F.3d at 353. The purpose of this doctrine is to "afford the protection which the insured was endeavoring to secure when he applied for the insurance." *Wickman*, 908 F.2d at 1084 (quoting 13 Appleman, *Insurance Law and Practice* § 7401 at 197 (1976).; *see also, Hertz Corp. v. Federal Ins. Co.*, 245 Conn. 374 (1998); *Knight v. Metropolitan Life*, 103 Ariz. 100, 104 (1968) (stating "Insurance companies are the drafters of the policies they sell and if they want to exclude against reckless and foolhardy acts . . . they have it in their power to make such exclusions. With simplicity and clarity of expression they may remove all doubt…").

According to *Pilot Life*, although the policy is part of an ERISA plan, common sense contract interpretation must be used, and, in interpreting such contract, it is the contract itself, that must be examined. The administrative materials regarding the policy and the plan in question specifically state that it is "the official plan documents or insurance contracts which govern in all cases." (*See* Administrative Information, attached as Exhibit E., at 205). The accidental death policy states that "[t]he amount payable by reason of the accidental death of an Employee shall be paid to the beneficiary… designated in writing by the Employee." (*See* Exhibit A. at D

010).  The policy excludes the payment of benefits for six specific circumstances.[1]

The policy did not include an express exclusion for the circumstance of an insured

being injured or killed while driving with an elevated blood alcohol content.  (*See*

Exhibit B. at 91).  The defendant could have easily excluded such circumstances.[2]

Such an exclusion could have easily been included in the decedent's policy.  Also, no

stated definition for "accidental" is included in the contract.  (*Id* at 89).  Again, an

insurer could easily provide a definition of terms included in any contract  for

insurance it drafts.

---

[1] "This policy doesn't cover losses caused or contributed by; (1) suicide or self-destruction, whether sane or insane; (2) bodily infirmity, sickness or disease; (3) medical or surgical treatment (except medical or surgical treatment necessitated only due to an injury); (4) war or any act or war; (5) injury sustained while serving in the armed forces of any country, for which period premiums will be refunded; (6) injury sustained while engaged in or taking part in aeronautics and or aviation of any description or resulting from being in an aircraft. (*See* Exhibit A. at D 010)

[2] *See e.g.* Exhibit C.; *Bishop v. National Health Ins. Co.*, 344 F.3d 305, 306 ("policy provided coverage for certain medical expenses for [the insured].  But the policy excluded coverage for 'any loss incurred while [the insured was] legally [i]ntoxicated,' defining '[i]ntoxicated' as 'a level of blood alcohol content that is specified in the laws defining [i]ntoxication in the state where the loss or cause of loss occurred.'"); *Bullard v. Daughters of Charity National Health Systems, Inc.*, 2003 WL 22213127 (E.D.Mich. 2003) ("This policy excludes any loss caused in whole or in part by, or resulting in whole or in part from the Insured Person being under the influence of intoxicants…"); *Cates v. Metropolitan Life Ins. Co., Inc.*, 14 F.Supp.2d 1024, 1025 (E.D. Tenn. 1996) ("will not pay for any Covered Loss . . . *if it in any way results from, or is caused by or contributed by* . . . (e) the use of any drug or medicine.") (emphasis in original); *Smith v. Life Ins. Co. of North America*, 872 F.Supp. 482 (W.D. TN 1994) (involving a policy that stated "We agree to pay benefits for loss from bodily injuries:  a) caused by an accident….No benefits will be paid for…7.

RISCASSI & DAVIS, P. C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

The defendant claims that under ERISA plans, "accidental" does not include motor vehicle accidents where the insured is found to have had an elevated blood alcohol content. (*See* Exhibit B. at 93). The defendant's corporate designee, however, concedes that under the same accidental policy, not provided through an ERISA eligible plan, the proceeds would have been paid to the plaintiff, despite the decedent's driving while intoxicated:

> Q. Okay. Have you paid death claims involving an intoxicated driver in non-ERISA cases?
>
> A. Yes.
>
> Q. Have you paid death claims involving intoxicated driver (sic) in ERISA cases?
>
> A. In the past, yes.
>
> …
>
> Q. Okay. Since this change in policy occurred seven or eight years ago, have you continued to pay non-ERISA claims involving intoxicated drivers?
>
> A. Yes.
>
> Q. Since this policy change seven or eight years ago, have you continued to pay ERISA claims involving intoxicated driver (sic)?
>
> A. We have never paid.
>
> Q. Since that seven or eight-year-time period?
>
> A. Yes.
>
> …

---

Voluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of, a licensed physician.").

8

Q. When we are talking about claims that are ERISA versus claim[s] that are not ERISA, would the policy language be the same in either instance?

A. Yes.

(*See* Exhibit B. at 24-25).  Since the defendant pays under the same circumstances in non-ERISA plans, it must be assumed that the defendant concedes that alcohol related collision qualifies as an accident under the terms of the policy, otherwise the defendant would deny benefits for deaths from drunk driving in all plans, whether or not ERISA applies.  The defendant's corporate designee states that none of the exclusions in the policy in question relate to the decedent's circumstance, and that in reviewing policies in non-ERISA plans, the first step is to evaluate the existence of specific exclusions to coverage.

Q. When you had a claim come in that involved an intoxicated driver such as this one that was not an ERISA claim, would you seek the advice of legal back in the time period of 2001-2002?

