**Copy of Transcript**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GLYNN,

        Plaintiff,

   vs                                Civil Action 302 CV 1802

BANKERS LIFE AND CASUALTY COMPANY,

        Defendant.

**DEPOSITION OF**

**ROBERT KROL**

May 18, 2004
10:00 a.m.

333 West Wacker
Chicago, Illinois

Sandra Drechsler, Certified Shorthand Reporter,
Registered Professional Reporter, and Notary Public



**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

2

## APPEARANCES

**ON BEHALF OF THE PLAINTIFF**

**RISCASSI & DAVID**

BY:  EVERETT H. MADIN, JR., ESQUIRE

    131 Oak Street

    P.O. Box 261557

    Hartford, Connecticut  06126-1557

    (860) 344-5297


**ON BEHALF OF THE DEFENDANT**

**SKADDEN ARPS SLATE MEAGHER & FLOM, LLP**

BY:  ANDREW MUSCATO, ESQUIRE

    One Newark Center

    Newark, New Jersey  07102-5297

    (973) 639-6800


**ALSO PRESENT:**

CONSECO Services, LLC

ROBERT E. BURKETT, JR.,

Senior Vice President, Legal



**setdepo**
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

1    a special risk benefits representative.

2        A.      It was my responsibility to gather,

3    organize information and determine whether or

4    not accidental death benefits should be

5    payable or they should be denied.

6        Q.      And that's a position you held for

7    over 20 years?

8        A.      Right.

9        Q.      And what sort of training did you

10   receive for that position?

11       A.      Strictly on the job from people

12   who knew more about it than I did.

13       Q.      What is your educational

14   background, Mr. Krol?

15       A.      Bachelor's degree.

16       Q.      Where did you receive your

17   Bachelor's degree?

18       A.      Northeastern Illinois.

19       Q.      What's your degree in?

20       A.      Economics.

21       Q.      When did you get your degree?

22       A.      1970.

23       Q.      And if I understand what you said,

24   part of your job as a special risk benefits



**sd** **setdepo**
Streamlined · Centralized · Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

9

1  representative was to decide whether or not

2  to deny claims, is that correct?

3      A.    Yeah.   I was one of the first

4  persons who made one of the first decisions.

5      Q.    What does that mean, "first

6  decisions," for the company?

7      A.    I would gather the facts.   I would

8  formulate an opinion, pay or deny, as the

9  case may be, and people above me would agree

10 or disagree.

11     Q.    Okay.   And we're here to talk

12 about a claim made on behalf of Peter Glynn.

13 Do you have a recollection of that particular

14 claim?

15     A.    Yes.

16     Q.    And pursuant to your notice of

17 deposition, and you have been designated as

18 the person most familiar with the deniable

19 benefits pursuant to Mr. Glynn's policy, does

20 that sound right to you?

21     A.    I don't know what you asked.

22     Q.    Are you the person within the

23 company most familiar with the denial of

24 benefits regarding Peter Glynn?



**setdepo**
sd
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

24

1       MR. MUSCATO:   "Identical."

2       MR. MADIN:   Okay.

3    BY MR. MADIN:

4       Q.     Your answer was yes, and I'm going

5    rephrase the question.

6       A.     Go ahead.

7       Q.     Okay.   Since this change in policy

8    occurred seven or eight years ago, have you

9    continued to pay non-ERISA claims involving

10   intoxicated drivers?

11      A.     Yes.

12      Q.     Since this policy change seven or

13   eight years ago, have you continued to pay

14   ERISA claims involving intoxicated driver?

15      A.     We have never paid.

16      Q.     Since that seven or eight-year-time

17   period?

18      A.     Yes.

19      Q.     Are you familiar with the policy

20   at issue in this particular case?

21      A.     Yes.

22      Q.     Did you bring a copy with you?

23      A.     I did not bring a copy, but I

24   believe it's in here.   Do you want me to



sd setdepo
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

25

1    look for it?

2        Q.    If it's in there, that would be

3    terrific.    I think I have what purports to

4    be a copy with me.

5        A.    I've got it.

6        Q.    And is that a copy of the policy

7    that Peter Glynn?

8        A.    I believe so.

9            MR. MADIN:    Let's have that marked

10    as Krol 7.

11            (Krol Exhibit-7 marked for

12    identification.)

