UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

PHILIP GLYNN                          :
                                      :
    Plaintiff,                        :
                                      :
V.                                    :    CIVIL ACTION NO.:
                                      :    302CV1802 (AVC)
                                      :
BANKERS LIFE AND                      :
CASUALTY COMPANY,                     :
                                      :
    Defendant                         :    September 1, 2004

### Plaintiff's Memo in Opposition to Defendant's Motion for Summary Judgment

For the following reasons, the plaintiff hereby submits this Memo in Opposition to the defendant's Motion for Summary Judgment, dated August 9, 2004.

This case is about an insurance company wielding ERISA law as a sword against an employee's beneficiary pursuant to an accidental death policy. The use of ERISA in this manner perverts its intended use. *See e.g. Firestone Tire & Rubber v. Bruch*, 489 U.S. 101 (1989). ERISA should not be used to allow the defendant, Bankers Life and Casualty Company, to rely on, and benefit from, an ambiguous term in an insurance policy that it drafted. *See Critchlow v. First UNUM Life Ins. Co.*, 02-7585 (2d Cir. 2004) (hereinafter *Critchlow*, attached as Exhibit A). The principle allowing ambiguous terms of an insurance policy to be construed against the drafter of such terms applies, even to plans protected by

ERISA, especially when the ambiguous term involves an exclusion. (*See Critchlow* at 10). This argument was previously set forth in the plaintiff's Motion for Summary Judgment dated August 5, 2004. The plaintiff hereby adopts and incorporates his Motion for Summary Judgment as part of this Memo in Opposition. Indeed, the Court need not go beyond the argument set forth in the plaintiff's Motion for Summary Judgment. Nevertheless, the plaintiff offers the following in response to the defendant's Motion for Summary Judgment.

I.    **FACTUAL BACKGROUND**

This case arises from the defendant's, Bankers Life and Casualty Company's, refusal to pay accidental death benefits to the plaintiff, Philip Glynn, the sole beneficiary under such policy. The policy was provided to the decedent, Peter J. Glynn, as part of an employee welfare benefit offered by his employer, Johnson & Johnson.

On June 8, 2001, the decedent, Peter Glynn, left his home located at 12 Putnam Street, in Bristol, Connecticut, and drove to the Brass City Mall in Waterbury, Connecticut. (*See* Affidavit of Philip Glynn, hereinafter Exhibit B). This trip was approximately twenty miles. (*Id*). The decedent was travelling on Wolcott Street, in Bristol, Connecticut, heading towards home, at the time of his accident. (*Id.*). Peter Glynn was killed in the accident.

The plaintiff is Philip Glynn, Peter's father and sole beneficiary. Although Mr. Glynn recently suffered a stroke, he is competent to testify. (*See* Exhibit B at

1). Mr. Glynn states that his son had resided with him at 12 Putnam Street in Bristol, Connecticut since 1992, (*Id*), and was familiar with Wolcott Street. (*Id*) ("While on his return from the Mall, Peter would travel on Wolcott Street in Bristol to get to our home."). Peter Glynn was wearing his seatbelt at the time of his death. (*See* Police Report, hereinafter Exhibit C at D 059).

Peter was planning to work the day after his accident. (*See* Exhibit B at 1). Peter was allowing his sister to borrow his second vehicle to take on her vacation, and he had not yet delivered that car to her. (*Id*; Affidavit of Theresa M. Jones, hereinafter Exhibit D). He had plans to go on multiple vacations with his family; he had already purchased an airline ticket for November, 2001. (*Id*; *see also* Research Service Bureau, Inc. investigation, hereinafter Exhibit E at 2). Peter was in a financially sound condition. (*See* Exhibit B at 2).

