UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GLYNN,

    Plaintiff,

vs                                  Civil Action 302 CV 1802

BANKERS LIFE AND CASUALTY COMPANY,

    Defendant.

DEPOSITION OF

ROBERT KROL

May 18, 2004
10:00 a.m.

333 West Wacker
Chicago, Illinois

Sandra Drechsler, Certified Shorthand Reporter,
Registered Professional Reporter, and Notary Public



sd setdepo
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

2

## APPEARANCES

3    ON BEHALF OF THE PLAINTIFF

4    **RISCASSI & DAVID**

5    BY: EVERETT H. MADIN, JR., ESQUIRE

6        131 Oak Street

7        P.O. Box 261557

8        Hartford, Connecticut  06126-1557

9        (860) 344-5297

11    ON BEHALF OF THE DEFENDANT

12    **SKADDEN ARPS SLATE MEAGHER & FLOM, LLP**

13    BY: ANDREW MUSCATO, ESQUIRE

14        One Newark Center

15        Newark, New Jersey  07102-5297

16        (973) 639-6800

18    ALSO PRESENT:

19    CONSECO Services, LLC

20    ROBERT E. BURKETT, JR.,

21    Senior Vice President, Legal



**setdepo**
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

24

1        MR. MUSCATO:  "Identical."
2        MR. MADIN:  Okay.
3    BY MR. MADIN:
4        Q.    Your answer was yes, and I'm going
5    rephrase the question.
6        A.    Go ahead.
7        Q.    Okay.  Since this change in policy
8    occurred seven or eight years ago, have you
9    continued to pay non-ERISA claims involving
10   intoxicated drivers?
11       A.    Yes.
12       Q.    Since this policy change seven or
13   eight years ago, have you continued to pay
14   ERISA claims involving intoxicated driver?
15       A.    We have never paid.
16       Q.    Since that seven or eight-year-time
17   period?
18       A.    Yes.
19       Q.    Are you familiar with the policy
20   at issue in this particular case?
21       A.    Yes.
22       Q.    Did you bring a copy with you?
23       A.    I did not bring a copy, but I
24   believe it's in here.  Do you want me to


sd setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

32

1  understood it to be, correct?
2       A.    Yes.
3       Q.    Were there any facts at all in the
4  information you received that you determined
5  were relevant to the denial of the claim
6  other than the blood alcohol content?
7       A.    No.
8       Q.    Why then did you retain Research
9  Service Bureau, if all you really needed to
10 look at was the blood alcohol content?
11      A.    We wanted to make sure we had as
12 much facts as possible, and Research Service
13 was contracted to get the additional
14 information that might be out there.
15      Q.    But would any of the facts that
16 they turned up have altered your decision,
17 given the blood alcohol content?
18      A.    Possibly.  I really don't know.
19      Q.    Give me an example of a fact that
20 would have changed your decision.
21           MR. MUSCATO:  Objection to the
22 form of the question.
23      BY MR. MADIN:
24      Q.    You can answer.


setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

38

1   medical examiner's report?
2              MR. MADIN:  Not at this time.
3        BY MR. MADIN:
4        Q.   Did your investigative service make
5   any determinations about whether Peter Glynn,
6   Peter Glynn's death was intentional or
7   suicidal?
8        A.   They never make opinions.
9        Q.   And that is certainly not the
10  basis of your denial, is it?
11       A.   What they said?
12       Q.   No.  There's no claim here, is
13  there, that Mr. Glynn intended his own death?
14       A.   No.
15       Q.   Okay.  Did your investigative
16  service uncover any evidence regarding Mr.
17  Glynn's drinking habits?
18       A.   Yes.
19       Q.   What did they find?
20       A.   He routinely consumed vodka.
21       Q.   And did they talk to dram shops
22  and bars in the area?
23       A.   I believe so.  I don't recall.
24       Q.   Do you recall what they found with


setdepo
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

42

1  an opinion that came from legal?
2      A.    I would say it's my opinion.
3      Q.    Okay. And if the statistics
4  indicated that the chance of were one in 10
5  million of someone driving intoxicated and
6  dying, would that be highly likely in your
7  opinion?
8          MR. MUSCATO:  Objection to the
9  form of the question.
10         THE WITNESS:  One in 10 million.
11     BY MR. MADIN:
12     Q.    Would you consider that highly
13 likely?
14     A.    My opinion, no.
15     Q.    Okay. What sort of probability
16 would we look at to determine that something
17 was highly likely, in your opinion?
18         MR. MUSCATO:  Objection to the
19 form of the question.
20         THE WITNESS:  Over half.
21     BY MR. MADIN:
22     Q.    Okay. 51-49?
23     A.    You can say that, I guess.
24     Q.    More than that? Would it have to



90

1  BY MR. MADIN:
2  Q. In other words, and certainly back
3  in 2001 and 2002 when the claim was denied,
4  the definition of the word accident was not
5  relevant to your decision, was it?
6  MR. MUSCATO: Objection to the
7  form of the question.
8  THE WITNESS: I would say it was
9  not relevant.
10 BY MR. MADIN:
11 Q. All right. As a matter of fact
12 you didn't have a definition of the word
13 accident at that time, isn't that true?
14 A. That's correct.
15 Q. And whatever you did you did
16 because the legal department advised you on
17 what to do, that true?
18 MR. MUSCATO: Objection to the
19 form of the question.
20 THE WITNESS: I would say yes.
21 BY MR. MADIN:
22 Q. When you had a claim come in that
23 involved an intoxicated driver such as this
24 one that was not an ERISA claim, would you



