U.S. 2nd Circuit Court of Appeals Reports

PAGAN v. NYNEX PENSION PLAN, *52 F.3d 438* (2nd Cir. 1995)

GLORIA PAGAN, PLAINTIFF-APPELLANT, v. NYNEX PENSION PLAN AND NYNEX CORPORATION, DEFENDANTS-APPELLEES.

No. 502, Docket 94-7344.

United States Court of Appeals, Second Circuit.

Argued February 1, 1995.

Decided April 12, 1995.

**Page 439**

Donald L. Sapir, White Plains, N Y (William D. Frumkin, Daniel J. Schneider, Law Offices of Donald L. Sapir, of counsel), for appellant.

William R. Blane, White Plains, N Y (Richard H. Wagner, of counsel), for appellees.

Appeal from the United States District Court for the Southern District of New York.

Before FEINBERG, MESKILL and McLAUGHLIN, Circuit Judges.

MESKILL, Circuit Judge:

[1] Appellant Gloria Pagan instituted this action alleging that appellees NYNEX Corporation (NYNEX) and the NYNEX Pension Plan (Pension Plan) wrongfully denied her a disability pension in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The parties moved for summary judgment, and the United States District Court for the Southern District of New York, Broderick, *J.*, denied Pagan's motion, granted appellees' motion and dismissed the complaint. *See Pagan v. NYNEX Pension Plan,* 846 F. Supp. 19 (S.D.N.Y. 1994). We affirm the district court's judgment.

[2]                              BACKGROUND

[3] The operative facts are not in dispute. The Pension Plan, an "employee benefit plan" under ERISA, *see* 29 U.S.C. § 1002(3), provides retirement and long-term disability pensions to eligible employees of NYNEX and certain of NYNEX's subsidiaries. Under the Pension Plan non-management employees may obtain a long-term disability pension if (1) they have accrued fifteen or more years of service before their sixty-fifth birthday, and (2) they have "become totally disabled as a result of sickness or of injury." As explained in the Pension Plan's summary plan description, "totally disabled" means that an applicant "continue[s] to be disabled after . . . hav[ing] received 52 weeks of Sickness Disability Benefits under the [applicable] Sickness and Accident Disability Benefits Plan." NYNEX has delegated its authority to administer the Pension Plan to the NYNEX Employees' Benefits

Committee (NYNEX Committee).

[4] Gloria Pagan was employed for sixteen years as a maintenance administrator in the Customer Services Department of New York Telephone (NYT). NYT is a subsidiary of NYNEX and participates in the Pension Plan. The applicable "Sickness and Accident Disability Benefits Plan" for all NYT non-management employees, including Pagan, is the New York Telephone Sickness and Accident Disability Benefits Plan (S & A Disability Plan). The S & A Disability Plan provides short-term disability benefits to NYT employees who remain disabled for greater than seven calendar days, as long as claimants inform their supervisor of the nature of their disability on the first day of their absence and furnish certification of their disability from their doctor to NYT's Medical Department. An employee's ongoing entitlement to benefits under the S & A Disability Plan, however, is contingent on a continued finding of a medical disability by the NYT Medical Department, and employees receiving short-term disability benefits must consent to periodic examinations by the Department. Employees dissatisfied with the Medical Department's ultimate disability determination are given two avenues of redress under the S & A Disability Plan. First, the S & A Disability Plan provides that an appeal may be taken directly to the NYT Employees' Benefits Committee (NYT Committee), the S & A Disability Plan's administrator. In the alternative, those employees covered by a collective bargaining agreement may seek a second medical opinion from a physician mutually selected by their union and NYT. If dissatisfied with this second opinion, an employee may either appeal to the NYT Committee for reconsideration or obtain a third

**Page 440**

medical opinion. Employees may appeal this third opinion only to the NYT Committee. Finally, decisions of the NYT Committee may be appealed to the NYT Employees' Benefits Review Committee, whose decision is final.

[5] In November 1984 Pagan began a medical leave of absence from NYT because an acute asthmatic reaction to tobacco smoke at her place of work prevented her from performing her duties. On March 8, 1985 Pagan appeared at the NYT Medical Department for a scheduled visit in order for the Department to determine whether Pagan's condition still justified the payment of short-term disability benefits. Prior to her evaluation Dr. Sophie Bilezikian, the staff physician in charge of Pagan's case, informed Pagan that her workplace was now smoke-free. Pagan's own pulmonary specialist had informed the Department that Pagan therefore could resume working, and Dr. Bilezikian so notified Pagan. According to Dr. Bilezikian, on hearing this news Pagan became "very anxious and agitated because she had apparently been informed by the union that people were still smoking at work." Indeed, Pagan "was so upset at this visit that she was not examined," and another evaluation was scheduled for the following week.

