UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------x

PHILIP GLYNN,

    Plaintiff,

v.

BANKERS LIFE AND CASUALTY CO.,

    Defendant.

------------------------------------------x

: : : : : : : : : : :

CIVIL NO. 3-02CV1802 (AVC)

AUGUST 30, 2004

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THE DEFENDANT
BANKERS LIFE AND CASUALTY COMPANY

John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com

and

Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

# TABLE OF CONTENTS

I.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT ...................... 1

II.    THIS COURT SHOULD REVIEW BANKERS' DENIAL OF BENEFITS
       UNDER ERISA UNDER THE ARBITRARY AND CAPRICIOUS
       STANDARD. ........................................................................................ 2

III.   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE
       DENIED BECAUSE BANKERS' EXERCISE OF THE DISCRETION
       GRANTED TO IT BY THE PLAN WAS NOT ARBITRARY OR
       CAPRICIOUS. ..................................................................................... 6

       A.   Federal Common Law Holds That Death While Driving Intoxicated is
            Not an Accident. .......................................................................... 7

       B.   Courts Do Not Require an Express Intoxication Exclusion to Deny Benefits
            Under ERISA. ............................................................................. 11

       C.   Bankers' Decision Passes the Arbitrary and Capricious Standard of Review. ....... 13

       D.   Under A *De novo* Review, Bankers' Decision Is Correct ...................... 18

IV.    IF BANKERS IS NOT THE FINAL DECISION MAKER ON PLAINTIFF'S
       CLAIM, THEN PLAINTIFF HAS FAILED TO EXHAUST HIS
       ADMINISTRATIVE REMEDIES, BARRING HIS CLAIM. ..................... 20

CONCLUSION ........................................................................................... 22

i

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PHILIP GLYNN,

       Plaintiff,

    v.

BANKERS LIFE AND CASUALTY CO.,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

: : : : : : : : : : :

CIVIL NO. 3-02CV1802 (AVC)

AUGUST 30, 2004

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

THE DEFENDANT
BANKERS LIFE AND CASUALTY COMPANY

John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com

and

Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

Pursuant to Fed.R.Civ.P. 56, defendant Bankers Life and Casualty Company

("Bankers") respectfully submits the within memorandum of law in opposition to

Plaintiff's motion for summary judgment on his claim brought under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Plaintiff's decedent, Peter Glynn (the "Decedent"), died on June 8, 2001 when he

was trapped in a single car rollover. With a blood alcohol content of 0.17%, he was

driving while intoxicated, and well in excess of the posted speed limit of 25 m.p.h., when

he lost control of the vehicle, a Mazda Miata convertible.

The Decedent's employer, Johnson & Johnson ("J&J") maintained an employee

benefits plan (the "Plan") that included Group Accident Policy No. SR84,0001 (the

"Policy") issued by Bankers. Plaintiff is not entitled to benefits under the Policy

because, under ERISA case law, the Decedent's death, resulting from drunken driving,

was not accidental.

## ARGUMENT

**I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT.**

Summary judgment is appropriate where the moving party establishes that "there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the burden

to establish that no material facts are in dispute. *Matsushita*, 475 U.S. at 586 n. 10;

*Celotex Corp. v. Carrett*, 477 U.S. 317, 322-23 (1986).

Summary judgment should be granted only when, after drawing all reasonable inferences in favor of the party opposing the motion, no reasonable trier of fact could find for the nonmoving party. *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990), *cert. denied*, 500 U.S. 928 (1991). "Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Locks Bd. of Fire Com'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

II.    **THIS COURT SHOULD REVIEW BANKERS' DENIAL OF BENEFITS UNDER ERISA UNDER THE ARBITRARY AND CAPRICIOUS STANDARD.**

ERISA regulates employee welfare benefit plans, including those plans that provide benefits in the event of death through the purchase of insurance. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987)(quoting 29 U.S.C. § 1002(1)). ERISA plans are administered by fiduciaries. 29 U.S.C. § 1102(a)(1); *Nazay v. Miller*, 949 F.2d 1323, 1329 (3d Cir. 1991). Under ERISA, a "fiduciary" is a person with any discretionary authority or responsibility in the administration of a plan:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002 (21)(A).

An ERISA plan administrator's denial of benefits is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where, as here, the plan

confers upon its administrator the discretionary authority to determine eligibility for benefits, courts will not disturb the administrator's ultimate conclusion unless it is "arbitrary and capricious." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d. Cir. 1995). Under an arbitrary and capricious standard, a court may not substitute its judgment for that of the plan administrator. *Pagan*, 52 F.3d at 442. The reviewing court may overturn a decision to deny benefits only if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.*; *Larsen v. Prudential Ins. Co. of America*, 151 F. Supp. 2d 167, 172 (D. Conn. 2001); *see also Bowman Transp. Inc. v. Arkansas – Best Freight Sys. Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)(when applying an arbitrary and capricious standard, the reviewing court must ask whether "there has been a clear error of judgment.").

