UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------x
PHILIP GLYNN,                            :    CIVIL NO. 3-02CV1802 (AVC)
                                         :
    Plaintiff,                           :
                                         :
v.                                       :
                                         :
BANKERS LIFE AND CASUALTY CO.,           :
                                         :
    Defendant.                           :    SEPTEMBER 15, 2004
----------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT DISMISSING THE COMPLAINT**

Defendant Bankers Life and Casualty Company ("Bankers") respectfully submits the within reply memorandum of law in further support of its motion for summary judgment to address more fully the following:

- If Bankers was not a person with discretionary authority under the plan, then Plaintiff failed to exhaust his administrative remedies because he would have failed to appeal the denial of his claim to a plan fiduciary;

- The Defendant had no reasonable expectation of survival while driving with a blood alcohol level ("BAL") of 0.17 because, to achieve that level, he consumed an extraordinary amount of liquor in two hours, as much as 22 ounces of vodka; and

- Plaintiff's inadmissible hearsay and affidavits that violate discovery rules cannot be considered as opposing this motion.

ORAL ARGUMENT REQUESTED

## ARGUMENT

I.  **IF, AS PLAINTIFF POSITS, BANKERS DID NOT HAVE DISCRETION TO DENY HIS CLAIM FOR BENEFITS, THEN THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BECAUSE PLAINTIFF FAILED TO APPEAL TO A PLAN FIDUCIARY.**

Plaintiff insists that some other entity had the discretion to determine Plaintiff's eligibility for benefits under the Johnson & Johnson ("J&J") ERISA plan (the "Plan") and Bankers' Policy. If, as Plaintiff claims and Bankers vigorously disputes, Bankers did not have the decision-making authority, then who did and why did Plaintiff not appeal the denial to that entity?

By law, when an application for benefits has been denied, the plan must provide the applicant an opportunity to appeal to the plan administrator. *Jones v. UNUM Ins. Co. of America*, 223 F.3d 130, 140 (2d Cir. 2000); *see* ERISA, 29 U.S.C. § 1133(2). Therefore, under the Plan, Plaintiff had the "opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan" for a full and fair review of Bankers' adverse benefit determination. *See* 29 C.F.R. § 2560-503-1(b)(1).

Some entity was required by law to be the ultimate decision-maker under the Plan. If Bankers was not the "appropriate named <u>fiduciary</u> of the plan" (*id.*), i.e., a person who "exercises any discretionary authority" under a plan,[1] then the Decedent never appealed the adverse benefit determination to a plan fiduciary.

---

[1] ERISA defines the term "fiduciary" as a person with discretionary authority:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority of discretionary control respecting management of such plan . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
> 29 U.S.C. § 1002 (21)(A).

The Court of Appeals for the Second Circuit requires the exhaustion of administrative remedies as a threshold to this Court's jurisdiction over Plaintiff's complaint. *See Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 592, 594 (2d. Cir. 1993). "No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Id. at 592. By failing to appeal Bankers' denial of benefits to that other decision-making fiduciary that Plaintiff now claims exist, Plaintiff makes it clear that he believed that Bankers was the ultimate decision-maker.

If this Court agrees that Bankers had discretion to deny Plaintiff's claim, then Plaintiff exhausted his administrative remedies. If this Court determines that Bankers did not have discretion to deny Plaintiff's claim, then Plaintiff did not appeal the denial to a plan fiduciary as required by ERISA. In that event, Plaintiff never exhausted his administrative remedies and his complaint should be dismissed for lack of jurisdiction. *See Kennedy v. Empire Blue Cross and Blue Shield, supra.*

## II. ANY EXPECTATION OF SURVIVAL WAS UNREASONABLE BECAUSE THE DECEDENT CONSUMED AS MUCH AS 22 OUNCES OF VODKA BEFORE HIS DEATH THAT RESULTED FROM DRIVING WHILE INTOXICATED WITH A 0.17 BAL.

