UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - - - - - - - - - - x
PHILIP GLYNN,                        :    CIVIL NO. 3-02CV1802 (AVC)
                                     :
      Plaintiff,                     :
                                     :
v.                                   :
                                     :
BANKERS LIFE AND CASUALTY CO.        :
                                     :
      Defendant.                     :    OCTOBER 12, 2004
- - - - - - - - - - - - - - - - - - - - - - - - - - x
```

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

Because this Court may take judicial notice of the Widmark Formula[1] and other facts pursuant to Rule 201 of the Rules of Evidence for United States Courts ("F.R.E."), defendant Bankers Life and Casualty Company ("Bankers") respectfully submits the within memorandum of law in opposition to Plaintiff's motion to strike portions of Bankers' brief in support is its motion for summary judgment and its reply memorandum of law in further support of its motion for summary judgment.

Plaintiff's decedent, Peter Glynn (the "Decedent") died on June 8, 2001 while driving with a blood alcohol content of 0.17%, well in excess of the posted speed limit of 25 m.p.h.

---

[1] Defined *infra* at page 2.

## ARGUMENT

I. **POINT II OF BANKERS' REPLY BRIEF IS PROPER AND PLAINTIFF'S MOTION TO STRIKE IT SHOULD BE DENIED.**

Plaintiff objects to a portion of Point II of Bankers' reply memorandum in further support of it motion for summary judgment that refers to a formula developed in the 1930s by E. Die Widmark (the "Widmark Formula"), that has been accepted for more than 50 years. See Henderson v. Fields, 68 S.W.3d 455, 480 (Mo. App. 2001) ("the Widmark Formula [has] been accepted in the field for over fifty years"). The United States National Highway Traffic Safety Administration considers the Widmark Formula to be "the basic formula for estimating a person's blood alcohol concentration." See U.S. Department of Transportation, National Highway Safety Administration, Office of Program Development and Evaluation, Computing a BAC Estimate, at 1-2, and n.5 (1994).[2] Thus, the Widmark Formula is a widely used tool for estimating the amount of alcohol consumed by a person based upon his blood alcohol level ("BAL"),[3] his weight, and the time period for the consumption.

Yet, Plaintiff objects to the following argument, set forth in italics:

> *Because the Decedent consumed an extraordinary amount of alcohol in the two hours before he died, any expectation of survival on his part was unreasonable.*
>
> *Plaintiff narrowed the window of the Decedent's drinking to the two hours before his death on June 8, 2001:*

---

[2] The article states that "[t]he basic formula for estimating a person's blood alcohol concentration derives from the work done by Widmark in the 1930s." A copy of the article is attached hereto as Exhibit 1.

[3] BAL is also called "blood level content' or "BAC."

2

| | |
|---|---|
| *4 p.m. to 5:15 p.m.* | *The Decedent visited his sister, Theresa M. Jones. She swore that she neither detected alcohol on the Decedent's breath nor saw him consume alcohol. Plaintiff's Exhibit D, ¶ 5.* |
| *5:50 p.m.* | *The Decedent arrived home and ate dinner. Plaintiff's Exhibit D, ¶ 5.* |
| *6:00 p.m. to 6:30 p.m.* | *The Decedent left home driving his Mazda Miata convertible with the top down. Plaintiff's Exhibit B, ¶ 5; Plaintiff's Exhibit D, ¶ 9; Exhibit C, Police Report at D061, D062.* |
| *7:45 p.m.* | *The Decedent was killed. His convertible automobile overturned while negotiating severe curves at a speed in excess of the posted limit, trapping him in the wreckage. Plaintiff's Exhibit C, at D058, D066.* |

*Therefore, as Plaintiff so carefully proved, the Decedent consumed enough alcohol to achieve a .17 BAL in just two hours -- between leaving his sister's house at 5:30 p.m. and his death at 7:45 p.m.*

