UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

PHILIP GLYNN,        :

     Plaintiff,    :

   v.        :  CIVIL ACTION NO.:
             :  02-CV-1802 (AVC)

BANKERS LIFE AND CASUALTY  :
COMPANY,        :

    Defendant.   :  January 14, 2005
             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF ANDREW MUSCATO, ESQ. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PERMISSION TO DISCLOSE REBUTTAL EXPERT WITNESS

I, Andrew Muscato, Esq., declare under penalty of perjury that the following is true and correct:

1. I am counsel to Skadden, Arps, Slate, Meagher & Flom, LLP with offices at Four Times Square, New York, New York. I am an attorney of the States of New Jersey and New York, admitted pro hac vice for the defendant Bankers Life and Casualty Company ("Bankers").

2. Attached hereto as Exhibit A is a true copy of the Toxicology Report dated June 22, 2001 stating that "Ethanol was found at a concentrated level of 0.17%."

3. Attached hereto as Exhibit B is a true copy of the Traffic Accident Investigation Report issued by the Bristol, Connecticut Police Department on June 8, 2001.

4. Attached hereto as Exhibit C is a true copy of Bankers' letter dated March 4, 2002 denying Plaintiff's claim because "Peter Glynn had a blood alcohol content of 0.17 at the time of his death."

5. Attached hereto as Exhibit D is a true copy of Plaintiff's answers to Bankers' Interrogatories.

6. Attached hereto as Exhibit E is a truc copy of Plaintiff's Designation of Plaintiff's Trial Expert served October 24, 2003.

7. Attached hereto as Exhibit F is a true copy of the deposition transcript from the deposition of Bankers' Robert Krol held on May 18, 2004.

Andrew Muscato



**TOXICOLOGY REPORT**
ME-18 REV. 6/89

**STATE OF CONNECTICUT**
**OFFICE OF THE CHIEF MEDICAL EXAMINER**
11 Shuttle Road, Farmington, Connecticut 06032
TELEPHONE: (860) 679-3980

| M.E. CASE NO. |
|---|
| 01-07155 |
| DATE OF REPORT |
| 22 June 01 |

| LAB NO. | DECEASED | | |
|---|---|---|---|
| L01-0667 | Peter Glynn | 39 yrs   White  Male | |

SPECIMENS SUBMITTED
Blood (110 mL), Urine (100 mL), Stomach Contents (100 mL), Brain (100 g), Liver (113 g),
Vitreous (3 mL)

| TAKEN BY | AT | ON (Date/Time) |
|---|---|---|
| Malka B. Shah, M.D. | Office of the Chief Medical Examiner | 6/09/01 |
| RECEIVED FROM | BY | ON (Date/Time) |
| Malka B. Shah, M.D. | Thommasina Loveless | 6/11/01  6:45 a.m. |

FINDINGS

Blood was analyzed for the presence of ethanol and other common volatile hydrocarbons by a gas chromatographic procedure.  Ethanol was found at a concentration of 0.17%.

Blood was analyzed for the presence of acidic drugs by gas chromatography/mass spectrometry procedures.  Caffeine and/or caffeine metabolite(s) were detected.

Blood was analyzed for the presence of basic drugs by gas chromatography/mass spectrometry procedures.  None were detected.

Blood was screened for the presence of carbon monoxide by a microdiffusion procedure.  None was detected.

Blood was analyzed for the presence of cocaine and/or cocaine metabolites and opiates by radioimmunoassay.  None were detected.

Urine was analyzed for the presence of salicylates by a colorimetric procedure. None were detected.

Sherwood C. Lewis, Ph.D.
Director of Toxicology

Unless notified in writing, the tissue specimens retained in this case
will be destroyed one year after the date of this report.

