# EXHIBIT E

Case 3:02-cv-01802-AVC    Document 128-7    Filed 03/18/2005    Page 1 of 4

## RESEARCH SERVICE BUREAU, INC.
P.O. BOX 837
NAPERVILLE, IL 60566
(630) 961-4890

Acct: 6038
November 16, 2001

GLYNN, PETER
12 Putnam Street
Bristol, CT 06010

Report From: Cranston, RI

Requestor: Robert Krol

Ref No: 84001-0100812

Type Report: Accidental Death Claim

Dates of Service: 10/29/01 to Present

DOB: 6/22/61          SS#: N/S          Status: Interim Report

On 10/29/01, we received your request to conduct an Accidental Death Claim Investigation regarding Peter Glynn.

### INVESTIGATION

| | |
|---|---|
| Johnson & Johnson Medical<br>201 W. Queen Street<br>Southington, CT 06489<br>(860) 621-8111<br>11/9/01 | Attached is a letter, dated 11/9/01, from Human Resource Administrator, Sue Pender, confirming the insured's employment. On the date of his death, he had worked 8.5 hours. (From the insured's father, we had determined the insured's hours were approximately 6:00 a.m. to 4:00 p.m.) We are attempting to speak with the insured's direct supervisor and friends at work in order to determine his possible after-work activities on Friday, 6/8/01. |
| Records Division<br>Bristol Police Department<br>131 N. Main Street<br>Bristol, CT<br>11/14/01 | Attached is the complete police report. |
| State if Connecticut<br>Registry of Motor Vehicles<br>Wethersfield, CT<br>11/14/01 | Attached is the insured's motor vehicle report. It shows his record to be clear. Also attached is a title search on the 1995 Mazda. |
| Philip A. Glynn<br>12 Putnam Street<br>Bristol, CT | Attached is a signed statement obtained from Philip Glynn. We had met Mr. Glynn at his residence, which is located in a lower-to-middle income area of Bristol, Connecticut on the morning of 11/9/01. The residence is located approximately one-half mile from any commercial retail outlets or stores. |

D 021

Mr. Glynn was very cooperative. He is a former schoolteacher. He advised that his son had been living with him for approximately the past eight years. He stated that the insured would have been extremely familiar with the location of the accident due to the fact it is a road leading to a scenic area (Cedar Lake). He knew his son would occasionally drive to this lake to relax. The road is quite treacherous as it is very steep and winding. It is within a couple of miles of their residence. Mr. Glynn advised that the insured's work location was less than ten minutes from their residence.

Mr. Glynn stated that on 6/8/01 his son left for work at approximately 5:45 a.m. (as was his routine). He said that he would normally work from 6:00 a.m. to 4:00 p.m. (arriving home sometime between 4:15 and 4:30 p.m.). Mr. Glynn stated he got up later in the morning and went out for the day with his daughter, who was preparing to go on vacation to Cape Cod. She was going to borrow the insured's 1984 Cadillac. Mr. Glynn was not at home all day. He and his daughter returned at approximately 8:00 p.m. and found the 1984 Cadillac parked in front of the residence. When they had left in the morning, it had been parked in the driveway at the side of the house. It had been fueled and parked to accommodate the insured's sister. Upon going in the house, Mr. Glynn noted a partially eaten steak dinner. He had purchased the steak and told his son of its existence. Apparently, the insured had returned home and cooked himself a meal as the dishes were on the counter. There was no alcohol viewed anywhere in the house (no glasses, cans, etc.). Mr. Glynn stated that he, himself, never drank and his son never drank in front of him. He did, however, know the insured kept a bottle of vodka in the home. Mr. Glynn stated that approximately every two weeks he would note a bottle in the trash when he was taking it out. Once again, he stated that he never saw his son drink, but did know that he drank. The insured's father did state that at one time he, himself, was an alcoholic.

Mr. Glynn stated that his son did not have a girlfriend or regular circle of friends. He further stated that he had no idea what his son's activities were after work on Friday, 6/8/01. He could only surmise that his son returned home from work, cooked dinner, parked the Cadillac in front of the house (as previously stated), and went for a ride. Mr. Glynn advised that he did not see the 1995 Mazda Miata after the accident. He stated that he could not bear to see it. His other children, especially his daughter, did view the vehicle and stated it showed no clues of what the insured's activities had been prior to the accident. There were no alcoholic beverages or packages/purchases from the local store. Mr. Glynn stated that the only activity he knew about other than work was that his son had made a deposit to his checking account at noontime.

Mr. Glynn stated that the insured had only owned the Mazda Miata for approximately one year. He purchased it around June of 2000. Mr. Glynn stated his son would keep his Mazda stored at a garage down the road during the winter months. He would drive his older Cadillac during bad weather and the winter months. This would have given the insured only six months of experience driving the Mazda.

Mr. Glynn stated that the insured had no history of alcohol or substance abuse. He also had no problems with police authorities. He further stated that they had been planning a trip to Cleveland, Ohio and St. Louis, Missouri during the spring of 2002. They were going to see an aviation museum and a St. Louis Cardinals baseball game.

Glynn, P. – Page 3

Ohio and St. Louis, Missouri during the spring of 2002. They were going to see an aviation museum and a St. Louis Cardinals baseball game.

We stopped at two liquor stores (called package stores) located within one mile of the insured's residence. We checked with the Maple and Package Store and Steve's Package Store, which are both located on Route 6 in Bristol, Connecticut. No one knew the insured at either of these locations.

Handling is continuing through the insured's employer in order to determine whether the insured had any friends who may have known his planned activities after work on 6/8/01.

C. Johnson

CJ:rp

ATTACHMENTS:  1) Verification of Employment- Johnson & Johnson Medical
2) Accident Report – Bristol Police Department
3) Confirmation of Interview – Philip A. Glynn
4) State of Connecticut Motor Vehicle Report
5) Title Search – 1995 Mazda Miata
6) Map of Accident Location