# EXHIBIT R

_**Not for Publication**_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

KATHRYN A. PRECOPIO, and
FRANK PRECOPIO, as Administrator
of the Estate of THOMAS J.
PRECOPIO,

                        Plaintiffs,

            v.                                          Civil No. 01-5721 (RBK)

BANKERS LIFE AND
CASUALTY COMPANY,
THE PENSION COMMITTEE OF
THE BOARD OF DIRECTORS OF
JOHNSON & JOHNSON, JOHNSON &
JOHNSON EMPLOYEE BENEFITS PLAN
ACCIDENT INSURANCE; and
JOHNSON & JOHNSON,

                        Defendants.

**Appearances:**

Edward J. Kelbon, Jr., Esq.
Joseph R. Loverdi, Esq.
Saul Ewing, LLP
214 Carnegie Center, Suite 202
Princeton, NJ 08540-6237
 Attorney for Plaintiffs

Andrew Muscato, Esq.                     Stephen B. Nolan, Esq.
Skadden Arps Slate Meagher & Flom LLP    Stradley, Ronon, Stevens & Young, LLP
One Newark Center                        Woodland Falls Corporate Park
Newark, NJ 07102                         200 Lake Drive East
 Attorney for Defendant Bankers Life     Suite 206
 and Casualty Company                    Cherry Hill, NJ 08002
                                          Attorney for Johnson & Johnson
                                          Defendants

# O P I N I O N

**KUGLER**, United States District Judge:

Thomas Precopio died in a single-vehicle accident in Maryland on September 19, 1999, at age forty-two. He was intoxicated at the time of his death. At issue in this dispute over $1 million in accidental death benefits provided by a Johnson & Johnson employee benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq.* ("ERISA"), is whether Precopio was an employee of Johnson & Johnson at the time of his death and whether Precopio's intoxication rendered his death not accidental. The parties have cross-moved for summary judgment. Because this court concludes that genuine issues of material fact exist that preclude granting judgment as a matter of law on Counts One and Three, the summary judgment motions will be denied as to all claims except for Count Two. Summary judgment will be granted to the defendants on the plaintiffs' claim for breach of fiduciary duty in Count Two.

## I. **FACTUAL BACKGROUND**

Thomas Precopio was a highly skilled professional in the cardiovascular medical device industry. In November 1996, Precopio joined Biosense, Inc., a medical device manufacturer located in California, as vice-president of interventional cardiology. Precopio worked from his home in Pennsylvania, and traveled about fifty to sixty percent of his working days.

In December 1997, Biosense was purchased by Johnson & Johnson and became a subsidiary known as Biosense Webster. As a Biosense salaried employee, Precopio was offered a Johnson & Johnson employee benefits package. One of the benefits selected by Precopio was 24-Hour Accident Insurance. This coverage was provided under a group Accidental Death and

2

Dismemberment Policy ("Policy") issued by Bankers Life and Casualty Company ("Bankers Life"). The coverage was offered as part of Johnson & Johnson's employee benefit plan ("Plan") which is governed by ERISA. The 24-Hour Accident Insurance paid a benefit (in this case, $1 million) in the event of a covered employee's death or injury that occurred as a result of an accident, whether or not the accident happened during the scope of employment. The accident insurance coverage ended on the date an employee terminated his employment.

During the summer of 1999, Precopio was recruited by another company, Interventional Technologies, Inc., ("IVT") a small medical technology company in San Diego, California. IVT was interested in Precopio's expertise in a particular medical device, a cardiac cutting balloon, which IVT was marketing as its new product. IVT was interested in having Precopio showcase its new product at an important conference to be held in late September 1999, the Transcatheter Cardiovascular Therapeutics Symposium, or "TCT Symposium." The TCT Symposium brought together interventional cardiologists, clinical cardiologists, and other health care professionals with leading makers of medical devices and pharmaceuticals. IVT wanted Precopio to help prepare IVT for the symposium, to represent IVT at its booth at the symposium, and to secure the services of doctors who would demonstrate a live cutting balloon procedure at the booth.

