legal department, and they did not know what that legal standard meant. (Pl. Ex. "D," Robert Krol Dep., at 48-49, 59-60[16]; Pl. Ex. "E," William Blessing Dep., at 121). Claim Examiner Blessing conceded that "accident" was not defined in either the Policy or in any Bankers Life internal documents, (Pl. Ex. "E," Blessing Dep., at 43-44), and that he had been advised by the legal department that "under ERISA plans . . . the federal courts have determined that driving while intoxicated is not considered an accident." (Id. at 121). Generally, for construing the term "accident," Blessing just relied on "the standard understanding that most people have of an accident, which would be something unforeseen and unexpected." (Id. at 43-44).

Finally and most importantly, after citing Wickman as the relevant authority, Bankers Life *made no attempt at all* to apply the legal standard to the factual circumstances of Precopio's death. There is nothing to show that Bankers Life even considered *any* facts other than Precopio's intoxication level—including whether any other cause such as road conditions, automobile trouble, or weather caused or contributed to the accident. Both Corporate Designee Robert Krol and Claim Examiner William Blessing testified that no factual investigation was done regarding the circumstances of Precopio's death, other than a review of the police, autopsy, and toxicology reports. (Pl. Ex. "D," Krol Dep., at 57; Pl. Ex. "E," Blessing Dep. at 134-138,

---

[16] Knowledge of the standard by which claims are denied due to drunk driving is within the areas of knowledge for which Krol was produced as a corporate designee. Those areas of knowledge included: (1) "the investigation, evaluation and denial of the claim at issue"; (2) "Bankers Life's policies and procedures regarding investigating, evaluating and denying claims under the policy at issue"; (3) "Bankers Life's policies and procedures regarding the denial or payment of claims involving an insured driving while legally intoxicated"; (4) "Bankers Life's history of denials and payments, if any, on claims involving an insured driving while legally intoxicated" under the policy at issue; and (5) "Bankers Life's basis for the denials of claim involving an insured driving while legally intoxicated" under the policy at issue. (Pl. Ex. "D," Krol Dep., at 4-5).

146). Blessing testified that he did not even know if Precopio's intoxication was the cause of the accident. (Pl. Ex. "E," Blessing Dep., at 146). In interpreting whether Precopio's death was an accident, Bankers Life did not begin, as Wickman instructs, with Precopio's subjective expectations, nor did Bankers Life engage in an objective analysis of whether a reasonable person would have viewed death as highly likely to occur as a result of Precopio's actions on the night of his death. Thus, Bankers Life's decision was not consistent with the federal common law definition of "accident," upon which Bankers Life relied exclusively for its interpretation of the term.

Neither was Bankers Life's decision consistent with the language of the SPD or the provisions of ERISA. The *manner* in which Bankers Life denied Precopio's claim—a conclusory statement that death or serious injury resulting from driving while intoxicated is not accidental, without any consideration of the facts—equates to a representation that all drunk driving fatalities are automatically excluded from coverage under an ERISA-governed plan (and *not* excluded under a policy *not* governed by ERISA). Bankers Life's corporate designee, Krol, admitted such in his deposition testimony:

> Q: Is it fair to say that Bankers Life's position—that it is Bankers Life's position that if an insured is killed driving while legally intoxicated it is not an accident?

> Mr. Muscato: Objection to the form of the question.

> Krol: That is an accurate statement for policies governed by ERISA.

> Q: So it is not an accident under ERISA policies, but it is an accident under non-ERISA policies?

> Krol: Correct.

47

(Pl. Ex. "D," Krol Dep., at 44). Such a blanket exclusion of a particular category of cases finds

no support in the language of the SPD or Policy.[17] Bankers Life's denial effectively renders a

drunk-driving fatality a "secret exclusion" under the SPD.

     Given the ambiguity of the term "accident" in the plan, interpreting that term in such a

way that carves out a "secret exclusion" for drunk driving fatalities in the SPD which already has

a specific list of "accident" exclusions would run counter to the rule of *contra proferentem.*

Unlike some other jurisdictions, the Third Circuit follows the rule of *contra proferentem* in

interpreting ERISA plans. See Heasley v. Belden & Blake Corp., 2 F.3d 1249 (3d Cir. 1993).

