UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

PHILIP GLYNN                              :
                                          :
        Plaintiff,                        :
                                          :
V.                                        :        CIVIL ACTION NO.:
                                          :        302CV1802 (AVC)
                                          :
BANKERS LIFE AND                          :
CASUALTY COMPANY,                         :
                                          :
        Defendant                         :        March 17, 2005

## LOCAL RULE 56(a)1 STATEMENT

1.      Prior to and on June 8, 2001, Peter J. Glynn was insured pursuant
to a group accident policy issued by Bankers Life and Casualty Company
and designated as policy SR 84001.  *See* Depo of Robert Krol, attached to
the accompanying Memorandum of Law as Exhibit K, at page 25;
Accidental Death Insurance Policy, attached to the accompanying
Memorandum of Law as Exhibit J.

2.      Prior to and on June 8, 2001, the plaintiff, Philip Glynn, father of
Peter J. Glynn, was the primary beneficiary of said insurance policy.  *See*
Beneficiary Designation form attached as Exhibit A.

3.      On June 8, 2001, Peter J. Glynn died as a result of injuries
sustained in a motor vehicle accident that occurred on Wolcott Street near
its intersection with Peck Lane in Bristol, Connecticut.  *See* Death
Certificate, attached to the accompanying Memorandum of Law as Exhibit
N at D 069; Police report, attached to the accompanying Memorandum of
Law as Exhibit C at D 058-062, 066.

4.      A certificate of death was issued by the Office of the Chief
Medical Examiner on July 10, 2001.  *See*  Death Certificate, attached to
the accompanying Memorandum of Law as Exhibit N at D 069.

5.      The insurance policy issued by Bankers Life and Casualty Company provided that payments would be made to the primary beneficiary of the policy in the event that the conditions of the policy were met. *See* Insurance Policy, attached to the accompanying Memorandum of Law as Exhibit J at D 010.

6.      According to a toxicology report issued by the Office of the Chief Medical Examiner on June 22, 2001, ethanol was found in Peter J. Glynn's blood at a concentration level of 0.17%. *See* Medical Examiner's Toxicology Report, attached to the accompanying Memorandum of Law as Exhibit N at D 077.

7.      Bankers Life and Casualty Company has refused to pay the benefits of said policy to the primary beneficiary. *See* Denial Letter dated March 4, 2002, attached to the accompanying Memorandum of Law as Exhibit T.

8.      Robert Krol was designated the Corporate Designee of the defendant, Bankers Life and Casualty Company. *See* Re-Notice of Deposition dated May 11, 2004, attached to the accompanying Memorandum of Law as Exhibit L.

9.      Robert Krol was responsible for making decisions on behalf of the defendant, Banker's Life and Casualty Company, on whether to pay or deny claims made by beneficiaries such as the plaintiff, Philip Glynn. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 8-9.

10.     The defendant's sole expert in this case, Robert Pandina, Ph.D., stated "I don't think anybody except those people who have an intention to commit suicide, get behind the wheel of a car whether they are sober or not, and intend or expect to have a collision." *See* Exhibit F, attached to the accompanying Memorandum of Law as Exhibit F at 142.

11.     Peter J. Glynn's death was not intended. *See,* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 38.

12.     "Accident" was not defined in the aforesaid policy. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 89.

2

13.     The accidental death and dismemberment policy issued by the defendant, Bankers Life and Casualty Company, to the decedent, Peter J. Glynn, did not include an exclusion for death resulting from driving while intoxicated. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 91.

14.     At the time that the defendant denied the plaintiff's claim, Robert Krol defined "accident" as something "unforeseen" and "unexpected." *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 93.

15.     Peter J. Glynn's death was unforeseen. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 103.

16.     Peter J. Glynn's death was unexpected. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 103-04.

17.     The only reason advanced by the defendant for its refusal to pay the plaintiff's claim was the combination of the decedent's accidental death policy being an ERISA plan and the decedent's blood alcohol content, which was reported by the medical examiner to have been elevated at the time of his death. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 24-25, 31-32.

18.     The defendant pays claims for accidental death benefits resulting from a decedent's drunk driving under policies using the same language as the policy provided for the decedent, Peter J. Glynn, that are non-ERISA plans. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 24-25.

19.     The defendant, Bankers Life and Casualty Company, would have paid the benefits to the plaintiff, as the beneficiary of the decedent, Peter J. Glynn, had the accidental death and dismemberment policy not been part of an ERISA plan. *See* Krol depo, attached to the accompanying Memorandum of Law as Exhibit K at 24-25.

20.     The aforementioned blood alcohol content of the decedent was based solely on a single blood sample that was taken from Peter Glynn's heart during his autopsy, hours after his death. *See* Declaration of John W. Soper, attached to the accompanying Memorandum of Law as Exhibit I at

3

4, Paragraphs 12-13; Depo of Robert Pandina, attached to the accompanying Memorandum of Law as Exhibit F at 88-89.

