## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------x
                                    :
PHILIP GLYNN,                       :        CIVIL NO. 3-02CV1802 (AVC)
                                    :
    Plaintiff,               :
                                    :
v.                                  :
                                    :
BANKERS LIFE AND CASUALTY CO.,      :
                                    :
    Defendant.               :        MARCH 24, 2005
-------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56, defendant Bankers Life and Casualty Company

("Bankers") respectfully submits the within memorandum of law in support of its motion

for summary judgment dismissing the complaint.

Plaintiff asserts a single claim alleging a violation of the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff claims entitlement to

benefits under an accidental death policy. Because the decedent died while driving

intoxicated with a 0.17% blood alcohol content ("BAC"), Bankers denied the claim as

non-accidental.

## FACTS AND NATURE OF THE CASE

This is an action brought under ERISA. Plaintiff's decedent, Peter Glynn (the

"Decedent"), died on June 8, 2001 in a single car collision. With a blood alcohol content

of 0.17%, he was driving while intoxicated. Peter Glynn, who weighed 334 lbs., was

driving in his Mazda Miata convertible automobile with the top down. He was traveling

well in excess of the posted speed limit of 25 m.p.h. He lost control of the vehicle while approaching a curve, causing the vehicle to slide sideways until it struck the curb and overturned, trapping Glynn in the wreckage.

Plaintiff seeks to recover benefits under Group Accident Policy No. SR84,0001 (the "Policy") issued by Bankers to Johnson & Johnson ("J&J"), the Decedent's employer. Complaint, First Count, ¶¶ 2, 3. The Policy was part of J&J's employee welfare plan subject to ERISA (the "Plan"). *Id.* As administrator of the Plan, Bankers had the discretion to deny the claim. *Id.*, ¶¶ 4, 7. Bankers denied the claim because, under ERISA case law, the Decedent's death is not accidental because it resulted from driving while intoxicated.

Consequently, Plaintiff has no legal claim to accidental death benefits under the Policy.

## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint in Connecticut Superior Court in or about September 2002. In October 2002, Bankers removed the matter to this Court on the ground that it was an ERISA action. By Order dated May 29, 2003, this Court permitted Plaintiff to amend his complaint to assert additional pendent state claims. Thereafter, Plaintiff moved twice more to amend his Complaint – on July 18, 2003 and November 17, 2003 – ultimately asserting an ERISA claim. On October 29, 2003 Bankers filed a motion to dismiss the pendent state claims on the ground that they were preempted by ERISA. By Order dated December 9, 2003, this Court granted Bankers' motion to dismiss all state claims, leaving as Plaintiff's sole claim the ERISA claim. On January 14, 2004, this Court permitted the further amendment of Paragraph 7 of the ERISA claim.

61158                                   2

By Order dated November 9, 2004 this Court denied without prejudice the parties' respective motions for summary judgment, and reopened discovery for limited purposes.

## ARGUMENT

## I. STANDARDS OF REVIEW ON THIS MOTION.

### A. <u>Standard of Review for Summary Judgment.</u>

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(c)). It is the moving party's burden to demonstrate the absence of any genuine issue of material fact. *Matsushita*, 475 U.S. at 586 n. 10; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Facts that could alter the outcome are "material", *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and disputes are "genuine" if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the moving party has demonstrated an absence of material fact, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Liberty Lobby*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential

element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322. The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48.

Accordingly, a party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts [in question]." *Matsushita*, 475 U.S. at 586. The opposing party must proffer admissible evidence that could lead a rational trier of fact to find in its favor. *Id.* at 586-87. If the opposing party fails to present evidentiary matter showing that there is a genuine issue of material fact that is worth bringing to trial, summary judgment may be entered against him. *Id.*

The threshold inquiry at this stage is whether there is any need for a trial -- whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 250-252. When, as here, the only issues to be decided in the case are issues of law, summary judgment is appropriate. See *Jakobson Shipyard v. Aetna Cas. and Sur.*, 775 F.Supp. 606, 609 (S.D.N.Y. 1991), aff'd 961 F.2d 387 (2d Cir. 1992).

