UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - x

PHILIP GLYNN,                      :
                                   :
          Plaintiff,               :
                                   :
     v.                            :    CIVIL ACTION NO.:
                                   :    02-CV-1802 (ARC)
BANKERS LIFE AND CASUALTY          :
COMPANY,                           :
                                   :
          Defendant.               :    MARCH 17, 2005
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF ROBERT J. PANDINA, PH.D. IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Robert J. Pandina, Ph.D., declare under penalty of perjury that the following is true and correct:

1. I am the Director of the Center of Alcohol Studies at Rutgers, the State University of New Jersey, in Piscataway, New Jersey. My *curriculum vita* is attached hereto as Exhibit A.

2. I have been retained by Defendant Bankers Life and Casualty Company to give testimony concerning Peter Glynn's blood alcohol level during the evening of June 8, 2001 when he died in a single vehicle collision, his state of intoxication, his subsequent state of impairment, and his ability to operate a motor vehicle with a 0.17% blood alcohol level. My opinion is attached hereto as Exhibit B and incorporated herein by reference.

3. I have reviewed the following documents that provide the basis of my opinions and observations: the police accident report, the Bristol Police Department Accident Reconstruction report, the Connecticut Medical Examiner's Report, investigative reports of

Research Services Bureau, the affidavit of Theresa Jones, affidavit of Philip Glynn, and Bankers reply brief in further support of its motion for summary judgment dated September 15, 2004.

4. As a result of my review of the aforesaid documents, I am aware that Peter Glynn was killed in a single-car vehicle on June 8, 2001 at approximately 7:45 p.m. He was pronounced dead by Connecticut Associate Medical Examiner Malta B. Shah, M.D. at 8:35 p.m. on June 8, 2001. An autopsy was performed and the results of the laboratory toxicology report revealed a blood alcohol concentration ("BAC") of 0.17%. The medical examiner described the cause of death as "head injuries" and "ethanol intoxication." Peter Glynn weighed 334 pounds at his death.

5. I understand that Theresa Jones is Peter Glynn's sister. According to her affidavit, Ms. Jones reported that she saw Peter Glynn from about 4:00 p.m. to approximately 5:30 p.m. She did not detect any alcohol consumption by the subject at that time.

6. I understand that Philip Glynn is Peter Glynn's father. According to his affidavit, Philip Glynn reported that he believed that Peter Glynn had eaten dinner at home that evening and left home before his father returned home at 8:00 p.m.

7. Assuming that Peter Glynn began to drink alcohol at 5:30 p.m. and that he consumed his last drink such that his BAC would have been at peak or descending at the time of the accident, i.e. his last drink was no later than 7:00 p.m., at his 334 pound weight, it is my opinion that he would have had to consume 22 ounces of 80 proof distilled spirits (or some other consumption of the alcohol equivalent) in that time for him to obtain a BAC of 0.17%.

8. BACs in the 0.17% range indicate acute intoxication, resulting in debilitating impairments in multiple domains of functioning including without limitation: perceptual-motor coordination required for integration of sensory input and behavioral outflow; cognitive processing required for comprehension and decision-making; and affective processing required for emotion appreciation and expression. At this level, the skills required to operate a motor vehicle are significantly impaired.

9. The majority of individuals at BACs of 0.17% experiences symptoms of intoxication that would alert them to the fact that they are impaired, such as visual distortions including double vision, difficulty with eye-hand coordination and difficulty walking and standing as well as a general sense of being under the influence. Therefore, Peter Glynn would have been aware that he was intoxicated and that, as a result of his intoxication, his ability to operate a motor vehicle was impaired at the time he was operating his motor vehicle on June 8, 2001.

Robert J. Pandina, Ph.D.

Executed on March 17, 2005