UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------x
PHILIP GLYNN,                         :    CIVIL NO. 3-02CV1802 (AVC)
                                      :
    Plaintiff,                        :
                                      :
v.                                    :
                                      :
BANKERS LIFE AND CASUALTY CO.,        :
                                      :
    Defendant.                        :    APRIL 14, 2005
------------------------------------------------x

### DEFENDANT'S LOCAL RULE 56(a)2 STATEMENT

### Submitted in Opposition to Plaintiff's Motion for Summary Judgment

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Denied. See Opposing Declaration of Andrew Muscato (the "Muscato Decl."), Exhibit 2, Transcript of Robert Krol deposition dated May 18, 2004, T43-12 to 14 ("It's not my decision to deny these things. It's just that I have the initial opinion.").

10.   Admitted.

11.   Denied. The citation referred to does not support the fact. See Muscato Decl., Exhibit 2, at 38. The question is directed to whether the death of Peter Glynn (the "Decedent") was intended by the Decedent. Krol's testimony cannot be considered as evidence of the Decedent's intention to die because (1) the deposition question was speculative, and (2) there was no foundation laid during the deposition that Robert Krol had ever spoken with Peter Glynn (the "Decedent") or had any no first-hand knowledge as to whether the Decedent intended his death. See, generally, Plaintiff's Exhibit K. Therefore, the cited testimony is inadmissible under Fed.R.Evid. 602, Lack of Personal Knowledge.

12.   Admitted.

13.   Admitted.

14.   Denied. See Plaintiff's Exhibit K, Krol Transcript, at T93 for Krol's exact testimony.

15.   Denied. The citation referred to does not support the fact. The question is directed to whether the Decedent's death was unforeseen from the Decedent's perspective. The citation to Krol's testimony cannot be considered as evidence of whether the Decedent's foresaw his death die because (1) the deposition question was speculative, and (2) there was no foundation laid during the deposition that Robert Krol had ever spoken with the Decedent or had any no first-hand knowledge as to whether the Decedent foresaw his death. See, generally, Plaintiff's Exhibit K. Therefore, the cited testimony is inadmissible under Fed.R.Evid. 602, Lack of Personal Knowledge.

16. Denied. The citation referred to does not support the fact. The question is whether the Decedent's death was unexpected from the Decedent's perspective. The citation to Krol's testimony cannot be considered as evidence of whether the Decedent expected to die because (1) the deposition question was speculative, and (2) there was no foundation laid during the deposition that Robert Krol had ever spoken with the Decedent or had any no first-hand knowledge as to whether the Decedent expected to die. See, generally, Plaintiff's Exhibit K. Therefore, the cited testimony is inadmissible under Fed.R.Evid. 602, Lack of Personal Knowledge.

17. Denied. There were two reasons given, ERISA and .17 BAC. See Affidavit of Krol submitted in support of Bankers' motion for summary judgment (the "Krol Aff."), Exhibit C, Bankers' March 4, 2002 letter denying Plaintiff's claim.

18. Admitted.

19. Denied. The citation referred to does not support the fact because the deposition question was speculative and not supported by the facts of this case. There is no evidence that the Decedent ever purchased a non-ERISA policy from Bankers. See, generally, Plaintiff's motion record.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Denied. In Plaintiff's Exhibit I, ¶ 20, Plaintiff's expert, John W. Soper, Ph.D., by his use of the phrase "by the authors," is referring to the article identified in his ¶ 18, "Postmortem Alcohol Production in Fatal Aircraft Accidents", Canfield, D.V., Kuipiec,

3

T., and Huffine, E., printed in *Journal of Forensic Sciences*, Vol 38 (1993), attached as Exhibit 4 to the Muscato Decl. In that article, the authors narrow the issue to aircraft crashes and not automobile crashes: "Ethanol found in the blood of a pilot is a significant factor in determining the cause of an aircraft accident." Muscato Decl., Exhibit 4 at 914. The reference to the testimony of Bankers' expert, Robert Pandina, Ph.D., does not support the statement of fact. Dr. Pandina did not testify that postmortem production of alcohol was a "significant problem" – he agreed that "postmortem production of ethanol can occur," answering the question, "I believe so, yes." Plaintiff's Exhibit F at 33. Dr. Pandina also testified that:

> There are studies out there that show rigorous postmortem alcohol. And there are also studies that question those studies in terms of whether or not they represent extreme cases or cases in which it is likely to have occurred in scenarios such as the one we're talking about.
>
> Simply saying, on these issues, there are a number of questions. Is there agreement? No. Are there cases? Yes.

