UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PHILIP GLYNN | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CIVIL ACTION NO.: |
| | : | 302CV1802 (AVC) |
| | : | |
| BANKERS LIFE AND | : | |
| CASUALTY COMPANY, | : | |
| | : | |
| Defendant | : | April 15, 2005 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons stated in the foregoing, along with the arguments

contained in the plaintiff's Motion for Summary Judgment dated March 17, 2005,

the defendant's Motion for Summary Judgment dated March 24, 2005 should be

denied.  Furthermore, the plaintiff respectfully requests this Court to grant his

Motion for Summary Judgment in this matter, and order the payment, in full, of

the applicable accidental death policy, along with reasonable attorney's fees and

costs of this action.

I.      **STANDARD FOR CROSS MOTIONS FOR SUMMARY
        JUDGMENT**

Federal Rule of Civil Procedure 56(c) states:

> [summary judgment] shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"Summary judgment is utilized to eliminate the delay and expense of a trial where there is no issue to be tried." *Weinstock v. Wilk*, 296 F.Supp.2d 241, 245 (D.Conn. 2003) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d. Cir. 2000). The court must "view the evidence in the light most favorable to the party opposing summary judgment." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). "Still, '[t]he existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendant].'" *Dawson v. County of Westchester*, No. 03-7858 (2d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[W]here the movant ' fails to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgement, summary judgment must be denied." *See Giannullo v. City of NY*, 322 F.3d 139, 140-141 (2d Cir. 2003) (quoting *Adickes v. Kreiss & Co.*, 398 U.S. 144, 158 and 160 (1963); *see also F.R.C.P.* 56(e).

Where both parties move for summary judgment, a court need not enter judgment for either party. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. *Morales v. Quintel Entertainment, Inc.*, 249 F.3d

115, 121 (2d. Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305,

314 (2d Cir. 1981).

II.     **LEGAL ARGUMENT**

    A.     **The plaintiff incorporates the arguments expressed in his
Motion for Summary Judgment dated March 17, 2005**

      The plaintiff hereby adopts and incorporates all of the arguments and

exhibits previously expressed and filed with this Court in his Motion for

Summary Judgment and supporting Memorandum of Law dated March 17, 2005.

More specifically, this Court need not look past the accidental death insurance

policy issued by the defendant to the plaintiff's decedent, and the fact that

circumstances involving a decedent being killed while driving intoxicated is not

an exclusion to the policy.  Indeed, the defendant pays claims for accidental death

benefits when they involve individuals found to have been driving while impaired

by alcohol, provided that the decedent's plan is not covered by ERISA.  ERISA

does not change the terms of an insurance policy. Furthermore, there is no

evidence of Peter ingesting alcohol and there is no scientific basis to conclude that

Peter was impaired at the time of his death.  Despite that, the defendant continues

to refuse to pay benefits under his insurance policy on that basis. Therefore, the

benefits under Peter Glynn's accidental death policy are properly payable.

**B.**    **Peter Glynn was killed in an accident**

Even assuming that Peter Glynn was intoxicated at the time of his death, which the defendant has failed to demonstrate, Peter's death was accidental pursuant to the terms of his policy and/or federal common law under ERISA.  In fact, the defendant's corporate designee stated that the circumstances of Peter's death satisfied the definition of "accident" that he was working with at the time he denied the plaintiff's claim.  The defendant pays claims for accidental death benefits under the terms of insurance policies with the same language as Peter Glynn's policy, provided that the decedent's plan was not part of an ERISA plan. This is proof that the defendant believes that, even if an individual is killed while driving while impaired, such circumstances constitute an accident.  The defendant's expert, Robert Pandina, has termed Peter's death as an "accident," further demonstrating that a reasonable person believes that even those deaths allegedly involving a driver's intoxication are accidents.  Still further, the defendant has failed to submit any evidence with regard to its proposition that Peter's death, assuming he was driving while impaired, was "highly likely" to occur.   Indeed, the plaintiff's expert has demonstrated that, even if he was impaired at the time of this accident, Peter's death was "statistically rare," thereby

4

satisfying the *Critchlow* test for accident under federal common law under ERISA.[1]

>           **i)**     **The defendant, defendant's expert, and defendant's counsel agree that  Peter Glynn was killed in an accident**

