**Copy of Transcript**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GLYNN,

    Plaintiff,

vs                                                  Civil Action 302 CV 1802

BANKERS LIFE AND CASUALTY COMPANY,

    Defendant.

DEPOSITION OF

ROBERT KROL

May 18, 2004
10:00 a.m.

333 West Wacker
Chicago, Illinois

Sandra Drechsler, Certified Shorthand Reporter,
Registered Professional Reporter, and Notary Public



**setdepo**
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

2

# APPEARANCES

1
2
3  ON BEHALF OF THE PLAINTIFF
4  RISCASSI & DAVID
5  BY: EVERETT H. MADIN, JR., ESQUIRE
6      131 Oak Street
7      P.O. Box 261557
8      Hartford, Connecticut  06126-1557
9      (860) 344-5297
10
11 ON BEHALF OF THE DEFENDANT
12 SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
13 BY: ANDREW MUSCATO, ESQUIRE
14     One Newark Center
15     Newark, New Jersey  07102-5297
16     (973) 639-6800
17
18 ALSO PRESENT:
19 CONSECO Services, LLC
20 ROBERT E. BURKETT, JR.,
21 Senior Vice President, Legal
22
23
24



setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

24

1    MR. MUSCATO: "Identical."
2    MR. MADIN: Okay.
3  BY MR. MADIN:
4    Q.   Your answer was yes, and I'm going
5  rephrase the question.
6    A.   Go ahead.
7    Q.   Okay. Since this change in policy
8  occurred seven or eight years ago, have you
9  continued to pay non-ERISA claims involving
10 intoxicated drivers?
11   A.   Yes.
12   Q.   Since this policy change seven or
13 eight years ago, have you continued to pay
14 ERISA claims involving intoxicated driver?
15   A.   We have never paid.
16   Q.   Since that seven or eight-year-time
17 period?
18   A.   Yes.
19   Q.   Are you familiar with the policy
20 at issue in this particular case?
21   A.   Yes.
22   Q.   Did you bring a copy with you?
23   A.   I did not bring a copy, but I
24 believe it's in here. Do you want me to


sd setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

25

1  look for it?
2    Q.    If it's in there, that would be
3  terrific.  I think I have what purports to
4  be a copy with me.
5    A.    I've got it.
6    Q.    And is that a copy of the policy
7  that Peter Glynn?
8    A.    I believe so.
9         MR. MADIN:  Let's have that marked
10 as Krol 7.
11        (Krol Exhibit-7 marked for
12 identification.)
13   BY MR. MADIN:
14   Q.    Pass that back to you now.  Policy
15 has now been marked as Krol Number 7.
16        When we were talking about claims
17 that are ERISA versus claim that are not
18 ERISA, would the policy language be the same
19 in either instance?
20   A.    Yes.
21   Q.    And looking at Exhibit 7, Mr.
22 Krol, is there any language in that policy
23 that excludes accidents involving an
24 intoxicated driver?


setdepo — Streamlined • Centralized • Standardized
The Evolution of Deposition Management
Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

32

1  understood it to be, correct?
2  A.    Yes.
3  Q.    Were there any facts at all in the
4  information you received that you determined
5  were relevant to the denial of the claim
6  other than the blood alcohol content?
7  A.    No.
8  Q.    Why then did you retain Research
9  Service Bureau, if all you really needed to
10 look at was the blood alcohol content?
11 A.    We wanted to make sure we had as
12 much facts as possible, and Research Service
13 was contracted to get the additional
14 information that might be out there.
15 Q.    But would any of the facts that
16 they turned up have altered your decision,
17 given the blood alcohol content?
18 A.    Possibly.  I really don't know.
19 Q.    Give me an example of a fact that
20 would have changed your decision.
21 MR. MUSCATO:  Objection to the
22 form of the question.
23 BY MR. MADIN:
24 Q.    You can answer.



38

```
 1   medical examiner's report?
 2              MR. MADIN:  Not at this time.
 3        BY MR. MADIN:
 4        Q.    Did your investigative service make
 5   any determinations about whether Peter Glynn,
 6   Peter Glynn's death was intentional or
 7   suicidal?
 8        A.    They never make opinions.
 9        Q.    And that is certainly not the
10   basis of your denial, is it?
11        A.    What they said?
12        Q.    No.  There's no claim here, is
13   there, that Mr. Glynn intended his own death?
14        A.    No.
15        Q.    Okay.  Did your investigative
16   service uncover any evidence regarding Mr.
17   Glynn's drinking habits?
18        A.    Yes.
19        Q.    What did they find?
20        A.    He routinely consumed vodka.
21        Q.    And did they talk to dram shops
22   and bars in the area?
23        A.    I believe so.  I don't recall.
24        Q.    Do you recall what they found with
```


setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

42

1  an opinion that came from legal?
2      A.    I would say it's my opinion.
3      Q.    Okay.  And if the statistics
4  indicated that the chance of were one in 10
5  million of someone driving intoxicated and
6  dying, would that be highly likely in your
7  opinion?
8            MR. MUSCATO:  Objection to the
9  form of the question.
10           THE WITNESS:  One in 10 million.
11     BY MR. MADIN:
12     Q.    Would you consider that highly
13 likely?
14     A.    My opinion, no.
15     Q.    Okay.  What sort of probability
16 would we look at to determine that something
17 was highly likely, in your opinion?
18           MR. MUSCATO:  Objection to the
19 form of the question.
20           THE WITNESS:  Over half.
21     BY MR. MADIN:
22     Q.    Okay.  51-49?
23     A.    You can say that, I guess.
24     Q.    More than that?  Would it have to



setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

93

```
 1      Q.      What was your purpose in referring
 2  to the fact that this policy in question is
 3  an accident policy?
 4      A.      In just in case there's any
 5  misunderstandings, we have to advise everyone
 6  concerned of the policy definitions to the
 7  best of my ability, and mentioning that it's
 8  an accident policy is part of this procedure.
 9      Q.      And in 2001 as a claims
10  specialist, what did you understand an
11  accidental death to involve?
12      A.      Something unforeseen and unexpected.
13      Q.      And with regard to a claim where
14  the facts showed that the death resulted from
15  driving while intoxicated, did you have an
16  understanding as to whether that was an
17  accidental death within the terms of policy
18  in question here?
19      A.      Well, if ERISA applies to the
20  coverage, then ERISA rules, and under those
21  circumstances driving while intoxicated is not
22  considered an accident.
23      Q.      I show you what's been previously
24  marked as Krol 14 for identification.  Can
```


setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

103

1  discussed the fact that however you define
2  the word accident in the policy is also
3  irrelevant to your denial, correct?
4          MR. MUSCATO:  Objection to the
5  form of the question.
6          BY MR. MADIN:
7      Q.    You can answer.
8      A.    Accident is not defined in the
9  policy.
10     Q.    Okay.  Well, what did you mean
11 when you said an accident is something that's
12 unforeseen?
13     A.    That is terminology that we use in
14 the course of our workday.
15     Q.    Okay.  And we have already
16 discussed the fact that this accident was
17 unforeseen to Mr. Glynn, in all probability?
18         MR. MUSCATO:  Objection to the
19 form of question.
20         BY MR. MADIN:
21     Q.    Correct?
22     A.    I agree with that.
23     Q.    Okay.  And in all probability, the
24 accident was unexpected by Mr. Glynn, correct?


setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

104

1  MR. MUSCATO: Objection to the
2  form of the question.
3  BY MR. MADIN:
4  Q. You can answer.
5  A. I agree.
6  Q. You don't know what the statistics
7  are regarding driving while intoxicated?
8  A. No.
9  Q. Does anyone at Bankers Life know
10 what the statistics show with regard to
11 driving while intoxicated? Do you know?
12 A. I don't know.
13 Q. Okay. And whatever the numbers
14 show, they played no part in your decision to
15 deny Mr. Glynn's claim, is that true?
16 A. Correct.
17 Q. And you do cite ERISA regulations
18 as being a component of your decision to deny
19 this claim, but you don't know what those
20 regulations are, correct?
21 A. Correct.
22 Q. You also cite ERISA cases as being
23 uniform in denying such claims but you do not
24 know what any of the cases are, is that



setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

107

1  STATE OF ILLINOIS   )
2  )SS.
3  COUNTY OF C O O K   )
4           I, SANDRA DRECHSLER, Certified
5  Shorthand Reporter No. 84-1676 and Notary
6  Public in and for the County of Cook, State
7  of Illinois, do hereby certify that I caused
8  to be reported in shorthand and thereafter
9  transcribed the foregoing transcript of
10 proceedings.
11          I further certify that the
12 foregoing is a true, accurate and complete
13 transcript of my shorthand notes so taken as
14 aforesaid; and further, that I am not counsel
15 for nor in any way related to any of the
16 parties to this action, nor am I in any way
17 interested in the outcome thereof.
18          I further certify that this
19 certificate applies to the original signed IN
20 BLUE and certified transcripts only. I
21 assume no responsibility for the accuracy of
22 any reproduced copies not made under my
23 control or direction.
24          IN TESTIMONY WHEREOF, I have


setdepo
Streamlined • Centralized • Standardized

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

108

1 hereunto set my hand and affixed my notarial
2 seal this 27th day of May, 2004.
3
4 *Sandra Drechsler*
5 Sandra Drechsler, CSR, RPR

sd setdepo
Streamlined · Centralized · Standardized

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com

110

## CERTIFICATE

STATE OF _ILLINOIS_ :

COUNTY/CITY OF _COOK/CHICAGO_ :

Before me, this day, personally appeared, **Robert Krol**, who, being duly sworn, states that the foregoing transcript of his/her Deposition, taken in the matter, on the date, and at the time and place set out on the title page hereof, constitutes a true and accurate transcript of said deposition.

_____
Robert Krol

SUBSCRIBED and SWORN to before me this _30th_ day of _June_, 2004 in the jurisdiction aforesaid.

_2/24/07_                    _Sherry Kremer_
My Commission Expires        Notary Public

"OFFICIAL SEAL"
SHERRY KREMER
COMMISSION EXPIRES 02/24/07



sd setdepo
Streamlined • Centralized • Standardized
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com