A. Depending on circumstances, sometimes yes, sometimes no.

Q. Okay.  You would be concerned that the circumstances might fall within one of the listed exceptions, correct?

A. Yes.

Q. Or exclusions?

A. Yes.

(*See* Exhibit B. at 90-91).

9

Bankers Life and Casualty Company does not claim that the language of the contract for accidental death insurance provided to the decedent, Peter J. Glynn, in any way defines the term "accidental," nor can the defendant disagree with the fact that the decedent's death was accidental within the language of the policy. Instead, the defendant relies on federal law to change the terms of the contract and to deny the payment of proceeds solely in ERISA protected plans. Robert Krol, the defendant's corporate designee, stated that an accident is something that is unforeseen and unexpected, (*See* Exhibit B. at 93) ("Q. And in 2001 as a claims specialist, what did you understand an accidental death to involve? A. Something unforeseen and unexpected."). The defendant also agrees that the decedent did not likely foresee or expect to die from driving while he was intoxicated.

> Q. Okay. And we have already discussed the fact that this accident was unforeseen to Mr. Glynn, in all probability?
>
> …
>
> Q. Correct?
>
> A. I agree with that.
>
> Q. Okay. And in all probability, the accident was unexpected by Mr. Glynn., correct?
>
> …
>
> A. I agree.

RISCASSI & DAVIS, P. C.   •   *ATTORNEYS-AT-LAW*   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

(*See* Exhibit B. at 103-104).   The medical examiner and the police both reported that the decedent's death was an accident.  (*See* Death Certificate, hereinafter Exhibit F., at D 069; Police report, hereinafter Exhibit G., at D 058-062, 066). Therefore, the plaintiff is not unreasonable in expecting payment on the decedent's accidental death policy.

Further, the plaintiff has offered a technical investigation of the circumstances involving the decedent's death, conducted by the plaintiff's expert witness Michael Miller,[3] which concludes that the collision was an accident.  (*See* Exhibit H.).  In fact, Mr. Miller stated that the decedent's automobile was classified as "'stable' in regards to tipover propensity," and that if the tires of the decedent's vehicle had not struck the curb of the roadway, the "vehicle would not have tipped over; rather, it probably would have continued to sideslide to a position of rest." (*See* Exhibit H. at 3).  The expert also believed that "had the automobile not overturned as a result of this curb strike, it is probable that the plaintiff's decedent's loss of control of his vehicle, and the ensuing dynamics of its movements, would have been survivable." (*Id*).  Mr. Miller concludes that:

> Based upon my extensive technical investigation into the plaintiff's decedent's accident and my evaluation of the available physical evidence, I have formed the opinion that the event which led to plaintiff's decedent's loss of life was an "accident" and satisfies the definitions for this word as set forth above.

---

[3] Mr. Miller was disclosed as an expert witness for the plaintiff on October 24, 2003. (*See* Affidavit of Miller, hereinafter Exhibit G., at 2).

RISCASSI & DAVIS, P. C.   •   *ATTORNEYS-AT-LAW*   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

(*Id* at 6).

The plaintiff has also offered an affidavit by Medhi Mostaghimi, Ph.D., another expert witness disclosed by the plaintiff.[4]  Dr. Mostaghimi came to the conclusion that "the probability of an alcohol related fatal accident for an alcohol impaired driver and non-driver per 20 vehicle miles traveled is about one in a million for both the United States and Connecticut." (*See* Exhibit I. at 2). The approximate distance traveled by the decedent prior to his accident was twenty miles.

Since there is no express definition of "accidental" in the policy, it is ambiguous, and should be interpreted according to normal canons of contract interpretation, even in an ERISA plan. *See e.g., Fay*, 287 F.3d at 104.  Especially since an insurance contract is being interpreted, the policy should be construed against Bankers Life and Casualty Company, as the drafter of the contract.  *See Israel*, 259 Conn. at 512; *Lifson*, 333 F.3d at 353.  If the defendant wished to exclude coverage for driving while intoxicated, it could have expressly done so.  Moreover, the defendant pays claims for drunk driving death benefits under policies with the same policy language in non-ERISA claims. (*See* Exhibit B. at 24-25).  Nowhere does ERISA, or its "federal common law," state that ERISA should be used to change the terms of insurance contracts for the benefit of insurance companies and/or the providers of such plans.  The contract should be interpreted in the same manner as

12

non-ERISA plans, giving the terms their plain meanings.  Moreover, ERISA was

originally enacted to protect the employees and their beneficiaries, not insurance

companies, *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101 (1989).  Since no

exclusion was expressed in the decedent's policy, and the defendant agrees that the

circumstances of the decedent's death satisfied its own definition of accident, the

death benefits should be paid to the plaintiff according to the contract's terms.

B.  <u>A DE NOVO STANDARD OF REVIEW IS APPROPRIATE IN REVIEWING
     DEFENDANT'S DENIAL OF ACCIDENTAL DEATH BENEFITS</u>

   The United States Supreme Court held that decisions to deny benefits under

an ERISA plan "must be reviewed under a de novo standard unless the benefit plan

expressly gives the plan administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the plan's terms, in which cases a

deferential standard of review is appropriate." *Firestone Tire & Rubber Co. v. Bruch*,

489 U.S. 101 (1989); *see also Lifson v. INA Life Ins. Co. of NY*, 333 F.3d 349 (2d Cir.

2003).  "The plan administrator bears the burden of proving that the arbitrary and

capricious standard of review applies, since 'the party claiming deferential review

should prove the predicate that justifies it.'" *Kinstler v. First Reliance Standard Life

Ins.*, 181 F.3d 243, 245 (2d Cir. 1999) (quoting *Sharkey v. Ultramar Energy Ltd.*, 70

F.3d 226, 230 (2d Cir. 1995)).  Although the use of "[m]agic words such as

'discretion' and 'deference'" are not required, the use of such words is "certainly

---

[4] Mehdi Mostaghimi, Ph.D. was disclosed by the plaintiff as an expert witness on

helpful in deciding [which standard of review to use]." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995).