13        BY MR. MADIN:

14        Q.    Pass that back to you now.    Policy

15    has now been marked as Krol Number 7.

16            When we were talking about claims

17    that are ERISA versus claim that are not

18    ERISA, would the policy language be the same

19    in either instance?

20        A.    Yes.

21        Q.    And looking at Exhibit 7, Mr.

22    Krol, is there any language in that policy

23    that excludes accidents involving an

24    intoxicated driver?



**setdepo**
sd
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

32

1    understood it to be, correct?

2         A.     Yes.

3         Q.     Were there any facts at all in the

4    information you received that you determined

5    were relevant to the denial of the claim

6    other than the blood alcohol content?

7         A.     No.

8         Q.     Why then did you retain Research

9    Service Bureau, if all you really needed to

10   look at was the blood alcohol content?

11        A.     We wanted to make sure we had as

12   much facts as possible, and Research Service

13   was contracted to get the additional

14   information that might be out there.

15        Q.     But would any of the facts that

16   they turned up have altered your decision,

17   given the blood alcohol content?

18        A.     Possibly.  I really don't know.

19        Q.     Give me an example of a fact that

20   would have changed your decision.

21             MR. MUSCATO:   Objection to the

22   form of the question.

23        BY MR. MADIN:

24        Q.     You can answer.



**sd** **setdepo**
Streamlined · Centralized · Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

31

1    came from the beneficiary, but I don't know

2    with which mailing, so the actual claim form

3    is not really part of this.

4        Q.    Okay.    All right.    After you

5    received the factual information and the legal

6    information, what happened next with regard to

7    coming to a decision to deny the claim?

8        A.    The legal opinion was such that

9    this set of circumstances is not covered

10   under the policy, so working with that

11   opinion, I took steps to deny it.

12       Q.    Okay.    Well, actually these

13   circumstances are covered within the language

14   of the policy.    The difference is the law,

15   correct?

16            MR. MUSCATO:    Objection to the

17   form of the question.

18            THE WITNESS:    Difference is what?

19   BY MR. MADIN:

20       Q.    Is the law.

21       A.    ERISA.

22       Q.    Yes.    Isn't that true?

23       A.    Yes.

24       Q.    Or at least the law as you



**set**depo
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

38

1  medical examiner's report?

2      MR. MADIN:  Not at this time.

3  BY MR. MADIN:

4      Q.    Did your investigative service make

5  any determinations about whether Peter Glynn,

6  Peter Glynn's death was intentional or

7  suicidal?

8      A.    They never make opinions.

9      Q.    And that is certainly not the

10  basis of your denial, is it?

11      A.    What they said?

12      Q.    No.  There's no claim here, is

13  there, that Mr. Glynn intended his own death?

14      A.    No.

15      Q.    Okay.  Did your investigative

16  service uncover any evidence regarding Mr.

17  Glynn's drinking habits?

18      A.    Yes.

19      Q.    What did they find?

20      A.    He routinely consumed vodka.

21      Q.    And did they talk to dram shops

22  and bars in the area?

23      A.    I believe so.  I don't recall.

24      Q.    Do you recall what they found with



**sd  setdepo**
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

60

1    A.    My opinion, yes.

2    Q.    And therefore it was not an

3 accident, correct?

4         MR. MUSCATO:    Objection to the

5 form of the question.

6         THE WITNESS:    Again, I don't know

7 what you want here.

8    BY MR. MADIN:

9    Q.    It's very simple.    The fact that

10 you believe it was an event that was highly

11 likely to occur, in your mind, means that it

12 was not accidental.    Can you agree with that

13 or not?

14   A.    In my mind, yes.

15   Q.    Okay.    And you reference in the

16 last sentence of your letter ERISA

17 regulations.    Can you identify those

18 regulations for me today, sir?

19   A.    No, I can't.

20   Q.    Okay.    Did you have any

21 regulations in front of you when you wrote

22 this letter dated May 22, 2002?

23   A.    No.

24   Q.    Are there any such regulations?



**setdepo**
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

61

1    A.    Not that I know of.

2    Q.    Okay.  So when you said there were

3 ERISA regulations, you were wrong?

4    A.    No.  It's based on what my legal

5 department told me.  They used the

6 terminology ERISA regulation, and I just used

7 their terminology.