Thereafter, the defendant, Bankers Life and Casualty Company, has refused to make payment to the beneficiary of the accidental death benefits provided, due to the decedent's reported blood alcohol content at the time of his accident. The defendant admits that no expressed exclusion exists in the policy involving the factual circumstances of decedent's accident. Significantly, the defendant has offered no competent evidence, expert or otherwise, which demonstrates that the decedent's consumption of alcohol was a cause of this accident. Further, the defendant, at the time it denied the plaintiff's claim, was

RISCASSI & DAVIS, P.C.  •  ATTORNEYS-AT-LAW  •  131 OAK STREET  •  P.O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

acting in a direct conflict of interest, being both the administrator[1] and insurer of the decedent's policy.

The plaintiff's operative complaint brings action pursuant to the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*, specifically under 29 U.S.C. § 1132 (a)(1)(B). The plaintiff subsequently filed a Motion for Summary Judgment dated August 5, 2004. The defendant, Bankers Life and Casualty Company, filed its own Motion for Summary Judgment on August 9, 2004.

The decedent's plan did not grant discretionary authority to interpret the terms of the policy at issue, therefore, the defendant's denial of the plaintiff's benefits should be reviewed using the de novo standard. Further, Peter Glynn's death was accidental under either the de novo or arbitrary and capricious standard of review; therefore, the defendant's Motion for Summary Judgment should be denied, and the plaintiff's Motion for Summary Judgment should be granted. Moreover, the defendant's Motion for Summary Judgment is improper, as it proposes conclusions without the support of competent, admissible evidence. Accordingly, the benefits owed under the decedent's policy should be paid according to the terms of the policy.

---

[1] Please note, however, that the defendant, despite being the plan's administrator, did not have discretionary authority under the plan. (*See* Plaintiff's Motion for Summary Judgment; *infra* part IV).

4

## II. STANDARD FOR CROSS MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) states:

> [summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"Summary judgment is utilized to eliminate the delay and expense of a trial where there is no issue to be tried." *Weinstock v. Wilk*, 296 F.Supp.2d 241, 245 (D.Conn. 2003) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d. Cir. 2000). The court must "view the evidence in the light most favorable to the party opposing summary judgment." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). "Still, '[t]he existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendant].'" *Dawson v. County of Westchester*, No. 03-7858 (2d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[W]here the movant ' fails to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgement, summary judgment must be denied." *See Giannullo v. City of NY*, 322 F.3d 139, 140-141 (2d Cir. 2003) (quoting *Adickes v. Kreiss & Co.*, 398 U.S. 144, 158 and 160 (1963); *see also F.R.C.P.* 56(e).

RISCASSI & DAVIS, P. C.  •  ATTORNEYS-AT-LAW  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

Where both parties move for summary judgment, a court need not enter judgment for either party. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d. Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981).

### III. DEFENDANT HAS NOT OFFERED ADMISSIBLE EVIDENCE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The defendant has not offered any affidavit, or other competent, admissible evidence in support of its Motion for Summary Judgment with regard to the cause of the decedent's accident. The defendant used its own conclusion, and incomplete, conclusory statements of the medical examiner and the police in denying the plaintiff's claim for benefits. (*See* Defendant's Local Rule 56(a)(1) Statement at Paragraph 16, 18). Such conclusory statements are inadmissible hearsay. Without these statements, the defendant has nothing but its own conclusion to support the theory that Peter Glynn's death was caused by his elevated blood alcohol content. Moreover, the defendant has not disclosed any experts to testify about any issue in the case. For this reason, the court should strike the portion of the defendant's motion from the last sentence on page 11 through the second paragraph of page 12, including footnotes 3 and 4.

RISCASSI & DAVIS, P.C. • ATTORNEYS-AT-LAW • 131 OAK STREET • P.O. BOX 261557 • HARTFORD, CT 06126-1557 • (860) 522-1196

The plaintiff has offered the affidavit[2] of Michael F. Miller, P.E.[3] Mr. Miller states:

> 17. If one is traversing a curve to the right at a speed sufficient to cause sidesliding, the ensuing "yaw" marks upon the roadway will be also curved to the right, in a clockwise direction. The yaw marks produced by the plaintiff's decedent's automobile, however, curve to the left in a counterclockwise manner. These tire marks are indicative of a hard left steering maneuver by plaintiff's decedent.