91

1  seek the advice of legal back in the time
2  period of 2001-2002?
3      A.   Depending on circumstances,
4  sometimes yes, sometimes no.
5      Q.   Okay. You would be concerned that
6  the circumstances might fall within one of
7  the listed exceptions, correct?
8      A.   Yes.
9      Q.   Or exclusions?
10     A.   Yes.
11     Q.   Is it true that the exclusions are
12 listed in full on page D 010 of Exhibit 7?
13     A.   Yes.
14     Q.   And is it true that none of these
15 exclusions apply to Mr. Glynn's claim?
16     A.   That's correct.
17          MR. MADIN: I don't have anymore
18 questions.
19          MR. MUSCATO: I just have a few
20 follow-up questions.
21     **EXAMINATION**
22     **BY-MR.MUSCATO:**
23     Q.   Mr. Krol, I show you what's been
24 marked, previously marked as Krol 8 for



93

1  Q. What was your purpose in referring
2  to the fact that this policy in question is
3  an accident policy?
4  A. In just in case there's any
5  misunderstandings, we have to advise everyone
6  concerned of the policy definitions to the
7  best of my ability, and mentioning that it's
8  an accident policy is part of this procedure.
9  Q. And in 2001 as a claims
10 specialist, what did you understand an
11 accidental death to involve?
12 A. Something unforeseen and unexpected.
13 Q. And with regard to a claim where
14 the facts showed that the death resulted from
15 driving while intoxicated, did you have an
16 understanding as to whether that was an
17 accidental death within the terms of policy
18 in question here?
19 A. Well, if ERISA applies to the
20 coverage, then ERISA rules, and under those
21 circumstances driving while intoxicated is not
22 considered an accident.
23 Q. I show you what's been previously
24 marked as Krol 14 for identification. Can



103

1  discussed the fact that however you define
2  the word accident in the policy is also
3  irrelevant to your denial, correct?
4          MR. MUSCATO:  Objection to the
5  form of the question.
6      BY MR. MADIN:
7      Q.    You can answer.
8      A.    Accident is not defined in the
9  policy.
10     Q.    Okay.  Well, what did you mean
11 when you said an accident is something that's
12 unforeseen?
13     A.    That is terminology that we use in
14 the course of our workday.
15     Q.    Okay.  And we have already
16 discussed the fact that this accident was
17 unforeseen to Mr. Glynn, in all probability?
18         MR. MUSCATO:  Objection to the
19 form of question.
20     BY MR. MADIN:
21     Q.    Correct?
22     A.    I agree with that.
23     Q.    Okay.  And in all probability, the
24 accident was unexpected by Mr. Glynn, correct?



sd setdepo
Streamlined · Centralized · Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

104

1      MR. MUSCATO: Objection to the
2 form of the question.
3      BY MR. MADIN:
4      Q.    You can answer.
5      A.    I agree.
6      Q.    You don't know what the statistics
7 are regarding driving while intoxicated?
8      A.    No.
9      Q.    Does anyone at Bankers Life know
10 what the statistics show with regard to
11 driving while intoxicated?  Do you know?
12      A.    I don't know.
13      Q.    Okay. And whatever the numbers
14 show, they played no part in your decision to
15 deny Mr. Glynn's claim, is that true?
16      A.    Correct.
17      Q.    And you do cite ERISA regulations
18 as being a component of your decision to deny
19 this claim, but you don't know what those
20 regulations are, correct?
21      A.    Correct.
22      Q.    You also cite ERISA cases as being
23 uniform in denying such claims but you do not
24 know what any of the cases are, is that


setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

107

```
 1   STATE OF ILLINOIS    )
 2                        )SS.
 3   COUNTY OF C O O K    )
 4              I, SANDRA DRECHSLER, Certified
 5   Shorthand Reporter No. 84-1676 and Notary
 6   Public in and for the County of Cook, State
 7   of Illinois, do hereby certify that I caused
 8   to be reported in shorthand and thereafter
 9   transcribed the foregoing transcript of
10   proceedings.
11              I further certify that the
12   foregoing is a true, accurate and complete
13   transcript of my shorthand notes so taken as
14   aforesaid; and further, that I am not counsel
15   for nor in any way related to any of the
16   parties to this action, nor am I in any way
17   interested in the outcome thereof.
18              I further certify that this
19   certificate applies to the original signed IN
20   BLUE and certified transcripts only.  I
21   assume no responsibility for the accuracy of
22   any reproduced copies not made under my
23   control or direction.
24              IN TESTIMONY WHEREOF, I have
```



sd setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

108

1  hereunto set my hand and affixed my notarial
2  seal this 27th day of May, 2004.
3
4  _Sandra Drechsler_ (signature)
5  Sandra Drechsler, CSR, RPR

110

## CERTIFICATE

STATE OF ILLINOIS :

COUNTY/CITY OF COOK/CHICAGO :

Before me, this day, personally appeared, **Robert Krol**, who, being duly sworn, states that the foregoing transcript of his/her Deposition, taken in the matter, on the date, and at the time and place set out on the title page hereof, constitutes a true and accurate transcript of said deposition.

_____
Robert Krol

SUBSCRIBED and SWORN to before me this 30th day of June, 2004 in the jurisdiction aforesaid.

2/24/07                    Sherry Kremer
My Commission Expires      Notary Public

"OFFICIAL SEAL"
SHERRY KREMER
COMMISSION EXPIRES 02/24/07

setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com