[6] At the March 15th visit Pagan claimed to be suffering from facial and bodily injuries sustained in an automobile accident which occurred on February 10, 1985. Significantly, Pagan made no mention of this accident the week before to Dr. Bilezikian, nor was there any objective physical evidence of Pagan's alleged injuries. After Pagan was examined by an orthopedist, the NYT

Medical Department determined that Pagan was not physically disabled as a result of the accident. Rather, Dr. Bilezikian believed Pagan's problem to be psychological, and thus arranged for Pagan to meet with a staff psychiatrist. Pagan, however, failed to keep that scheduled appointment. The Medical Department then concluded that Pagan's further receipt of disability benefits was not warranted as (1) there was no evidence of any orthopedic disability stemming from her alleged automobile accident, and (2) her asthmatic condition no longer could be aggravated by her work environment, as her office was now smoke-free. Accordingly, Pagan's S & A Disability Plan benefits were discontinued as of April 2, 1985.

[7] Pagan disputed this determination, and, in accordance with the S & A Disability Plan's review procedures, Pagan, an employee under a collective bargaining agreement, chose to obtain a second medical opinion concerning her accident-related injuries. On July 18, 1985 Pagan was seen by an independent physician, mutually selected by NYT and Pagan's union, who agreed with the NYT Medical Department that Pagan was not physically disabled. Although Pagan could have sought a third opinion or pursued an appeal to the NYT Committee, she did not do so. Rather, Pagan filed claims with the National Labor Relations Board, the Social Security Administration and the New York State Workers' Compensation Board. Meanwhile, NYT requested that Pagan return to work and, when she failed to appear, NYT terminated her employment on November 29, 1985.

[8] Of sole relevance to this appeal are the proceedings before the Workers' Compensation Board.[fn1] Two separate hearings were held before the Workers' Compensation Board. In the first an administrative law judge (ALJ) for the Board determined that Pagan had no cognizable claim for disability benefits under New York law based on her asthmatic reaction to tobacco smoke. Pagan, however, was more successful in her application for disability benefits based primarily on her injuries allegedly sustained in the February 1985 automobile accident. On June 8, 1990 an ALJ decided that Pagan was entitled to disability benefits under New York's Disability Benefits Law for these injuries. *See* N Y Workers' Comp. L. § 200 *et seq.* (McKinney 1994). Specifically, the ALJ found: "[Pagan] has been totally disabled from her regular employment at all times
Page 441
since November 2, 1984 and this is the following award: [November 2, 1984] to date for fifty-two weeks at $530, no waiting period. That's pursuant to the [S & A Disability] Plan that was filed." NYT did not appeal that ruling.

[9] Thereafter, Pagan applied to the Pension Plan for a long-term disability pension, claiming that the Workers' Compensation Board's ruling of disability benefits for fifty-two weeks "pursuant to the [S & A Disability] Plan" satisfied the Pension Plan's requirement of at least fifty-two weeks of Sickness Disability Benefits under the applicable Sickness and Accident Disability Benefits Plan. The NYNEX Committee referred resolution of Pagan's claim to the NYT Committee, as permitted by section 2(e)(i) of the Pension Plan. On December 5, 1990 the NYT Committee determined that "there was no evidence that [Pagan was] totally disabled beyond April 1, 1985," and therefore rejected her claim for a long-term disability pension as she only had

received twenty-six weeks of S & A Disability Plan benefits. Pagan appealed this decision to the NYT Employees' Benefit Review Committee, which affirmed the NYT Committee's decision.

[10] Pagan then instituted this suit, claiming a wrongful denial of disability benefits in violation of ERISA's section 1132(a)(1)(B). Following the motions for summary judgment, the district court granted appellees' motion and denied Pagan's motion. *See Pagan,* 846 F. Supp. at 20. Accordingly, judgment was entered dismissing Pagan's complaint. This appeal followed.

[11]                              DISCUSSION

[12] We review *de novo* the grant of appellees' motion for summary judgment. *See Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1267 (2d Cir. 1995). When there exist no genuine issues of material fact in dispute, as is the case here, "our task is to determine whether the district court correctly applied the law." *Siskind v. Sperry Retirement Program,* 47 F.3d 498, 503 (2d Cir. 1995) (citation omitted).

[13] We first must address the threshold issue of the standard of review governing the NYNEX Committee's decision to deny Pagan long-term disability benefits under the Pension Plan.[fn2] In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956-957, 103 L.Ed.2d 80 (1989), the Supreme Court held that

> a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

[14] Thus, where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is "arbitrary and capricious." *See id.; see also Murphy v. International Business Machines Corporation,* 23 F.3d 719, 721 (2d Cir.), *cert. denied,* ___ U.S. ___, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994); *Reichelt v. Emhart Corp.,* 921 F.2d 425, 431 (2d Cir. 1990), *cert. denied,* 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991).