To invoke the highly deferential "arbitrary and capricious" standard, the Court of Appeals for the Second Circuit does not require ERISA plans to use "magic words such as 'discretion' and 'deference'." *Jordan v. Retirement Committee Rensselaer Poly.*, 46 F.3d 1264, 1271 (2d Cir. 1995). The grant of discretion may be either explicit in the terms of the plans or implied from the plan's language. *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991). For example, this court has held that the phrases "when Prudential determines" and "when Prudential decides" in ERISA plan provisions covering benefits eligibility conferred discretion upon the administrator. *See, e.g., Larsen v. Prudential Ins. Co. of America, supra; see also Pagan*, 52 F.3d at 441-42 (holding that discretion was granted to the plan administrator pursuant to plan provisions such as the administrator "shall serve as the final review

3

committee . . . for the review of all . . . claims by participants."); *Koesis v. Standard Ins.*

*Co.*, 142 F. Supp. 2d 241, 251-52 (D. Conn. 2001).

Here, the arbitrary and capricious standard applies because Bankers had

discretion to deny Plaintiff's claim for benefits under the 24-Hour Accident Policy.[1]  The

Plan's summary plan description ("SPD") unequivocally names Bankers as the decision

maker on claims under the accident insurance plan:

The SPD reflects Banker's discretion to deny Plaintiff's claim for benefits:

| Plan Name | Plan Number | Insured By | Administered By |
|-----------|-------------|------------|-----------------|
| Accident Insurance | 503 | Bankers Life and Casualty Company | Bankers Life and Casualty Co. 666 Old Country Road Suite 300 Garden City, NY 11530 |

If you disagree with a claim decision or want to provide
additional information to Bankers Life & Casualty, you can
apply for a claim review. You request a review of the
claim by Bankers Life & Casualty within 60 days after you
receive the claim denial notice. You must state the reason
you believe the claim was improperly denied, and submit
any data, questions or comments you feel are appropriate
on your behalf. **Bankers Life & Casualty will evaluate
your claim** within 30 business days of the receipt of the
request and send a decision to you in writing.

Furthermore, the SPD refers to Bankers' decision on a claim as "final and

binding":

If your claim for a benefit is denied..., you will **be notified in writing by
the Administrator** for that benefit plan [here, Bankers].

Bankers' Disputed Issue of Material Fact 5, Affidavit of Robert Krol in
support of Bankers' motion for summary judgment, Exhibit B, SPD at 144
(emphasis supplied).

---

[1]    Bankers' Disputed Issue of Material Fact 5, Affidavit of Robert Krol in support of Bankers' motion
for summary judgment, Exhibit B, SPD at 144, 203.

4

.....

.... If you disagree with the denial, [you may request a review] in writing and **sent to the Administrator** for that benefit plan [ here, Bankers].

**The reviewer** will issue a decision within 60 days.

... you will be notified in writing of the **final and binding decision** on your claim.

Bankers' Disputed Issue of Material Fact 5, Affidavit of Robert Krol in support of Bankers' motion for summary judgment, Exhibit B, SPD at 204 (emphasis supplied).

There can be no doubt that the SPD's use of the above language, i.e., that "Bankers Life & Casualty will evaluate your claim," "[i]f your claim . . . is denied . . . you will be notified in writing by [Bankers as] Administrator for that benefit Plan," "you . . . [may] request a review . . . in writing and sent to [Bankers as] Administrator for that benefit Plan," and "you will be notified in writing of the final and binding decision on your claim," confers discretion upon Bankers as plan accident benefit administrator. *See Larsen v. Prudential Ins. Co. of America, supra; see also, Mario v. P&C Ford Markets, Inc.*, 313 F.3d 758, 763 (2d cir. 2002)(plan language referring denial claims for benefits to P&C for resolution "is sufficient under our cases to trigger the 'arbitrary and capricious' standard of review."). Furthermore, Bankers in fact exercised its discretion in denying Plaintiffs' claim and issued the final and binding decision thereon. Declaration of Andrew Muscato in support of motion for summary judgment, Exhibit F, T67-6 to 18 ("Bankers is the ultimate authority on whether or not the claim is denied? Yes."). *See* Bankers' Disputed Issue of Material Fact 5.

III. **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE BANKERS' EXERCISE OF THE DISCRETION GRANTED TO IT BY THE PLAN WAS NOT ARBITRARY OR CAPRICIOUS.**

Benefit provisions of an ERISA regulated life insurance program are interpreted under principles of federal common law. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57, 107 S. Ct. 1549, 1557-58, 95 L. Ed. 2d 39 (1987). Rather than applying state insurance law which varies widely among jurisdictions, federal courts look to federal common law when interpreting provisions of plans and policies governed by ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 56-57.

Plaintiff plucked a few sentences from Pilot Life Ins. Co. v. Dedeaux, supra; Lifson v. INA Life Ins. Co. of New York, 333 F.3d 349 (2d Cir. 2003; Feifer v. Prudential Ins. Co. of America, 306 F.3d 1202 (2d Cir. 2002); Fay v. Oxford Health Plan, 287 F.3d 96 (2d. Cir. 2002); and Masella v. Blue Cross & Blue Shield of Conn., 936 F.2d 98 (2d Cir. 1991,)[2] for the purpose of implying that state law governs the Policy, although issued as part of J&J's ERISA Plan.