Because the Decedent consumed an extraordinary amount of alcohol in the two hours before he died, any expectation of survival on his part was unreasonable.

Plaintiff narrowed the window of the Decedent's drinking to a narrow two hours before his death on June 8, 2001:

3

| | |
|---|---|
| 4 p.m. to 5:15 p.m. | The Decedent visited his sister, Theresa M. Jones. She swore that she neither detected alcohol on the Decedent's breath nor saw him consume alcohol. Plaintiff's Exhibit D, ¶ 5. |
| 5:50 p.m. | The Decedent arrived home and ate dinner. Plaintiff's Exhibit D, ¶ 5. |
| 6:00 p.m. to 6:30 p.m. | The Decedent left home driving his Mazda Miata convertible with the top down. Plaintiff's Exhibit B, ¶ 5; Plaintiff's Exhibit D, ¶ 9; Exhibit C, Police Report at D061, D062. |
| 7:45 p.m. | The Decedent was killed. His convertible automobile overturned while negotiating severe curves at a speed in excess of the posted limit, trapping him in the wreckage. Plaintiff's Exhibit C, at D058, D066. |

Therefore, as Plaintiff so carefully proved, the Decedent consumed enough alcohol to achieve a .17 BAL in just two hours -- between leaving his sister's house at 5:30 p.m. and his death at 7:45 p.m.

And how much alcohol did the Decedent consume? The Swiss physiologist, E.M.P. Widmark, developed a basic equation for estimating the amount of alcohol consumed using body weight as a factor. Edward F. Fitzgerald, Intoxication Test Evidence, 2d, § 11.1 at 11-3. Widmark's equation has been simplified as follows:

(Body Weight in pounds) x (BAL) x (numerical constant) = fl. oz. alcohol

Id., § 11.25 at 11-40. The numerical constants used reflect low, average and high rates of alcohol absorption. For a 334 lb. man to obtain a .017 BAL, the equations would be as follows:

```
low        (334) (0.17) (0.096) = 5.45 ounces/alcohol
average    (334) (0.17) (0.125) = 7.975 ounces/alcohol
high       (334) (0.17) (0.158) = 8.97 ounces/alcohol
```

4

To convert fluid ounces of alcohol to beverage ounces of vodka, the Decedent's beverage of choice,[2] we divide the number of ounces of alcohol by the proof, *i.e.*, the percentage of alcohol in vodka. Eighty-proof vodka is 40% alcohol; 100-proof vodka is 50% alcohol. Id. at §11.25 at 11-43.

Dividing the above figures by the percent of alcohol in the two types of vodka, the Decedent consumed the following amounts of beverage ounces of vodka:

| 80 proof | 100 proof |
| --- | --- |
| $5.45 \div 40\% = 13.625$ vodka oz. | $4.45 \div 50\% = 10.9$ vodka oz. |
| $7.0975 \div 40\% = 17.74375$ vodka oz. | $7.0975 \div 50\% = 14.195$ vodka oz. |
| $8.97 \div 40\% = 22.425$ vodka oz. | $8.97 \div 50\% = 17.94$ vodka oz. |

Therefore, the Decedent consumed as much as 22.425 ounces of vodka before his fatal drive down Wolcott Street.

That result can be verified under a similar chart demonstrating the estimated amount of 80-proof alcohol consumed to reach a given BAL for various body weights. The Decedent's weight, 334 pounds, is way off the chart's scale but the chart demonstrates that a 240 pound person would have to consume more than 16 ounces of 80-proof alcohol to reach the Decedent's 0.17 BAL, given that Plaintiff claims the Decedent consumed a meal before he died:

---

[2] *See* Affidavit of Robert Krol, Exhibit B, D022 ("Mr. Glynn . . . did, however, know the insured kept a bottle of vodka in the home.")