And how much alcohol did the Decedent consume? The Swiss physiologist, E.M.P. Widmark, developed a basic equation for estimating the amount of alcohol consumed using body weight as a factor. Edward F. Fitzgerald, Intoxication Test Evidence, 2d, § 11.1 at 11-3. Widmark's equation has been simplified as follows:

(Body Weight in pounds) x (BAL) x (numerical constant) = fl. oz. alcohol
Id., § 11.25 at 11-40. The numerical constants used reflect low, average and high rates of alcohol absorption. For a 334 lb. man to obtain a .017 BAL, the equations would be as follows:

3

  low   (334) (0.17) (0.096) =  5.45 ounces/alcohol
  average (334) (0.17) (0.125) =  7.975 ounces/alcohol
  high  (334) (0.17) (0.158) =  8.97 ounces/alcohol

*To convert fluid ounces of alcohol to beverage ounces of vodka, the Decedent's beverage of choice,[4] we divide the number of ounces of alcohol by the proof, i.e., the percentage of alcohol in vodka. Eighty-proof vodka is 40% alcohol; 100-proof vodka is 50% alcohol. Id. at §11.25 at 11-43.*

*Dividing the above figures by the percent of alcohol in the two types of vodka, the Decedent consumed the following amounts of beverage ounces of vodka:*

*80 proof*         *100 proof*

*5.45 ÷ 40% = 13.625 vodka oz.*   *4.45 ÷ 50% = 10.9 vodka oz.*

*7.0975 ÷ 40% = 17.74375 vodka oz.* *7.0975 ÷ 50% = 14.195 vodka oz.*

*8.97 ÷ 40% = 22.425 vodka oz.*   *8.97 ÷ 50% = 17.94 vodka oz.*

*Therefore, the Decedent consumed as much as 22.425 ounces of vodka before his fatal drive down Wolcott Street.*

*That result can be verified under a similar chart demonstrating the estimated amount of 80-proof alcohol consumed to reach a given BAL for various body weights. The Decedent's weight, 334 pounds, is way off the chart's scale but the chart demonstrates that a 240 pound person would have to consume more than 16 ounces of 80-proof alcohol to reach the Decedent's 0.17 BAL, given that Plaintiff claims the Decedent consumed a meal before he died:*

---

[4] *See Affidavit of Robert Krol, Exhibit B, D022 ("Mr. Glynn . . . did, however, know the insured kept a bottle of vodka in the home.")*

4

*Body Weight, Drinks Consumed, and Resultant BAC for Full and Empty Stomachs*

*Estimated amount of 80-proof liquor consumed in one hour to reach given BAC*



Adapted from a chart by U.S. Dept. of Health, Education and Welfare

Adapted from a chart by Royal Canadian Mounted Police

*To determine the approximate average number of ounces of 80-proof liquor needed in a one-hour period to reach 0.10%, one draws a line from the body weight to 0.10 BAL. The line will intersect the average number of ounces needed to produce 0.10%. The same procedure determines the amount of liquor needed to reach other BALs.* Edward Louis Fiandach, 1 Handling Drunk Driving Cases 2d, § 10.12 at 10-13.

Thus, the Decedent's consumption of alcohol was extremely high and abnormal conduct. In order for an average-sized man to achieve a 0.20 BAC (and this Decedent was not average-sized), he would have had to consume twelve bottles of beer within one hour. 2 Drinking/Driving Litigation Criminal and Civil 2d § 15.19 at 15-52 (quoting McCarroll & Haddon, A Controlled Standard of Fatal Automobile Accidents in New York City, J. Chronic Dis. (1962) (5:811).

The Decedent's decision to drive after consuming such a large amount of vodka demonstrated his callous disregard for the risk that he presented not only to himself but to other persons as well. As the Court

5

> stated in Cates, "given the amount of alcohol ingested here [the Decedent's blood alcohol level was 0.18], [this Court should not] say that it was arbitrary and capricious for [Bankers] to determine that this particular vehicular death was no 'accident'." See Cates v. Metropolitan Life Ins. Co., Inc., 14 F. Supp. 3d 1024, 1111 (E.D. Tenn. 1996), aff'd 149 F. 3d 1182 (6th Cir. 1998).