D 077



# Bristol Police Department



# Serious Traffic Accident Reconstruction Team

## *Traffic Accident Investigation Report*

**Date:** June 8, 2001
**Time:** 1945 hours
**Location:** Wolcott Street
**Investigation by:** Ptlmn. W. Kenney
**Assisted by:** Ptlmn. D. Nadeau, T. Lavigne, C. Duquette, D. Boi

D 027

# Table of Contents

Pages 1-2.............................PR-1 Police Accident Report

Pages 3-9.............................Overall Report

Page 10.............................Witness Statement

Pages 11-19.............................Medical Examiners Report

Page 20.............................Operator History

Page 21- 23.............................Speed Calculations

Page 24- 33 .............................Mechanical Inspection

D 028

# CONNECTICUT UNIFORM POLICE ACCIDENT REPORT

SUBSTITUTE FORM PR-1  REV. 12/94

07

GPS READINGS: LATITUDE: S.T.A.R.T.

TIME:    LONGITUDE:

FOR DOT USE ONLY
POLICE CASE NUMBER
01-15415

| DATE OF ACCIDENT 6/8/2001 | MILITARY TIME 1945 | ACCIDENT SEVERITY ☒ Prop ☐ Injury ☐ Fatal | # VEHICLES INVOLVED 1 | PAGE # 1 of 2 |

ACCIDENT OCCURRED ON (Street Name or Route #) AT ITS INTERSECTION WITH:
WOLCOTT STREET at

| TOWN OR CITY NAME BRISTOL | TOWN CODE 017 |

3. NAME OF NEAREST INTERSECTING STREET, TOWN LINE, OR MILE MARKER
PECK LANE

IF NOT AT INTERSECTION ☒ Feet
1. MEASURE DISTANCE 372

2. DIRECTION
☐ NORTH ☐ SOUTH
☒ EAST ☐ WEST

Accidents Occurred  ☐ On Private Property  ☐ Parking Lot

(Check Appropriate Boxes)
☐ Meters
☐ Kilometers

| TRAFFIC UNIT #1 | ☒ Vehicle | ☐ Pedestrian | ☐ Non-Contact Vehicle | | TRAFFIC UNIT #2 | ☐ Vehicle | ☐ Pedestrian | ☐ Non-Contact Vehicle |

OPERATOR #1 or PEDESTRIAN NAME (Last, First, Middle Initial)
GLYNN PETER J

OPERATOR #2 or PEDESTRIAN NAME (Last, First, Middle Initial)

ADDRESS (Street Number & Name)
12 PUTNAM STREET

PROPER LICENSE CLASS
☒ Yes ☐ No

ADDRESS (Street Number & Name)

PROPER LICENSE CLASS
☐ Yes ☐ No

| CITY OR TOWN BRISTOL | STATE CT | ZIP CODE 06010 | SEX ☒ M ☐ F |

| CITY OR TOWN | STATE | ZIP CODE | SEX ☐ M ☐ F |

| OPERATOR LICENSE # 065 002 266 | STATE CT | DATE OF BIRTH 6/22/1961 |

| OPERATOR LICENSE # | STATE | DATE OF BIRTH |

OWNER'S NAME (Enter SAME if Owner is Operator)
SAME

OWNER'S NAME (Enter SAME if Owner is Operator)

ADDRESS (Street Number & Name)
SAME

ADDRESS (Street Number & Name)

| CITY OR TOWN SAME | STATE | ZIP CODE | BODY TYPE GREEN CONV |

| CITY OR TOWN | STATE | ZIP CODE | BODY TYPE |

| REGISTRATION # 356-PGM | STATE CT | VEHICLE YEAR AND MAKE 1995 MAZDA MIATA |

| REGISTRATION # | STATE | VEHICLE YEAR AND MAKE |

VEHICLE IDENTIFICATION NUMBER
JM1 NA3 53X S06 036 31

VEHICLE IDENTIFICATION NUMBER

ENFORCEMENT ACTION TAKEN ☒ None
☐ Arrest ☐ Written Warning ☐ Verbal Warning
SUBJECT OF ACTION ☒ Operator ☐ Owner ☐ Pedestrian ☐ Center

ENFORCEMENT ACTION TAKEN ☐ None
☐ Arrest ☐ Written Warning ☐ Verbal Warning
SUBJECT OF ACTION ☐ Operator ☐ Owner ☐ Pedestrian ☐ Center