Precopio agreed to go to work for IVT. In August 1999, Precopio notified his Biosense supervisor, Dr. Bruce Given, that he intended to leave Biosense. The week of September 7, 1999, Precopio attended orientation meetings at IVT's offices in San Diego and signed IVT employee documents, including an employment agreement. IVT paid him a salary beginning September 7, 1999, and an expense report was submitted to IVT on his behalf for transportation, hotels, and meals for that week.

3

He continued to receive his full salary from Biosense, however. The last paycheck he received from Biosense, which included a deduction for the 24-Hour Accident Insurance premium, covered the pay period ending September 19, 1999. Johnson & Johnson claims that the final paycheck to Precopio was a result of an administrative error and that the only reason it did not seek return of the money was out of respect for Precopio's widow and family.

On Sunday night, September 19, 1999, Precopio met with friends at a bar in Maryland. He was driving a red vintage 1955 Chevrolet Nomad show car. After leaving the bar at 1:00 a.m., Precopio failed to negotiate a curve in the road, lost control of his car, and hit a tree. He was pronounced dead at the scene from multiple injuries. After the accident, Precopio's blood-alcohol level was measured to be 0.26%, which was almost three times the 0.10% legal limit that was in effect in Maryland in September 1999.

Precopio's widow, Kathryn, and the administrator of Precopio's estate, Frank Precopio, filed a claim for accidental death benefits under Johnson & Johnson's plan. Johnson & Johnson referred the claim to Bankers Life as the plan administrator and, upon Bankers Life's request, submitted various records from Precopio's personnel file. Johnson & Johnson initially informed Bankers Life that Precopio was a Biosense employee at the time of his death, and then changed its position and informed Bankers Life that Precopio was *not* a Biosense employee at the time of his death. Bankers Life called Johnson & Johnson to clarify its position, and Johnson & Johnson's in-house counsel informed Bankers Life that Precopio was no longer an employee of Biosense after September 3, 1999, and if Precopio had been performing work for Biosense after September 3, 1999, he was doing so neither with Johnson & Johnson's consent nor with its knowledge.

4

By letter dated June 20, 2001, Bankers Life denied the Precopios' claim for accidental

death benefits on the grounds that Precopio was not a covered employee at the time of his death:

> We have reviewed the claim for accidental death benefits for Thomas J. Precopio.
> Johnson & Johnson maintains all records regarding eligibility for coverage. They tell
> us that at the time of his death on September 19, 1999, Mr. Precopio was no longer
> covered under this plan having voluntarily ended his employment as of September
> 3, 1999. Johnson & Johnson tells us that if Mr. Precopio did any work relating to his
> employment with Biosense Webster, Inc. after September 3, 1999, it was neither at
> their behest nor with their consent. So, I'm sorry, but the policy will not permit
> payment of benefits.

(Pl. Ex. "G," Claim File, at BLC-73).

Bankers Life denied the claim on the additional ground that Precopio's intoxication

rendered his death non-accidental:

> In addition, federal courts in applying federal common law to claims for accidental
> death and dismemberment benefits under ERISA plans have uniformly held that
> death or serious injury resulting from driving while intoxicated is not accidental. The
> test to be applied in determining whether an occurrence constitutes an "accident" is
> "whether a reasonable person, with background and characteristics similar to the
> insured, would have viewed the injury as highly likely to occur as a result of the
> insured's intentional conduct." Wickman v. Northwestern National Life Insurance
> Co., 908 F.2d 1077 (1st Cir. 1990).

(Id.).

The Precopios appealed the denial to Bankers Life, and Bankers Life issued a final

decision confirming the denial. After several months of failed negotiations, Plaintiffs Kathryn

and Frank Precopio filed this lawsuit against Bankers Life, the Pension Committee of the Board

of Directors of Johnson & Johnson, the Johnson & Johnson Employee Benefits Plan-Accident

Insurance, and Johnson & Johnson (the three Johnson & Johnson defendants are hereinafter

sometimes collectively referred to as "Johnson & Johnson"). Jurisdiction is based on a federal

question; venue is proper because the Plan is administered in this federal district and the

5

defendants reside in this district. Plaintiffs bring three counts against the defendants: (1) Count One, for recovery of benefits under 29 U.S.C. §1132(a)(1)(B); (2) Count Two against Defendants Bankers Life, Johnson & Johnson, and the Pension Committee for breach of fiduciary duty under ERISA; and (3) Count Three, a claim for failure to provide a full and fair review of the plaintiffs' claim in violation of 29 U.S.C. §1133.