Under that rule, "if, after applying the normal principles of contractual construction, '[an]

insurance contract is fairly susceptible of two different interpretations, . . . the interpretation that

is most favorable to the insured will be adopted.'" Heasley, 2 F.3d at 1257 (quoting Kunin v.

Benefit Trust Life Ins. Co., 910 F.2d 534, 539 (9th Cir. 1990)). As explained by the Third

Circuit, the principle of *contra proferentem* derives from the recognition that:

> [i]nsurance policies are almost always drafted by specialists employed by the insurer.
> In light of the drafters' expertise and experience, the insurer should be expected to
> set forth any limitations on its liability clearly enough for a common layperson to
> understand; if it fails to do this, it should not be allowed to take advantage of the very
> ambiguities that it could have prevented with greater diligence. Moreover, once the

---

[17]

    Q: Where in the policy at issue . . . does it say that liability coverage does not apply
where the insured is driving and injured or killed while intoxicated?

        A: That is not in here.

        Q: Not in the policy?

        A: No.

(Pl. Ex. "D," Krol Dep., at 50).

> policy language has been drafted, it is not usually subject to amendment by the
> insured, even if he sees an ambiguity; an insurer's practice of forcing the insured to
> guess and hope regarding the scope of coverage requires that any doubts be resolved
> in favor of the party who has been placed in such a predicament.

2 F.3d at 1257 (quoting Kunin, 910 F.2d at 540). "Adoption of *contra proferentem* as a federal

common law rule in ERISA insurance cases makes sense because 'to do otherwise 'would

require us to . . . afford less protection to employees and their beneficiaries than they enjoyed

before ERISA was enacted,' a result that would be at odds with the congressional purposes of

promoting the interests of employees and beneficiaries and protecting contractually defined

benefits.'" 2 F.3d at 1257. Under the rule of *contra proferendem*, the SPD's list of "accident"

exclusions cannot be interpreted in a way that includes an entire category of exclusion that is not

specifically listed.

Not only would Bankers Life's interpretation of the Plan in a way that creates a "secret

exclusion" for drunk driving fatalities run counter to the *contra proferentem* rule of insurance

contract construction recognized by the Third Circuit, but it would also run counter to ERISA's

requirement that SPDs adequately inform participants of circumstances in which their claim may

be denied. The determination that an administrator's interpretation of plan terms conflicts with

the substantive or procedural requirements of ERISA is a factor in concluding that the

administrator's interpretation is unreasonable. See Moench, 62 F.3d at 566. ERISA has "an

elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any

time, a scheme that is built around reliance on the face of written plan documents." Curtiss-

Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995). "Among the required documents, one of

the most important is the Summary Plan Description ("SPD") provided to plan beneficiaries. The

importance of SPDs stems from their role in the ERISA scheme as the *primary* informational document issued to plan beneficiaries to inform them of their rights and obligations under a plan." Local 56, United Food and Comm. Workers Union v. Campbell Soup Co., 898 F. Supp. 1118, 1130 (D.N.J. 1995). The contents of the SPD and language used to communicate the contents are carefully prescribed by statute and regulation. 29 U.S.C. §§1021-24; 29 C.F.R. §2520.102-3(1). "Summary plan descriptions must warn employees of adversity." Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 94 (3d Cir. 1992). The SPD must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. §1022(a). The SPD must contain a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. §1022(b). Finally, the SPD must "not have the effect of misleading, misinforming or failing to inform participants . . . with respect to pertinent provisions of the plan." 29 C.F.R. §2520.102-2(b). As expressed by the Third Circuit, "the ERISA provision governing summary plan descriptions expresses Congress's desire that the SPD be transparent, accurate, and comprehensive." Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. and Research Fund, 334 F.3d 365, 378 (3d Cir. 2003). Bankers Life's position that all drunk driving fatalities are excluded from accidental death coverage under ERISA-governed plans is inconsistent with these ERISA requirements regarding the "transparency, accuracy, and comprehensiveness" of SPDs.

Another factor in concluding that the administrator's interpretation was unreasonable is where the administrator interprets the disputed provision inconsistently. Moench, 62 F.3d at 566.