21.     Other than the aforementioned blood alcohol content, there was no evidence that Peter Glynn purchased or ingested any alcohol on the date of his death. *See* Exhibit G; Research Bureau Investigation, attached to the accompanying Memorandum of Law as Exhibit E at 3; Depo of Theresa Jones, attached to the accompanying Memorandum of Law as Exhibit G at 17-19).

22.     During the autopsy of Peter Glynn, tissue samples, including blood, urine, vitreous fluid, gastric contents, liver, and brain, were all obtained. *See* Exhibit I at 4, Paragraph 12.

23.     Of the aforementioned tissue samples take from the decedent, only the single blood sample was analyzed for the presence of alcohol. *Id* at Paragraphs 14-16.

24.     Postmortem production of alcohol is a significant problem in determining whether a blood alcohol level taken after the decedent's death is actually indicative of that decedent's level of intoxication, if any, at his time of death. *See* Exhibit I at 5, Paragraph 20; Exhibit F at 33,115-16.

25.     It is impossible to determine, with adequate medical certainty, Peter Glynn's level of impairment and/or intoxication, if any, either legally or at all, at the time of his accident and death. *See* Exhibit F at 121.

26.     It is impossible to determine, with any degree of medical certainty, the extent of intoxication, if any, of Peter Glynn under the circumstances of this case. *See* Exhibit F at 33, 65, 67-68, 88-89, 94, 99, 115-16, 121; Exhibit I at 10, Paragraph 45.

RISCASSI & DAVIS, P. C.   •   *ATTORNEYS-AT-LAW*   •   131 OAK STREET   •   P. O. BOX 261557   •   HARTFORD, CT 06126-1557   •   (860) 522-1196

PLAINTIFF,
PHILIP GLYNN

By _____
Everett H. Madin, Jr.
Federal Bar No.:  CT 12297
RISCASSI & DAVIS, P.C.
131 Oak Street
Hartford, CT 06106
Ph:  860-522-1196
Fax:  860-246-5847

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed via First Class Mail, postage pre-paid, on this 17th  day of March, 2005 to the following counsel of record:

John Shaban, Esq.
Whitman, Breed, Abbott & Morgan
100 Field Point Road
P O Box 2250
Greenwich, CT 06830

Andrew Muscato, Esquire
Skadden, Arps, Slate, Meagher, & Flom, LLP
Four Times Square
New York, NY 10036-6522

_____
Everett H. Madin, Jr.

5

# EXHIBIT A

| HRS-INFO | Choices | BENEFICIARY DESIGNATION | FOR BENEFITS DEPARTMENT USE ONLY | NAME: |

NAME: Peter Glynn

COMPANY NAME (Optional)

SITE NAME (Optional)

USER ID: JWM 11/30/94

PID/SSN: 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

EFFECTIVE DATE: Mo. 10 Day 07 Yr. 94 SITE CODE: CLT03

NOTE: TO DELETE A BENEFICIARY ENTER 9 IN POSITION 1 OF BENEFICIARY NAME.

RELATIONSHIP CODE EXPLANATION:
- S - SPOUSE
- P - PARENT
- C - CHILD
- R - OTHER RELATIVE
- X - OTHER

**PRIMARY BENEFICIARY DATA**

| (✓) | BENEFIT | BENEFICIARY | REL CODE |
|---|---|---|---|
| | (GLEP) EMPLOYEE TERM LIFE | | |
| | (GLSP) SPOUSE LIFE | | |
| ✓ | (GAEP) EMPLOYEE ACCIDENT | PHILLIP A GLYNN | P |
| | (GASP) SPOUSE ACCIDENT | | |
| | (GLCP) CHILD LIFE | | |
| | (GACP) CHILD ACCIDENT | | |

**CONTINGENT (SECONDARY) BENEFICIARY DATA (Optional)**

| (✓) | BENEFIT | BENEFICIARY | REL CODE |
|---|---|---|---|
| | (GLES) EMPLOYEE TERM LIFE | | |
| | (GLSS) SPOUSE LIFE | | |
| ✓ | (GAES) EMPLOYEE ACCIDENT | SHIRLEY M GLYNN | R |
| | (GASS) SPOUSE ACCIDENT | | |
| | (GLCS) CHILD LIFE | | |
| | (GACS) CHILD ACCIDENT | | |

Krol #4
5/18/04

EMPLOYEE SIGNATURE: Peter J. Glynn    DATE: 11-30-94

BENEFITS ADMINISTRATOR SIGNATURE    DATE: 11-30-94

FORM 1148-147 NEW 8/90 (Reorder From J&J Central Services)    ©JOHNSON & JOHNSON 19

COPY DISTRIBUTION:    WHITE — Benefits File;    CANARY — Employee;    PINK — Payroll