## B.    Standard of Review of an Insurer/Fiduciary's Denial of Benefits Under ERISA.

ERISA regulates employee welfare benefit plans that, through the purchase of insurance, provide benefits in the event of death. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987)(quoting 29 U.S.C. § 1002(1)). Fiduciaries administer ERISA plans and are

61158                                        4

obligated to comply with the terms of the plan. 29 U.S.C. § 1102(a)(1); *Nazay v. Miller*,

949 F.2d 1323, 1329 (3d Cir. 1991).

Under ERISA, a "fiduciary" is a person with any discretionary authority or

responsibility in the administration of a plan:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary
> with respect to a plan to the extent (i) he exercises any discretionary
> authority of discretionary control respecting management of such plan . . .
> or (iii) he has any discretionary authority or discretionary responsibility in
> the administration of such plan.

The Supreme Court has ruled that an administration's denial of benefits under an

ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the

terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948,

103 L.Ed.2d 80 (1989). Where written plan documents confer upon a plan administrator

the discretionary authority to determine eligibility, courts will not disturb the

administrator's ultimate conclusion unless it is "arbitrary and capricious." *Pagan v.

NYNEX Pension Plan*, 52 F.3d 438, 441 (2d. Cir. 1995). The grant of discretion may be

cither explicit in the terms of the plans or implied from the plan's language. *Luby v.

Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991).

The Court of Appeals for the Second Circuit does not require the use of "magic

words such as 'discretion' and 'deference'" to invoke the highly deferential "arbitrary and

capricious" standard. *Jordan v. Retirement Committee Rensselaer Poly.*, 46 F.3d 1264,

1271 (2d Cir. 1995). For example, this Court has found grants of discretion in the use of

the phrase "when Prudential determines" and "when Prudential decides" when used in

ERISA plan provisions discussing eligibility for coverage and benefits. *See, e.g., Larsen*

61158                                    5

*v. Prudential Ins. Co. of America*, 151 F.Supp.2d 167 (D.Conn. 2001); *see also Pagan*, 52 F.3d at 441-42 (holding that discretion was granted to the plan administrator pursuant to plan provisions such as the administrator "shall serve as the final review committee . . . for the review of all . . . claims by participants."); *Kocsis v. Standard Ins. Co.*, 142 F.Supp.2d 241, 251-52 (D. Conn. 2001).

Under the arbitrary and capricious standard, the district court may not substitute its judgment for that of the plan administrator. *Pagan*, 52 F.3d at 442. The reviewing court may overturn a decision to deny benefits <u>only</u> if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.*; *Larsen*, 151 F.Supp.2d at 172; *see also Bowman Transp. Inc. v. Arkansas – Best Freight Sys. Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)(when applying an arbitrary and capricious standard, the reviewing court must ask whether "there has been a clear error of judgment.").

"Substantial evidence [i]s such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator] and requires more than a scintilla but less than a preponderance." *Miller*, 72 F.3d at 1072. In cases where both the claimant and the administrator "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000).

Furthermore, "a district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72w F.3d 1066, 1071 (2d Cir. 1995).

61158                                6

When reviewing the denial of benefits by an insurer that both determines benefit eligibility and pays those benefits from its own funds, the Court of Appeals for the Second Circuit advises courts to weigh that conflict as a factor in determining whether the insurer abused its discretion. *Jordan*, 46 F.3d at 1274. The insurer-administrator's reasonable interpretation of the plan will stand unless the claimant can show not only the existence of a potential conflict of interest but that the conflict affected the reasonableness of the administrator's decision. *Pagan*, 52 F.3d at 443; *see also Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996).

C.    **The *Wickman* Standard Determines Whether a Death is Accidental Under ERISA.**

The standard for determining whether a death was accidental under the terms of an ERISA insurance policy is set forth in *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1081 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L. Ed. 2d 586 (1990). That standard requires a court to determine (1) whether the insured subjectively expected an injury similar in type to one that occurred; (2) if he did not, whether his belief was reasonable; and (3), if the insured's subjective expectations cannot be ascertained, whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of his intentional conduct. *Wickman*, 908 F.2d at 1088.