Plaintiff's Exhibit F, at 115-116.

25. Denied. Bankers' expert, Robert Pandina, Ph.D., is not a medical doctor, nor did he state any conclusion to a medical certainty. See, generally, Plaintiff's Exhibit F; see also Dr. Pandina's *curriculum vita*, attached as Exhibit A to the Declaration of Robert J. Pandina, Ph.D. in support of Bankers' motion for summary judgment ("Pandina Decl.").

26. Denied. Plaintiff's expert, John W. Soper, Ph.D., is not a medical doctor, nor is did he state any conclusion to a medical certainty. Plaintiff's Exhibit I, ¶¶ 1,2,3 ("I hold a Ph.D. in Biochemistry from the University of Arkansas for medical sciences . . . "), 45 ("Therefore, in the absence of other biological sample data, and especially considering

4

the possibility that an elevated glucose level might increase the possibility of postmortem production, no conclusion can be drawn as to whether, or how much ethanol Mr. Glynn may have ingested."). Similarly, Bankers' expert, Robert Pandina, Ph.D., is not a medical doctor, nor did he state any conclusion to a medical certainty. See, generally, Plaintiff's Exhibit F; see also Dr. Pandina's *curriculum vita*, attached as Exhibit A to the Pandina Decl.

**Disputed Issues of Material Fact.**

1. The Decedent's state of mind on the day and night he died is in dispute, i.e. whether he was depressed, despondent, or in a state of mind that would have resulted in his death so that it was not unintended, not unforeseen or not unexpected. The Decedent was a loner, without a girlfriend or regular circle of friends. See Kroll Aff., Exhibit B, at D0222. At age 39, he had lived with his father for eight years. Id. at D067, D0222. At only 5 ft. 9 in. in height, Plaintiff was obese at 334 pounds. Id. at D070. Plaintiff, the Decedent's father, testified that the Decedent was a secret drinker. Muscato Decl., Exhibit 1, T39-8 to T40-21; T43-9 to –23.

2. Whether the Decedent's death was not unintended, not unforeseen or not unexpected is disputed because, after investigating the Decedent's death, the Bristol Police concluded that "he subsequently caused his own death." Affidavit of Krol, Exhibit B, at D066. The Bristol Police observed that the Decedent had not attempted to brake before the fatal crash. Plaintiff's Exhibit C at 6 (D063).

3. Whether Plaintiff exhausted his administrative remedies is disputed. If, as Plaintiff claims, Bankers did not have the discretion to deny Plaintiff's benefits, then

some other entity had to have the decision-making authority. The Plan Summary Description ("SPD") names "The Pension Committee of Johnson & Johnson as the Plan Administrator." See SPD at 200, attached as Exhibit E to the Declaration of Andrew Muscato, Esq. in support of Bankers' motion for summary judgment (The SPD appears in the form as attached as Exhibit 2 to the Declaration of John T. Shaban, Esq., filed with the Court on June 20, 2003 as part of a Bankers' motion to dismiss the complaint.) Yet, Plaintiff did not appeal to the denial of benefits to the Pension Committee of Johnson & Johnson. And, although Plaintiff was invited to "[i]nclude any documentation that you feel supports the claim," Krol Aff., Exhibit C, D087, on April 30, 2002, Plaintiff corresponded with Bankers without providing further documentation. Krol Aff., Exhibit D, April 30, 2002 letter from Plaintiff's counsel to Bankers, D090. After an exchange of correspondence between Plaintiff's counsel and Bankers, Bankers continued to deny the claim. Krol Aff., Exhibit D, May 9, 2002 letter from Bankers to Plaintiff's counsel (D091); May 15, 2002 letter from Plaintiff's counsel to Bankers (D092); May 22, 2002 letter from Bankers to Plaintiff's counsel (D093), but Plaintiff never submitted any further documentation as part of any appeal.

4.   Whether the Decedent was intoxicated is disputed. Through his expert, John W. Sofer, Ph.D., Plaintiff contends that there is no proof that the Decedent was intoxicated because the blood test was "scientifically unreliable." Pb at 67. Plaintiff claims that postmortem ethanol was created in the Decedent's body because (1) the Decedent was diagnosed with diabetes; (2) the Decedent had elevated blood glucose levels; and (3) the Decedent's body was not kept under proper conditions prior to the recovery of the blood sample. Plaintiff's expert claims that given those possibilities of postmortem ethanol

6

production, "no conclusion can be drawn as to whether, or how much ethanol Mr. Glynn may have ingested." Plaintiff's Exhibit I, ¶¶ 18 to 28, 30 to 37, 45. On the other hand, Bankers points to the Toxicology Report of the Connecticut Medical Examiner that states that the Decedent's blood sample was analyzed pursuant to Connecticut law and his blood alcohol concentration was 0.17%. Plaintiff's Exhibit N at D077.