Peter Glynn was killed in an accident, even assuming that he was driving while impaired by alcohol at the time of his accident.  In fact, the defendant's expert and defendant's counsel have expressly stated that Peter Glynn was killed in an "accident."  *See* Declaration of Robert J. Pandina attached as Exhibit A at Paragraph 7; Defendant's Memorandum of Law dated March 24, 2005 at 12.[2]  It can also be assumed that the defendant itself agrees that Peter was killed accidentally.  The defendant's corporate designee, Robert Krol, testified that the defendant does not deny payment of accidental death benefits in a policy with identical language to the policy issued to Peter Glynn, provided such policy was not covered by ERISA.  *See* depo of Robert Krol attached as Exhibit B at 24-25.  The following is the testimony of the defendant's corporate designee about the policy of Bankers Life as it related to deaths believed to be the result of the decedent's driving while impaired by alcohol:

---

[1] Since the plaintiff has demonstrated that Peter's death was "statistically rare," he he therefore also demonstrated that the activity, as alleged by the defendant, of driving while impaired "ordinarily has a nonfatal outcome."  *See Critchlow*, 78 F.3d at 278.

[2] Note that the plaintiff has filed a Motion to Strike the Declaration of Robert J. Pandina, and all references to such statement for reasons including that Dr. Pandina's Declaration does not offer his opinions with the requisite degree of medical or scientific certainty for the admission of expert testimony.

Q.  Okay.  Have you paid death claims involving an intoxicated driver in non-ERISA cases?

A.  Yes.

Q.  Have you paid death claims involving intoxicated driver (sic) in ERISA cases?

A.  In the past, yes.

…

Q.  Okay.  Since this change in policy occurred seven or eight years ago, have you continued to pay non-ERISA claims involving intoxicated drivers?

A.  Yes.

Q.  Since this policy change seven or eight years ago, have you continued to pay ERISA claims involving intoxicated driver (sic)?

A.  We have never paid.

Q.  Since that seven or eight-year-time period?

A.  Yes.

…

Q.  When we are talking about claims that are ERISA versus claim[s] that are not ERISA, would the policy language be the same in either instance?

A.  Yes.

*See* Exhibit B at 24-25.

Consequently, even assuming that the Peter's reported blood alcohol level

was an indication of impairment prior to his death, which cannot be established

with any degree of medical certainty, the defendant would have paid the

accidental benefits to his beneficiary, without any of this litigation, if Peter had

not received the policy through his employer.  Obviously, only if the defendant

6

makes the determination under a policy that benefits are payable, would it pay such benefits.  This is for the simple reason that "[n]o plan provides benefits when the administrator thinks that benefits should not be paid!" (punctuation in original) *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999).  Therefore, since the defendant has, and continues, to pay accidental benefits for deaths, even those allegedly involving a decedent that was driving while intoxicated at the time, it must be that the defendant finds that deaths resulting from an individual's driving while intoxicated are accidents, contrary to its assertions in this case.

Additionally, defendant's counsel and the defendant's sole expert in this case have stated that Peter was killed in an "accident."  In his Declaration offered to this court in support of the defendant's motion for summary judgment, Dr. Pandina, the defendant's sole expert in this case, stated that Peter Glynn was involved in an "accident."  *See* Exhibit A at Paragraph 7.  In its most recent brief in this case, defendant's counsel also stated that Peter's circumstances involved an "accident."  *See* Defendant's Memorandum of Law dated March 24, 2005 at 12. In this regard, the plaintiff agrees with the assessments of both Dr. Pandina and defendant's counsel: Peter was killed in an accident.

These statements by both Dr. Pandina and defendant's counsel illustrate that reasonable people believe deaths, even those which allegedly involve an intoxicated driver, are accidental.  The aforementioned statements also contradict

7

the conclusory assertions by defense counsel, including its proposition that what a "reasonable" intoxicated person, with the blood alcohol content alleged to have applied to Peter at the time of his death, would do is not drive, but instead seek medical attention.  *See* defendant's Memorandum of Law date March 24, 2005 at 13.  Counsel misapplies, or more likely fails to apply, the *Wickman* and/or *Critchlow* test at all, to the facts of Peter's death under federal common law under ERISA.  *See infra* part II(B)(ii).