*Firestone* examined the history of ERISA, finding that its purpose was for "promot[ing] the interest of employees and their beneficiaries." *Id.* The Court expressed concern that to use less than a de novo standard of review of the decision of an administrator of an ERISA plan, where no expressed provisions provided the administrator with discretionary authority, would not protect the employee to the same extent which existed prior to ERISA's enactment. *Id* at 113-114. In reaching its decision, the Court focused on the multiple references to expressions of trust law[5] contained in ERISA. *Firestone* 489 U.S. at 110.

In the Second Circuit, *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98 (2d Cir. 1991), provides guidance in determining which standard of review to apply to an administrator's denial of benefits under an ERISA plan. *Masella* involved the denial of treatment provided for the insured's temporomandibular joint dysfunction (TMJ). *Id* at 101. The plan denied based on its determination that the treatment provided was dental in nature, and therefore an exclusion to the policy. *Id.*

---

October 24, 2003. (See Affidavit of Mostaghimi, hereinafter Exhibit H., at 2).
[5] "ERISA abounds with the language and terminology of trust law. *See, e.g.,* 29 U.S.C. § 1002(7) ("participant"), 1002(8) ("beneficiary"), 1002(21)(A) ("fiduciary"), 1103(a) ("trustee"), 1104 ("fiduciary duties")…In determining the

14

The insurer in *Masella* argued that its decision to exclude should not be reviewed de novo on the premise that it was granted discretionary authority. *Id* at 102-103.   The policy allowed for "basic coverage for medical/surgical procedures" and excluded services considered dental in nature. *Id* at 100.  The court disagreed with the insurer, noting that every employee benefit plan provides the benefits and exclusions of the plan, and that "[s]uch reasoning would eliminate the *Firestone* distinction between the plans that give an administrator or fiduciary discretionary authority to interpret them and those that do not." *Masella* 936 F.2d at 103.  "We cannot accept the conclusion that the discretion to establish the terms of a contract plan is the same as the discretion to interpret terms later." *Id.* The court notes that the insurance company could have provided itself with discretionary authority had it included such language in the plan, and it had not done so.  *Id.*

Language requiring that the insured submit "satisfactory proof"[6] to the insurer is inadequate to allow for a standard of review other than de novo of a plan's decision to deny disability benefits under an ERISA plan.  *See Kinstler v. First Reliance Standard Life Ins.*, 181 F.3d 243 (2d Cir. 1999).  The court found that such language was insufficient to warrant any deference to a plan's decision to deny benefits,

---

appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law." *Firestone*, 489 U.S. at 110-111.
[6] The policy language cited by the insurer in *Kinstler* stated:
    "We will pay a Monthly Benefit if an Insured:
       . . .
      (4) submits satisfactory proof of Total Disability to us."

RISCASSI & DAVIS, P. C.   •   *ATTORNEYS-AT-LAW*   •   131 OAK STREET   •   P.O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

because "[n]o plan provides benefits when the administrator thinks that benefits

should not be paid!" (punctuation in original) *Id* at 251. *Kinstler* also stated the

following regarding the insurer's burden to demonstrate the appropriateness of a more

deferential review of its decisions:

> [T]he administrator's burden to demonstrate insulation from de novo review
> requires either language stating that the award of benefits is within the
> discretion of the plan administrator or language that is plainly the functional
> equivalent of such wording. Since clear language can be readily drafted and
> included in policies, . . . when the parties really intend to subject claim denials
> to judicial review under a deferential standard, courts should require clear
> language and decline to search in semantic swamps for arguable grants of
> discretion.

*Id* at 252.

Alternatively, the Second Circuit has applied the more deferential arbitrary

and capricious standard where it has found the granting of discretionary authority to

the administrator of an ERISA plan. *See Jordan v. Retirement Comm. Rensselaer*

*Polytechnic Institute*, 46 F.3d 1264 (2d Cir. 1995). The language found adequate for

the conveyance of such discretion provided: "The Retirement Committee shall pass

upon all questions concerning the application or interpretation of the provisions of the

Plan." *Id* at 1269. The insured argued that such language gave power "as decision

maker," but did "not empower it to construe or interpret uncertain terms." *Id.* The

court rejected the insured's argument, reviewing other like circumstances, and

focusing on the fact that the language in the plan gave the administrator the power of

---

*Kinstler*, 181 F.2d at 251.

RISCASSI & DAVIS, P. C.   •   ATTORNEYS-AT-LAW   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

"interpretation." *Id* at 1270. The language in the decedent's plan did not include such language giving the defendant the power to interpret terms. (*See infra*, p 18-19).