8    Q.    And we can agree there are no

9 ERISA regulations --

10         MR. MUSCATO:  Objection to the

11 form of the question.

12    BY MR. MADIN:

13    Q.    -- that come into place in this

14 case, can't we?

15    A.    Oh, I'm sure there are.  I just

16 doesn't know what they are.

17    Q.    You don't know what they are but

18 you think?

19    A.    I'm sure they exist because my

20 legal department says so.

21    Q.    Have you ever seen one of those

22 ERISA regulations?

23    A.    No.

24    Q.    Well, you're denying a claim here



sd  setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

62

1    based on ERISA regulations, and yet you

2    didn't have the regulations in front of you.

3         A.    No.

4              MR. MUSCATO:    Objection to the

5    form of the question.

6         BY MR. MADIN:

7         Q.    Okay.  By the way, what was the

8    amount payable by this claim?

9         A.    Four hundred twenty thousand

10   dollars.

11        Q.    Now, was there any further

12   correspondence after May 9, 2002, between

13   either between yourself and either me or Mr.

14   Glynn?

15        A.    Let me look.  After May 9 you

16   say?

17        Q.    Yes.

18             MR. MUSCATO:    Well, we just talked

19   about the 12th.

20             MR. MADIN:    Okay.

21             MR. BURKETT:    You mean after May

22   22?

23        BY MR. MADIN:

24        Q.    After May 22 what happens that --



**setdepo**
sd
Streamlined • Centralized • Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

63

1    Is there anything after May 22?

2        A.    No.

3        Q.    Now, you indicated in one of your

4    letters that we have looked at that courts

5    have uniformly held that these cases are not

6    accidents. Do you recall writing that?

7        A.    Yes.

8        Q.    And as you wrote that letter, did

9    you have any personal knowledge of how courts

10   have held?

11       A.    No, that's strictly opinions given

12   to me by my legal department.

13       Q.    Would it have mattered to you if

14   courts have not uniformly held that these

15   incidents are not accidents?

16            MR. MUSCATO:   Objection to the

17   form of the question.

18            THE WITNESS:   It might.

19   BY MR. MADIN:

20       Q.    I'm sorry.   What was your answer?

21       A.    It might.

22            MR. MADIN:   Okay.

23            MR. MUSCATO:   Do you want to take

24   a break?   We have been at it for a while.



**setdepo**
**sd**
**Streamlined • Centralized • Standardized**
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

64

1      MR. MADIN:     Sure.

2      (Recess.)

3   BY MR. MADIN:

4      Q.     Okay.  Mr. Krol, we just before we

5   took a break you indicated that if you knew

6   that courts have not uniformly held that

7   accidents -- that incidents under these

8   particular circumstances are not accidents,

9   that may have changed your opinion, do you

10  remember that?

11     A.     Yes.

12     Q.     Okay.  Did anyone from legal ever

13  give you any indication that there were cases

14  that disagreed with their position?

15     A.     No.

16     Q.     Okay.  Now, was there a point in

17  time when the appeal was finally denied?

18     A.     No.

19     Q.     I think that we may have

20  information to the contrary in response to an

21  answer to interrogatory, but let's assume for

22  the moment that you're unaware there was a

23  point in time when the appeal was denied, all

24  right?



**setdepo**
sd
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

91

1    seek the advice of legal back in the time

2    period of 2001-2002?

3        A.    Depending on circumstances,

4    sometimes yes, sometimes no.

5        Q.    Okay.  You would be concerned that

6    the circumstances might fall within one of

7    the listed exceptions, correct?

8        A.    Yes.

9        Q.    Or exclusions?

10       A.    Yes.

11       Q.    Is it true that the exclusions are

12   listed in full on page D 010 of Exhibit 7?

13       A.    Yes.

14       Q.    And is it true that none of these

15   exclusions apply to Mr. Glynn's claim?

16       A.    That's correct.

17            MR. MADIN:    I don't have anymore

18   questions.

19            MR. MUSCATO:    I just have a few

20   follow-up questions.

21       **EXAMINATION**

22       **BY-MR.MUSCATO:**

23       Q.    Mr. Krol, I show you what's been

24   marked, previously marked as Krol 8 for



**setdepo**

**sd**

**Streamlined · Centralized · Standardized**
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

90

1    BY MR. MADIN:

2    Q.    In other words, and certainly back

3    in 2001 and 2002 when the claim was denied,

4    the definition of the word accident was not

5    relevant to your decision, was it?