(*See* Exhibit F at 4). Mr. Miller noted the absence of findings "indicative of an initial loss of vehicular control followed by an overcorrection;" therefore stating that the initial reason for the "hard left" by Peter Glynn on the night he was killed cannot be determined. (*Id* at 5). Mr. Miller lists some possible causes for the decedent's hard left steering maneuver which include:

> [T]he presence of an object in the roadway ahead, the movement of a person or animal into the roadway ahead, and the encroachment or presence of another motor vehicle into or in the roadway ahead. It is

---

[2] Although affidavits and other evidence offered by the plaintiff were not part of the defendant's administrative record at the time it denied the plaintiff's claim, such evidence is appropriate for the court's review. (*See Critchlow* at 15) ("[W]e have held that additional evidence may be considered by the district court on de novo review of an issue of plan interpretation, and have pointed out that, while 'a claimant might be obligated to present to plan administrators all evidence regarding the claimant's condition,' he 'would be unfairly burdened by an obligation to present expert testimony to plan administrators on an issue of plan interpretation.'") (citations omitted). Since in the present case, either the de novo standard of review applies, or, at a minimum, the dispute relates to the interpretation of terms contained in the decedent's policy, the plaintiff may offer evidence which was not in possession of the defendant when it denied the plaintiff's claim.

[3] *See* Affidavit of Michael Miller, hereinafter Exhibit F. Note that the plaintiff attaches a copy of such affidavit, as the original was submitted to this court with his Motion for Summary Judgment dated August 5, 2004.

> known, for example, that there was another motor vehicle in the area where the accident occurred, approaching from the opposite direction...The unexpected presence of an approaching automobile, given the sharp nature of the curve to the right and the limitation of sight distance associated with it, could also have been a factor causing or contributing to plaintiff's decedent's decision to introduce a steering input to the left.

(Id).

Moreover, Mary Glynn was told that a police officer at the scene of Peter's accident, thought an animal probably ran in front of his car. (*See* Affidavit of Mary Glynn, hereinafter Exhibit G). Also, Peter had negotiated the curve in the road prior to his accident. (*Id*).

Further, the evidence now proposed[4] by the defendant, Bankers Life and Casualty Company, attempting to establish the effects of alcohol on a driver, is inadmissible and the court should not consider it. The defendant offers conclusory statements regarding the effects of alcohol on a drinker, who is at or over a certain blood alcohol level, citing to online sources. (*See* Defandant's Motion for Summary Judgment at 11-12; note 3). Also, again citing to online websites, without any supporting affidavit or other means of making such evidence competent, the defendant offers the idea that a driver with an elevated blood alcohol level is more likely to be killed in an alcohol related crash than a

---

[4] Note that defendant's corporate designee admits to not having any statistics regarding the probability of being killed while driving with an elevated blood alcohol level in his possession at the time of denying the plaintiff's claim. (*See* Deposition of Robert Krol, hereinafter Exhibit H at 104).

RISCASSI & DAVIS, P.C. • ATTORNEYS-AT-LAW • 131 OAK STREET • P.O. BOX 261557 • HARTFORD, CT 06126-1557 • (860) 522-1196

non-drinker. (*Id* at 12; note 4). This statement is inadmissible, and cannot be considered by the court. Even if this evidence were admissible, the plaintiff has offered the expert affidavit of Dr. Mehdi Mostaghimi, and the corresponding report of his conclusions. (*See* Affidavit of Mehdi Mostaghimi, hereinafter Exhibit I; Dr. Mostaghimi's Report, hereinafter Exhibit J). Dr. Mostaghimi does not disagree that a driver with a blood alcohol content of .15% is 380 times more likely to die in a single vehicle crash than a nondrinker. Nevertheless, the probability of being killed in an alcohol related accident on a twenty mile trip is still only "one in a million for both Connecticut and the United States." (*See* Affidavit of Mehdi Mostaghimi, hereinafter Exhibit I; Dr. Mostaghimi's Report, hereinafter Exhibit J).[5] Dr. Mostaghimi's opinion is based in part on the exact same study cited by the defendant. For the foregoing reasons, the defendant has not supported its motion with competent evidence, and its Motion for Summary Judgment must be denied.