[15] A review of the applicable plan documents reveals that the Pension Plan grants the NYNEX Committee complete discretion to make long-term benefit eligibility decisions and to construe the terms of the plan. Significantly, section 3.4 of the Pension Plan provides that the NYNEX Committee "shall determine conclusively for all parties all questions arising in the administration of the [Pension] Plan and any decision of such Committee shall not be subject to further review." In addition, section 3.3(a) states that the NYNEX Committee "shall serve as the final review committee, under the Plan and the Pension Act, for the review of all . . . claims by participants." Further, section 3.3(c) of the Pension Plan provides that the NYNEX Committee "retain[s] such right, authority

Page 442

and discretion as is provided in or not expressly limited by said

Section 503 of [ERISA]," which requires that each ERISA-covered plan establish a claims procedure. *See* 29 U.S.C. § 1133. This authority, moreover, is emphasized in the Pension Plan's summary plan description, which states that the NYNEX Committee serves as the "final review committee" with regard to claims under the Pension Plan. While the *Bruch* Court did not set forth any talismans by which a plan could trigger the highly deferential "arbitrary and capricious" standard of review, *see Jordan,* 46 F.3d at 1269, we believe, as did the district court, that NYNEX's Pension Plan makes absolutely clear that the NYNEX Committee has broad discretion to determine eligibility issues. Thus, the NYNEX Committee's decision to deny Pagan long-term disability benefits must be affirmed unless it was arbitrary and capricious.

[16] Pagan contends that we should not apply this deferential standard because the NYNEX Committee acted under a conflict of interest. Specifically, Pagan notes that NYNEX funds the Pension Plan from current operating revenues, giving NYNEX an apparent incentive to deny benefits. Moreover, Pagan points out that the members of the NYNEX Committee serve in dual roles, both as the Pension Plan's administrators and as NYNEX employees. *See Brown v. Blue Cross and Blue Shield of Ala.,* 898 F.2d 1556, 1561-68 (11th Cir. 1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *Zisel v. Prudential Ins. Co. of America,* 845 F. Supp. 949, 951 n. 3 (E.D.N.Y. 1994) ("It is undisputed that the Plan at issue here is self-funded by Sears and that the Administrator is a Sears executive. Consequently, it is clear that the Administrator is operating under a conflict of interest."). *Bruch* instructs us, however, that the existence of such an alleged conflict does not operate to change the standard of review, but rather becomes "a facto[r] in determining whether there is an abuse of discretion." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 957 (quotation omitted). Accordingly, we review the NYNEX Committee's decision under the arbitrary and capricious standard, irrespective of whether the NYNEX Committee was operating under a possible or actual conflict of interest. *See Heidgerd v. Olin Corp.,* 906 F.2d 903, 908 (2d Cir. 1990).

[17] Under the arbitrary and capricious standard of review, we may overturn a decision to deny benefits only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffman-La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993) (quotation omitted); *see also Bowman Transp., Inc. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) ("A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (quotation omitted). This scope of review is narrow, thus we are not free to substitute our own judgment for that of the NYNEX Committee as if we were considering the issue of eligibility anew. *See Bowman,* 419 U.S. at 285, 95 S.Ct. at 442; *Jordan,* 46 F.3d at 1271 ("The court may not upset a reasonable interpretation by the administrator.") (citations omitted).

[18] As discussed above, the NYNEX Committee rested its decision to deny Pagan long-term benefits under the Pension Plan on Pagan's failure to satisfy the plan's requirement of receipt of "52 weeks of Sickness Disability Benefits under the [applicable] Sickness and Accident Disability Benefits Plan." The NYNEX Committee found

that Pagan's disability benefits under her "Sickness and Disability Benefits Plan," *i.e.*, the S & A Disability Plan, were terminated on April 1, 1985 after only twenty-six weeks, and her appeal under that plan's review procedures was unsuccessful. Pagan argues that this determination was arbitrary and capricious in that the NYNEX Committee failed to include the fifty-two weeks of disability benefits awarded by the Workers' Compensation Board when calculating the period in which she received S & A Disability Plan benefits. Specifically, Pagan seizes on the language of the ALJ's order, which directed payment of workers' compensation benefits "pursuant to the [S & A Disability] Plan that was filed."