To the contrary, those cases state that federal common law govern the Plan and Policy and not state law. See Lifson, 333 F.3d at 352 ("Although this suit is largely a contract dispute, it arises under section 502(a)(1)(B) of ERISA. In claims under section 502(a)(1)(B), we apply federal common law, not state law, in interpreting the beneficiary's entitlement."); Feifer, 306 F.3d at 1210 ("In interpreting plan terms for purposes of claims under § 1132(a)(1)(B), we apply a federal common law of contract, informed both by general principles of contract law and by ERISA's purposes as

---

[2] Plaintiff also relies upon a 1960 case that is irrelevant because it predates the passage of ERISA in 1974, i.e., *Paskowska v. Prudential Ins. Co. of America*, 182 F. Supp. 819 (D. Conn. 1960).

manifested in its specific provision."); Fay, 287 F.3d at 104 ("ERISA plans are construed according to federal common law."); Masella, 936 F.2d at 107 ("Since this is an ERISA case, we are not necessarily bound by the 'hornbook rule of contract interpretation' that 'ambiguities are to be construed against the insurer'.").[3]

In 2001, the Second Circuit made it clear that "in ERISA cases, state law does not control. Instead, general common law principles apply." *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 84 n. 5(2d Cir. 2001), *cert. denied*, 123 S. Ct. 1015 (2003).

**A.    Federal Common Law Holds That Death While Driving Intoxicated is Not an Accident.**

There can be no real dispute that the opinion of the Court of Appeals for the First Circuit in *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S. Ct. 581, 112 L.Ed.2d 586 (1990), provides the standard under federal common law for determining when a particular event is an "accident" for purposes of an accidental death benefits plan governed by ERISA.

In *Wickman*, the First Circuit upheld the lower court's decision denying accidental death benefits for an insured decedent because he "intentionally climbed over [a bridge's] guardrail and suspended himself with one hand." *Id.* at 1083. The *Wickman* standard requires the fact-finder to ascertain whether the insured subjectively expected an injury similar in type to one that occurred, and if he did not, whether his belief was reasonable. If the insured's subjective expectations cannot be ascertained, the fact-finder should then engage in an objective analysis of a reasonable person's expectations: whether a reasonable person, with background and characteristics similar to the insured, would have

_____
3    Because federal case law governs here, and not state law, Plaintiff relies in error upon *Israel v. State Farm Mutual Auto Ins. Co.*, 259 Conn. 503 (2002); *Hertz Corp. v. Federal Ins. Co.*, 245 Conn. 374 (1998); and *Knight v. Metropolitan Life*, 103 Ariz. 100 (1968)(decided before ERISA was enacted in 1974).

viewed the injury as highly likely to occur as a result of his intentional conduct.

*Wickman*, 908 F.2d at 1088.

If a reasonable person would have expected the injury to occur as a result of the insured's actions, then the resultant injury is not an accident. "This finding equates with the determination either that [the decedent] expected the result, or that a reasonable person in his shoes would have expected the result, and that any other expectation would be unreasonable." [4] *Id.* at 1089.

Two Courts of Appeals have addressed the specific issue before this Court: whether death while driving intoxicated is accidental. Both held, on summary judgment, that a drunk driving death is not an "accident" within the meaning of an accidental death policy. The Court of Appeals for the Fourth Circuit affirmed a grant of summary judgment in favor of the insurer in *Baker v. Provident Life & Accident Ins. Co.*, 171 F.3d 939 (4th Cir. 1999). There, the insurer had denied accidental injury benefits to an insured who had pled guilty to involuntary manslaughter that had occurred when he was driving drunk because he voluntarily participated in a felony, drunk driving. *Id.* at 941. The Fourth Circuit analogized that "[a]ccidental death benefits cases present the same question as the one we face here: "what level of expectation is necessary for the consequences of a voluntary act to be voluntary? Must the actor specifically intend the consequences of that act, or is it enough that a reasonable person would foresee those consequences?'" 171 F.3d at 942. Relying on the long line of post-*Wickman* cases that

---

[4]    The *Wickman* court ultimately concluded that the decedent's death in that case was not an accident. Despite no direct evidence that Wickman expected to die as a result of hanging off the bridge, the court acknowledged that "a reasonable person in Wickman's shoes would have expected to die or be seriously injured as a result of climbing over the guardrail and hanging on with only one hand. . . . [especially] given the height of the bridge, the narrow foothold, that Wickman possessed no extraordinary gymnastic, acrobatic, or other athletic skills, and the absence of evidence that would have enabled him to hold on." 908 F.2d at 1089.

8

hold death while driving drunk to be not accidental, the court concluded as a matter of law that "a reasonable person in Baker's position would have known that death or serious injury was a *reasonably foreseeable result* of driving while intoxicated." *Id.* at 942-943 (emphasis supplied).

The other federal circuit court that addressed this issue in the context of ERISA was the Court of Appeals for the Seventh Circuit in *Cozzie v. Metropolitan Life Ins. Co.,* 140 F.3d 1104 (7th Cir. 1998). There, like here, the plan administrator had denied accidental death benefits to the beneficiary of an insured who died in a one-car rollover caused by the insured's drunk driving. Like the J&J plan here, the plan in *Cozzie* did not define "accident." *Id.* at 1109. The plan administrator "determined accidental death benefits were not payable because Robert Cozzie did not have an 'accident'." *Id.* at 1108. The lower court had concluded that the insurer was reasonable when it defined an "accident" as "not reasonably foreseeable." The Seventh Circuit noted the insurer's definition did not contradict the ERISA plan because the term "accident" was undefined in the plan. *Id.* at 1109. The Seventh Circuit also found that the insurer's interpretation was "consistent with the goals of the plan." *Id.* The court examined *Wickman* and a line of post-*Wickman* federal district court cases holding that a drunk driving death is not an "accident." *Id.* at 1109-10. Using the deferential arbitrary and capricious standard, and applying those decisions, the Seventh Circuit held that the insurer's definition of "accident" was not unreasonable. *Id.* at 1110; *see also Cates v. Metropolitan Life Ins. Co., Inc.,* 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996), aff'd 149 F. 3d 1182 (6th Cir. 1998) (holding that it is not unreasonable to conclude that driving while intoxicated makes the possibility of injury or death reasonably foreseeable and thus not accidental).

*Baker* and *Cozzie* recognize that, since *Wickman*, a solid majority of federal courts have granted summary judgment to the insurer on the theory that the insured should have foreseen that death or serious injury would result from drunk driving because the dangers of drunk driving are well-known and widely publicized. *See e.g., Fowler v. Metro. Life Ins. Co.,* 938 F. Supp. 476, 480 (W.D. Tenn. 1996)(finding, under arbitrary and capricious standard of review, that because "the hazards of drinking and driving are widely known and widely publicized," it was "clearly foreseeable that driving while intoxicated may result in death or bodily harm" and thus administrator's determination that death was not accidental was reasonable); *Miller v. Auto-Alliance Int'l, Inc.,* 953 F. Supp. 172, 176 (E.D. Mich. 1997) (finding that insurer's denial of benefits was reasonable where "given common knowledge and the current opprobrium in the media and legal system for driving while intoxicated, the decedent should have reasonably foreseen that death or serious injury may result from his actions); *Nelson v. Sun Life Assur. Co. of Canada,* 962 F. Supp. 1010, 1012 (W.D. Mich. 1997)(finding that because "[a]ll drivers know, or should know, the dire consequences of drunk driving" and because "[a]s a matter of common sense and reasonableness, there can be no question that but for intoxication, the mishap might well not have happened," denial of benefits was proper); *Schultz v. Metropolitan Life Ins. Co.,* 994 F. Supp. 1419, 1421 (M.D. Fla. 1997)("It is just common sense that a driver whose faculties are significantly impaired by alcohol or drugs, or both, risks his life as well as others. The case law is replete with situations in which an insured unwisely and unsuccessfully tempted fate. Denial of benefits is appropriate in such circumstances"); *Walker v. Metro. Life Ins. Co.,* 24 F. Supp. 2d 775 (E.D. Mich. 1977)(applying the *Wickman* framework under an arbitrary and capricious

10

standard of review and holding that although there was direct evidence that the insured

had not intended or expected to die, those expectations were unreasonable in light of the

well-publicized dangers of drunk driving); *but see King Ex. Rel. Schanus v. Hartford Life*

*and Acc.*, 357 F.3d 840 (8th Cir. 2004); *Metropolitan Life Ins. Co. v. Potter*, 992 F. Supp.

717 (D.N.J. 1998); *West v. Aetna Life Ins. Co.*, 171 F. Supp. 2d 856 (N.D. Iowa 2001).

**B.     Courts Do Not Require an Express Intoxication Exclusion to**
**Deny Benefits Under ERISA.**

      It matters not whether an express intoxication exclusion existed under the Plan or

in the Policy. Courts have rejected the argument that the denial of benefits is arbitrary

and capricious where the insurance plan does not expressly exclude benefits because of

an insured's intoxication. *See, e.g., Cozzie*, 963 F. Supp. at 648, 654 (upholding denial of

benefits where plan did not specifically exclude from coverage death caused by driving

while intoxicated); *Morton v. Smith*, 91 F.3d 867 (7th Cir. 1996) (upholding denial of

benefits where insured injured himself after jumping off roof of bar while intoxicated);

*Schultz v. Metropolitan Life Ins. Co.*, 994 F. Supp. 1419, 1422 (M.D. Fla. 1997)

(upholding denial of benefits where plan did not specifically exclude from coverage death

caused by driving while intoxicated); *Fowler*, 938 F. Supp. at 480; *Nelson*, 962 F. Supp.

at 1012 (W.D. Mich. 1997); *Cates v. Metropolitan Life Ins. Co., supra.*

      The Seventh Circuit in *Cozzie* observed that although the plan there did not

contain an intoxication exclusion, it did "exclude other conduct – notably suicide,

attempted suicide, and purposely self-inflicted injury." *Id.* at 1111. That court stated that

"given the amount of alcohol ingested here [the decedent's blood alcohol level was .252]

and the exclusion of any other cause for the accident, we cannot say that it was arbitrary

and capricious for MetLife to determine that this particular vehicular death was no

11

'accident'." *Id.* Here, as in *Cates*, the Policy contains express exclusions for "suicide"

and "self-destruction." *See* Plaintiff's Exhibit A, Policy at D010, *see also* Pb n.1.

Paraphrasing *Cates*, "given the amount of alcohol ingested here [the Decedent's blood

alcohol level was 0.18], [this Court should not] say that it was arbitrary and capricious for

[Bankers] to determine that this particular vehicular death was no 'accident'." *See* 14 F.

Supp. 2d at 1111.

Plaintiff's mistakenly relies upon *Bishop v. National Health Ins. Co.*, 344 F.3d

305 (2d Cir. 2003); and *Smith v. Life Ins. Co. of North America*, 872 F. Supp. 482 (W.D.

Tenn. 1994); and misinterprets *Cates v. Metropolitan Life Ins. Co.*, *supra*. In *Bishop* and

*Smith*, the insurance policies were not part of a plan governed by ERISA. In *Bishop*, the

Second Circuit reversed the lower court and directed it to grant summary judgment to the

defendant insurer "because [the decedent's blood alcohol content of .165] is evidence that

he was intoxicated under any definition in any of the Connecticut statutes," and the

policy's exclusion did not require "that the loss must have been proximately caused by the

intoxication." *Id.* at 310. In *Smith*, the court granted judgment for the insurer. The court

held that the insured's death was not an accident under the policy because "it is clear that

decedent's voluntary consumption of alcohol, resulting in his blood alcohol level of .23,

was at least a partial cause of the collision. Thus, the collision did not occur solely by

accidental means as required by the policy." *Id.* at 484-85.

*Cates* involved an ERISA plan with no express intoxication exclusion. *See* 14 F.

Supp. 2d at 1025. There, the court upheld the insurer's denial of benefits under the

arbitrary and capricious standard, finding that

it is neither unreasonable nor irrational in light of the Plan's
provisions for Metropolitan to conclude 'the act of driving

while intoxicated at BAC 00.18 rendered the infliction of
serious injury or death reasonably foreseeable and, hence,
not accidental as contemplated by the Plan.

14 F. Supp. 2d at 1027.

C. **Bankers' Decision Passes the Arbitrary and Capricious Standard of Review.**

Bankers' exercise of its discretion under the Plan to deny the claim was not

arbitrary or capricious, i.e., its decision to deny the claim was not "without reason,

unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at

442; *Larsen*, 151 F. Supp. 2d at 172. Substantial evidence existed demonstrating that the

Decedent died of foreseeable injuries sustained when he lost control of his Mazda Miata

convertible while driving (1) highly intoxicated with a blood alcohol content of 0.17%

(Plaintiff's Exhibit F, at D077), (2) down a hill with a series of sharp curves (Plaintiff's

Exhibit G, at D062), (3) at almost twice the posted legal speed limit (Plaintiff's Exhibit G,

at D066)[5]. With that blood alcohol level, the Decedent would have had difficulty

walking and standing, his judgment and perception would have been severely impaired

and he could expect to experience a blackout. *Blood Alcohol Level and You: Behavior*

*by Numbers*, http://www.factsontap.org/yourbody/BALandU.htm.[6]   The conclusion of

Plaintiff's expert, Mehdi Mostaghimi, Ph.D, that "the probability of an alcohol related

[5] The Police calculated that the Decedent's automobile was "traveling a minimum speed of 42.34 miles per hour" in an area with a posted 25 MPH speed limit (Plaintiff's Exhibit G, at D066). That speed violated Conn.Gen.Stat. § 14-218a, Traveling unreasonably fast.

[6] Many colleges and universities use the same information, advising students that at a blood alcohol level of .14% to .17%, "You could have difficulty talking, walking, or even standing. Your judgment and perception are severely impaired. You may become more aggressive, and there is an increased risk of accidentally injuring yourself or others. This is the point when you may experience a blackout." See, e.g., *Blood Alcohol Level: Let's put it all out on the table*, http://www.csub.edu/UnivServices/CounselBAL2.htm, *What Your BAC Means*, http://www.nd.edu/~ucc/yourbac.html; *Blood Alcohol Content Calculator-The Police Notebook*, http://www.ou.edu/oupd/bac.htm.

fatal accident for an alcohol impaired driver . . . is about one in a million"[7] is nonsense because it ignores the obvious: that as a driver's blood alcohol content increases, the more likely death will occur. A driver with a blood alcohol content of .15% is 380 times more likely to die in a single vehicle crash than a nondrinker. Zador, P.L., Krawchuk, S.A., & Voas, R.B. (2000), Relative Risk of Fatal Crash Involvement by BAC, Age, and Gender.[8] See Bankers' Disputed Issue of Material Fact 7. The courts in *Bishop* (BAC .252), *Smith* (BAC .23), and *Cates* (BAC .18) all relied upon the excessive blood alcohol levels as a basis for denying coverage. Here, the Decedent was operating a small sport car with its convertible top lowered (Plaintiff's Exhibit G, at D062) with a BAC of .17 (Plaintiff's Exhibit F, at D077). The Decedent had only six months experience driving the small convertible (Bankers' Disputed Issue of Fact 6, Affidavit of Robert Krol in support of Bankers' motion for summary judgment, Exhibit B, at D022). In other words, the Decedent's death occurred under circumstances where an inexperienced, highly intoxicated driver was speeding downhill through a series of sharp curves in a small sports convertible and lost control of his sport car.

The Decedent should have known the inherent dangerousness of his reckless driving, especially in light of his driving a convertible, top down, without a roll-over bar. "A reasonable person in the decedent's shoes would have known that driving while intoxicated at twice the legal limit was highly likely to result in serious injury or death." *Walker*, 24 F. Supp. 2d at 782. Thus, the insured's death cannot be characterized as

---

[7]   Plaintiff's Exhibit 1, at 2.

[8]   Report HS-809-050, Washington D.C., U.S. Department of Transportation, National Highway Traffic Safety Administration, statistical chart reprinted at http://www.madd.org/stats/0,1056,4839,00.html and http://www.ou.edu/oupd/bac.htm

"accidental" because a reasonable person with the Decedent's background and experience would have known that injury was highly likely to occur as a result of his intentional conduct in driving too fast while intoxicated.

If the Decedent did not believe that his automobile would overturn while driving almost twice the speed limit downhill through a series of sharp curves while intoxicated, then his belief was unreasonable. Under *Wickman*, if the insured's belief is unreasonable, then the injury will not be considered an accident. In *Wickman*, the Court used the "game" of Russian roulette to illustrate this principle, stating that although the players neither intend or expect to be killed, courts have routinely held in those cases that death occurring during those "games," regardless of actual expectation or intention, are not accidental. *Wickman*, 908 F.2d at 1089. "If the insured did not believe that the result would occur, we must consider whether such an estimation can be considered reasonable. If the expectations of the insured were objectively unreasonable, then injuries or death resulting therefrom are not accidental." *Cozzie*, 140 F.3d at 1110.

A decedent does not have to intend to intend to die for his death to be intentional. *Nelson v. Sun Life Assurance Co.*, 962 F. Supp. at 1013. Put another way, "[w]hile [the decedent] did not intend to die, his expectations were unreasonable given his condition. It is just common sense that a driver whose faculties are significantly impaired by alcohol . . . risks his life as well as others [by driving drunk]. . . . Denial of benefits is appropriate in such circumstances." *Schultz*, 994 F. Supp. at 1421. Here, the Decedent should have known that he was risking his life by driving while intoxicated. Any other expectation simply is unreasonable. As a result, Bankers did not act arbitrarily and capriciously in

15

denying benefits under the Plan to plaintiff. Bankers made no "clear error of judgment."

*Bowman Transp.*, 419 U.S. at 285.

Plaintiff proffers the deposition of Bankers' Robert Krol in a vain attempt to establish that the Decedent's death "was not intended", "unforeseen" and "unexpected." See Plaintiff's Local Rule 56(a)1 Statement, ¶¶ 10, 14 and 15. That proffer is inadmissible under Fed.R.Evid. 602 and those statements should be stricken under Local Rule 56(a)3. Reviewing the record, there is no evidence that Robert Krol ever spoke to or met the Decedent. Local Rule 56(a)(3) requires that each statement by Plaintiff "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Those portions of Robert Krol's deposition testimony regarding whether the Decedent's death was not intended, unforeseen and unexpected are inadmissible under Fed.R.Evid. 602 because Krol has no personal knowledge as to the state of mind of the Decedent and whether the Decedent intended, foresaw or expected his death. Therefore, Plaintiff's Statements 10, 14 and 15 are not properly before this Court and should be stricken because inadmissible hearsay cannot be considered on Plaintiffs' summary judgment motion. *See Fashion Boutique of Short Hills. v. Fendi USA*, 314 F.3d 48, 55 (2d Cir. 2002); *Hollander v. American Cynamid Company*, 999 F. Supp. 252, 255-56 (D.Conn. 1999), aff'd, 172 F.3d 192 (2d Cir. 1999). [9]

---

[9]      Plaintiff also proffers the deposition of Bankers' Robert Krol in an effort to disguise speculation as fact, i.e. that *if* the Decedent had and individual policy not part of any ERISA plan and *if* he had died while driving intoxicated, then Bankers would have paid benefits on that nonexistent policy. See Plaintiff's Local Rule 56(a)1 Statement, ¶ 18. That proffer is inadmissible under Fed.R.Evid. 402 and those paragraphs are improper under Local Rule 56(a)3. Reviewing the record, there is no evidence that the Decedent purchased a non-ERISA policy. Therefore, Plaintiff's Statement 18 is pure speculation. Local Rule 56(a)(3) requires that each statement by Plaintiff "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Robert Krol's deposition testimony regarding whether a policy that never existed is speculative and inadmissible

But what was the Decedent's state of mind on the day and night he died? The facts describe a socially isolated, morbidly obese loner without a girlfriend or friends.

Although advancing into middle age, the Decedent lived with his father for eight years. Was he was depressed, despondent, or in a such a state of mind that his death may not have been unintended, not unforeseen or not unexpected? *See* Affidavit of Krol, Exhibit B, at D067, D070, D022; Bankers' Disputed Issue of Material Fact 1. The Police concluded that "[The Decedent] caused his own death." Affidavit of Krol, Exhibit B, at D066; Disputed Issue of Material Fact 2. The person who was closest to him, his father, suffered a stroke and has not been deposed on these issues. See Opposing Declaration of Muscato, ¶ 2 and Exhibit 1.

Where the facts demonstrate that the Decedent was driving while intoxicated (blood alcohol content of 0.17%), and speeding (almost twice the posted legal limit), and as a result lost control of his convertible automobile in a series of sharp curves, Bankers properly denied the claim in reliance upon ERISA common law. The overwhelming majority of district courts that had reviewed that issue had upheld as not unreasonable the determination of ERISA plan administrators that death while driving intoxicated is not accidental.

For example, the *Cates* court relied upon prior decisions of federal courts that reviewed ERISA cases and "recognized that foreseeable harm resulting from an insured's intentional actions is not accidental." 14 F. Supp. 2d at 1027. There, the court stated that

on this summary judgment motion because it is speculation. Therefore, Plaintiff's Statement 18 is not properly before this Court and should be disregarded because inadmissible hearsay cannot be considered on Plaintiff's summary judgment motion. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 131 n. 12 (2nd Cir. 2004) (On the summary judgment motion, "[s]ome of the affidavits contain[ed] hearsay statements and speculation, however, and as these elements of the affidavits would be inadmissible at trial, the district court was free to disregard them.")

"[g]iven these prior interpretations of similar ERISA provisions, the Court cannot say Metropolitan's denial of Cates' accidental death benefits claim was arbitrary and capricious." *Id.* This case is remarkably similar to *Cates*, because, just like the Decedent here, the *Cates* decedent died in a single vehicle mishap while he was driving with a blood alcohol content of 00.18. *See* 14 F. Supp. 2d at 1025.

Several additional principles apply here. First, in cases where both the claimant and the administrator "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000). Second, under the arbitrary and capricious standard, "a district court's review . . . is limited to the administrative record." *Miller v. United Welfare Fund*, 72w F.3d 1066, 1071 (2d Cir. 1995). *See* Bankers' Disputed Issue of Material Fact 4. Third, when reviewing the denial of benefits plan by an insurer that both determines benefit eligibility and pays those benefits from its own funds, the Court of Appeals for the Second Circuit advises courts to weigh that conflict as a factor in determining whether the insurer abused its discretion. *Jordan*, 46 F.3d at 1274. The insurer-administrator's reasonable interpretation of the plan will stand unless the claimant can show not only the existence of a potential conflict of interest but that the conflict affected the reasonableness of the administrator's decision. *Pagan*, 52 F.3d at 443; *see also Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996).

**D.    Under A *De Novo* Review, Bankers' Decision Is Correct.**

Under a *de novo* review, Bankers' denial of Plaintiff's claim is correct. Recent federal district court cases have upheld an insurer's denial of death benefits under a *de*

18

*novo* review. In *Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486 (D.R.I. 2000),

the court ruled that an insured's death resulting from drunk driving and speeding was not

an accident. There, the decedent insured had been driving at a high rate of speed and had

a blood alcohol content of over four times the legal limit. Although the ERISA plan

documents for the decedent's accidental death insurance coverage did not define

"accident," the court, "[a]pp]ying the rule of *Wickman*," held that the decedent's death

"cannot be deemed an accident." 103 F. Supp. 2d at 494. "Even if it be assumed that Mr.

Mullaney himself may have intended or foreseen any harm in attempting to drive while

grossly intoxicated, a reasonable person surely would have known that such conduct

would likely result in serious bodily harm or death. Mr. Mullaney's actions clearly fail

the *Wickman* test, and his death cannot be considered "accidental." *Id.*

Also under a *de novo* review, the court in *Poeppel v. Hartford Life Ins. Co.*, 273

F. Supp. 2d 714 (D.S.C. 2003), came to the same conclusion with regard to an insured

who did when his car his a tree and whose blood alcohol level was above the legal limit.

Like this case and *Mullaney*, the plan did not contain a definition of "accident." Quoting

substantially from *Mullaney*, and following the Fourth Circuit's holding in *Baker*, the

*Poeppel* court concluded, on summary judgment, that the insured's death could not be

considered "accidental" under the *Wickman* test. *See also Sorrells v. Sun Life Assur. Co.*

*of Canada*, 85 F. Supp. 2d 1221, 1234, (S.D. Ala. 2000)(holding the same under *de novo*

review and noting "[g]iven the well-documented and well-known effects of intoxication

on a person's ability to operate a motor vehicle, and given the absence of evidence of any

other cause of the accident, the court concludes that there is no conflicting evidence

which would require a trial on the issues"); *Nelson v. Sun Life Insurance Co. of Can.*, 962

F. Supp. 1010, 1013 (W.D. Mich. 1997) (upholding the denial under a *de novo* standard

and finding that the policy exclusion for self-inflicted injuries applied because voluntary

intoxication seriously impaired the decedent's judgment and ability to control his

vehicle).

IV.   **IF BANKERS IS NOT THE FINAL DECISION MAKER ON
      PLAINTIFF'S CLAIM, THEN PLAINTIFF HAS FAILED TO
      EXHAUST HIS ADMINISTRATIVE REMEDIES, BARRING HIS
      CLAIM.**

        Before filing suit in federal court under ERISA, a claimant seeking the payment

of benefits under an ERISA-governed plan must first exhaust the internal administrative

remedies provided by the plan.  *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d

588, 592 (2d. Cir. 1993)("The doctrine of exhaustion of administrative remedies provides

'that no one is entitled to judicial relief for a supposed or threatened injury until the

prescribed administrative remedy has been exhausted'" (citation omitted).  The

requirement of exhaustion of remedies applies in ERISA cases.  *Id.* at 594; *see also*

*Millane v. Becton Dickinson & Co.*, 84 F. Supp. 2d 282, 288 (D. Conn. 1999)(granting

summary judgment to the defendant dismissing the complaint because of the plaintiff's

failure to exhaust administrative remedies under an ERISA-governed retirement plan).

        In *Kennedy*, a case decided after *Firestone*, the Second Circuit explained that the

primary purposes of the exhaustion requirement are to

              (1)     uphold Congress' desire that ERISA trustees be
                      responsible for their actions, not the federal courts;

              (2)     provide a sufficiently clear record of administrative
                      action if litigation should ensue; and

              (3)     assume that any judicial review of fiduciary action
                      (or inaction) is made under the arbitrary and
                      capricious standard, not *de novo*.

589 F.2d at 594; *Millane*, 84 F. Supp. 2d at 288.

Here, in denying the claim, Bankers relied upon the Plan and the Policy (Affidavit of Robert Krol, ¶ 20 and 21). At the time it made its decision, it had reviewed its entire Glynn claim file (Affidavit of Robert Krol, ¶ 8, and Exhibit B). In its denial letter dated March 4, 2002, Bankers notified Plaintiff that the Policy did "not permit payment of benefits" because "[f]ederal courts, in applying federal common law to claims for accidental death and dismemberment benefits under ERISA plans, have uniformly held that death resulting from driving while intoxicated is not accidental" (Plaintiff's Exhibit K). Bankers notified Plaintiff that an appeal could be made within 60 days by writing to Bankers. Plaintiff was invited to "[i]nclude any documentation that you feel supports this claim." (Plaintiff's Exhibit K). But Plaintiff corresponded with Bankers without providing further documentation. Bankers Disputed Issue of Fact 3.

Here, on his motion for summary judgment, Plaintiff appears to ignore the Plan and the SPD. Although the SPD names "The Pension Committee of Johnson & Johnson as the Plan Administrator," Plaintiff did not sue that entity or appeal any denial of benefits to it. *See* SPD at 200, attached as Exhibit E to the Declaration of Andrew Muscato, Esq. In Support of Defendant's Motion for Summary Judgment J&J.

Here, assuming *arguendo* that Plaintiff prevails on his claim that Bankers did not have the discretion to deny his claim, a position with which Bankers vehemently disagrees, then some entity had to have that discretion. Although Plaintiff sought a claim review from Bankers, there is no evidence on the record that he appealed Bankers' denial to Johnson & Johnson. If Plaintiff failed to exhaust administrative remedies, then that failure should result in a judgment granted to Bankers. *See Kennedy*, 989 F.2d at 596

21

(affirming grant of judgment dismissing the complaint for failure to exhaust ERISA-plan

remedies); *Millane*, 84 F. Supp. at 288 (granting of summary judgment dismissing

complaint for failure to exhaust ERISA-plan remedies).

## CONCLUSION

Because Plaintiff's decedent's death while driving intoxicated was not an accident

as a matter of law, Bankers respectfully requests that this Court deny Plaintiff's motion

for summary judgment.

THE DEFENDANT
BANKERS LIFE AND CASUALTY
COMPANY

BY:

John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com

and

Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

22

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, this the 2nd day of August 2003 to:

Everett H. Madin, Jr., Esq.
RisCassi and Davis, P.C.
131 Oak Street
P.O. Box 261557
Hartford, CT 06126-1557



John T. Shaban

23