5

Body Weight, Drinks Consumed, and Resultant BAC for Full and Empty Stomachs

**Estimated amount of 80-proof liquor consumed in one hour to reach given BAC**



To determine the approximate average number of ounces of 80-proof liquor needed in a one-hour period to reach 0.10%, one draws a line from the body weight to 0.10 BAL. The line will intersect the average number of ounces needed to produce 0.10%. The same procedure determines the amount of liquor needed to reach other BALs. Edward Louis Fiandach, 1 Handling Drunk Driving Cases 2d, § 10.12 at 10-13.

Thus, the Decedent's consumption of alcohol was extremely high and abnormal conduct. In order for an average-sized man to achieve a 0.20 BAC (and this Decedent was not average-sized), he would have had to consume twelve bottles of beer within one hour. 2 Drinking/Driving Litigation Criminal and Civil 2d § 15.19 at 15-52 (quoting

McCarroll & Haddon, A Controlled Standard of Fatal Automobile Accidents in New York City, J. Chronic Dis. (1962) (5:811).

The Decedent's decision to drive after consuming such a large amount of vodka demonstrated his callous disregard for the risk that he presented not only to himself but to other persons as well. As the Court stated in *Cates*, "given the amount of alcohol ingested here [the Decedent's blood alcohol level was 0.18], [this Court should not] say that it was arbitrary and capricious for [Bankers] to determine that this particular vehicular death was no 'accident'." *See Cates v. Metropolitan Life Ins. Co., Inc.*, 14 F. Supp. 3d 1024, 1111 (E.D. Tenn. 1996), aff'd 149 F. 3d 1182 (6th Cir. 1998).

### III. PLAINTIFF'S OPPOSITION TO BANKERS' MOTION CONTAINS AFFIDAVITS OF SECRET WITNESSES THAT VIOLATE THE RULES GOVERNING DISCOVERY AND THE RULES OF EVIDENCE.

Plaintiff sprung a trap for Bankers in his opposing papers – he submitted the affidavits of Decedent's two sisters, claiming that they had knowledge regarding the facts of this case. See Plaintiff's Exhibit D (Affidavit of Theresa M. Jones), and Exhibit G (Affidavit of Mary Glynn). This Court should disregard these affidavits because Plaintiff disclosed neither woman in his answers to Bankers' interrogatories that specifically asked for the identity of a persons with knowledge regarding this case.

#### A. The Sisters' Affidavits Violate the Rules Governing Discovery.

In Bankers' first interrogatory to Plaintiff, Bankers asked Plaintiff to:

> 1. Identify each person having any knowledge of any facts relating to this case, and, for each person, set forth his or her area of knowledge and identify [and] attach any and all related documents.[3]

---

[3] A true copy of Plaintiff's Answers to Bankers' Interrogatories is attached to the Reply Certification of Andrew Muscato as Exhibit G.

But Plaintiff kept the Decedent's sisters' knowledge a secret. Plaintiff denied knowing the identity of the sisters as persons with knowledge and promised to supplement his answer:

> The identity of each person having knowledge of the facts is presently not known in this case. Nevertheless, the plaintiff has knowledge of facts regarding the decedent and the decedent's whereabouts on the day of the accident. In addition, the plaintiff believes that neighbors saw the decedent leave his home the evening of the accident around 6:00 p.m. At this point, the plaintiff is aware that either Mickey Paradis and/or Jeff Paradis of 14 Putnam Street in Bristol, Connecticut may have seen the decedent leave his home. As more witnesses become identified, this interrogatory will be supplemented in accordance with the F.R.C.P. 26.

Reply Certification of Andrew Muscato, Exhibit G. Plaintiff never supplemented his answers. *Id.*, ¶ 3. Despite his failure to disclose these witnesses, Plaintiff now cloaks them with relevant knowledge of the Decedent's actions in the hours before his death. Plaintiff denied Bankers the opportunity to depose these persons.[4]

"The aim of the liberal discovery rule is to make trial 'less a game of blindman's bluff and more a fair contest'." *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 202, 204 (M.D. Fla. 1990)(quoting *Rozier v. Ford Motor Company*, 573 F.2d 1332, 1346 (5th Cir. 1978). Here, Plaintiff violated the letter, and spirit, of the law by concealing the sister's identities until the closing of discovery. Plaintiff's litigation by minefield violates the very purpose of discovery, "to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *U.S. Ex. Rel. Schwartx v. TRW, Inc.*, 211 F.R.D. 388 (C.D. Cal. 2002).

---

[4] Plaintiff avoided being deposed in this matter until he suffered a stroke. Plaintiff is scheduled to be deposed in October 2004. See Declaration of Muscato in Opposition to Plaintiff's Motion for Summary Judgment, ¶ 2 and Exhibit 1.

Fed.R.Civ.P. 37(c) states that a party that fails to disclose a witness is not permitted to use that undisclosed witness at trial or on a motion. Fed.R.Civ.P. 37(c)(1); see *Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 332 (2d Cir. 1997)(holding that a district court has broad power to impose sanctions in response to abusive litigation practices; *Softel v. Dragon Med. & Scientific Communications*, 118 F.3d 955, 961 (2d. Cir. 1997), *cert. denied* 118 S.Ct. 1300 (1998)(precluding the plaintiff from presenting testimony of an undisclosed witness).

Bankers respectfully requests that this Court refrain from considering the Decedent's sisters' affidavits on Bankers' motion for summary judgment.

**B.  Mary Glynn's Affidavit Contains Inadmissible Hearsay and Cannot be Relied Upon the This Summary Judgment Motion.**

To oppose Bankers' motion, Plaintiff relies upon inadmissible hearsay – out-of-court conversations that the Decedent's sister, Mary Glynn, claims she had with a member of the Bristol Police Department.

Hearsay as an out-of-court statement offered to prove the truth of the matter asserted:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Fed.R.Evid. 801(c) (West 2003). "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed.R.Evid. 802 (West 2003). Here, the Decedent's sister purports to describe a conversation she had with a third person, an investigating police officer, for the purpose of establishing that the Decedent's death was accidental. This Affidavit is

9

inadmissible hearsay. *See Pittman by Pittman v. Grayson*, 149 F.3d 111, 124 (2d Cir. 1998), *cert. denied* 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999).

The statement that Plaintiff offers as proof that the Decedent's death was accidental is pure hearsay – it falls squarely within Rule 801 and is inadmissible. *See Albert v. Loksen*, 239 F.3d 256, 266 (2d Cir. 2001); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999). Inadmissible hearsay cannot be considered on Plaintiffs' summary judgment motion. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996).

## CONCLUSION

Because Plaintiff's decedent's death was not an accident as a matter of law, Bankers respectfully requests that this Court grant its motion and dismiss the complaint in its entirety.

> THE DEFENDANT
> BANKERS LIFE AND CASUALTY
> COMPANY
>
> BY_____
> John T. Shaban, ct14075
> Whitman Breed Abbott & Morgan LLC
> 100 Field Point Rd.
> Greenwich, CT 06830
> 203-869-3800 (telephone)
> 203-869-1951 (facsimile)
> jshaban@wbamct.com
>
> Andrew Muscato, ct15073
> Skadden, Arps, Slate, Meagher &
> Flom LLP
> Four Times Square
> New York, New York 10036
> 212-735-3000 (telephone)
> 212-735-2000 (facsimile)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment Dismissing the Complaint and the Reply Declaration of Andrew Muscato, Esq. in Further Support of Defendant's Motion for Summary Judgment with exhibit G were sent by first class mail, postage prepaid, on September 15, 2004 to the following:

Everett H. Madin, Jr., Esq.
Riscassi and Davis, P.C.
131 Oak Street
Hartford, CT 06106

_____
John T. Shaban