The above-quoted passage is properly a part of Bankers' brief because the underlying facts and the Widmark Formula are admissible under the federal rules of evidence. The Autopsy Report and the Police Report provide the factual assertions regarding the Decedent's weight (334 pounds) and blood alcohol level (0.17%). See Plaintiff's Exhibit F, at D070, Exhibit G at D065. The assertions are admissible under F.R.E. 803(5), 803(6) and/or 803(8). See Parsons v. Honeywell, 929 F.2d 901, 907 (2d Cir. 1991)("we agree with the district court that the police report itself would be admissible as a public record pursuant to Fed.R.Evid. 803(8)."); U.S. v. Rosa, 11 F.3d 315, 333 (2d Cir. 1993)("[W]e hold that medical examiners' reported observations are admissible under Rule 803(8)(B)."); see also Fields v. City of South Houston, Tex, 922 F.2d 1183, 1190 n.9 (holding that the autopsy report was admissible under F.R.E. 803(6)). It was Plaintiff, whom Bankers has been unable to depose[5], who stated that the Decedent's choice of alcohol was vodka.[6] Thus, the Decedent's consumption of vodka is admissible as a party-statement under F.R.E. 801(d)(2). The Decedent's sister provides the time line for the Decedent's consumption of alcohol. See Plaintiff's Exhibit D, ¶ 5.

---

[5] See Opposing Declaration of Andrew Muscoto, ¶2, and Exhibit 1. Bankers has also filed a motion to reopen discovery in order to depose any third person identified by Plaintiff in his deposition and the Decedent's two sisters who submitted affidavits to this Court, and to name an alcohol expert as well as to depose Plaintiff's alcohol expert.

[6] See Affadavit of Robert Krol, Exhibit B, D022 ("Mr. Glynn . . . did, however, know the insured kept a bottle of vodka in the home").

6

F.R.E. 201 provides the basis for the admissibility of the Widmark Formula. This Court may take judicial notice of the Widmark Formula under F.R.E. 201 as a fact "not subject to reasonable dispute" because the formula is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See F.R.E. 201(b).

In fact, the Widmark Formula is so well known and relied upon that the National Judicial Colleges will offer a 2005 course for new judges on the subject of impaired driving case fundamentals including the Widmark Formula.[7]

Furthermore, the Widmark Formula has been cited by courts for years. See Spencer v. City of Bay City, Case Number 02-10280-BC (E.D. Mich. 2003) at 16.[8] In 2001, the Hawaii Supreme Court took judicial notice of the Widmark Formula because it "is widely viewed as reliable." State v. Vliet, 95 Haw. 94, 112, 19 P.3d 42, 60 (2001). That court observed that "[o]ther authorities acknowledge Widmark's seminal work," and that criminal trials continue to use the Widmark Formula. *Id.* at 113 (quoting J.L. Pariser, *In Vino Veritas: The Truth About Blood Alcohol Presumptions in State Drunk Driving Law*, 64 N.Y.U. L. Rev. 141, 152 (1989)); see also State v. Tibbetts, 604 A.2d 20, 21 (Me. 1992) ("Tibbetts does not challenge the validity of the Widmark formula").

Courts regularly take judicial notice of alcohol tests and standards. In U.S. v. Horn, 185 F.Supp.2d 530, 537 (D. Md. 2002), the court held that judicial notice of a field test for the presence of exaggerated horizontal gaze nystagmus in the defendant's eyes

---

[7] A copy of the NJC Course description, "DUI Primer for New Judges: Impaired Driving Case Fundamentals," is attached hereto as Exhibit 2.

[8] A copy of the case is attached hereto as Exhibit 3.

could prove the causal connection between it and the defendant's alcohol consumption. Id. at 561. The court concluded that "[t]he existence of a causal connection between alcohol ingestion and visible horizontal gaze nystagmus is the type of discrete adjudicative fact that may be judicially noticed under Rule 201 because it is a fact that can be accurately and readily determined by resort to sources whose accuracy cannot reasonably be questioned." Id. at 555, n.44. The Widmark Formula is that same type of fact.

In another case, VanHaverbeke v. Berband, 654 F.Supp. 255 (S.D. Ohio 1986), the court took "judicial notice of the fact that a person who has a blood alcohol level of .18 two hours *after* an incident, has an even higher blood alcohol content at the time *of* the incident." Id. at 257 (emphasis in original).

Therefore, courts have had experience with judicial notice of the Widmark Formula and of alcohol facts in general. For these reasons, this Court's judicial notice of the Widmark Formula is appropriate under F.R.E. 201.

## II. PLAINTIFFS' MOTION TO STRIKE A PORTION OF BANKERS' MOVING BRIEF SHOULD BE DENIED BECAUSE THE FACTS MAY BE JUDICIALLY NOTICED.

Plaintiff objects to the following portion of Point II B of Bankers' moving brief, including two footnotes, set forth in italics:

> *Bankers' decision to deny the claim was not "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442; Larsen, 151 F.Supp.2d at 172. Substantial evidence existed demonstrating that the Decedent died of foreseeable injuries sustained when he lost control of his Mazda Miata convertible while driving (1) highly intoxicated with a blood alcohol content of 0.17% (Material Fact 14),[9] (2) down a*

---

[9] In 2001, operating a motor vehicle with a blood alcohol content of 0.10% or more violated Conn.Gen.Stat. § 14-227a.

8

> *hill with a series of sharp curves (Material Fact 9), (3) at almost twice the posted legal speed limit (Material Fact 16)*[10]*. With that blood alcohol level, the Decedent would have had difficulty walking and standing, his judgment and perception would have been severely impaired and he could expect to experience a blackout. Blood Alcohol Level and You: Behavior by Numbers, http://www.factsontap.org/yourbody/BALandU.htm.*[11] *A driver with a blood alcohol content of .15% is 380 times more likely to die in a single vehicle crash than a nondrinker. Zador, P.L., Krawchuk, S.A., & Voas, R.B. (2000), Relative Risk of Fatal Crash Involvement by BAC, Age, and Gender.*[12]

The fact that some of the above resources are reproduced online do not bar judicial notice of the information. In Gordon v. Lewiston Hosp., 272 F.Supp.2d 393 (M.D. Pa. 2003), the court took judicial notice of facts provided by the mapquest.com website. Id. at 429, n.34. See also, Denius v. Dunlap, 350 F.3d 919, 926 (7th Cir. 2003) (holding that the lower court erred in withdrawing its judicial notice of items appearing on National Personnel Records Center's website); Laborers' Pension Fund v. Blackmore Sewer Constr., Inc., 258 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from the official website of the Federal Deposit Insurance Corporation).

This Court may take judicial notice of the fact that elevated BAL impairs coordination and judgment. Our society's laws outlawing driving while intoxicated are

---

[10] The Police calculated that the Decedent's automobile was "traveling a minimum speed of 42.34 miles per hour" in an area with a posted 25 MPH speed limit (Material Fact 17). That speed violated Conn.Gen.Stat. § 14-218a, Traveling unreasonably fast (Material Fact 18).

[11] *Many colleges and universities use the same information, advising students that at a blood alcohol level of .14% to .17%, "You could have difficulty talking, walking, or even standing. Your judgment and perception are severely impaired. You may become more aggressive, and there is an increased risk of accidentally injuring yourself or others. This is the point when you may experience a blackout." See, e.g., Blood Alcohol Level: Let's put it all out on the table, http://www.csub.edu/UnivServices/CounselBAL2.htm; What Your BAC Means, http://www.nd.edu/~ucc/yourbac.html; Blood Alcohol Content Calculator-The Police Notebook, http://www.ou.edu/oupd/bac.htm.*

[12] *Report HS-809-050, Washington D.C., U.S. Department of Transportation, National Highway Traffic Safety Administration, statistical chart reprinted at http://www.madd.org/stats/0,1056,4839,00.html and htpp://www.ou.edu/oupd/bac.htm.*

9

based upon this fact. *See* Connecticut Selected Jury Instructions Criminal, § 11.23 Driving While Intoxicated § 14-227a(a)("Such person's physical or mental capabilities must have been impaired to such a degree that the person no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under the same or similar circumstances."). There can be no doubt that alcohol consumption impairs coordination and increases the risk of accident, and resources that so state are accurate and inherently reliable. Judicial notice of these resources is appropriate under F.R.E. 201, and Bankers' moving brief is proper. Plaintiff's motion to strike should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, Bankers respectfully requests that this Court deny Plaintiff's motion to strike in its entirety.

THE DEFENDANT
BANKERS LIFE AND CASUALTY
COMPANY

BY _____
John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com
    and
Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was mailed via first class mail, postage pre-paid on this the 12th day of October, 2004, to the following counsel of record:

>Everett H. Madin, Jr.
>Riscassi and Davis, P.C.
>131 Oak Street
>Hartford, CT 06106
>
>Counsel for Plaintiff Philip Glynn

_____
John T. Shaban