STATUTE OR ORDINANCE #'S
14-218A  14-242

STATUTE OR ORDINANCE #'S

AUTOMOBILE INSURANCE — NAME — POLICY #
GEICO    1A0-65-46

AUTOMOBILE INSURANCE — NAME — POLICY #

PARTS OF VEHICLE DAMAGED
TOTAL ROLLOVER

PARTS OF VEHICLE DAMAGED

VEHICLE TOWED TO
BERNIES FRAME SHOP
☒ TOWED DUE TO DAMAGE

VEHICLE TOWED TO
☐ TOWED DUE TO DAMAGE

| | L. | M. | N. | NAME AND ADDRESS OF EACH INVOLVED PERSON | Date of Birth | O. | P. | Q. | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | K | 1 | TRAFFIC UNIT #1 OPERATOR OR PEDESTRIAN #1 | | 4 | 1 | 4 | 1 |
| | | | | TRAFFIC UNIT #2 OPERATOR OR PEDESTRIAN #2 | | | | | 2 |
| 2 | | | | | | | | | 3 |
| 3 | | | | | | | | | 4 |
| 4 | | | | | | | | | 5 |
| 5 | | | | | | | | | 6 |
| 6 | | | | | | | | | 7 |
| 7 | | | | | | | | | 8 |
| 8 | | | | | | | | | |

ALL INVOLVED PERSONS

D 029

SUBSTITUTE FORM PR-1                Page # _2_ of _2_

POLICE CASE NUMBER

01-15415

INDICATE NORTH

ACCIDENT DIAGRAM



| TRAFFIC UNIT # 1 | TRAVELING: | | WOLCOTT STREET | | TRAFFIC UNIT # | TRAVELING: |
|---|---|---|---|---|---|---|
| ☐ N ☐ S ☒ E ☐ W | ON | | | | ☐ N ☐ S ☐ E ☐ W | ON |

ON 6/8/2001 AT 1945 HRS THE BRISTOL POLICE SERIOUS TRAFFIC ACCIDENT RECONSTRUCTION TEAM (S.T.A.R.T.) WAS CALLED IN TO INVESTIGATE A ONE CAR CRASH ON WOLCOTT STREET IN BRISTOL ,CT. OPERATOR # 1 PETER GLYNN AGE 39 WAS TRAVELING EAST ON WOLCOTT STREET IN HIS 1995 MAZDA MIATA CONVERTIBLE. THE TOP WAS DOWN ON THE CONVERTIBLE AND GLYNN WAS WEARING A SEATBELT. GLYNN WAS TRAVELING AT A HIGH RATE OF SPEED NEGOTIATING A RIGHT HAND CURVE IN THE ROAD. THE POSTED SPEED LIMIT IN THE AREA WAS 25 MPH. THE ROAD WAS BITUMINOUS ASPHALT WITH ONE EASTBOUND LANE UPHILL AND ONE WESTBOUND LANE DOWNHILL. THE ROAD HAS SEVERAL SHARP CURVES. THE ROAD WAS DRY AND CLEAN AT THE TIME OF THE CRASH. WEATHER WAS DRY, CLEAR AND 73 DEGREES. INVESTIGATION SHOWS A YAW MARK LEFT IN THE ROAD TRAVELING EAST ON WOLCOTT STREET AND CROSSED OVER THE DOUBLE YELLOW LINES. OPERATOR # 1 STRUCK THE NORTH CURB ON WOLCOTT STREET ON THE WESTBOUND LANE. OPERATOR # 1 ALSO STRUCK A WIRE GUIDE RAIL FENCE. OPERATOR # 1 VEHICLE ROLLED OVER ONCE AND LANDED UPSIDE DOWN AT FINAL REST. OPERATOR # 1 WAS TRAPPED UNDERNEATH HIS CAR WHICH WAS FLIPPED OVER. OPERATOR # 1 WAS WEARING A LAP AND SHOULDER SEATBELT AND BOTH FRONT AIR BAGS DEPLOYED. DR.MIRABELLI ,MEDICAL EXAMINER PRONOUNCED PETER GLYNN 6-22-1961 DECEASED AT THE SCENE. POLICE INVESTIGATION SHOWS GLYNN WAS TRAVELING TOO FAST 14-218A AND MADE A RESTRICTED TURN IN VIOLATION OF 14-242. NO POLICE ACTION TAKEN . 1 CAR, 1 OPERATOR FATAL CRASH. OFFICER LAVIGNE, OFFICER BOI, OFFICER DUQUETTE ASSISTED ON SCENE. PRIMARY INVESTIGATING OFFICER -WILLIAM KENNEY.

| DAMAGE TO PROPERTY OTHER THAN INVOLVED VEHICLES | 1. DESCRIBE THE NATURE AND EXTENT OF PROPERTY DAMAGE | 20 FEET WIRE GUIDE RAIL FENCE BROKEN . |
|---|---|---|
| | NAME AND ADDRESS OF PROPERTY OWNER | CITY OF BRISTOL |
| | 2. DESCRIBE THE NATURE AND EXTENT OF PROPERTY DAMAGE | |
| | NAME AND ADDRESS OF PROPERTY OWNER | |

| RANK AND SIGNATURE OF INVESTIGATING OFFICER | OFFICER ID# | POLICE AGENCY IDENTIFICATION | REPORT DATE | CASE STATUS | | SUPERVISOR |
|---|---|---|---|---|---|---|
| OFFICER WILLIAM KENNEY | 66 | CT0001700 | 6/8/01 | OPEN ☐ | CLOSED ☒ | |

D 030

# Fatal Accident Report

Date of Accident:              June 8, 2001

Time of Accident:              1945 hours

Location of Accident:          Wolcott Street

Case Number:                   01-15415

Victim:                        Peter J. Glynn

3

D 031

**Victim:**

Peter J. Glynn   age 39
12 Putnam St.
Bristol, Connecticut

**Date of Accident:**

Friday, June 8, 2001

**Time of Accident:**

Bristol Police Department Communications Division Received several 911 calls reporting that a serious Motor vehicle accident had occurred on Wolcott St., just west of Peck Lane. Several Patrol units were detailed, including this officer. The first call was received at 1945 hours.

**Time of Arrival:**

This officer (Kenney) was the first to arrive on scene, arriving within two minutes of the call with other responding units arriving within several minutes. Bristol Fire Department personnel from Engine 1 and Tower 1 responded and arrived at 1949 hours. Bristol Emergency Medical Service responded and arrived on scene at 1950 hours.

**Location of Accident:**

The accident occurred on the north side of Wolcott Street, approximately 300 feet west of the intersection with Peck Lane.

**Location of Victim:**

The victim was the operator of a 1995 Mazda Miata convertible which was traveling east on Wolcott Street. The vehicle had struck the north curb and overturned. The victim was found trapped inside the vehicle and had obvious fatal injuries.

4

D 032

**Location of Vehicle:**

The Mazda Miata operated by the victim was found upside down located in a grassy area approximately five feet north of the curb line. The vehicle was a convertible model which had its soft top in its down position at the time of this accident. The front of the vehicle was facing eastbound.

**Synopsis of Accident:**

This accident occurred when an eastbound vehicle was traveling on a downhill grade through a series of sharp curves. The operator lost control of the vehicle while negotiating the curve, slid sideways, and struck the curb on the opposite side of the road. The vehicle then overturned and came to rest upside down

**Weather Condition:**

The weather conditions for Friday June 8, 2001 at or near the time of this accident as recorded by The Weather Channel (weather.com) were as follows: Partly cloudy skies with a temperature of 75 degrees.

**Road Description:**

Wolcott Street begins at the intersection with South Street and runs south at an uphill grade. This is a state owned and maintained highway, also known as CT route 69 until it intersects with Wolcott Road, located approximately 1.1 miles south. Wolcott Street continues west from this intersection until it intersects with Witches Rock Road. This is a city owned and maintained roadway.

5

D 033

**Road Description: (cont'd)**

There is a white fog line on both sides of the roadway approximately two feet from the curb. An eastbound operator would be traveling on a 12% downhill grade through two sharp curves in the roadway just prior to the accident scene. The roadway is asphalt paved and in excellent condition.

**Traffic Control:**

For an operator traveling east on Wolcott Street from the intersection with Witches Rock Road, there is a 25 MPH speed limit sign clearly posted approximately seventy-five feet from the intersection. Just prior to the first curve in the road, there are two signs with an arrow on each, indicating an approaching curve in the road.

**Scene Examination:**

In examining the scene, there was a yaw mark which was measured at one-hundred and sixteen feet. (116") The tires of the accident caused this mark vehicle as it was sideslipping and rotating forward. There was also a scuff mark on the north curb which was caused by the left rear tire striking the curb prior to overturning. This was located seventy-seven feet (77.4")west of the vehicles' center of mass at final rest.

The scene was also examined for evidence of braking. There were no marks in the roadway to indicate that the operator had applied the brakes prior to losing control on the curve.

6

**Action Taken**
*(at scene):*

Upon my arrival at the scene, I observed one vehicle had been involved in a collision. This was a Mazda Miata convertible which was upside down located seven feet (7.5") north of the curbline. I could see the operator trapped inside the vehicle and it was obvious that his injuries were not compatible with life. I radioed the Police Department Communications Division to report my findings and request a Supervisor.

Bristol Fire Department personnel from Engine #1 and Tower #1 responded and began efforts to lift the vehicle on the passenger side to search for other occupants. They worked for about thirty(30) minutes before determining there were no other occupants.

Bristol Emergency Medical Service responded and Paramedic Sharon Kenney presumed the victim dead in accordance with Advanced Life Support guidelines.

The scene was photographed by this officer and measurements were taken by Officers Lavigne,Boi, and Duquette. Officer Lavigne videotaped the scene.

Assistant Medical Examiner, V. Mirabelli M.D. responded to the scene and pronounced the victim dead at 2035 hours. (8:25 p.m.)

Bernie's Frame Shop responded to the scene and removed the vehicle for examination. At this time, the scene was cleared.

7

D 035

**Action Taken:**
**(witness)**

Shortly after the Police were on scene, attempts were made to identify any possible witnesses to this accident. One witness was located and identified as William Raymond, age 34, of Bristol. In a sworn statement, he reported that he was a passenger in his friends vehicle and they were traveling west on Wolcott St. He observed a vehicle traveling east and coming down the hill out of control. The vehicle then struck the curb and flipped over. His friend stopped the vehicle and they went to check on the driver. He knew the occupant was badly hurt, and then yelled for somebody to call 911.

**Vehicle**
**Examination:**

The vehicle operated by Peter J. Glynn in this accident, a 1995 Mazda Miata, was examined by Bernie Whitneck, owner of Bernie's Frame Shop. The vehicle was found to be in good mechanical condition.

**Alcohol:**

A report was received from the Office of Chief Medical Examiner indicating the results of a post-mortem and subsequent toxicology tests performed on the victim. The blood alcohol content for Peter J. Glynn at the time of his death was 0.17 %. In the State of CT, a blood alcohol content of 0.10 and above is considered to be over the legal limit of intoxication while operating a motor vehicle. Based on the toxicology results, there is prima facie evidence that Peter J. Glynn was intoxicated at the time of this accident.

**Operator**
**History:**

A check with the Department of Motor Vehicles showed no previous driving history.

8

D 036

*Action taken:*
*Speed calculation:*     A speed calculation was used to determine the minimum speed of the accident vehicle. This method was developed using a physics formula in relation to the physical evidence at the scene as well as the roadway topography. This formula is endorsed and taught by The Institute of Police Technology and Management located at the University of North Florida, Jacksonville. Based on evidence at the accident scene, it has been determined that the accident vehicle was traveling a minimum speed of 42.34 miles per hour.

*Conclusion:*     On Friday, June 8, 2001, at approximately 1945 hours, Peter J. Glynn was operating his 1995 Mazda Miata east on Wolcott Street in Bristol, CT. As he approached a curve in the roadway, he lost control of his vehicle. The vehicle slid sideways until striking a curb and overturning, causing fatal injuries.

My investigation has disclosed that he was operating with a blood alcohol content above the limit of 0.10 as set forth by the State of Connecticut as "prima facia evidence of operating under the influence of intoxicating liquor, drugs, or both.

My investigation also disclosed that while Peter J. Glynn was above the "prima facia" limit, he was operating his vehicle in excess of the posted speed limit of 25 Miles per hour. This accident occurred when Peter J. Glynn lost control of his vehicle due to his intoxication in violation of sec. 14-227a and Unreasonable Speed in violation of sec. 14-218a. As a result, he subsequently caused his own death.

9

D 037



Mar 4, 2002

PHILIP GLYNN
12 PUTNAM ST
BRISTOL CT 06010

RE: Johnson & Johnson      Policy SR 84001
    Peter Glynn (deceased)

Dear Mr Glynn,

We have the facts needed to service this claim.

This policy is an accident policy, paying benefits for death caused by accidental injuries. The policy defines injury:
> Injury is a bodily injury caused solely by an accident, which results...in a Loss covered by the policy.

The medical records we have show Peter Glynn had a blood alcohol content of 0.17 at the time of his death. This is well above 0.10 %, which is the legal limit of intoxication.

This Johnson & Johnson policy is governed by ERISA rules and regulations.

Federal courts, in applying federal common law to claims for accidental death under ERISA plans, have uniformly held that death resulting from driving while intoxicated is not accidental.

I'm sorry, but the policy will not permit payment of benefits.

If you wish to appeal this decision, you may do so within 60 calendar days after the receipt of this letter by writing back to me using the address listed on our letterhead. Include any documentation you feel supports this claim.

D 087

Krol #8
5/18/04



BANKERS LIFE AND CASUALTY COMPANY
AJOR MEDICAL DIVISION
111 Merchandise Mart Plaza
Chicago, IL 60654-2011
Telephone: (312) 396-6000



Our decision will be furnished to you within 60 calendar days following receipt of the letter requesting review. You can call me at 800-777-7074 ext 6958.

Sincerely,

Robert Krol
Spec Risk Benefits

D 088


PANKERS LIFE AND CASUALTY COMPANY
ATOR MEDICAL DIVISION
222 Merchandise Mart Plaza
Chicago, Il 66654-2011
Telephone: (312) 396-6000





UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GLYNN,                          :
                                       :
        Plaintiff,                     :        CIVIL ACTION NO.:
                                       :        302CVI802 (AVC)
v.                                     :
                                       :
BANKERS LIFE AND                       :
CASUALTY COMPANY                       :        MARCH 27, 2003

### PLAINTIFF'S RESPONSES
### TO INTERROGATORIES DATED APRIL 17, 2003

        The plaintiff hereby responds to the defendant's interrogatories and requests for production dated April 17, 2003:

        1.      Identify each person having knowledge of any facts relating to this case and, for each person, set forth his or her area of knowledge and identify any attach any and all related documents.

**ANSWER:**

        The identity of each person having knowledge of the facts is presently not known in this case. Nevertheless, the plaintiff has knowledge of facts regarding the decedent and the decedent's whereabouts on the day of the accident. In addition, the plaintiff believes that neighbors saw the decedent leave his home the evening of the accident around 6:00 p.m. At this point, the plaintiff is aware that either Mickey Paradis and/or Jeff Paradis of 14 Putnam Street in Bristol, Connecticut may have seen the decedent leave his home. As more witnesses become identified, this interrogatory will be supplemented in accordance with the F.R.C.P. 26..



In addition, the plaintiff hereby identifies any and all witnesses listed in the police accident report.

2.    State whether any statements or admissions were made by any party to this action.

**ANSWER:**

The plaintiff provided a statement (attached) to a representative of the defendant on November 9, 2001. The plaintiff presently does not know of any other statements or admissions.

3.    If the response to the preceding interrogatory is affirmative, state in full what was said, the time when and the place where such statements or admissions were made, the names and addresses of all persons present when such statements or admissions were made, and whether such statements or admissions were oral or written. If written, identify and attach a copy. If oral, set forth a written summary.

**ANSWER:**

Please see attached copy of interview.

4.    State whether there were any statements concerning the subject matter of this lawsuit made by any non-party to this action.

**ANSWER:**

The plaintiff does not know of any at the present time.

5.    If the responses to the preceding interrogatory is affirmative, state in full what was said, the time when and the place where such statements were made, the names and addresses of all persons present when such statements were made, and whether such statements were oral or written. If written, identify and attach a copy. If oral, set forth a written summary.

**ANSWER:**

Not applicable.

6.    Identify every oral communication between Plaintiff and Bankers concerning the Policy and the matters and events alleged in the complaint, and state the date of the communication, the parties involved in the communication, the substance of the communication and identify and attach any documents reflecting this communication.

**ANSWER:**

The plaintiff believes that he spoke to Robert Krol on one or two occasions. The plaintiff inquired of Mr. Krol about the disposition of the insurance claim. Mr. Krol said that he had to speak to lawyers before he could make a determination.

7.    Identify every written communication between Plaintiff and Bakers concerning the Policy and the matters and events alleged in the complaint, and state the date of the communication, the parties involved in the communication, the substance of the communication, and attach a copy of the communication.

**ANSWER:**

The plaintiff does not believe that he ever sent any letters to the defendant concerning the policy. The defendant, however, did send letters to the plaintiff (please see the attached letters for the substance of the communication)

8.    Identify every oral communication, other than privileged communications, concerning Plaintiff's claim to recover accidental death benefits allegedly due under the Policy alleged in the complaint including without limitation the date of the communication, the parties involved in the communication, the substance of the communication, and identify and attach any documents concerning this communication.

**ANSWER:**

The plaintiff does not understand what is being sought by this interrogatory. Any clarification by the defendant would be appreciated. Nevertheless, the plaintiff is unaware of any non-privileged oral communications except as disclosed in response to interrogatory No. 6.

9.    State whether the decedent's driver's license has ever been revoked or suspended. If so, state:

   a.    the date of revocation or suspension;
   b.    the place of revocation or suspension; and
   c.    the reasons for the revocation or suspension.

**ANSWER:**

Plaintiff is not aware that the decedent's driver's license had ever been revoked

10.    Do you contend that the decedent's blood alcohol levels were incorrect as stated in the Toxicology Report issued by the State of Connecticut, Office of the Chief Medical Examiner, M.E. Case No. 1-07155, regarding deceased Peter Glynn, dated June 22, 2001. If so, state the factual basis for your contention. Identify and attach all related documents.

**ANSWER:**

The plaintiff may contend that the blood alcohol levels were incorrect as stated in the toxicology report.

The plaintiff will certainly demonstrate that the blood alcohol content of the decedent does not directly correlate to the blood alcohol content of the decedent prior to his death. This will be the subject of expert opinion which will be disclosed in the appropriate time.

11.    State the decedent's movements and activities during the twelve-hour period before the "motor vehicle accident" alleged in Paragraph 4 of the Complaint. Include each place visited and identify persons seen.

**ANSWER:**

The plaintiff does not know many of the decedent's movements and activities during the 12 hour period before the motor vehicle accident. The plaintiff does know that the decedent went to work that day and worked his normal hours. The decedent also went to the bank, got fuel for his car and ate his evening meal at home. That meal consisted of steak and french fries. It is unknown who had seen the plaintiff at the work place or after except for the neighbors listed in the response to interrogatory # 1. The plaintiff will supplement this response as discovery proceeds.

12.    Set forth every establishment where the decedent consumed alcoholic beverages during the time period set forth in the preceding interrogatory.

**ANSWER:**

The plaintiff does not know of any such establishment as described in this interrogatory.

13.    State whether you, individually or in a representative capacity, have made a claim or have filed a lawsuit against any other person as a result of the "motor vehicle accident" alleged in Paragraph 4 of the complaint, and, if so state the caption of the lawsuit, the docket number, the identity of the court where filed, and the disposition or current status thereof.

**ANSWER:**

No

14.    Set forth your best estimate of the decedent's consumption of alcoholic beverages per week during the twelve-month period prior to the decedent's death and indicate

whether the beverages were consumed at home, or in not consumed at home, where the beverages were consumed.

**ANSWER:**

The plaintiff is unable to respond to this interrogatory as the decedent was seldom seen by the plaintiff with any intoxicating beverages. The plaintiff had seen from time to time an empty vodka bottle in the trash at home. Again, however, the plaintiff cannot state whether the decedent consumed the vodka or, if he did, how frequently he consumed vodka. The plaintiff does not know of any drinking done by the decedent outside of the home. The decedent worked every day and the plaintiff did not see evidence of intoxication nor did he observe any drinking except on rare occasion.

Requests for Production

1.      Copies of all documents identified in Plaintiff's answers to Bankers' interrogatories.

See attached documents

2.      Copies of all documents concerning the "motor vehicle accident" alleged in Paragraph 4 of the Complaint.

See attached police accident report

3.      Copies of all documents concerning Plaintiff's claim for accidental death benefits under the Policy.

All documents are within the possession of the defendant.

4.      Copies of any other documents that Plaintiff intends to rely upon at trial.

Will forward

PLAINTIFF,

BY_____

Everett H. Madin, Jr.
Federal Bar No: CT12297
RisCassi and Davis,P.C.
131 Oak Street
Hartford, CT 06106
Ph: 860-522-1196

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was mailed via First Class Mail, postage pre-paid on the above date:

John T. Shaban, Esq.
Whitman, Breed, Abbott & Morgan
100 Field Point Road
Greenwich, CT 06830

Andrew Mascato
Skadden, Arps, Slate, Meager & Flom
One Newark Center
Newark, NY 07102

_____
Everett H. Madin, Jr.

**CONFIRMATION OF INTERVIEW**          **DATE** 11/3/01

**NAME:** Philip A. Flynn

**ADDRESS:** 12 Putnam St. Bristol RI

1. I, Philip Flynn, live at the above add-
2. ress. My birth date is 1-31-32 and my
3. Social Security number is 047 24 152
4. am giving this information to Chuck
5. Johnson of Research Service Bureau who
6. represents Bankers Life and Casualty
7. Company. I am the father of Peter
8. Flynn who died on 6/8/01, due to
9. injuries received from a motor vehicle
10. accident. Peter lived with me. Peter
11. lived in Bristol over eight years.
12. I believe Peter was familiar with
13. Wolcott St where the accident took
14. place. The accident location is approx
15. two miles from our residence. Peter
16. had owned the Mayda Miata
17. for one year. Peter owned also a
18. 1974 cadillac. Peter would drive
19. the Mayda in nice weather,
20. and in bad weather would
21. drive the cadillac. The Mayda
22. also would be stored during
23. the winter months. Peter drove
24. the Mayda for only about 6
25. months since he purchased it.
26. The Mayda was in very good
27. condition. Peter worked at

(Pros)

Form 105

**CONFIRMATION OF INTERVIEW**

DATE __11/9/01__

NAME: _Philip Glynn_

ADDRESS: _13 Clinham St. Bristol_

1. Johnson, Johnson Medical in
2. Stockington Ct. He worked six days
3. a week. His hours were on avg.
4. 6:15 to 4 Pm, Mon thru Saturday.
5. I last saw Peter on Thursday 6/7/01.
6. When I returned to my home on
7. Friday at about 8 Pm, there was
8. a meal (steak) that was in the
9. kitchen, so I believe Peter came
10. home from work, had a meal and
11. left. I don't know where he was
12. going. Our neighbor on the 2nd
13. floor saw Peter leave home at
14. approx 6 Pm. There was nothing
15. to the mayda according to my
16. relatives that would indicate
17. where Peter may have been.
18. Peter never drank alcohol at
19. home in front of me. I didn't
20. keep alcohol at home. I saw
21. no sign of any alcohol being
22. consumed in 1870, at home by
23. Peter. They had no history to
24. my knowledge of any alcohol
25. or drug problems. I believe Peter
26. had a good driving record. I
27. have been with Peter on how

Form 105

# CONFIRMATION OF INTERVIEW

DATE _11/8/01_

NAME: _Philip Glynn_

ADDRESS: _13 Pullman St. Bristol Conn._

1. _Peter and myself worked on 6/8/01._
2. _The only time activity I am aware_
3. _of on 6/8/01, was Peters making_
4. _a deposit at the Webster Bank_
5. _on his lunch hour at 12:14_
6. _noon. I am not aware of any social_
7. _activity or friends that Peter was_
8. _going to on 6/8/01. I have read_
9. _the previous 2 pages and I light_
10. _these and by my signature I_
11. _declare they are true._
12. _11/8/01_                    _Philip A. Glynn_
13. _11/8/01_    _Witness Chris Horner_
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.

Form 105