All parties have moved for summary judgment. The only documents put before the court were the Summary Plan Description ("SPD") and the Policy, even though the documents that constitute an ERISA employee health and welfare benefit plan normally include a number of official plan documents, along with a SPD and policy. See International Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co., 188 F.3d 130, 135 n.3 (3d Cir. 1999) (explaining that summary plan descriptions are ordinarily considered part of the ERISA plan documents, but they are not "the plan" itself). Therefore, this court refers to the SPD and the Policy collectively as "the Plan," even though the court recognizes that official plan documents exist somewhere off the record.[1]

Upon initial review of the moving papers, the court had a question about the SPD submitted by the parties. Because the SPD that the parties had submitted authorized an appeal of Bankers Life's decision to Johnson & Johnson, and it did not appear to the court that the Precopios had appealed Bankers Life's denial of benefits to Johnson & Johnson, the court asked for supplemental briefing on the issue of whether the Precopios had exhausted administrative

---

[1] The SPD itself notes: "In accordance with the disclosure requirements of ERISA, this book serves as a summary plan description of Johnson & Johnson's Choices Benefit Program. As such, this information is a *summary* of your Company health and welfare benefit plans; it does not replace the official Plan documents or insurance contracts which govern in all cases." (Riband Aff., Ex. "B," at 177).

6

remedies. In response, the parties advised the court that the wrong SPD had been submitted. A

different SPD was substituted, and all parties agree that the substituted SPD governs the issues in

this case. Because the substituted SPD does *not* authorize an appeal of Bankers Life's decision to

Johnson & Johnson,[2] the parties agree that the issue of exhaustion of remedies is moot.

Accordingly, even though portions of the parties' briefs rely on the language of the original SPD,

this court will look only to the substituted SPD and the Policy when interpreting the language of

"the Plan" for purposes of this dispute.


## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue of material fact and if, viewing

the facts in the light most favorable to the non-moving party, the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c); Pearson v. Component Tech. Corp., 247 F.3d

471, 482 n.1 (3d Cir. 2001); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thus, this Court

will enter summary judgment only when "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a

verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[2]  Johnson & Johnson explains that the provision in the former SPD which provided for a
right of appeal to Johnson & Johnson "was the result of a drafting error by the person who
prepared the Accident Insurance Plan provisions of the 1999 Choices book. This error was
corrected in the next edition of 'Choices.'" (Dec. of Rosa Sexton, Director of Benefits
Administration at Johnson & Johnson, ¶4).

7

(1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements. . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact-finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. Weissman v. United States Postal Serv., 19 F. Supp. 2d 254,

8

259 (D.N.J. 1998). When ruling on cross-motions for summary judgment, the court must

consider the motions independently, Williams v. Philadelphia Hous. Auth., 834 F. Supp. 794,

797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in

the light most favorable to the party opposing the motion. See Matsushita, 475 U.S. at 587.


## III. ANALYSIS

### A. COUNT ONE: DENIAL OF BENEFITS 29 U.S.C. §1132(a)(1)(B)

Plaintiffs bring Count One under Section 502(a)(1)(B) of ERISA, which provides:

> **(a) Persons empowered to bring a civil action**
> A civil action may be brought—
>
> > (1) by a participant or beneficiary—
> > * * *
> > > (B) to recover benefits due to him under the terms of his plan, to
> > > enforce his rights under the terms of the plan, or to clarify his
> > > rights to future benefits under the terms of the plan;

29 U.S.C. §1132(a)(1)(B).

ERISA was enacted to promote the interests of employees and their beneficiaries in

employee benefit plans, and to protect contractually defined benefits. Firestone Tire & Rubber

Co. v. Bruch, 489 U.S. 101, 113 (1989). The interpretation of ERISA is governed by the common

law of trusts. ERISA does not set out a standard of review of an administrator's denial of benefits

under an ERISA plan. Instead, courts have developed a federal common law of rights and

responsibilities under ERISA-regulated plans. Id. at 108-11. In the Third Circuit, cases

challenging a denial of benefits under ERISA are subject to three different standards of review:

(1) arbitrary and capricious, (2) de novo, or (3) a "heightened" arbitrary and capricious standard.

9

The parties here disagree over the proper standard the court should apply.

### 1. Standards of Review under ERISA

Because under trust principles, a deferential standard of review is appropriate when a trustee exercises discretionary powers, where the ERISA benefit plan confers discretionary authority on a plan administrator to construe the terms of the plan and determine eligibility for benefits, the administrator's exercise of that authority is given deference by a court and will only be disturbed if the administrator abused his or her discretion. Firestone, 489 U.S. at 115. Under this highly deferential "arbitrary and capricious" standard, the decision of the plan administrator may be overturned only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

Discretion may be either explicit or implied from the plan's terms. Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991). In accordance with trust law principles, the terms of the plan are construed without deferring to either party's interpretation. Luby, 944 F.2d at 1180 (citing Firestone, 489 U.S. at 112). To determine whether a plan grants discretion to an administrator or fiduciary, a court should consider "the provisions of the [plan] as interpreted in light of all the circumstances and such other evidence of the intention of the [plan's creator] with respect to the [plan] as is not inadmissible." Firestone, 489 U.S. at 112 (quoting Restatement (Second) of Trusts §4, Comment d (1959)). Although the primary focus is on the plan language, a finding of discretion is not dependent on "a particular verbal formula." Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1256 (3d Cir. 1993).

If the ERISA benefit plan confers no discretionary authority on the plan administrator, the administrator's decision is subject to a *de novo* review by the court, in accordance with trust

principles dictating that fiduciaries should be given no deference when making non-discretionary decisions. <u>Firestone</u>, 489 U.S. at 111-115.

There is also a standard of review somewhere in between "arbitrary and capricious" and "*de novo*." In <u>Firestone</u>, the Court noted in *dicta* that if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, "that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" <u>Firestone</u>, 489 U.S. at 115. The Third Circuit considered that "delphic statement" from <u>Firestone</u> in fashioning a "heightened arbitrary and capricious standard" when an independent insurance company both funds and administers a plan. "Following the lead of five other such courts, we hold that, when an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." <u>Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F.3d 377, 378, 383 (3d Cir. 2000). Noting that "insurance carriers have an active incentive to deny close claims in order to keep costs down and keep themselves competitive so that companies will choose to use them as their insurers," the court explained that the insurer's "potential self-dealing" calls for a close inspection of a fiduciary insurer's decisions. <u>Id.</u> at 387-88. What that close inspection entails is a method that is something less deferential than arbitrary and capricious review and more deferential than *de novo* review, without actually shifting the burden away from the plaintiff. The Third Circuit calls it the "sliding scale method," in which the degree of scrutiny is intensified to match the degree of the conflict. <u>Id.</u> at 390-93.

## 2. <u>Does the Johnson & Johnson Plan Confer Discretion upon the Administrator?</u>

The first question is who is the plan administrator, a question that is answered by looking at both form and function. The language of the governing SPD explicitly identifies two administrators. The Pension Committee of the Board of Directors of Johnson & Johnson is identified as the Plan Administrator for all Johnson & Johnson plans, responsible for ensuring that all the plans operate according to the terms of ERISA.[3] However, with regard to the 24-Hour Accident Insurance Program in particular, the SPD also identifies Bankers Life as the insurer and administrator of that program.[4] Because the parties do not dispute that Bankers Life acted as the

---

[3] The SPD provides:

**Plan Administrator**

The Johnson & Johnson Family of Companies sponsors these Plans for employees of participating Companies.

The Employee Retirement Income Security Act (ERISA) of 1974, a Federal law, introduced certain requirements for employee benefit plans. Generally, these rules cover the funding and administration of benefit plans and your rights to benefits and communications about these benefits.

The Plan Administrator is responsible for making sure that all employee benefit plans operate according to the terms of ERISA and the appropriate documents or contracts.

The Plan Administrator for Johnson & Johnson benefit Plans is:

The Pension Committee of the
Board of Directors of
Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933-7214

(Riband Aff., 4/8/04, Ex. "B," SPD, at 171-72).

[4] In a table listing all of the benefit programs under the Johnson & Johnson Plan, the line item for the accident insurance program says: "Insured By: Bankers Life and Casualty