Here, as discussed earlier, Krol testified that it is Bankers Life's policy to interpret "accident" differently in policies governed by ERISA from policies not governed by ERISA. (Pl. Ex. "D," Krol Dep. at 43-45).[18]

Accordingly, when a plan administrator with a financial conflict of interest interprets an ambiguous plan term by: (1) stating the law wrong, (2) cavalierly failing to apply the law to the facts of the claimant's death, (3) functionally creating a coverage exclusion that is not supported by the language of the plan and that violates rules of contract interpretation, along with ERISA requirements about what SPDs must disclose to participants, and (4) interpreting the term differently for claimants under non-ERISA plans, all signs point to the conclusion that Bankers Life's "accident"-based denial of benefits was the result of Bankers Life's self-interest, rather than the result of an administrator carefully exercising its fiduciary duties to decide whether to grant Precopio benefits that Plaintiffs claim were due him under the Plan and the Policy. Therefore, on the "sliding scale" of a heightened arbitrary and capricious review, this court gives little deference to Bankers Life's decision, see Thomas v. SmithKline Beecham Corp., 297 F. Supp. 2d 773, 788-89 (E.D. Pa. 2003) ("Courts applying the heightened arbitrary and capricious

---

[18] Earlier in his deposition, Krol testified exactly to the contrary:

Q: Are accident claims that come under policies governed by ERISA handled differently than accident claims that come in under policies that aren't governed by ERISA?

A. No.

Q: So they are handled the same?

A: Absolutely identical.

(Pl. Ex. "D," Krol Dep., at 11).

51

standard thus far have been on the 'mild end' when they find 'no evidence of conflict other than the inherent structural conflict . . . and have been on the 'far end of the arbitrary and capricious range' when they find 'procedural anomalies.'") (citations omitted), and finds that the process by which Bankers Life reached its decision was improper. Potter, 992 F. Supp. at 730 ("The Court declines to find that plaintiff was not arbitrary and/or capricious, as a matter of law, when, in its denial letter, it purported to apply 'the law,' cited Wickman, and then misapplied it by ignoring its requirement that death be 'highly likely' to negate a finding of accidental death.").

That Bankers Life's process by which it reached its decision was improper does not necessarily mean, however, that it did not reach the correct result. If Bankers Life is going to rely on federal common law to define the ambiguous term "accident" in the SPD, then the federal common law must be accurately applied to a claim for accidental death benefits. In this case, genuine issues of material fact exist as to whether Precopio's death was an "accident" under federal common law, and those facts must be determined by the fact-finder.

There can be no real dispute that Wickman provides the appropriate framework under federal common law for determining when a particular event is an "accident" for purposes of an accidental death benefits plan governed by ERISA. This court agrees with Potter and West that the Cozzie-Nelson-Miller-Fowler line of cases misapplied Wickman's legal test. All of those cases ignored Wickman's first step of looking first for evidence of the insured's subjective expectations. And as to Wickman's second step, all of those cases either used a lower standard than Wickman's "highly likely to occur" standard, and/or they relied on "common knowledge" of the dangers of drunk driving, or some other sort of nebulous and unverifiable evidence of risk, as the basis for determining a reasonable person's objective expectations. As the West court pointed

52

out, a look at real *evidence*—particularly the kind of evidence that insurance companies regularly use to evaluate insurance risks, such as government statistics—shows that a reasonable person may *not* expect that death or serious injury is "highly likely to occur" as a result of drunk driving. The evidence in <u>West</u> were statistics compiled by the Federal Bureau of Investigation regarding alcohol-related driving offenses and crashes. <u>West</u>, 171 F. Supp. 2d at 904. Likewise, the evidence that the Precopios submit here includes statistics compiled by the United States government showing that of the approximately 1.4 million persons known to have been driving while legally intoxicated in 1998 (because they were arrested for driving while intoxicated), only one-half of one percent (0.5%) of them were killed in automobile accidents. (Pl. Ex. "N," and "O").

Like <u>Potter</u> and <u>West</u>, this court concludes that a reasonable person's expectations should not and cannot be determined by relying on "common knowledge" of the dangers of drunk driving, especially when a consideration of real evidence may support an opposite conclusion than that reached by courts relying on "common knowledge." <u>Wickman</u> is thus not satisfied by a passing reference to the general risks associated with drunk driving. See <u>West</u>, 171 F. Supp. 2d at 904 ("What 'common knowledge' should actually tell a person driving while intoxicated is that he or she is far more likely to be arrested for driving while intoxicated than to die or be injured in an alcohol-related automobile crash, and far more likely to arrive home than to be either arrested, injured, or killed."); <u>Potter</u>, 992 F. Supp. at 730 ("The Court cannot find as a matter of law that death is 'highly likely to occur' as a result of drunk driving and that 'any other expectation would be unreasonable' where many drunken drivers survive (to be prosecuted or perhaps to repeat their risky conduct)."). This is especially true when considering the fact that insurance companies

generally rely on accident statistics published by the government when determining insurable

risks. See West, 171 F. Supp. 2d at 904 n.8.[19]

Because questions of material fact remain as to whether Precopio's death was an

"accident" under federal common law, no party is entitled to judgment as a matter of law. See

Casey v. Uddeholm Corp., supra, 32 F.3d at 1099.

## B. COUNT TWO: BREACH OF FIDUCIARY DUTY

In Count Two, brought against Defendants Bankers Life, Johnson & Johnson, and the

Johnson & Johnson Pension Committee, Plaintiffs bring a claim for breach of fiduciary duty and

seek damages in excess of $1 million. Plaintiffs allege that "as Plan Administrators (or agents of

the Plan Administrators), defendants owed plaintiffs a fiduciary duty to discharge their duties

with respect to the Plan solely in the interests of the participants and beneficiaries of the Plan,"

and defendants breached this duty by failing to conduct a proper investigation of the claim and

thus having no reasonable basis for their denial. (Compl., ¶¶43-45). In their moving papers,

Plaintiffs argue what Johnson & Johnson calls a "new theory"—that the breach consisted of

material misrepresentations and omissions of fact made to Bankers Life regarding Mr. Precopio's

employment with Biosense, which resulted in the denial of plaintiffs' claim for benefits.

The defendants argue that ERISA does not permit individuals to recover money damages

for breach of fiduciary duty. According to Defendants, only two sections of ERISA authorize

---

[19] Bankers Life's Rule 12(b)(6) corporate designee on underwriting issues, Geri Lunetto, testified that Bankers Life relies on such statistics when determining the risks involved in group accident policies, including the group accident policy for Johnson & Johnson. (Pl. Ex. "K," Geri Lunetto Dep., at 9-10).

claims for breach of fiduciary duty: Section 502(a)(2) (which enables a civil suit for violations of

Section 409) and Section 502(a)(3)(B). Defendants argue that under <u>Massachusetts Mut. Life Ins.</u>

<u>Co. v. Russell</u>, 473 U.S. 134 (1985), a claim for breach of fiduciary duty brought pursuant to

Section 409 and its enabling provision, Section 502(a)(2), can only be brought derivatively for a

breach of duty running to the *plan*, not to individual participants or beneficiaries. As for Section

502(a)(3)(B), Defendants argue that provision only authorizes a claim for breach of fiduciary

duty to seek *equitable* relief, not money damages. Therefore, according to Defendants, the

Precopios' claim in Count Two which seeks money damages for the defendants' breach of

fiduciary duty is improper, and the defendants are entitled to judgment as a matter of law.

Under ERISA Section 404, a fiduciary must discharge his or her duties "with respect to a

plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. §1104(a)(1).

ERISA has a specific provision establishing liability for breach of fiduciary duty, Section 409,[20]

---

[20] Section 409 provides in relevant part:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . .

29 U.S.C. §1109(a).

Section 409's enabling provision, Section 502(a)(2), provides in relevant part:

(a) A civil action may be brought—

\* \* \*

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under 1109 of this title;

55

but, as the defendants correctly point out, the Supreme Court in Russell held that Section 409's

fiduciary obligations run solely to the *plan*, not to individual participants or beneficiaries. 473

U.S. at 139-148. Thus, because the Precopios are suing for personal recovery, a claim for breach

of fiduciary duty under Sections 409 and 502(a)(2) is not available to them.

Sections 409 and 502(a)(2) are not the only provisions under which a participant or

beneficiary can bring a claim for breach of fiduciary duty, however. In Varity Corp. v. Howe, 516

U.S. 489 (1996), the Supreme Court agreed with several Courts of Appeals, including the Third

Circuit in Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d

Cir. 1993), that the general language of Section 502(a)(3)(B) (one subsection of ERISA's general

civil enforcement provision) authorizes individual claims for "appropriate equitable relief" for

breach of fiduciary duty.[21] As the Court explained in Varity, "one can read §409 as reflecting a

special congressional concern about plan asset management without also finding that Congress

intended that section to contain the exclusive set of remedies for every kind of fiduciary breach."

516 U.S. at 511. This reading was "consistent with §502's overall structure" which provides "two

---

29 U.S.C. §1132(a)(2).

[21]  Section 502(a)(3) provides in relevant part:

  (a) A civil action may be brought—

     * * *

     (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
which violates any provision of this subchapter or the terms of the plan, or (B) *to
obtain other appropriate equitable relief* (i) to redress such violations or (ii) to
enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. §1132(a)(3).

'catchalls'" which "act as a safety net, offering appropriate equitable relief for injuries caused by violations *that §502 does not elsewhere adequately remedy.*" Id. at 512 (emphasis added).

The key to recognizing Section 502(a)(3)(B) as authority for an individual claim for breach of fiduciary duty is interpreting the phrase "appropriate equitable relief." In Mertens v. Hewitt Assoc., 508 U.S. 248 (1993), after reviewing the history and meaning of "equitable relief" and the use of those words in the context of ERISA, the Supreme Court concluded that "appropriate equitable relief" does not include monetary damages, but rather refers to remedies traditionally viewed as equitable, such as injunction or restitution. 508 U.S. at 256-63. It was on the authority of Mertens that the Third Circuit dismissed the plaintiff's breach of fiduciary duty claims in Hein v. Federal Deposit Ins. Corp., 88 F.3d 210, 224 (3d Cir. 1996), because the plaintiff had requested only monetary damages—*i.e.*, unreduced early retirement benefits that he claimed he was entitled to under the plan. "Because Hein requests monetary damages under ERISA §502(a)(3) and such damages are legal damages not available pursuant to Mertens, we will instruct the district court to dismiss all three of Hein's fiduciary duties claims for monetary damages." Id.

As the Hein court recognized, however, "Mertens does not necessarily bar all forms of monetary damages." 88 F.3d at 224 n.11. Some forms of monetary relief fall under the category of "restitution." The Precopios argue that the money damages they seek in this action are restitution—*i.e.*, accidental death benefits to which they are entitled and were wrongfully denied—and, therefore, can be classified as "equitable relief" for purposes of Section 502(a)(3)(B). That argument seems to have been squarely rejected by the Supreme Court in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), in which the Court

57

recognized the dual nature of the concept of "restitution" and limited Section 502(a)(3)(B)'s "appropriate equitable relief" to restitution that had historically been recognized in courts of equity. "[N]ot all relief falling under the rubric of restitution is available in equity. In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity. . . . Thus, 'restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." 534 U.S. at 212-13.

Historically, restitution was considered a legal remedy in "cases in which the plaintiff 'could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him . . . ." Id. at 213. Such claims were considered legal because the plaintiff "sought to obtain a judgment imposing merely personal liability upon the defendant to pay a sum of money" and were viewed essentially as actions at law for breach of contract. Id. It was this form of restitution that the Great-West Court concluded was *not* recoverable in an action under Section 502(a)(3).

By contrast, restitution was considered an equitable remedy "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. A court could then "order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." Id. This latter form of restitution *was* recoverable as "appropriate equitable relief" under Section 502(a)(3).

58

In Great-West, because the remedy sought by the plaintiffs constituted legal restitution, rather than equitable, the action under Section 502(a)(3) was barred. Here too, because the remedy sought by the Precopios—$1 million in wrongfully denied accidental death benefits—is in the form of legal restitution, rather than equitable, the Precopios are barred from seeking relief for breach of fiduciary duty under Section 502(a)(3).

The Precopios' breach of fiduciary duty claim is barred under Section 502(a)(3) for another reason as well. As the Varity Court made clear, the critical basis for allowing a claim to go forward under the "catchall" provision of Section 502(a)(3)(B) is the unavailability of any other avenue of recovery. Varity, 516 U.S. at 515. Indeed, the benefits that the plaintiffs sought in Varity could not be recovered under a Section 502(a)(2)(B) wrongful denial of benefits theory because they were no longer members of the plan, a fact pointed out by both the lower court and the Supreme Court. Varity, 516 U.S. at 515. Where the requested relief can be adequately addressed by other provisions of Section 502, the equitable remedy of Section 502(a)(3)(B) is not "appropriate." Varity, 516 U.S. at 515 ("[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'").

The Third Circuit has also emphasized that equitable relief under Section 502(a)(3)(B) is only "appropriate" when there is no alternative means for the plaintiff to recover his losses. See Ream v. Frey, 107 F.3d 147 (3d Cir. 1997). "Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided." 107 F.3d at 152. Thus, because "Ream, like the plaintiffs in Varity, ha[d] no alternative means of recovering for his losses" (because the plan was no longer functioning), the

59

court held that "he, too, should have a remedy under ERISA §502(a)(3)." Id. Accordingly, under

Varity and Ream, where a participant or beneficiary seeks a remedy that is otherwise recoverable

under other provisions of Section 502, the individual cannot also seek that same remedy via a

breach of fiduciary duty claim under Section 502(a)(3)(B)'s catchall provision. That is consistent

with the rule that "a court must apply ERISA §502(a)(3)(B) cautiously when an individual plan

beneficiary seeks 'appropriate equitable relief.'" Ream, 107 F.3d at 152-53 (citing Varity, 516

U.S. at 515). See also Tolson v. Avondale Ind., Inc., 141 F.3d 604, 610-11 (5th Cir. 1998)

(holding ERISA Section 502(a)(2)(B) provided participant with adequate redress for denial of

benefits and claim for breach of fiduciary duty arising from the denial thus was precluded,

notwithstanding that he failed to prevail on claim for benefits); Wald v. Southwestern Bell Corp.

Customcare Med. Plan, 83 F.3d 1002, 1006 (8th Cir. 1996) (determining that plaintiff failed to

state a cause of action for breach of fiduciary duty in reviewing claim as she sought no different

relief than that available under claim for benefits under another section of ERISA).

  Here, Plaintiffs have not identified in their complaint which section of ERISA they

invoke in bringing their claim for breach of fiduciary duty, Sections 502(a)(2) and 409 or Section

502(a)(3)(B). Plaintiffs seem to rely on Section 502(a)(3)(B) in their briefs. Under either theory,

however, their claim in Count Two cannot survive summary judgment. A claim for individual

benefits under Sections 502(a)(2) and 409 is barred by Russell. And Plaintiffs' requested

monetary relief for the defendants' alleged breach of fiduciary duty is not "appropriate equitable

relief" under Section 502(a)(3)(B). Not only are the allegedly wrongfully denied benefits a form

of legal restitution which is not available under Section 502(a)(3)(B), but the plaintiffs also have

another means of recovering these benefits via their claim for recovery of benefits under Section

60

501(a)(1)(B) in Count One. Accordingly, summary judgment will be granted to the defendants on Count Two.

### C.  COUNT THREE: FAILURE TO PROVIDE FULL AND FAIR REVIEW

In Count Three, Plaintiffs allege that the defendants failed to provide a full and fair review of their claim in violation of ERISA Section 503. That section provides:

§1133. Claims procedure

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. §1133.

In support of this claim, Plaintiffs allege that, in violation of ERISA regulations: (1) Bankers Life's initial denial letter and its confirmation of denial on appeal failed to reference the specific plan provision on which the denial was based, as required by ERISA regulations and the SPD; and (2) Bankers Life failed to comply with the plaintiffs' request for a review of all the documents that Bankers Life relied on in reviewing the claim, as required by ERISA regulations and the SPD.

Defendants argue that damages are not available for a violation of Section 503; the only available remedy is a remand of the claim to Bankers Life as administrator. Defendants also

61

argue that the undisputed facts show as a matter of law that the plaintiffs were given a full and fair review of their claim.

Normally, "a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy." Parker v. BankAmerica Corp., 50 F.3d 757, 768-69 (9th Cir. 1995). The usual remedy for a violation of Section 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review. Syed v. Hercules, Inc., 214 F.3d 155, 162 (3d Cir. 2000); Schleibaum v. Kmart Corp., 153 F.3d 496, 503 (7th Cir. 1998). The failure of an administrator to follow ERISA's procedural requirements is a factor in determining whether the administrator's decision was arbitrary and capricious. Parker, 50 F.3d at 768-69. However, where a court has determined as a matter of law that an administrator abused his decision, a remand for further action would be inappropriate. Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993); Schleibaum, 153 F.3d at 503 (explaining that remand is not required where it would be a useless formality). In order for an employee to be entitled to an award of benefits as a result of an administrator's failure to follow ERISA procedural requirements, the employee would have to show that the ERISA violations "caused a substantive violation or themselves worked a substantive harm." Parker, 50 F.3d at 769 (quoting Bogue v. Ampex Corp., 976 F.2d 1319, 1326 n.33 (9th Cir. 1992)). See also Schleibaum, 153 F.3d at 504 (explaining that substantive remedies are not foreclosed for procedural violations and district court must "exercise its equitable powers in fashioning an appropriate measure of damages").

Because, as discussed above, this court cannot conclude as a matter of law whether the Precopios are entitled to accidental death benefits, it cannot conclude as a matter of law that

either party is entitled to judgment on the plaintiffs' claim that the defendants failed to provide a full and fair review. Plaintiffs are not barred from a recovery on the basis of procedural violations if they can show that the procedural violations, as discussed above, resulted in the denial of benefits to which they are entitled. Accordingly, the defendants' motion for summary judgment on Count Three is denied.

### D. ATTORNEYS' FEES and STATUTORY PENALTIES

As part of their motion for summary judgment, Plaintiffs also seek attorneys' fees under 29 U.S.C. §1132(g)(1) (providing that "the court in its discretion may allow a reasonable attorney's fee and costs of action."). See McPherson v. Employees Pension Plan of Am. Re-Ins. Co., Inc., 33 F.3d 253, 254 (3d Cir. 1994) (setting forth guidelines for courts to use in determining whether, and to what extent, an award of attorneys' fees is appropriate in ERISA cases). Because the court has concluded that Plaintiffs are not entitled to judgment as a matter of law on any of their claims, neither are Plaintiffs entitled to an award of attorneys' fees at this stage in the proceedings. Accordingly, their request for attorneys' fees will be denied.

Finally, Plaintiffs also seek statutory penalties pursuant to Section 502(c) for Bankers Life's delay in responding to Plaintiffs' request to produce the documents on which Bankers Life relied in denying their claim. Section 502(c) provides in pertinent part that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days

after such request may in the court's discretion be personally liable to such participant or

beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the

court may in its discretion order such other relief as it deems proper." 29 U.S.C. §1132(c). See

Daniels v. Thomas & Betts Corp., 263 F.3d 66, 79-80 (3d Cir. 2001) (affirming district court's

imposition of penalty under Section 502(c) for administrator's failure to respond to beneficiary

for 261 days).

      Plaintiffs contend that they are entitled to statutory penalties because on July 9, 2001,

they asked Bankers Life to produce the documents it relied upon to deny their claim, and Bankers

Life did not produce any of these documents until April 10, 2002—277 days after the plaintiffs'

request—when Bankers Life produced its initial disclosures in this litigation. Plaintiffs seek the

maximum penalty for Bankers Life's 247-day (taking into account the 30-day grace period)

delay: $24,700.

      This court concludes that Bankers Life's failure to produce the documents upon which it

relied in denying Plaintiffs' claim is a fact-based inquiry that, considering this court's denial of

the parties' summary judgment motions, should be left to the fact-finding stage along with the

substantive claims discussed above. Accordingly, the plaintiffs' request for statutory damages

will be denied at this time.

## IV. CONCLUSION

      For the reasons discussed above, the plaintiffs' motion for summary judgment is denied

in its entirety. Defendant Bankers Life's motion for summary judgment is denied as to Counts

One (claim for recovery of benefits under 29 U.S.C. §1132(a)(1)(B)) and Three (failure to

provide a full and fair review under 29 U.S.C. §1133) and granted as to Count Two (breach of

fiduciary duty). The Johnson & Johnson defendants' motion for summary judgment is denied as

to Counts One and Three, and granted as to Count Two. The accompanying Order shall enter

today.


Dated: August 10, 2004                    / s Hon. Robert B. Kugler
                                          Hon. Robert B. Kugler
                                          United States District Judge