II.    **BANKERS IS ENTITLED TO SUMMARY JUDGMENT DISMISSING THE COMPLAINT BECAUSE A DRIVER'S DEATH WHILE DRIVING INTOXICATED IS NOT ACCIDENTAL.**

Plaintiff's claim arises under Section 502(a)(1)(B) of ERISA that states:

> A civil action may be brought –
> (1) by a participant or beneficiary –

61158                                    7

. . . .

> (B)   to recover benefits due to him under the terms of his plan, to
> enforce his rights under the terms of the plan, or to clarify his rights to
> future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

Plaintiff claims accidental death benefits where the facts are that his Decedent was driving while intoxicated (blood alcohol content of 0.17%), and speeding (almost twice the posted legal limit), and as a result lost control of his convertible automobile in a series of sharp curves. Bankers denied the claim in reliance upon ERISA common law.

Benefit provisions of an ERISA regulated life insurance program are interpreted under principles of federal common law. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57, 107 S. Ct. 1549, 1557-58, 95 L. Ed. 2d 39 (1987).

Federal courts have since applied the *Wickman* test in the context of driving while intoxicated. The solid majority of federal courts that have ruled on the issue have upheld the denial of accidental death benefits where the decedent died while driving intoxicated. *See*, e.g., *Cates v. Metropolitan Life Ins. Co.. Inc.*, 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996), aff'd 149 F. 3d 1182 (6th Cir. 1998) (holding that it is not unreasonable to conclude that driving while intoxicated makes the possibility of injury or death reasonably foreseeable and thus not accidental); *Cozzie v. Metropolitan Life Ins. Co.*, 963 F. Supp. 647 (N.D. Ill. 1997) (upholding the denial of benefits because the insurer's determination that the insured's drunk driving death was accidental, was not unreasonable under arbitrary and capricious standard); *Nelson v. Sun Life Assurance Co.*, 962 F. Supp. 1010 (W.D. Mich. 1997) (applying *Wickman* and upholding the denial of benefits because the company's determination that death while driving intoxicated was not an accident was not implausible); *Miller v. Auto – Alliance Int'l Inc.*, 953 F. Supp. 172 (E.D. Mich. 1997)

61158                                                    8

(upholding denial of benefits because administrator's determination that death while driving intoxicated was not accidental was not unreasonable); *Fowler v. Metropolitan Life Ins. Co.*, 938 F. Supp. 476 (W.D. Tenn. 1996) (holding that the fiduciary's denial of benefits based on determination that drunk driving fatality was not accidental was not arbitrary and capricious where the decedent lost control of his car while negotiating a curve); *see also Baker v. Provident Life and Accident Ins. Co.*, 171 F.3d 939 (4th Cir. 1999) (upholding a charge of manslaughter against a drunken driver because "the dangers of driving while intoxicated are plain. Baker cannot now be heard to claim that he was unaware that his behavior threatened his own life and those of other motorists."); *but see King Ex. Rel. Schanus v. Hartford Life and Acc.*, 357 F.3d 840 (8th Cir. 2004); *Metropolitan Life Ins. Co. v. Potter*, 992 F. Supp. 717 (D.N.J. 1998); *West v. Aetna Life Ins. Co.*, 171 F. Supp. 2d 856 (N.D. Iowa 2001).

Moreover, many courts have rejected the argument that the denial of benefits is arbitrary and capricious where the insurance plan does not expressly exclude benefits because of an insured's intoxication. *See, e.g., Cozzie, supra*, 963 F. Supp. at 648, 654 (upholding denial of benefits where plan did not specifically exclude from coverage death caused by driving while intoxicated); *Morton v. Smith*, 91 F.3d 867 (7th Cir. 1996) (upholding denial of benefits where insured injured himself after jumping off roof of bar while intoxicated); *Schultz v. Metropolitan Life Ins. Co.*, 994 F. Supp. 1419, 1422 (M.D. Fla. 1997) (upholding denial of benefits where plan did not specifically exclude from coverage death caused by driving while intoxicated); *Fowler*, 938 F. Supp. at 480 (same); *Nelson*, 962 F. Supp. at 1012 (W.D. Mich. 1997) (same); *Cates v. Metropolitan Life Ins. Co., supra*, (same).

61158                                    9

A.    **The Arbitrary and Capricious Standard of Review Applies Here.**

Here, the arbitrary and capricious standard applies because Bankers had discretion

to deny Plaintiff's claim for benefits under the 24-Hour Accident Policy. (Material Facts

4,19,20,21). The Plan unequivocally names Bankers as the decision maker on claims

(Material Fact 4). The Plan's summary plan description ("SPD") states that Bankers'

decision on a claim was "final and binding":

> If your claim for a benefit is denied..., you will be notified in writing by
> the Administrator for that benefit plan [here, Bankers].
>
> ....
> .... If you disagree with the denial, [you may request a review] in writing
> and sent to the Administrator for that benefit plan [ here, Bankers].
>
> The reviewer will issue a decision within 60 days.
>
> ... you will be notified in writing of the final and binding decision on your
> claim. (Material Fact 21) (emphasis supplied).

Courts have deemed such language to confer discretion upon the plan

administrator. See, e.g., *Larsen v. Prudential Ins. Co. of America, supra*. Furthermore,

Bankers' exercised its discretion in denying Plaintiffs' claim and was the final and binding

decision thereon (Material Facts 19-24).

Even under a *de novo* review, Bankers' denial of Plaintiff's claim would be correct

under the Plan. See *Poeppel v. Hartford Life Ins. Co.*, 273 F. Supp.2d 717 (D.S.C. 2003)

(applying the *Wickman* standard, the decedent's death cannot be deemed an accident

because he was highly intoxicated – but for the intoxication, the wreck might never have

happened); *Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486, 494 (D.R.I. 2000)

(upholding the plan administrator's decision under a *de novo* standard, because where the

decedent was driving at an excessive speed, at night, highly intoxicated and died in a

single-car accident, death was not accidental); *Nelson v. Sun Life Insurance Co. of Can.*,

61158                                        10

962 F. Supp. 1010, 1013 (W.D. Mich. 1997) (upholding the denial under a *de novo* standard and finding that the policy exclusion for self-inflicted injuries applied because voluntary intoxication seriously impaired the decedent's judgment and ability to control his vehicle).

**B.    Bankers is Entitled to Summary Judgment Under *Wickham* Because A Reasonable Person Would Not Have Driven with a 0.17 BAC.**

The Decedent should have known the inherent dangerousness of his reckless driving while intoxicated, especially in light of his driving a convertible, top down, without a roll-over bar. "A reasonable person in the decedent's shoes would have known that driving while intoxicated at twice the legal limit was highly likely to result in serious injury or death." *Walker*, 24 F. Supp. 2d at 782. Thus, the Decedent's death cannot be characterized as "accidental" because a reasonable person with the Decedent's background and experience would have known that injury was highly likely to occur as a result of his intentional conduct in driving too fast while intoxicated.

Even if Plaintiff could prove that the Decedent did not believe that he could be seriously injured or killed by driving at almost twice the speed limit downhill through a series of sharp curves while intoxicated, then the Decedent's belief would be unreasonable. Under *Wickman*, if the insured's belief is unreasonable, then the injury will not be considered an accident. There, the Court used the "game" of Russian roulette to illustrate this principle, stating that the players neither intend or expect to be killed, and pointing out that courts have routinely held in those cases that death occurring during those "games," regardless of actual expectation or intention, are not accidental. *Wickman*, 908 F.2d at 1089. "If the insured did not believe that the result would occur,

we must consider whether such an estimation can be considered reasonable. If the expectations of the insured were objectively unreasonable, then injuries or death resulting therefrom are not accidental." *Cozzie*, 140 F.3d at 1110.

Here, under *Wickman*, where the decedent's subjective expectations cannot be ascertained, the standard applied by courts is the reasonable person, and not a statistical analysis, as Plaintiff would no doubt argue. The inquiry is whether a reasonable person, with background and characteristics similar to the Decedent's, would have viewed the injury as highly likely to occur as a result of his intentional conduct. *See, Wickman*, 908 F.2d at 1088.

Substantial evidence existed demonstrating that the Decedent died of foreseeable injuries sustained when he lost control of his Mazda Miata convertible while driving (1) highly intoxicated with a blood alcohol content of 0.17% (Material Fact 14),[1] (2) down a hill with a series of sharp curves (Material Fact 9), (3) at almost twice the posted legal speed limit (Material Fact 16)[2].

Assuming that the Decedent began to drink alcohol at 5:30 p.m. and that he consumed his last drink such that his BAC would have been at peak or descending at the time of the accident, i.e. his last drink was no later than 7:00 p.m., at his 334 pound weight, he would have had to consume 22 ounces of 80 proof distilled spirits (or some other consumption of the alcohol equivalent) in that time for him to obtain a BAC of 0.17%. Declaration of Robert J. Pandina, Ph.D. ("Pandina Decl."), ¶ 7; Material Fact 29.

---

[1] In 2001, operating a motor vehicle with a blood alcohol content of 0.10% or more violated Conn.Gen.Stat. § 14-227a.

[2] The Police calculated that the Decedent's automobile was "traveling a minimum speed of 42.34 miles per hour" in an area with a posted 25 MPH speed limit (Material Fact 17). That speed violated Conn.Gen.Stat. § 14-218a, Traveling unreasonably fast (Material Fact 18).

BACs in the 0.17% range indicate acute intoxication, resulting in debilitating impairments in multiple domains of functioning including without limitation: perceptual-motor coordination required for integration of sensory input and behavioral outflow; cognitive processing required for comprehension and decision-making; and affective processing required for emotion appreciation and expression; and at this level, the skills required to operate a motor vehicle are significantly impaired. Pandina Decl., ¶8; Material Fact 30.

The majority of individuals at BACs of 0.17% experiences symptoms of intoxication that would alert them to the fact that they are impaired, such as visual distortions including double vision, difficulty with eye-hand coordination and difficulty walking and standing as well as a general sense of being under the influence. Therefore, the Decedent would have been aware that he was intoxicated and that, as a result of his intoxication, his ability to operate a motor vehicle was impaired at the time he was operating his motor vehicle on June 8, 2001. Pandina Decl., ¶9; Material Fact 31.

Under *Wickman*, a reasonable person who experience a sudden onset of visual distortions including double vision, difficulty with eye-hand coordination and difficulty walking and standing, would have believed that serious injury or death was likely to occur if he drove his automobile. Indeed, he would have sought medical assistance instead of blithely driving at almost twice the speed limit downhill through a series of sharp curves.

Indeed, other experts agree that, with a 0.17 BAC, the Decedent would have had difficulty walking and standing, his judgment and perception would have been severely impaired and he could expect to experience a blackout. *Blood Alcohol Level and*

61158                                   13

*You:Behavior by Numbers*, http://www.factsontap.org/yourbody/ BALandU.htm.[3] A

driver with a blood alcohol content of .15% is 380 times more likely to die in a single

vehicle crash than a nondrinker. Zador, P.L., Krawchuk, S.A., & Voas, R.B. (2000),

*Relative Risk of Fatal Crash Involvement by BAC, Age, and Gender.*[4] Here, The

Decedent was operating a small sport car with its convertible top lowered (Material Facts

6,8,12). The Decedent had only six months experience driving the small convertible

(Material Fact 7). In other words, the Decedent's death occurred under circumstances

where an inexperienced, intoxicated driver was speeding downhill through a series of

sharp curves in a small sports convertible and lost control of his sport car.

A decedent does not have to intend to die for his death to be intentional. *Nelson*

*v. Sun Life Assurance Co.*, 962 F. Supp. at 1013. Put another way, "[w]hile [the

decedent] did not intend to die, his expectations were unreasonable given his condition.

It is just common sense that a driver whose faculties are significantly impaired by alcohol

. . . risks his life as well as others [by driving drunk]. . . . Denial of benefits is appropriate

in such circumstances." *Schultz*, 994 F. Supp. at 1421. Here, the Decedent should have

known that he was risking his life by driving while intoxicated. Any other expectation

simply is unreasonable. As a result, Bankers did not act arbitrarily and capriciously in

---

[3] Many colleges and universities use the same information, advising students that at a blood alcohol level of .14% to .17%, "You could have difficulty talking, walking, or even standing. Your judgment and perception are severely impaired. You may become more aggressive, and there is an increased risk of accidentally injuring yourself or others. This is the point when you may experience a blackout." See, e.g., *Blood Alcohol Level: Let's put it all out on the table,* http://www.csub.edu/UnivServices/CounselBAL2.htm; *What Your BAC Means,* http://www.nd.edu/~ucc/yourbac.html; *Blood Alcohol Content Calculator-The Police Notebook,* http://www.ou.edu/oupd/bac.htm.

[4] Report HS-809-050, Washington D.C., U.S. Department of Transportation, National Highway Traffic Safety Administration, statistical chart reprinted at http://www.madd.org/stats/0,1056,4839,00.html and htpp://www.ou.edu/oupd/bac.htm.

61158                                              14

denying benefits under the Plan to plaintiff. Bankers made no "clear error of judgment."

*Bowman Transp.*, 419 U.S. at 285.

Moreover, Bankers' denial of benefits in reliance upon Federal common law
precedent was not arbitrary and capricious. The overwhelming majority of district courts
that had reviewed that issue had upheld as not unreasonable the determination of ERISA
plan administrators that death while driving intoxicated is not accidental.

### C.    Bankers' Denial Was Not Arbitrary and Capricious.

Furthermore, Bankers fully complied with the requirements for claims procedures
as set forth in ERISA, that state:

> In accordance with regulations of the Secretary, every employee
> benefit plan shall–
>
> > (1) provide adequate notice in writing to any participant or
> > beneficiary whose claim for benefits under the plan has
> > been denied, setting forth the specific reasons for such
> > denial, written in a manner calculated to be understood by
> > the participant, and
> >
> > (2) afford a reasonable opportunity to any
> > participant whose claim for benefits has been
> > denied for a full and fair review by the appropriate
> > named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

In denying the claim, Bankers relied upon the Plan and the Policy (Material Facts

20, 21). At the time it made its decision, it had reviewed its entire Glynn claim file

(Material Fact 28). In its denial letter dated March 4, 2002, Bankers notified Plaintiff that

the Policy did "not permit payment of benefits" because "[f]ederal courts, in applying

federal common law to claims for accidental death and dismemberment benefits under

ERISA plans, have uniformly held that death resulting from driving while intoxicated is

61158                                    15

not accidental" (Material Facts 23, 24). Bankers notified Plaintiff that an appeal could be made within 60 days by writing to Bankers. Plaintiff was invited to "[i]nclude any documentation that you feel supports this claim." (Material Fact 25).

When a plan administrator has written to a claimant with updates on his claim and had fully laid out its reasons for denying his claim, responded to his letter, and invited him to call with further questions, the claimant received a full and fair review of his claim. *Goldstein v. Johnson & Johnson*, 251 F.3d 433 (3d Cir. 2001). Similarly, in this case, Plaintiff was given a full and fair review of this claim.

While this Court may "certainly [be] sympathetic to the plaintiff's tragic loss, federal common law . . . leads to the conclusion that [Bankers'] denial of insurance benefits to [Plaintiff] was not improper." *See Poeppel*, 273 F.Supp. 2d at 721.

Therefore, Bankers is entitled to summary judgment because Bankers' exercise of its discretion under the Plan to deny the claim was not arbitrary or capricious. Bankers' decision to deny the claim was not "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442; *Larsen*, 151 F.Supp.2d at 172.

## CONCLUSION

Because Plaintiff's decedent's death occurred while driving intoxicated, his death was not an accident as a matter of law and Bankers respectfully requests that this Court grant its motion and dismiss the complaint in its entirety.

61158                                         16

THE DEFENDANT
BANKERS LIFE AND CASUALTY
COMPANY

BY _____
John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com

and

Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

61158

17

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendant's Memorandum of Law

in Support of Defendant's Motion for Summary Judgment was sent by first class mail,

postage prepaid, on the 24th day of March 2005 to the following:

Everett H. Madin, Jr., Esq.
Riscassi and Davis, P.C.
131 Oak Street
Hartford, CT 06106

John T. Shaban

61158                                    18