5.   Whether the Plan gave Bankers discretion to deny Plaintiff's claim is disputed. Bankers submits, and Plaintiff disagrees, that Bankers discretion arises from the use of the following language:

| Plan Name | Plan Number | Insured By | Administered By |
|---|---|---|---|
| Accident Insurance | 503 | Bankers Life and Casualty Company | Bankers Life and Casualty Co. 666 Old Country Road Suite 300 Garden City, NY 11530 |

Declaration of Andrew Muscato in support of motion for summary judgment, Exhibit E, relevant portions of the Johnson & Johnson Summary Plan Description ("SPD") at 203.

. . .

> If you disagree with a claim decision or want to provide additional information to Bankers Life & Casualty, you can apply for a claim review. You request a review of the claim by Bankers Life & Casualty within 60 days after you receive the claim denial notice. You must state the reason you believe the claim was improperly denied, and submit any data, questions or comments you feel are appropriate on your behalf. **Bankers Life & Casualty will evaluate your claim** within 30 business days of the receipt of the request and send a decision to you in writing.

SPD at 144 (emphasis supplied).

7

> If your claim for a benefit is denied in whole or in part, you (or your beneficiary) will be notified in writing **by the Administrator** for that benefit Plan [here, Bankers]...
>
> . . . .
>
> . . . . If you disagree with the denial, you have 60 days from the receipt of the original denial to request a review. **This request would be in writing and sent to the Administrator** for that benefit Plan.
>
> The **reviewer** will issue a decision within 60 days.
>
> ... you will be notified in writing of the **final and binding decision** on your claim. (emphasis supplied).

SPD at 204 (emphasis supplied). Furthermore, Bankers in fact exercised that discretion in denying Plaintiff's claim and issued the final and binding decision thereon. Declaration of Andrew Muscato in support of motion for summary judgment, Exhibit F, T67-6 to –18 ("Q. Bankers is the ultimate authority on whether or not the claim is denied? A. Yes.")

6. Whether the Decedent's death was an accident under ERISA is disputed. Because the Decedent is deceased, his subjective expectation of survival is not determinable. Applying *Wickham*, whether a reasonable person would have driven his vehicle after experiencing symptoms of intoxication is in dispute. Assuming that the Decedent began to drink alcohol at 5:30 p.m. and that he consumed his last drink such that his BAC would have been at peak or descending at the time of the accident, i.e. his last drink was no later than 7:00 p.m., at his 334 pound weight, he would have had to consume 22 ounces of 80 proof distilled spirits (or some other consumption of the alcohol equivalent) in that time for him to obtain a BAC of 0.17%. Declaration of Robert J. Pandina, Ph.D. in support of Bankers' motion for summary judgment ("Pandina Decl."), ¶ 7. BACs in

8

the 0.17% range indicate acute intoxication, resulting in debilitating impairments in multiple domains of functioning including without limitation: perceptual-motor coordination required for integration of sensory input and behavioral outflow; cognitive processing required for comprehension and decision-making; and affective processing required for emotion appreciation and expression; and at this level, the skills required to operate a motor vehicle are significantly impaired. Pandina Decl., ¶8. Furthermore, most individuals with BACs of 0.17% experience symptoms of intoxication that would alert them to the fact that they are impaired, such as visual distortions including double vision, difficulty with eye-hand coordination and difficulty walking and standing as well as a general sense of being under the influence. Therefore, the Decedent would have been aware that he was intoxicated and that, as a result of his intoxication, his ability to operate a motor vehicle was impaired at the time he was operating his motor vehicle on June 8, 2001. Pandina Decl., ¶9.

THE DEFENDANT
BANKERS LIFE AND CASUALTY
COMPANY

BY _____
John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com

and

Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square

9

New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendant's Local Rule 56(a)2 Statement was sent by first class mail, postage prepaid, on April 14, 2005 to the following:

Everett H. Madin, Jr., Esq.
Riscassi and Davis, P.C.
131 Oak Street
Hartford, CT 06106

John T. Shaban

61807