Mr. Krol, the defendant's corporate designee who denied the plaintiff's claim in this case, stated that Peter's death satisfied the definition of accident that he was working with at the time of the denial.  Mr. Krol stated that an accident is something unforeseen or unexpected.  *See* Exhibit B at 93.  Mr. Krol agrees that Peter Glynn did not expect nor intend to die the night of his accident, *Id* at 103-04.  Therefore, the defendant has no reasonable basis to deny the plaintiff's claim for benefits, and to do otherwise, in these circumstances, is improper, under any standard of review.

Moreover, the defendant's sole expert stated that unless an individual driving while intoxicated was attempting suicide, he does not intend or expect to be involved in an accident, let alone be killed.  *See* depo of Robert Pandina attached as Exhibit C at 141-42.  The defendant does not claim that Peter intended his own death the night of his accident.  Exhibit B at 38.  In fact, it is worth directing the Court once again to an excerpt from Dr. Pandina's deposition:

Q.  And those folks that are drinking and driving, is it your understanding that they don't expect to die because of it?

…

A.  There are studies that look at people's expectancies, likelihood of a crash and so on.  Even if they know they're impaired, that's part of the impairment of judgment.  I don't think anybody except those people who have an intention to commit suicide, get behind the wheel of a car whether they are sober or not, and intend or expect to have a collision.

Exhibit C at 141-42.  Defense counsel's statements with regard to what a "reasonable person" who was impaired by alcohol would have done are nothing but conclusory statements, and are not supported by any evidence, including the testimony of the defendant's sole expert in this case.

In fact, the defendant's statement, with regard to the reasonableness of Peter Glynn's alleged decision to drive while intoxicated on the night of his accidental death, which states "[i]ndeed he would have sought medical assistance instead of blithely driving,"[3] is in complete and blatant disregard of the deposition testimony of its own expert on this issue.  *See* Exhibit C at 137, 138, 139-40 ("Q. But at some point, judgment becomes so impaired so that the person believes that he or she can handle the road conditions on a familiar road?  A.  Even on an unfamiliar road, otherwise people wouldn't drive and drink").  What Dr. Pandina actually stated in his sworn testimony is that individuals who drive while impaired by alcohol, despite their impairments, and, in fact, due to these impairments,

---

[3] *Se*e defendant's Memorandum of Law dated March 24, 2005 at 13.

9

including their impaired judgment, do not intend or expect to have a collision. *See id*. According to Dr. Pandina, what an impaired driver actually believes is that whether driving on a familiar road or "[e]ven an unfamiliar road," he will be able to drive safely and reach his destination without incident. *See id* at 139-40. Therefore, defendant's propositions to the contrary are disingenuous. Since Peter Glynn did not intend his own death, even assuming he was intoxicated at the time, and a reasonable person would not expect his death to be highly likely through operating a vehicle in such state, his death is accidental.

The plaintiff is again compelled to direct this Court to the opinion in *Precopio v. Bankers Life*, in which the defendant, Bankers Life, was criticized for its actions and/or inactions in a case with similar factual circumstances as those alleged to be involved in the death of Peter Glynn. *See* CV 01-5721 (D.N.J. 2004) (Kugler, D.J.). The *Precopio* court, among other things, found that Bankers Life was arbitrary and capricious, noted that Bankers Life had failed to appropriately apply *Wickman*, had stated that federal common law was uniform with regard to this issue when in fact it was not, that their employees denying such claims had no understanding as to why drunk driving deaths are accidents, and that they failed to investigate into causes of the decedent's accident outside of the alleged blood alcohol level of that decedent, . *Id* at 45, 47, 48-49. Under any standard of review that this Court decides to apply, although a de novo standard would be most appropriate, Bankers Life's actions and/or inaction, in the denial of

10

accidental death benefits to the plaintiff under an accidental death insurance

policy that it insured, should not be upheld.

ii)     **Peter Glynn's death was accidental under the terms of
his accidental insurance policy and/or federal common
law under ERISA**

Peter's death was accidental under the terms of his accidental death

insurance contract issued by the defendant.  The term "accident" was not defined

in the policy.  There was no exclusion that applied to circumstances involving a

driver that was killed while allegedly driving while impaired.  Furthermore, in

interpreting accidental death insurance policies with identical language to that of

the decedent's policy, the defendant has found deaths for impaired drivers to be

accidents, and paid those claims.  The defendant is merely relying on ERISA law

to deny benefits that it knows are properly payable.  This is not the intended

purpose of ERISA.  Moreover, nowhere has the defendant pointed to any section

of ERISA that changes the terms contained in an accidental insurance contract.

Therefore, under the law of contract interpretation, which does apply under

ERISA,[4] the plaintiff's claim for accidental death benefits is valid.

Additionally, under federal common law under ERISA, Peter Glynn's

death was accidental.  The determination of whether a circumstance is an accident

---

[4] *See Critchlow v. First UNUM Life Ins. Co.*, 378 F.3d 246, 256 (2d Cir. 2004).

is decided using the *Wickman*[5] test, as interpreted by the Second Circuit Court of Appeals in *Critchlow v. First UNUM Life Ins. Co.*, 378 F.3d 246, 256 (2d Cir. 2004).[6] There is no dispute between the parties that Peter Glynn did not intend to die the night of his accident. Further, the defendant has offered no evidence that in support of its own conclusion the a reasonable person would have known that driving under the circumstances alleged to have existed at Peter's death, that his death was "highly likely." Indeed, the defendant's designee stated that something had to be more likely than not to be highly likely. Exhibit B at 42.

The plaintiff's expert has calculated the risk of Peter's death, assuming he was impaired as was alleged, and applying sound, and appropriate statistical methods, finding such risk to have been 772 out of 10 million in Connecticut, for a trip of 20 vehicle miles traveled. *See* depo of Mehdi Mostaghimi attached as Exhibit D at 33; Report entitled "Applying Poisson Probability Distribution to Calculating the Probability of an Alcohol Related Fatal Accident in the U.S. for 20 VMT attached as Exhibit E at Table 2. Furthermore, Dr. Mostaghimi calculated that same risk, using the relative risk provided by the defendant's sole expert, finding that the chance, or likelihood, of death was even further decreased to 50 out of 10 million for Connecticut, and 75 out of 10 million for the United

---

[5] *See Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1088 (1ˢᵗ Cir), *cert. denied*, 498 U.S. 1013.

[6] Again, the defendant has failed to acknowledge, in any way, the applicability of *Critchlow* to this matter, despite its binding analysis of the *Wickman* test.

States.  Exhibit D at 40-41.  Using either of these results, Peter's death cannot be

that Peter's death can be considered to have been "highly likely," as alleged by the

defendant.  In fact, the plaintiff has sufficiently demonstrated, through expert

testimony, that Peter's death was "statistically rare," as is required by the Second

Circuit's *Critchlow* test for the determination that a death is accidental under

federal common law under ERISA.

　　　　Furthermore, the defendant's sole expert, Dr. Pandina stated that unless an

individual was committing suicide, an individual who drives a vehicle while

impaired by alcohol is not expecting nor intending to die.  *See* Exhibit C at 141-

42.  This is due partly to the reason that alcohol, first and foremost, impairs that

person's judgment.  *Id* at 137 ("You get an impairment in judgment, number one,

with regard to your ability to handle any driving situation . . .").  Therefore, for

the defendant to propose that Peter, even assuming he was impaired, knew he was

going to die, is without any evidentiary support, and is at odds with its own

expert's opinion on that issue.  Indeed, the defendant, as it has done during the

entire denial process of the plaintiff's claim, continues to merely state its own

conclusions, without any adequate factual or legal support for such conclusions.

The truth is that, even assuming he was operating his vehicle while impaired,

which has not been proven, and in fact cannot be demonstrated with any degree of

medical or scientific certainty, Peter died in a motor vehicle accident.  Therefore,

the plaintiff's claim for benefits is appropriate under the policy, and federal common law.

### D. It is "impossible" to determine with any degree of medical or scientific certainty that Peter Glynn's reported Blood Alcohol Level was representative of the actual level at the time of his death

The defendant has, and continues, to assume that Peter Glynn was impaired or intoxicated at the time of his accident, and, further, that such alleged but unsupported intoxication caused his death; however, as the defendant's expert admits, it is impossible to determine with any degree of medical or scientific certainty Peter Glynn's actual level of impairment, if any at all, at the time of his accident. *See* Exhibit C at 121; Declaration of John W. Soper copy attached as Exhibit F at Paragraphs 28 and 45.[7] The defendant continues to assume this, even in the face of the testimony of its own expert to the contrary. Indeed, Dr. Pandina could not say that Peter Glynn's actual blood alcohol level and/or impairment was not less than 0.17%, as reported by the medical examiner. Exhibit C at 121. Additionally, Dr. Pandina stated that it was possible that Peter may not have been impaired at all. *Id*. In fact, other than the unreliable measure of Peter's alleged intoxication, the blood alcohol level taken from his heart during autopsy, hours after his death, *see* Exhibit F at Paragraphs 12 and 14, there is no other proof of any alcohol consumption on that day prior to his accident. Exhibit C at 65. "The

---

[7] The original of Dr. Soper's declaration was previously filed with this Court.

concentration of ethanol in postmortem blood, in the absence of additional

information, cannot be used with any degree of certainty to verify the ingestion of

ethanol." *See* Exhibit F at Paragraph 28 (quoting "Postmortem Alcohol

Production in Fatal Aircraft Accidents" Canfield, D.V., Kupiec, T., and Huffne,

E.; *Journal of Forensic Sciences* Vol. 38, (1993), pp. 914-17).

It is properly the defendant's burden in this case to determine that Peter

Glynn's actions excluded coverage under the accidental death policy issued by the

defendant.  Since the defendant pays benefits under an identical policy that is not

covered by ERISA, there can be no doubt that Peter's accident as alleged is a

covered incident. The law of contract interpretation applies to ERISA.  *See Pilot*

*Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57 (1987).  Furthermore, ambiguities in

an insurance contract, even in ERISA plans, should be construed against the

drafter of such policy.  *See Critchlow*, 78 F.3d at 256.  This doctrine applies even

more stringently when the term being interpreted is attempting to exclude

coverage.  *See e.g. Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936

F.2d 98, 107 (2d. Cir. 1991) (citing to *Firestone Tire & Rubber v. Bruch*, 489

U.S. 101, 113-14 (1989)).   The defendant cannot demonstrate that Peter was

intoxicated or impaired at the time of his accident; therefore, it cannot meet its

burden in excluding the circumstances of Peter's death from coverage under his

policy.

The Federal District Court of New Jersey found that the defendant, Bankers Life, in a case under circumstances also alleged to involve a death of an intoxicated vehicle operator, was found to have essentially been using a "secret exclusion" to benefits under its accidental death policies.  *See Precopi*o at 48. Bankers Life merely denies accidental death benefits that are alleged to involve a decedent's driving with an elevated blood alcohol content, without any further investigation into such an accident.  *Precopio* at 45; Exhibit B at 32.  Not only does this policy put the burden of proving that Peter Glynn was in fact intoxicated at the time of his accident onto the defendant, but, further, the defendant's actions are at odds with even those cases that may support its position in this matter.  *See Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1110-11 (7th Cir. 1998).

Nobody observed Peter Glynn consuming alcohol of any kind on June 8, 2001, at any time prior to his accident.  *See* Exhibit C at 65.  The last person believed to have seen Peter prior to his death, his sister Theresa Jones, saw Peter from approximately 3:45 until about 5:00 p.m., and did not observe him drinking alcohol. *See* depo of Theresa Jones attached as Exhibit G at 8, 17-19.  Therefore, there is no evidence to suggest that Peter ingested any alcohol on the evening of his death.

Peter Glynn's reported blood alcohol content could have been the result of, among other things, postmortem alcohol production, rather than from the ingestion of alcohol prior to his accidental death.  *See* Exhibit C at 121; Exhibit F

16

at Paragraph 20.  It is impossible to determine Peter's actual level of impairment, if any, at the time of his accident, for various reasons including:  (1) no one observed any drinking pattern prior to death; (2) possible pooling of blood in his heart where the sample was taken; (3) the reliance on a single blood sample without any other tissues to compare; (4) the possible diffusion of alcohol, due to trauma, into the area where the sample was taken; (5) the lack of a determination of equilibrium; and; (6) postmortem alcohol production.  *See* Exhibit C at 65; 88-89; 94; 67-68; 40; 33; 45; 99; 115-16; Exhibit F at Paragraphs 20, 28, 34-45.  Dr. Pandina testified to the fact that he could not definitively state that Peter's actual impairment was not actually less than the reported 0.17%, and, further, Peter's actual blood alcohol level could have been 0%.  Exhibit C at 121.  Therefore, no determination can be made with the required level of medical or scientific certainty with regard to the blood alcohol level of Peter Glynn at the time of his accident.  The defendant's exclusion of Peter's accidental death benefits payable under his policy issued by the defendant is improper.

### E. The defendant's decision to deny the plaintiff's benefits warrants no deference by this Court

"The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" *Kinstler*, 181 F.3d at 245(quoting *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995)).  Although the use

of "[m]agic words such as 'discretion' and 'deference'" are not required, the use of

such words is "certainly helpful in deciding [which standard of review to use]."

*Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d

Cir. 1995).

The defendant proposes that language in its summary plan description stating

that its decision to deny, after being appealed and once again denied would be a "final

and binding decision" satisfies its burden of providing language which conveys to it

discretionary authority over the plan at issue.  *See* Defendant's Memorandum of Law

dated March 24, 2005 at 10.  However, this language does not allow the defendant to

meet its burden, and its denial of the plaintiff's claim for accidental death benefits

should be reviewed under a de novo standard of review.

The defendant cites to *Pagan v. Nynex Pension Plan*, 52 F.3d 438 (2d Cir.

1995), in support of its allegation that the statement "final and binding decision," as to

the review of claims, grants it discretionary authority.  *Pagan*, however, found that

discretion to interpret had been granted that defendant not based on any single,

phrase, as the defendant wishes the Court to decide in this matter.  In fact, the *Pagan*

court decided that the plan administrator met its burden based collectively on the

following expression, which is clearly more definitive when compared to the

defendant's alleged expression in this case.

Significantly, section 3.4 of the Pension Plan provides that the [administrator]
"shall determine conclusively for all parties all questions arising in the
administration of the [Pension] Plan and any decision of such Committee shall

18

> not be subject to further review...Further section 3.3(c) of the Pension Plan
> provides that the [administrator] "retain[s] such right, authority and discretion
> as is provided in or not expressly limited by said Section 503 of [ERISA].

*Pagan*, 52 F.3d at 441-42.

Likewise, this Court in *Kocsis v. Standard Ins. Co.*, 142 F.Supp 2d 241 (D.

Conn. 2001), allowed deference to an administrator's decision to deny benefits. The

court, in deciding that the defendant had met its burden of demonstrating that it

indeed had discretionary authority, stated the following:

> Here, the language of the plaintiff's policy is explicitly clear: Standard
> reserves to itself "full and exclusive authority...to interpret the Group Policy
> and resolve all questions arising in the administration, interpretation, and
> application of the Group Policy,"...

*Id*. The defendant, Bankers Life and Casualty Company, conversely, has not

provided such an indication that "full and exclusive" authority to interpret terms in

the plan was granted to it. For something less than de novo review to be applied to an

administrator's decision to deny benefits under an ERISA plan, the insurer must do

more than grant itself the power to deny benefits. *See Masella*, 936 F.2d 98; *Kinstler*

181 F.3d 243. Again, "[n]o plan provides benefits when the administrator thinks that

benefits should not be paid!" (punctuation in original) *Kinstler*, 181 F.3d at 251.

It should also be noted that previously the defendant in its Amended Response

to Plaintiff's Requests for Admissions dated November 11, 2003, directed the plaintiff

to completely different language in the decedent's plan, which it alleged, at that time,

provided the defendant with discretionary authority. *See* Amended Response to

Plaintiff's Requests for Admissions attached as Exhibit H at 2-3.  In the prior document, there was no mention or indication of the language now alleged by the defendant.  *Id*.  The fact that the defendant itself is unable to consistently provide the language alleged to grant the defendant discretionary authority is further proof that there is not the requisite unambiguous indication of such.  Therefore, the de novo standard of review should be applied to the defendant's decision to deny the plaintiff's claim for benefits.

Although no "magic words" are required to grant an administrator the discretionary authority warranting a more deferential review, the use of such terms has been helpful to the courts in determining whether such authority has been granted.  *See e.g. Jordan.*, 46 F.3d 1264, 1271 (2d Cir. 1995).  If the drafter of the policy provided to the decedent wished to grant discretionary authority to the defendant, Bankers Life and Casualty Company, thereby providing its denial of benefits a more deferential review, it could have easily used an unambiguous indication that such authority was being granted.  The decedent's plan contained no such unambiguous indication; therefore, the defendant's decision to deny the plaintiff's benefits pursuant to the plan at issue should be subject to a de novo review standard of review.

**F.    Evidence outside of Banker's Life's Administrative Record should be used in deciding this case**

This Court, in determining whether Peter Glynn was killed accidentally, under the terms of the insurance policy issued to him by the defendant, should

consider the evidence offered by the plaintiff.  It is in the district court's discretion to review evidence outside of the administrative record.  *See e.g. Defelice v. American Int'l Life Assurance Co.*, 112 F.3d 61, 66 (2d Cir. 1997).  Evidence outside of the administrative record may be considered when making a de novo review of a plan's decision.  *See e.g. Massella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 103-05 (2d Cir. 1991).  Moreover, the Second Circuit has stated that a plan beneficiary "would be unfairly burdened by an obligation to present expert testimony to plan administrators on an issue of plan interpretation."  *See Defelice*, 112 F.3d at 65; *Critchlow v. First UNUM  Life Ins.*, 378 F.3d 246, 261 (2d Cir. 2004) ("there was no question as to the facts and circumstances of Critchlow's death; the Opinions dealt with whether the UNUM policy could properly be interpreted to exclude that death").

The issue in this case is the interpretation, under the terms of the accidental death insurance policy issued by the defendant to Peter Glynn and/or under federal common law under ERISA.  Since interpretation is at issue, the evidence presented by the plaintiff in support of his position that Peter was killed in an accident under the plan is properly admissible.  As stated, a de novo review of the defendant's denial is appropriate; however, even if it is found that the defendant has discretion under the plan, since the interpretation of the plan is at issue, the evidence outside the record need be considered.

G.     **The only fact material to the defendant's denial was the
reported blood alcohol level of Peter Glynn, which cannot
establish with any degree of medical certainty Peter's level of
impairment, if any at all, at the time of his accident.**

Instead of making legal arguments with a basis in the law of contract

interpretation, or the law of federal common law under ERISA, the defendant

merely relies on the reported blood alcohol level of the decedent, and,

additionally, makes conclusory statements and points this Court to facts that have

no relevance to the dispute in this matter.  The only fact of relevance to the

defendant in its denial of the plaintiff's claim was the reported blood alcohol

content of Peter Glynn.  *See* Exhibit B at 32.  Despite the other facts that the

defendant cites in an attempt to disparage Peter Glynn, the sole fact upon which

the defendant relied in denying the plaintiff's claim for benefits was the medical

examiner's report.  *Id*.  The defendant cannot argue that, without the existence of

the medical examiner's report and the reportedly elevated blood alcohol content, it

would have denied benefits to the plaintiff.

For example, the defendant's current brief states:  "the Decedent's death

occurred under circumstances where an inexperienced, intoxicated driver was

speeding downhill through a series of sharp curves in a small sports convertible

and lost control."  *See* defendant's Memorandum of Law dated March 24, 2005 at

14.  Does the defendant honestly propose that, without any report that Peter may

have been driving while impaired by alcohol, the plaintiff's claim would have been denied in this case?

It is doubtful that "inexperienced" drivers' deaths would be excluded under the decedent's policy. Furthermore, defendant's counsel is not qualified to testify to the level of experience that makes an individual an inexperience driver, yet still makes this claim. However, Peter was forty years old on the day of his accident, and presumably had his license for over twenty years prior to the night of his death. Such prolonged experience cannot reasonably qualify him as "inexperienced" as the defendant claims.

Does the defendant deny claims for accidental death benefits for overweight individuals? The defendant seems to imply that Peter Glynn's[8] weight in some way made his death something other than an accident. Either the defendant is attacking Peter based on his weight alone, or, possibly, the defendant is attempting to confuse the issues in this case, stating that someone who is "334 lbs." must be unreasonable driving a convertible with the top down, because that would make death highly likely. Again, these factors are irrelevant to this case.

Furthermore, the defendant cites to no authority that found that the driving a convertible vehicle, or more specifically a Mazda Miata, would establish that such individual's death was not accidental. *See* defendant's Memorandum of Law at 12,

---

[8] Please see Exhibit I attached hereto, which is a photo of the decedent, Peter Glynn

14.  Yet, the defendant again attempts to get this Court to follow its implication that it is unreasonable to operate a convertible, especially, in the defendant's mind, if the individual happens to be overweight.  *Id* at 11, 14.

In fact, Peter's car was "'stable' in regards to tipover propensity."  *See* Affidavit of Michael Miller copy attached as Exhibit J at 3.[9]  If the tires of the decedent's vehicle had not struck the curb of the roadway, the "vehicle would not have tipped over; rather, it probably would have continued to sideslide to a position of rest."  *Id*.  Furthermore, if "the automobile [had] not overturned as a result of this curb strike, it is probable that the plaintiff's decedent's loss of control of his vehicle, and the ensuing dynamics of its movements, would have been survivable."  *Id*.  Indeed, Mr. Miller concluded that:

> Based upon my extensive technical investigation into the plaintiff's decedent's accident and my evaluation of the available physical evidence, I have formed the opinion that the event which led to plaintiff's decedent's loss of life was an "accident" and satisfies the definitions for this word as set forth above.

*Id* at 6.  It is of note that the defendant has not done any investigation into this accident in general, or, more specifically, with regard to Peter's car.  Yet, nonetheless, the defendant continues to provide the Court with its own conclusions in this case.

The aforementioned statements by the defendant's counsel are irrelevant to this proceeding.  Instead of performing adequate investigation into the facts of

Peter's death and confirming its belief that he was impaired during this accident and such caused his death,[10] the defendant instead "blithely" assumes that to be the true, and now cites to irrelevant facts to disparage Peter Glynn before this Court.[11]  Indeed, the defendant has been criticized once before for not having done anything with regard to investigating into factors that may have caused another accident alleged to involve alcohol.  *See Precopio* at 45-51.  Furthermore, the defendant's expert himself acknowledged that the blood alcohol on which the defendant relies in denying the plaintiff's claim is not valid scientific or medical evidence with regard to Peter's alleged intoxication and/or impairment at the time of his accident.  *See supra.*  Instead of expressing legal arguments, and supporting such with relevant facts, the defendant instead attacks the decedent with whatever facts that it feels may sway this Court to rule against the claim under his insurance policy, despite the irrelevant nature of such facts.

**III.    Conclusion**

For the reasons stated above, and the arguments contained in the plaintiff's Motion for Summary Judgment dated March 17, 2005, the defendant's Motion for

---

[9] Note that the original affidavit was previously filed with this court.

[10] However, even if this fact were true, this fact alone would not allow the determination that Peter's death was not an accident.  *See supra.*

[11] In fact, despite being granted extended discovery, the defendant failed to even depose the plaintiff's rebuttal witness, John W. Soper, despite the attempts of plaintiff's counsel to coordinate the same.

Summary Judgment should be DENIED.  Additionally, the plaintiff's Motion for

Summary Judgment should be GRANTED.

<div style="margin-left: 50%">

PLAINTIFF,
PHILIP GLYNN


By_____
    Everett H. Madin, Jr.
    Federal Bar No.:  CT 12297
    RISCASSI & DAVIS, P.C.
    131 Oak Street
    Hartford, CT 06106
    Ph:  860-522-1196
    Fax:  860-246-5847

</div>

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed via First Class Mail, postage pre-paid, on this 15th  day of April, 2005 to the following counsel of record:

John Shaban, Esq.
Whitman, Breed, Abbott & Morgan
100 Field Point Road
Greenwich, CT 06830

Andrew Muscato, Esquire
Skadden, Arps, Slate, Meagher, & Flom, LLP
Four Times Square
New York, NY 10036-6522

<div style="margin-left: 50%">

_____
Everett H. Madin, Jr.

</div>