The payment of severance pay "where applicable" is inadequate to grant deference to a plan's decision to deny benefits. *See Kosakow v. New Rochelle Radiology Assoc.*, 274 F. 3d 706, 738 (2d Cir. 2001). The court did not find any language which "[gave] some unambiguous indication that discretion has been conferred." *Id.* The court stated concern over the lack of authority conferred to interpret terms in the plan. *Id.* (stating "as in the present case, the administrator does not have discretion to interpret the terms of the plan.").

The parties agreed, and the court stated that "[s]weeping authority to determine eligibility and to construe its terms" existed in *Celardo v. GNY Automobile Dealers Health & Welfare Trust.*[7] 318 F.3d 142, 144 (2d Cir. 2003). The plan included a paragraph granting "full and exclusive discretionary authority" to "determine all questions of coverage and eligibility" and "to construe the provisions of this Plan and the terms used." Also, the paragraph stated that the determination of

---

[7] The policy stated:
>The Trustees shall have full and exclusive discretionary authority to determine all questions of coverage and eligibility . . . [and] full and exclusive discretionary authority to construe the provisions of the Plan and the terms used herein . . . Any such determination, construction or judgment adopted by the Trustees in good faith shall be final and binding upon all of the parties hereto and any participants and beneficiaries hereof. No decision of the Board of Trustees shall be reversed or overturned unless determined to be arbitrary and capricious.

RISCASSI & DAVIS, P. C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

the "Trustees" would be binding, unless found to be "arbitrary and capricious." *Id* at 144.

Similarly, the *Mario v. P & C Food Markets, Inc.* court found the arbitrary and capricious standard appropriate. 313 F.3d 758 (2d Cir. 2003). The plan excluded coverage for services found to be not "medically necessary."[8] *Id* at 762. The following was included in the plan regarding the authority of the plan administrator:

> NAA will determine the entitlement to Plan benefits for any request for benefits . . . provided, however, that [the insurer] is the named fiduciary of the Plan and, as such, maintains discretionary authority to review all denied claims for benefits under the Plan. If at any time NAA is in doubt as to the proper interpretation of the Plan with respect to eligibility for benefits or otherwise, it shall promptly notify [the insurer], which shall render its judgment on the interpretation to be followed…

*Id.* Focusing on this clause, the court found the language sufficient to allow for the more deferential arbitrary and capricious standard of review. *Id* at 763.

The defendant cannot meet its burden of demonstrating that it was granted discretionary authority; therefore, the defendant's decision to deny plaintiff's benefits should be reviewed under the de novo standard of review. In this case, there is not the grant of discretionary authority involved in the ERISA plans of either *Celardo* or *Mario*. The language included in the decedent's plan did not grant Bankers Life and

---

*Celardo* at 144.
[8] The insured filed claims related to gender reassignment procedures. *Mario*, 313 F.3d at 761.

Casualty Company "full discretionary authority" in regards to the power to "construe" or interpret terms in its policy.  The decedent's plan reads as follows:

> If you disagree with a claim decision or want to provide additional information to Bankers Life & Casualty, you can apply for a claim review. You request a review of the claim by Bankers Life & Casualty within 60 days after you receive the claim denial notice.  You must state the reason you believe the claim was improperly denied, and submit any data, questions or comments you feel are appropriate on your behalf.  Bankers Life & Casualty will evaluate your claim within 30 business days of the receipt of the request and send a decision to you in writing.
>
> …
>
> If your claim for a benefit is denied in whole or in part, you (or your beneficiary) will be notified in writing by the Administrator of that benefit plan.
>
> …
>
> … If you disagree with the denial, you have 60 days from the receipt of the original denial to request a review.  This request would be in writing and sent to the Administrator for that benefit plan.
>
> The reviewer will issue a decision within 60 days.

(*See* Defendant's Amended Response to Plaintiff's Requests for Admissions, hereinafter Exhibit J., at 2-3).  The defendant could have expressed such discretionary authority, however it did not do so; therefore, the defendant's decision to deny benefits due to the plaintiff should not be given deference by the court, and a de novo review is appropriate.

Like *Kosakow*, the language stating the defendant, Bankers Life and Casualty Company, will "evaluate your claim" located in its appeal process for denied claims

is not an "unambiguous indication" of its discretionary authority.  (*See* Exhibit J. at 2-

3).  This statement simply means that the defendant will re-examine the claim, with

any further information that is provided by the insured or his beneficiary attempting

to appeal its initial denial.  (*See* Exhibit B. at 54) ("A.  If anybody has any additional

information that would be pertinent, we invite them to send it in and we'll evaluate.")

However, in no way does this language allow the defendant to construe or interpret

terms or provisions in the policy.  For something less than de novo review to apply,

the insurer must do more than grant itself the power to deny benefits.  *See Masella*,

936 F.2d 98; *Kinstler* 181 F.3d 243.  As stated in *Kinstler*, "[n]o plan provides

benefits when the administrator thinks that benefits should not be paid! (punctuation

in original) 181 F.3d at 251.

      The language attempting to grant discretionary authority to the defendant does

not even reach the level of that in *Jordan*.  There is nothing in the language

conveying the idea that the plan administrator may interpret the terms of the policy.

The plan in *Jordan* did give the administrator the power to interpret and construe

terms, something that our present facts lack.  Since the drafter could have used

unambiguous language to grant discretionary authority to the defendant, and failed to

do so, decisions made under the terms of the policy should be subject to de novo

review.

C. <u>USING EITHER A DE NOVO OR ARBITRARY AND CAPRICIOUS
   STANDARD OF REVIEW THE ACCIDENTAL BENEFITS SHOULD BE PAID</u>

RISCASSI & DAVIS, P. C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

i. <u>Using a de novo standard of review the accidental death benefits should be paid</u>

Where de novo review of an ERISA plan is used, resolving ambiguities of a contract against the drafter in favor of the insured "is an appropriate implementation of the congressional expectation that the courts will develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *I.V. Services of America, Inc. v. Trustees of the American Consulting Engineers Council Ins. Trust Fund*, 136 F.3d 114, 121 (2d Cir. 1998). In construing the policy against the insurer, the purpose is to "afford the protection which the insured was endeavoring to secure when he applied for the insurance." *Wickman*, 908 F.2d at 1084 (quoting 13 Appleman, *Insurance Law and Practice* § 7401 at 197 (1976).; *see also, Hertz*, 245 Conn. 374 (1998); *Lifson*, 333 F.3d at 353. Under the de novo standard of review, a court must give the terms "their plain meanings" and "interpretations give[n] by the average person. *Wickman*, 908 F.2d at 1084; *Fay*, 287 F.3d at 104. As stated previously, an insurance company which is responsible for drafting a policy may provide clarity in the terms included, and therefore, should not be rewarded for leaving ambiguity in such a policy. In order for the insurer to prevail, it must show that the insured's interpretation of the policy is unreasonable. *Kosakow*, 274 F.3d at 738.

The de novo standard of review was applied in *Kosakow v. New Rochelle Radiology Associates*, finding the beneficiary of severance pay benefits should

have received payment. 274 F.3d 706 (2d Cir. 2001). The administrator had decided that the beneficiary had not been "terminated" from her employment, and even if she had been terminated under the plan, she was ineligible for severance benefits. *Kosakow v. New Rochelle Radiology Associates*, 116 F.Supp.2d 400, 402 (S.D. NY 2000), *vacated*, 274 F.3d at 740. The basis for the conclusion of the plan primarily consisted of the existence of an offer of per diem employment extended to her and a statement during the deposition of the President of the company that they "weren't firing anybody." *Id*. The district court found that an ordinary person would not have understood an offer of continued per diem employment, as opposed to continuing her current full-time status, as not to be a termination of employment, and therefore it was reasonable for the beneficiary to expect severance pay. *Id*.[9]

The plan involved in *Kosakow* provided that "employees shall … [r]eceive appropriate severance pay where applicable." *Id*. The plan expressed two situations in which an employee would not receive severance pay benefits.[10] *Id*.

---

[9] "[I]t would appear that [her employer] did in fact sever the employer-employee relationship, and then made a naked promise that it might renew the relationship." *Kosakow*, 116 F.Supp.2d at 402.

[10] "In this connection, the plan also provides that employees who are having problems with performance can be terminated for cause if they fail to correct their performance after being given time to improve. In such a case, the employee may receive severance pay '[i]n lieu of appropriate advance notice' of termination. Additionally, if 'sufficient cause' exists, an employee can be immediately terminated (without advance notice), and that employee will 'forfeit all terminal benefits.'" *Kosakow* 274 F.3d at 739.

RISCASSI & DAVIS, P. C. • *ATTORNEYS-AT-LAW* • 131 OAK STREET • P. O. BOX 261557 • HARTFORD, CT 06126-1557 • (860) 522-1196

The insured argued that the existence of these two expressed provisions

"impl[ied] that in any other situation, severance pay is 'applicable,'" and would

therefore be paid such benefits. *Kosakow*, 274 F.3d at 739. The court, in absence

of evidence offered by the insurer that such interpretation was unreasonable and

construing the policy's terms against the insurer, held in favor of the insured. *Id*

at 739-740.

Similarly, the *Lifson* court found the beneficiary's interpretation

reasonable, therefore reversing the district court's grant of summary judgment for

the insurer. 333 F.3d 349. The controversy focused on whether the insured was

"on business...and in the course of ...business" when she was killed in an auto

accident. *Id* at 349. The insured was killed on her way to a parking garage near

her office. *Id*. The deceased was leaving work for the day, but was consistently

"on call." *Id*. In construing the exclusionary language[11] against the insurer, the

court found that a reasonable fact finder could have found that the insured was

"on...business" at the time of the accident, and therefore, within the coverage of

the policy, due to her "on-call" status, despite the fact she had left her office and

appeared headed to her home. *Lifson*, 333 F.3d at 353.

---

[11] The policy stated: "We will pay the benefits described in the policy for any
accident which occurs while a covered person is travelling or making a short stay:
(a) away from your premises in his city of permanent assignment; and (b) on
business for you, and in the course of your business." *Lifson*, 333 F.3d at 351.

RISCASSI & DAVIS, P. C.  •  ATTORNEYS-AT-LAW  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

*Mario*, although decided on the basis of the arbitrary and capricious standard of review, would have also survived de novo review.  313 F.3d at 765. The court stated:

> The record established that the plan administrator . . . conducted a meaningful investigation into whether Mario's medical claims were eligible for coverage under the Plan… investigation included research on the issue of transsexualism, inquiry into the policies of other employers and insurance carriers concerning coverage of gender reassignment procedures, consultation with medical centers having specialized knowledge of transsexualism and sexual reassignment surgeries, and consultation with medical personnel employed by NAA…

*Id* at 765-766.  The investigation found there was "uncertainty" as to the medical necessity of gender assignment procedures; however, the court found that the above investigation shifted the burden to the insured, who did not respond with evidence to further support that these procedures were medically necessary. *Mario*, 313 F.3d at 766.

In the instant case, the defendant cannot demonstrate that the plaintiff is unreasonable in expecting payment as the sole beneficiary of the decedent, Peter J. Glynn.[12]  The policy does not define "accidental."  Furthermore, the defendant's designee, after defining accidental to be something unexpected and unforeseen, agrees that the circumstances of Peter J. Glynn's death qualify as an accident.

> Q.  You indicated to attorney Muscato that an accident is unforeseen and unexpected.  Is that true?

---

[12] Note that the process of interpreting the contract's terms under a de nove standard of review is virtually the same as that involved in the discussion in Part III(B) above.

24

A.  Yes.

…

Q.  Okay.  And we have already discussed the fact that this accident was unforeseen to Mr. Glynn, in all probability?

…

Q.  Correct?

A.  I agree with that.

Q.  Okay.  And in all probability, the accident was unexpected by Mr. Glynn, correct?

…

A.  I agree.

(*See* Exhibit B. at 41, 103-104).  The defendant also agrees that no such policy exclusion was included for accidents involving an insured with an elevated blood alcohol content, and that examining the policy's exclusions is generally the first step in processing a claim.[13]  (*Id* at 91) ("Q.  Okay.  You would be concerned that

---

[13] As stated previously, certain insurance companies have provided expressed policy exclusions for accidents involving driving while intoxicated.  *See, Bishop v. National Health Ins. Co.*, 344 F.3d 305, 306 ("policy provided coverage for certain medical expenses for [the insured].  But the policy excluded coverage for 'any loss incurred while [the insured was] legally [i]ntoxicated,' defining '[i]ntoxicated' as 'a level of blood alcohol content that is specified in the laws defining [i]ntoxication in the state where the loss or cause of loss occurred.'"); *Bullard v. Daughters of Charity National Health Systems, Inc.*, 2003 WL 22213127 (E.D.Mich. 2003) ("This policy excludes any loss caused in whole or in part by, or resulting in whole or in part from the Insured Person being under the influence of intoxicants…"); *Cates v. Metropolitan Life Ins. Co., Inc.*, 14 F.Supp.2d 1024, 1025 (E.D. Tenn. 1996) ("will not pay for any Covered Loss . . . *if it in any way results from, or is caused by or contributed by* . . . (e) the use of any drug or medicine.") (emphasis in original); *Smith v. Life Ins. Co. of North America*, 872 F.Supp. 482 (W.D. TN 1994) (involving a policy that stated "We agree to pay benefits for loss from bodily injuries:  a) caused by an accident….No benefits will be paid for…7.  Voluntary self-administration of any drug or

RISCASSI & DAVIS, P. C.   •   *ATTORNEYS-AT-LAW*   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

the circumstances might fall within one of the listed exceptions, correct? A. Yes. Q. Or exclusions? A. Yes."). Construing the policy against its drafter, the plaintiff's interpretation is not unreasonable, and therefore the benefits of the policy should be paid.

The defendant admits that none of the expressed exclusions are applicable to the facts involving the decedent's death. (*See* Exhibit B. at 91) ("Q. And is it true that none of these exclusions apply to Mr. Glynn's claim? A. That's correct."). *Kosakow* accepted the plaintiff's argument that where two expressed exclusions exist, it is implied that, in all other situations, benefits would not be excluded. 274 F.3d at 739. The defendant has not offered any evidence that the plaintiff in the present case is unreasonable. In fact, the defendant's designee agrees that the circumstances of the decedent's death satisfy the definition of accident that he was using at the time he denied the plaintiff's claim.[14] This is also analogous to *Lifson*, in that the *Lifson* court also construed the language against the drafting insurance company, even where it appeared that the decedent may not have been "on business" at the time of her accident, which would have been excluded under the terms of her policy.

---

chemical substance not prescribed by, and taken according to the directions of, a licensed physician.").

[14] As stated earlier, the defendant's corporate designee, Robert Krol, offered the definition for "accident" to be something unforeseen or unexpected, and agreed that the decedent did not expect or foresee dying from driving while intoxicated. (*See* Krol depo at 93, 103-104).

In *Mario*, the plan's denial of benefits as not being medically necessary would have survived de novo review. The court noted that a "meaningful investigation" had been performed. No such investigation occurred in the present case. The defendant's corporate designee admitted that, other than the fact that the decedent was intoxicated at the time of his accident, nothing would likely have changed his mind to pay the benefits of this policy. (*See* Exhibit B. at 31-32) ("Q. Were there any facts at all in the information you received that you determined were relevant to the denial of the claim other than the blood alcohol content? A. No."). This despite the fact that no exclusion for driving with an elevated blood alcohol level was expressed in the policy provided to the decedent. (*Id* at 91), and the fact that, generally, the first step in processing a claim was to examine the exclusions of the policy. (*Id*). The decision to deny benefits made by Bankers Life and Casualty Company was unreasonable; therefore, the benefits of the decedent's accidental death policy should have been paid.

     ii.  <u>Using the arbitrary and capricious standard of review the accidental</u>
          <u>death benefits should be paid</u>

Assuming that the court finds that the plan provides its "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms," a point which the plaintiff strongly contests, then "a deferential standard of review is appropriate." *Firestone* 489 U.S. 101. That deferential standard of review is to determine whether the administrator's ruling was "arbitrary and

capricious." *Pagan v. Nynex Pension Plan*, 52 F.3d 438 (2d Cir. 1995). In deciding

whether the decision was arbitrary and capricious, the court is not free to substitute its

own judgment for that of the administrator, *id*, but may overturn such a decision if it

is found to be "without reason, unsupported by substantial evidence or erroneous as a

matter of law." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243 (2d

Cir. 1999). "Certainly, even under [the arbitrary and capricious] standard, the

insurance company is bound by the terms of the document." *Cozzie v. Metropolitan

Life Ins. Co.*, 140 F.3d at 1108.

In one particular case, a decision to deny medical benefits was found to be

arbitrary and capricious. *See Zuckerbrod v. Phoenix Mutual Life Ins. Co.*, 78 F.3d 46

(2d Cir. 1996). In denying an insured's claim for twenty-four hour private duty

nursing services, paying instead for only an eight hour shift each day, the plan

administrator stated the basis for its decision was formed from review of reports of its

nursing and surgical consultants, who had relied on the notes of private duty nurses

who had taken care of the insured. *Id* at 49. These documents included reports from

the insured's own physicians, which had stated that twenty-four hour private duty

nursing "was essential" to care for the insured. *Id*.

> [B]y authorizing one shift of private duty nursing...[the insurer] concluded
> that for at least part of the time during each day authorized, the regular nurse
> staffing was inadequate to meet [the insured's] needs. [The insurer] did not,
> however, indicate why private nursing care would have been necessary during
> only one shift or during a particular shift. [The insurer] appear to concede that

28

there would be no basis for a conclusion that [the insured's] need for care was restricted to a particular shift.

*Id* at 50.

Where the insured violated an express exclusion of the plan, the insurer's denial of such has been upheld under the arbitrary and capricious standard of review. *Celardo*, 318 F.3d 142. However, in *Celardo*, the policy had an exclusion, that stated that "no benefits will be paid for any '[c]harges incurred resulting from … participation in or in consequence of having participated in an illegal act.'" *Id* at 144. The court, in examining the language of the plan's expressed exclusion and reviewing the insurer's denial of benefits under an arbitrary and capricious standard of review, found the plan's interpretation of "illegal act" to be reasonable, and using the arbitrary and capricious standard of review, deferred to its judgment to deny benefits. *Celardo*, 318 F.3d at 146.

The defendant, Bankers Life and Casualty Company, through its corporate designee, admits that once it was established that the decedent had an elevated blood alcohol content, Bankers Life and Casualty Company did not consider the payment of the benefits of this accidental death policy to the plaintiff. (*See* Exhibit B. at 31-32). In fact, other than the blood alcohol percentage of the decedent, no other facts were necessary in its determination, according to the defendant. (*Id*.) ("Q. Were there any facts at all in the information you received that you determined were relevant to the denial of the claim other than the blood alcohol content? A. No.") The defendant's

29

RISCASSI & DAVIS, P. C.  •  ATTORNEYS-AT-LAW  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

designee admits that he did not rely on any research on the statistical probability of a drunk driving deaths at the time he denied the plaintiff's claim; instead, he just denied the claim based on the argument that individuals who drive while intoxicated are highly likely to be killed. Indeed, the plaintiff has submitted an expert affidavit which concludes that "the probability of an alcohol related fatal accident for an alcohol impaired driver and non-driver per 20 vehicle miles traveled is about one in a million for both the United States and Connecticut." (*See* Exhibit I. at 2). The approximate distance traveled by the decedent prior to his accident was twenty miles. This statistic, as yet undisputed by the defendant, does not indicate a high likelihood as the defendant seems to believe.

> Q.  You don't know what the statistics are regarding driving while intoxicated?
>
> A.  No.
>
> Q.  Does anyone at Bankers Life know what the statistics show with regard to driving while intoxicated?  Do you know?
>
> A.  I don't know.
>
> Q.  Okay.  And whatever the numbers show, they played no part in your decision to deny Mr. Glynn's claim, is that true?
>
> A.  Correct.

(*See* Exhibit B. at 104).  This is so despite the admitted absence of any indication in the policy that a decedent's death while having an elevated blood alcohol content would be excluded.  (*See* Exhibit B. at 91; Exhibit A.).  In this respect, the facts of the instant case are analogous to *Zuckerbrod*, where the administrator limited the medical

benefits available to the insured to one shift per day, despite the evidence in the documents that such care was necessary twenty-four hours per day. Also, in the instant case, the medical examiner and police both classified this occurrence as an accident. (*See* Exhibit F. at D 069; Exhibit G. at D 058-062, 066). Moreover, the plaintiff has offered an expert's opinion that such was an accident. (*See Supra* p. 11; Exhibit I. at 6). The defendant, however, has denied the plaintiff's claim due to the decedent's blood alcohol level.

Unlike *Celardo*, which expressly stated that an "illegal act" excluded coverage, the defendant concedes that no such exclusion for intoxication exists in the policy at hand in this case. (*See* Exhibit B. at 91). Despite this, and acknowledging that for non-ERISA plans the first step in determining coverage is to check what exclusions exist, the defendant's corporate designee, despite the lack of an applicable exclusion, denied the benefits of this policy. This denial was processed, stating that "This Johnson & Johnson policy is governed by ERISA rules and regulations. Federal courts in applying federal common law to claims for accidental death under ERISA plans, have uniformly held that death resulting from driving while intoxicated is not accidental." (*See* Denial Letter date March 4, 2002, hereinafter Exhibit K.). The corporate designee stated that he did not have any ERISA law and/or regulations in his possession at the time he denied the plaintiff's benefits, and did not even know

that any ERISA regulations existed, yet denied plaintiff's claim on this basis

nonetheless.

> Q. Are there any such [ERISA] regulations?

> A. Not that I know of.

> …

> Q. Well, you're denying a claim here based on ERISA regulations, and yet you didn't have the regulations in front of you.

> A. No.

> …

> Q. And you cite ERISA regulations as being a component of your decision to deny this claim, but you don't know what those regulations are, correct?

> A. Correct.

(*See* Exhibit B. at 60-62, 104).  Furthermore, the defendant's corporate designee,

despite denying the claim due to "uniform" ERISA law, had no personal knowledge

of such law at the time he denied the plaintiff's claim.

> Q. Now, you indicated in one of your letters that we have looked at that courts have uniformly held that these cases are not accidents.  Do you recall writing that?

> A. Yes.

> Q. And as you wrote that letter, did you have any personal knowledge of how courts have held?

> A. No, that's strictly opinions given to me by my legal department.

RISCASSI & DAVIS, P. C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

...

Q.  [I]f you knew that courts have not uniformly held that courts have not uniformly held that accidents -- that incidents under these particular circumstances are not accidents, that may have changed your opinion, do you remember that?

A.  Yes.

Q.  Okay.  Did anyone from legal ever give you any indication that there were cases that disagreed with their position?

A.  No.

...

Q.  You also cite ERISA cases as being uniform in denying such claims but you do not know what any of the cases are, is that correct?

A.  Correct.

Q.  And all of that would have been true back in 2002 when this claim was denied, correct?

A.  Correct.

(*See* Exhibit B. at 63-64, 104-105).  In fact, at the time that the defendant denied this claim, the available case law had not uniformly held that a decedent's death from his drunk driving was not accidental.[15]

The defendant continues to pay for deaths resulting from a decedent's actions of driving while intoxicated in plans not protected by ERISA.

Q.  Okay.  Since this change in policy occurred seven or eight years ago, have you continued to pay non-ERISA claims involving intoxicated drivers?

---

[15] *See Metropolitan Life Ins. v. Potter*, 992 F.Supp. 717 (D. N.J. 1998); *West v. Aetna Life Ins. Co.*, 171 F.Supp.2d 856 (N.D. Iowa 2001).

RISCASSI & DAVIS, P. C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

A. Yes.

Q. Since this policy change seven or eight years ago, have you continued to pay ERISA claims involving intoxicated drivers?

A. We have never paid.

Q. Since that seven or eight-year-time period?

A. Yes.

(*Id* at 24). The defendant's designee admits to not having any ERISA law and/or regulations in his possession, nor any knowledge of such at the time he denied the plaintiff's claim; however, he denied the claim nonetheless, even though the policy lacked an applicable exclusion. Further, the defendant continues to pay benefits for deaths involving drivers with an elevated blood alcohol content for policies in plans not covered by ERISA. The defendant has the power to exclude deaths resulting from driving while intoxicated;[16] however, has refused to include such an exclusion. Therefore, the defendant has acted arbitrarily and without reason or substantial evidence in its decision to deny benefits to the plaintiff, and such denial must be overturned.[17]

## IV.    **CONCLUSION**

For the reasons that the accidental death policy did not contain an exclusion for motor vehicle collisions involving a decedent's intoxication, and

---

[16] *See supra* note 13.

34

ERISA does not change the terms of an insurance contract. In addition, the defendant was not granted discretionary authority to interpret the terms of the policy, the defendant agrees that the plaintiff's interpretation of the policy is not unreasonable, and even if it was decided that the defendant had discretionary authority to interpret the terms of the plan, Bankers Life and Casualty Company denied the plaintiff's benefits without reason or substantial evidence, and therefore was arbitrary and capricious. Therefore, the plaintiff respectfully requests that this Court grant his Motion for Summary Judgment.

---

[17] The plaintiff also believes that the defendant's action has been erroneous as a matter of law, in that the benefits were denied based on an erroneous application of contract interpretation of its terms *See, supra*, Parts III(B) and III(C)(i).

RISCASSI & DAVIS, P.C.  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P.O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

PLAINTIFF,

By_____
               Everett H. Madin, Jr.
               Federal Bar No.:  CT 12297
               RISCASSI & DAVIS, P.C.
               131 Oak Street
               Hartford, CT 06106
               Ph:  860-522-1196
               Fax:  860-246-5847

## CERTIFICATION

This is to certify that a copy of the foregoing Memorandum of Law has been mailed, first-class postage prepaid, to counsel of record this 5th day of August, 2004, more specifically, to the following:

Andrew Muscato, Esq.
Skadden Arps Slate Meagher & Flom, LLP
One Newark Center
Newark, NJ 07102-5297
*For the Defendant,*
*Bankers Life and Casualty Company*

John T. Shaban, Esq.
Maciej A. Piatkowski, Esq.
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
*For the Defendant,*
*Bankers Life and Casualty Company*

_____
Everett H. Madin, Jr.