6         MR. MUSCATO:    Objection to the

7    form of the question.

8         THE WITNESS:    I would say it was

9    not relevant.

10   BY MR. MADIN:

11   Q.    All right.    As a matter of fact

12   you didn't have a definition of the word

13   accident at that time, isn't that true?

14   A.    That's correct.

15   Q.    And whatever you did you did

16   because the legal department advised you on

17   what to do, that true?

18        MR. MUSCATO:    Objection to the

19   form of the question.

20        THE WITNESS:    I would say yes.

21   BY MR. MADIN:

22   Q.    When you had a claim come in that

23   involved an intoxicated driver such as this

24   one that was not an ERISA claim, would you



**setdepo**
sd
Streamlined · Centralized · Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

89

1    written definition of the word "accident" that

2    you know of?

3         A.    Not that I know of.

4         Q.    Do you know whether an accident is

5    defined within the policy we have marked as

6    Exhibit 7?

7         A.    It is not.

8         Q.    Did Mr. Blessing have a definition

9    of accident in 2001?

10        A.    No.

11        Q.    Did you have a definition of an

12   accident in 2001?

13             MR. MUSCATO:   Objection to the

14   form of the question.

15             THE WITNESS:   No.

16   BY MR. MADIN:

17        Q.    Okay.  And is it fair to say that

18   the definition of the word accident is not

19   really important to you, given the blood

20   alcohol content level of Mr. Glynn, is that

21   true?

22             MR. MUSCATO:   Objection to the

23   form of the question.

24             THE WITNESS:   I would say yes.



**set**depo

sd

Streamlined • Centralized • Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

54

1      A.      If anybody has any additional

2   information that would be pertinent, we invite

3   them to send it in and we'll evaluate.

4      Q.      Would -- Is there any additional

5   information that would have changed your

6   opinion in this case?

7      A.      I don't think so.

8      Q.      And just explain to me, if you

9   would, generally back in that time frame what

10  the appeal process consisted of.

11     A.      Well, in this letter, we invite

12  anyone to send in additional information, and

13  if and when something would be sent in we

14  would reevaluate everything.

15     Q.      Okay.   And did you receive -- Is

16  there a time frame given for that additional

17  information?

18     A.      It says sixty days, but we're

19  liberal.

20     Q.      And do you know if there was any

21  correspondence sent in response to that letter

22  of March 2002?

23     A.      Response sent back to me?

24     Q.      Yes.



**setdepo**
sd
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

93

1    Q.    What was your purpose in referring

2    to the fact that this policy in question is

3    an accident policy?

4    A.    In just in case there's any

5    misunderstandings, we have to advise everyone

6    concerned of the policy definitions to the

7    best of my ability, and mentioning that it's

8    an accident policy is part of this procedure.

9    Q.    And in 2001 as a claims

10   specialist, what did you understand an

11   accidental death to involve?

12   A.    Something unforeseen and unexpected.

13   Q.    And with regard to a claim where

14   the facts showed that the death resulted from

15   driving while intoxicated, did you have an

16   understanding as to whether that was an

17   accidental death within the terms of policy

18   in question here?

19   A.    Well, if ERISA applies to the

20   coverage, then ERISA rules, and under those

21   circumstances driving while intoxicated is not

22   considered an accident.

23   Q.    I show you what's been previously

24   marked as Krol 14 for identification.    Can



**setdepo**
sd
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

104

1          MR. MUSCATO:    Objection to the

2     form of the question.

3          BY MR. MADIN:

4          Q.     You can answer.

5          A.     I agree.

6          Q.     You don't know what the statistics

7     are regarding driving while intoxicated?

8          A.     No.

9          Q.     Does anyone at Bankers Life know

10    what the statistics show with regard to

11    driving while intoxicated?  Do you know?

12         A.     I don't know.

13         Q.     Okay.  And whatever the numbers

14    show, they played no part in your decision to

15    deny Mr. Glynn's claim, is that true?

16         A.     Correct.

17         Q.     And you do cite ERISA regulations

18    as being a component of your decision to deny

19    this claim, but you don't know what those

20    regulations are, correct?

21         A.     Correct.

22         Q.     You also cite ERISA cases as being

23    uniform in denying such claims but you do not

24    know what any of the cases are, is that



**sd** **setdepo**
Streamlined · Centralized · Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

103

1    discussed the fact that however you define

2    the word accident in the policy is also

3    irrelevant to your denial, correct?

4              MR. MUSCATO:    Objection to the

5    form of the question.

6       BY MR. MADIN:

7       Q.    You can answer.

8       A.    Accident is not defined in the

9    policy.

10      Q.    Okay.  Well, what did you mean

11   when you said an accident is something that's

12   unforeseen?

13      A.    That is terminology that we use in

14   the course of our workday.

15      Q.    Okay.  And we have already

16   discussed the fact that this accident was

17   unforeseen to Mr. Glynn, in all probability?

18             MR. MUSCATO:    Objection to the

19   form of question.

20      BY MR. MADIN:

21      Q.    Correct?

22      A.    I agree with that.

23      Q.    Okay.  And in all probability, the

24   accident was unexpected by Mr. Glynn, correct?



**setdepo**
sd
Streamlined • Centralized • Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

1  correct?

2      A.    Correct.

3      Q.    And all of that would have been

4  true back in 2002 when this claim was denied,

5  correct?

6      A.    Correct.

7          MR. MADIN:  I'm done again.

8          MR. MUSCATO:  Okay.  I have no

9  further questions.

10         MR. MADIN:  All right.  We're

11 done.

12         THE REPORTER:  Signature?  Is it

13 waived or will he reserve and read?

14         MR. MUSCATO:  He will reserve and

15 read.

16         THE REPORTER:  Do you want this in

17 a week?

18         MR. MADIN:  I don't really need it

19 in a week. Regular delivery is fine.

20         THE REPORTER:  Do you want a copy?

21         MR. MUSCATO:  Yes, please.

22         (Whereupon, at 12:25 p.m., the

23 signature of the witness having been reserved

24 the witness being present and consenting



**set depo**
**sd**
**Streamlined • Centralized • Standardized**
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

107

1    STATE  OF  ILLINOIS      )

2                             )SS.

3    COUNTY  OF  C  O  O  K   )

4              I,  SANDRA  DRECHSLER,  Certified

5    Shorthand  Reporter  No.  84-1676  and  Notary

6    Public  in  and  for  the  County  of  Cook,  State

7    of  Illinois,  do  hereby  certify  that  I  caused

8    to  be  reported  in  shorthand  and  thereafter

9    transcribed  the  foregoing  transcript  of

10   proceedings.

11             I  further  certify  that  the

12   foregoing  is  a  true,  accurate  and  complete

13   transcript  of  my  shorthand  notes  so  taken  as

14   aforesaid;  and  further,  that  I  am  not  counsel

15   for  nor  in  any  way  related  to  any  of  the

16   parties  to  this  action,  nor  am  I  in  any  way

17   interested  in  the  outcome  thereof.

18             I  further  certify  that  this

19   certificate  applies  to  the  original  signed  IN

20   BLUE  and  certified  transcripts  only.    I

21   assume  no  responsibility  for  the  accuracy  of

22   any  reproduced  copies  not  made  under  my

23   control  or  direction.

24             IN  TESTIMONY  WHEREOF,  I  have



**sd** **setdepo**

Streamlined · Centralized · Standardized
*The Evolution of Deposition Management*

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www·setdepo·com

108

hereunto set my hand and affixed my notarial

seal this 27th day of May , 2004.


Sandra Drechsler, CSR, RPR

set**depo**
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

110

<u>CERTIFICATE</u>

STATE OF _ILLINOIS_ :

COUNTY/CITY OF _COOK/CHICAGO_ :

Before me, this day, personally appeared, **Robert Krol**, who, being duly sworn, states that the foregoing transcript of his/her Deposition, taken in the matter, on the date, and at the time and place set out on the title page hereof, constitutes a true and accurate transcript of said deposition.

_____

**Robert Krol**


SUBSCRIBED and SWORN to before me this _30th_ day of _June_, 2004 in the jurisdiction aforesaid.

_____2/24/07_____    _Sherry Kremer_

My Commission Expires    Notary Public


"OFFICIAL SEAL"
SHERRY KREMER
COMMISSION EXPIRES 02/24/07

**setdepo**
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com