## IV. THE DE NOVO STANDARD OF REVIEW SHOULD BE USED IN REVIEWING THE DEFENDANT'S DECISION TO DENY THE PLAINTIFF'S CLAIM

Decisions to deny benefits under an ERISA plan "must be reviewed under a de novo standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the

---

[5] Please note that Dr. Mostaghimi's findings develop the probability of being killed in such an accident, while the defendant's merely attempt to establish the

9

RISCASSI & DAVIS, P. C. • ATTORNEYS-AT-LAW • 131 OAK STREET • P. O. BOX 261557 • HARTFORD, CT 06126-1557 • (860) 522-1196

plan's terms, in which cases a deferential standard of review is appropriate." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *see also Lifson v. INA Life Ins. Co. of NY*, 333 F.3d 349 (2d Cir. 2003). "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" *Kinstler v. First Reliance Standard Life Ins.*, 181 F.3d 243, 245 (2d Cir. 1999) (quoting *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995)). Although the use of "[m]agic words such as 'discretion' and 'deference'" are not required, the use of such words is "certainly helpful in deciding [which standard of review to use]." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995).

The defendant proposes that language in its summary plan description stating that its decision to deny, after being appealed and once again denied would be a "final and binding decision" satisfies its burden of providing language which conveys to it discretionary authority over the plan at issue. (*See* Defendant's Motion for Summary Judgment at 10). However, the defendant has not met its burden, and its denial of the plaintiff's claim for accidental death benefits should be reviewed under a de novo standard of review.

The defendant cites to *Pagan v. Nynex Pension Plan*, 52 F.3d 438 (2d Cir. 1995), in support of its allegation that the statement "final and binding decision," as to

---

greater risk assumed by an individual driving intoxicated. (*See infra* part V(ii)).

RISCASSI & DAVIS, P. C. • ATTORNEYS-AT-LAW • 131 OAK STREET • P. O. BOX 261557 • HARTFORD, CT 06126-1557 • (860) 522-1196

the review of claims, grants it discretionary authority. *Pagan*, however, did not reach its decision based merely on the language cited by Bankers Life and Casualty Company in its Motion for Summary Judgment. (*See* Defendant's Motion for Summary Judgment at 6 (stating "discretion was granted to the plan administrator pursuant to plan provisions such as the administrator 'shall serve as the final review committee... for the review of all ...claims by participants.'")). In fact, the *Pagan* court decided that the plan administrator met its burden based collectively on the single statement cited by the defendant along with the following:

> Significantly, section 3.4 of the Pension Plan provides that the [administrator] "shall determine conclusively for all parties all questions arising in the administration of the [Pension] Plan and any decision of such Committee shall not be subject to further review...Further section 3.3(c) of the Pension Plan provides that the [administrator] "retain[s] such right, authority and discretion as is provided in or not expressly limited by said Section 503 of [ERISA].

*Pagan*, 52 F.3d at 441-42.[6]

Likewise, this Court in *Kocsis v. Standard Ins. Co.*, 142 F.Supp 2d 241 (D. Conn. 2001),[7] allowed deference to an administrator's decision to deny benefits. The court, in deciding that the defendant had met its burden of demonstrating that it indeed had discretionary authority, stated the following:

> Here, the language of the plaintiff's policy is explicitly clear: Standard reserves to itself "full and exclusive authority...to interpret the Group Policy

---

[6] For the court's convenience, the plaintiff has attached the full opinion as Exhibit K.
[7] For the court's convenience, the plaintiff has attached the full opinion as Exhibit L.

and resolve all questions arising in the administration, interpretation, and application of the Group Policy,"...

*See* Exhibit I at 7-8. The defendant, Bankers Life and Casualty Company, conversely, has not provided such an indication that "full and exclusive" authority to interpret terms in the plan was granted to it. For something less than de novo review to be applied to an administrator's decision to deny benefits under an ERISA plan, the insurer must do more than grant itself the power to deny benefits. *See Masella*, 936 F.2d 98; *Kinstler* 181 F.3d 243. As stated in *Kinstler*, "[n]o plan provides benefits when the administrator thinks that benefits should not be paid! (punctuation in original) 181 F.3d at 251.

It should also be noted that previously the defendant in its Amended Response to Plaintiff's Requests for Admissions dated November 11, 2003, directed the plaintiff to completely different language in the decedent's plan, which it alleged, at that time, provided the defendant with discretionary authority. (*See* Amended Response to Plaintiff's Requests for Admissions, hereinafter Exhibit M at 2-3). In the prior document, there was no mention or indication of the language now alleged by the defendant. (*Id.*). The fact that the defendant itself is unable to consistently provide the language alleged to grant the defendant discretionary authority is further proof that there is not the requisite unambiguous indication of such. Therefore, the de novo standard of review should be applied to the defendant's decision to deny the plaintiff's claim for benefits.

Although no "magic words" are required to grant an administrator the discretionary authority warranting a more deferential review, the use of such terms has been helpful to the courts in determining whether such authority has been granted. *See e.g. Jordan.*, 46 F.3d 1264, 1271 (2d Cir. 1995). If the drafter of the policy provided to the decedent wished to grant discretionary authority to the defendant, Bankers Life and Casualty Company, thereby providing its denial of benefits a more deferential review, it could have easily used an unambiguous indication that such authority was being granted. The decedent's plan contained no such unambiguous indication; therefore, the defendant's decision to deny the plaintiff's benefits pursuant to the plan at issue should be subject to a de novo review standard of review.

V. **USING EITHER THE DE NOVO OR ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW THE DECEDENT'S DEATH WAS AN ACCIDENT**

The plaintiff does not believe that ERISA should be used to allow the defendant to rely on, and benefit from, an ambiguous term in an insurance policy that it drafted. (*See* Plaintiff's Motion for Summary Judgment dated August 5, 2004; *see also supra* p 1-2). However, the decedent's death qualifies as an accident under federal common law under either the de novo or the arbitrary and capricious standard of review, nonetheless.

RISCASSI & DAVIS, P. C.  •  ATTORNEYS-AT-LAW  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

Robert Krol, the defendant's corporate designee,[8] at the time he denied the plaintiff's claim, defined "accident" as something unforeseen or unexpected, (*See* Exhibit H at 93). Mr. Krol agrees[9] that the decedent did not intend nor expect to die on the night of his death. (*Id* at 103-104). The decedent was familiar with the particular road where his accident occurred. (*See* Exhibit B at 1). The decedent was wearing his seatbelt at the time of his death. (*See* Exhibit C at D 059).

Moreover, the decedent had plans to work on the day following his death. (*See* Exhibit B at 1). Also, Peter was allowing his sister to borrow his second vehicle to take on her vacation, (*See* Exhibit D), and he had not yet delivered that car to her. (*See* Exhibit B). Peter Glynn, had purchased an airline ticket for a vacation planned for November, 2001, (*Id*). Further, he had plans for vacations in July 2001 and the Spring of 2002. (*Id*; *see also* Exhibit E at 2). The decedent was also in good financial condition, and had not shown any signs of depression, according to his father, who had been living with the decedent since 1992. (*See* Exhibit B).

The decedent's expectation of surviving his driving with an elevated blood alcohol content was not unreasonable, given the low probability of being killed

---

[8] Note that the statements of Robert Krol the defendant's corporate designee, qualify as admissible evidence pursuant to FRE 801, and are therefore not hearsay. *See FRE* 801.

[9] Mr. Krol agrees that Peter Glynn did not intend or expect to die, despite the defendant's present claim that "[t]he Decedent should have known . . ." (*See* Defendant's Motion for Summary Judgment at 12).

RISCASSI & DAVIS, P. C.  •  ATTORNEYS-AT-LAW  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

during such a drive. The plaintiff has offered expert testimony as to the probability of being killed during a trip such as the decedent took the night of his death,[10] while the defendant, acting in direct conflict to the interests of the decedent and the plaintiff, denied the plaintiff's claim, despite not having any such statistics at the time the claim was denied. *(See* Exhibit H at 104). In fact, the defendant pays claims for deaths under the same factual circumstances under policies with the same language which are not covered by ERISA, (*Id* at 24), and in effect denies deaths such as the decedent's based solely on blood alcohol level in ERISA cases. The defendant's denial of benefits, under any standard of review, cannot be upheld.

*Wickman v. Northwestern National Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990), *cert. denied*, 498 U.S.1013, has been frequently cited as the authority for determining whether an incident qualifies as an accident pursuant to federal common law under ERISA. *See e.g. Critchlow* at 11. *Wickman* developed a two prong test to determine whether an accident has occurred. *Wickman*, 908 F.2d at 1088. The first prong focuses on the subjective expectation of the insured. *Id.* The second prong determines whether or not the insured's expectation was objectively reasonable "from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." *See Critchlow* at 11 (quoting *Wickman*, 908 F.2d at 1088).

---

[10] *See* Exhibit I.

15

RISCASSI & DAVIS, P. C.   •   ATTORNEYS-AT-LAW   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

Pursuant to *Critchlow*, and the *Wickman* test, Peter Glynn was killed in an accident, because he neither expected, nor intended, to die, and, taking into account his personal characteristics and experiences, his expectation was reasonable.

    i.    <u>The decedent did not intend or expect to die at the time of his accident</u>

Under *Wickman*, it must first be determined whether the decedent subjectively lacked an expectation of death. *See* Critchlow at 11 (citing *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1126 (9th Cir. 2002), *cert denied*, 537 U.S. 1067 (2002). Although the *Wickman* court expressed concern with allowing an individual's subjective expectation to establish, without more, that his death or injury was an accident; the court stated that "we do not suggest actual expectation should be wholly ignored, for in most cases actual expectations govern the risks of an insurance policy a beneficiary believes has been purchased." *Wickman*, 908 F.2d at 1088.

The defendant's Corporate Designee, Robert Krol, agrees[11] that the decedent, Peter Glynn, did not intend to die at the time of his accident. (*See*

---

[11] Despite Mr. Krol's binding admission that the decedent did not intend to die on the night of his crash, the defendant now attempts to dispute this issue. The defendant, despite the admission of Mr. Krol, and the evidence offered by the plaintiff *supra* and *infra* regarding the decedent's subjective expectation to survive, now merely asserts speculative statements that are irrelevant, inflammatory and offensive. *See* Defendant's Memo in Opposition to Plaintiff's Motion for Summary Judgment at p 17 ("[A] socially isolated, morbidly obese

Exhibit H at 38) ("Q. No. There's no claim here, is there, that Mr. Glynn intended his own death?  A.  No"). Likewise, in Second Circuit opinion of *Critchlow*, the court noted that the insurer had "never . . . disputed that [the decedent's] death was subjectively unexpected or unintended." *See Critchlow* at 13.  Mr. Krol defined "accident" as something unforeseen or unexpected, (*See* Exhibit H at 93), and he agrees that the decedent's death satisfied that definition. (*Id* at 103-104) ("And we have already discussed the fact that this accident was unforeseen to Mr. Glynn, in all probability?  ... A.  I agree with that."). The decedent was wearing his seatbelt, (*See* Exhibit C at D 059), and was familiar with the particular road where his accident occurred.  (*See* Exhibit B at 1).  The decedent had plans for the following day.  (*Id*).  Further, Peter Glynn had a purchased an airline ticket for a vacation he had planned in November, 2001, and had trips planned in July, 2001 and Spring of 2002.  (*Id*; Exhibit E at 2).  The decedent's death, therefore, satisfies the first prong of the *Wickman* test.

Since the defendant agrees that Peter Glynn did not intend or expect to die on the night he was killed, and, therefore, the decedent's death was accidental, the court need not continue its analysis.  *Wickman* dictates that the decedent's

---

loner without a girlfriend...advancing into middle age...lived with his father for eight years."); Defendant's Local Rule 56(a)(2) Statement at paragraphs 10, 14 and 15; Defendant's Local Rule 56(a)(1) Statement at paragraph 8; Defendant's Motion for Summary Judgment p.2 ("[W]ho weighed 334 lbs..."). In light of the admissions of its corporate designee, Peter Glynn's subjective expectations have

subjective intent must be determined, and only after such a determination, should the second prong be analyzed. 908 F.2d at 1088. The defendant, however, denied the plaintiff's benefits solely on the fact that it was reported that he had an elevated blood alcohol level, without first determining the decedent's actual, subjective expectation. Therefore, the defendant's denial is at odds with federal common law. *See West v. Aetna Life Ins. Co.*, 171 F. Supp.2d 856, 887 (N.D. Iowa 2001). The defendant should pay the plaintiff's claim according to the policy's terms. Nevertheless, the plaintiff provides the following analysis demonstrating that the decedent's death was an accident under federal common law.

> ii. <u>The decedent's expectation of survival was reasonable</u>

If it is determined that the individual "did not expect an injury similar in type or kind to that suffered, the fact-finder must then examine whether the suppositions which underlay that expectation were reasonable." *See Critchlow* at 11 (citing *Wickman*, 908 F.2d at 1088). Only if the individual's suppositions are determined to have been "unreasonable" is the event not accidental. *Wickman*, 908 F.2d at 1088.

An insured's "expectation would be unreasonable if the conduct from which the insured died posed such a high risk of death that his expectation of

---

never been in dispute, making the above cited sections of the defendant's argument irrelevant.

18

**RISCASSI & DAVIS, P. C.**  •  *ATTORNEYS-AT-LAW*  •  131 OAK STREET  •  P. O. BOX 261557  •  HARTFORD, CT 06126-1557  •  (860) 522-1196

survival was objectively unrealistic." *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1456 (5th Cir. 1995). This determination must be made "from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." *Wickman*, 908 F.2d at 1088. An insured's expectation of survival of an activity, where deaths resulting from an such an activity are "statistically rare" or where the "activity ordinarily has a nonfatal outcome," is a reasonable expectation. *See Critchlow* at 13 (quoting *Padfield*, 290 F.3d at 1127). Further, an insured's expectation is objectively reasonable "if death is not substantially certain to result from the insured's conduct." *Todd*, 47 F.3d at 1456; *see also Padfield*, 290 F.3d at 1127; *Metropolitan Life Ins. v. Potter*, 992 F.Supp. 717, 729 (D. N.J. 1998) ("[W]ickman requires more than mere foreseeability or increased risk"); *but see*, *Cozzie*, 140 F.3d at 1110 ("[A]lthough perhaps unintentional, is not an 'accident' because that result is reasonably foreseeable"). Under the *Wickman* test, if the fact-finder is unable to determine the insured's actual expectation, then the court must objectively determine "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *See, e.g.*, *Wickman*, 908 F.2d at 1088. Here, however, the parties agree that Peter Glynn's death was subjectively unintended and unexpected.

RISCASSI & DAVIS, P. C.   •   ATTORNEYS-AT-LAW   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196