**Page 443**

[19] We find that the NYNEX Committee reasonably excluded the workers' compensation award in determining Pagan's eligibility under the Pension Plan. Under New York's Disability Benefits Law, an employer may provide for payment of workers' compensation benefits by filing a plan with the Workers' Compensation Board which guarantees disability benefits at least as favorable as those supplied under state law. *See* N.Y. Workers' Comp. L. § 211(5) (McKinney 1994). If an employer elects this option, as NYNEX chose to do here, state-mandated benefits must be paid pursuant to that filed plan. *See id.* ("the obligations and benefits of the employees shall be as provided in said plan or agreement"). Thus, once the ALJ determined that Pagan was disabled within the meaning of New York's Disability Benefits Law, he simply turned to NYNEX's filed plan, the S & A Disability Plan, to calculate the dollar amount of the award and ordered benefits paid to Pagan at the S & A Disability Plan's rate. This decision, regardless of the actual language employed by the ALJ, did not transform the determination that Pagan was eligible for workers' compensation benefits into a determination that she was also eligible for short-term disability benefits as defined by the S & A Disability Plan. Thus, the NYNEX Committee's decision to limit the award of long-term benefits under the Pension Plan only to those applicants who receive benefits directly under the applicable Sickness and Disability Benefits Plan itself, rather than to those who receive similar benefits from the Workers' Compensation Board, was not unreasonable. *See Kunstenaar v. Connecticut General Life Ins. Co.*, 902 F.2d 181, 184 (2d Cir. 1990) (holding that definition of "disability" contained in New York Workers' Compensation statute is not binding on trustees of an ERISA plan). Therefore, the decision to deny Pagan long-term disability benefits was neither arbitrary nor capricious.

[20] Even if we were to find Pagan's interpretation to be reasonable, moreover, this alone would not permit us to disturb the eligibility decision reached by the NYNEX Committee. Significantly, the plain language of both the Pension Plan and summary plan description, despite the characterizations ascribed to them by Pagan, does not require the NYNEX Committee to treat a Workers' Compensation Board award in any specific manner. Under a reasonable construction of the plan documents, Pagan did not receive fifty-two weeks of disability benefits "*under*" the S & A Disability Plan; rather, she received twenty-six weeks of benefits "under" the S & A Disability Plan and twenty-six weeks of disability benefits "under" New York's Disability Benefits Law. Where it is necessary for a reviewing court to choose

between two competing yet reasonable interpretations of a pension plan, this Court must accept that offered by the administrators. *See Jordan,* 46 F.3d at 1273 ("[E]ven if that interpretation were as reasonable as the interpretation adopted by the . . . Committee . . . the arbitrary and capricious standard would require us to defer to the interpretation of the . . . Committee.") (citation omitted).

[21] Nor does Pagan's argument that the presence of a potential conflict of interest warrant a different conclusion. Pagan fails to explain how such an alleged conflict affected the reasonableness of the Committee's decision. *Cf. Jordan,* 46 F.3d at 1274. Accordingly, we reject her contention.

[22] Finally, Pagan argues that any ambiguity in the Pension Plan's language, specifically the phrase "under" the applicable sickness and accident disability benefits plan, should be resolved in her favor under the rule of *contra proferentum*. *See Masella v. Blue Cross & Blue Shield of Conn., Inc.,* 936 F.2d 98, 107 (2d Cir. 1991). The rule of *contra proferentum* is "that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the drafter." *O'Neil v. Retirement Plan For Salaried Employees of RKO General, Inc.,* 37 F.3d 55, 61 (2d Cir. 1994) (quotation omitted). As we explained in *Masella,* and again in *O'Neil,* application of the rule of *contra proferentum* is limited to those occasions in which this Court reviews an ERISA plan *de novo*. *See O'Neil,* 37 F.3d at 61; *Masella,* 936 F.2d at 107. As we review only the decision of the NYNEX Committee, we do so pursuant to the highly deferential arbitrary

**Page 444**

and capricious standard of review; the rule of *contra proferentum* is inapplicable.

[23]                        CONCLUSION

[24] In sum, we find no basis for reversing the judgment of the district court because we do not believe the decision of the NYNEX Committee was arbitrary or capricious. Accordingly, we affirm the judgment of the district court.

[fn1] The Social Security Administration found Pagan to be "disabled" as that term is defined by the Social Security Act, *see* 42 U.S.C. § 416(i), and awarded Pagan benefits. The National Labor Relations Board, on the other hand, dismissed Pagan's claim that her benefits were unlawfully terminated.

[fn2] Although it is unclear from the record, the parties do not dispute that the NYNEX Committee made the ultimate decision to deny Pagan long-term disability benefits under the Pension Plan. We therefore assume, for the purposes of this appeal, that the NYNEX Committee in fact was the decisionmaker.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved