UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------x
PHILIP GLYNN,                 :   CIVIL NO. 3-02CV1802 (AVC)
                              :
    Plaintiff,                :
                              :
v.                            :
                              :
BANKERS LIFE AND CASUALTY CO. :
                              :
    Defendant.                :   APRIL 29, 2005
------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DECLARATION OF ROBERT J. PANDINA**

Defendant Bankers Life and Casualty Company ("Bankers") respectfully submits the within memorandum of law in opposition to Plaintiff's motion to strike the Declaration of Robert J. Pandina, Ph.D. (the "Pandina Decl.") previously submitted in support of Bankers' motion for summary judgment.

The Pandina Declaration was submitted in connection with the state of intoxication of Plaintiff's decedent, Peter Glynn (the "Decedent"), who died on June 8, 2001 while driving with a blood alcohol content ("BAC") of 0.17%, as determined by the Office of the Connecticut Medical Examiner, pursuant to Connecticut law.

62226

# ARGUMENT

## I. THE PANDINA DECLARATION IS PROPER IN EVERY RESPECT AND PLAINTIFF'S MOTION TO STRIKE PORTIONS OF IT SHOULD BE DENIED

Plaintiff objects to the entire Pandina Declaration, as well as to the following portion of the Pandina Declaration:

> 7. *Assuming that Peter Glynn began to drink alcohol at 5:30 p.m. and that he consumed his last drink such that his BAC would have been at peak or descending at the time of the accident, i.e. his last drink was no later than 7:00 p.m., at his 334 pound weight, it is my opinion that he would have had to consume 22 ounces of 80 proof distilled spirits (or some other consumption of the alcohol equivalent) in that time for him to obtain a BAC of 0.17%.*
>
> 8. *BACs in the 0.17% range indicate acute intoxication, resulting in debilitating impairments in multiple domains of functioning including without limitation: perceptual-motor coordination required for integration of sensory input and behavioral outflow; cognitive processing required for comprehension and decision-making; and affective processing required for emotion appreciation and expression. At this level, the skills required to operate a motor vehicle are significantly impaired.*
>
> 9. *The majority of individuals at BACs of 0.17% experiences symptoms of intoxication that would alert them to the fact that they are impaired, such as visual distortions including double vision, difficulty with eye-hand coordination and difficulty walking and standing as well as a general sense of being under the influence. Therefore, Peter Glynn would have been aware that he was intoxicated and that, as a result of his intoxication, his ability to operate a motor vehicle was impaired at the time he was operating his motor vehicle on June 8, 2001.*

Plaintiff also objects to all references to the above portion of the Pandina Declaration in Bankers' memorandum of law in support of its motion for summary judgment, including the following text on page 12 and 13, as set forth below in italics:

2

62226

> *Assuming that the Decedent began to drink alcohol at 5:30 p.m. and that he consumed his last drink such that his BAC would have been at peak or descending at the time of the accident, i.e. his last drink was no later than 7:00 p.m., at his 334 pound weight, he would have had to consume 22 ounces of 80 proof distilled spirits (or some other consumption of the alcohol equivalent) in that time for him to obtain a BAC of 0.17%. Declaration of Robert J. Pandina, Ph.D. ("Pandina Decl."), ¶ 7; Material Fact 29. BACs in the 0.17% range indicate acute intoxication, resulting in debilitating impairments in multiple domains of functioning including without limitation: perceptual-motor coordination required for integration of sensory input and behavioral outflow; cognitive processing required for comprehension and decision-making; and affective processing required for emotion appreciation and expression; and at this level, the skills required to operate a motor vehicle are significantly impaired. Pandina Decl., ¶8; Material Fact 30.*

The Pandina Declaration, as well as the above-quoted passages, are properly before this Court because Rule 56(e) permits supporting affidavits "made in personal knowledge . . . set[ting] forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Here, the underlying facts are admissible under the federal rules of evidence. The Autopsy Report provides the factual assertions regarding the Decedent's weight (334 pounds) and blood alcohol content (0.17%). *See* Affidavit of Robert Krol (the "Krol Aff."), submitted in support of Bankers' motion for summary judgment, Exhibit B, at D070, D065. Those facts are admissible under F.R.E. 803(5), 803(6) and/or 803(8). *See U.S. v. Rosa*, 11 F.3d 315, 333 (2d Cir. 1993)("[W]e hold that medical examiners' reported observations are admissible under Rule 803(8)(B)."); *see also Fields v. City of South Houston, Tex*, 922 F.2d 1183, 1190 n.9 (holding that the autopsy report was admissible under F.R.E. 803(6)). Furthermore, it was Plaintiff who stated that the

62226

Decedent was a secret drinker whose choice of alcohol was vodka.[1] Thus, the Decedent's consumption of vodka is admissible as a party-statement under F.R.E. 801(d)(2). The Decedent's sister provided the time line for the Decedent's consumption of alcohol. See Plaintiff's Exhibit G in support of his motion for summary judgment, Theresa Jones deposition transcript, T8-12 to –14, T17-4 to –9.

The statements in the Pandina declaration, whether labeled views or expert opinion, satisfy the requirements of Rule 56(e). See *Katcoff v. Marsh*, 755 F.2d 223, 227 n.2 (2d Cir. 1985). Four of the cases relied upon by Plaintiff were not decided in the context of summary judgment motions. See *U.S. v. Cruz*, 363 F.3d 187, 189 (2d Cir. 2004) ("... Cruz was convicted of possession with intent to distribute heroin following a jury trial"); *U.S. v. Dukagjini*, 326 F.3d 45, 48 (2d Cir. 2003) ("... Samuel Griffin and Alvin McGee were convicted in 1999 following a jury trial); *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 259 (2d Cir. 2002) ("In June of 1998, a jury found in favor of plaintiffs"); *Air Disaster at Lockerbie Scotland*, 37 F.3d 804, 310 (2d Cir. 1994), *cert. denied* 115 S.Ct. 934 (1995) ("... defendants ... appeal from final judgments entered on September 9, 1992 ... [after a bifurcated] trial"). Thus, these cases fails to support Plaintiff's motion.

The fifth case relied upon by Plaintiff supports Bankers' position because the appeals court found that "the district court erred in its rejection of [expert] affidavits"

---

[1]  Plaintiff testified that he would find empty vodka bottles in the trash "[a]nd that made me aware that [the Decedent] was doing some drinking....Whatever drinking he did, he did it on his own." Declaration of Andrew Muscato in Opposition to Plaintiff's motion for summary judgment, Exhibit 1, T39-8 to T40-21, T43-9 to –23.

4

62226

submitted in the context of a summary judgment motion. *See Iacobelli Const., Inc. v. County of Monroe*, 32 F.3d 19, 25 (2d Cir. 1994). What Plaintiff calls Pandina's "lone fact" (Pb 7), the blood analysis performed by the Office of the Connecticut Medical Examiner in accordance with Connecticut law, is the exact kind of fact relied upon under Connecticut law to determine intoxication. *See* Conn. Gen. Stat. § 14-227c (ordering that in motor vehicle fatalities, a single blood sample shall be taken and analyzed for the concentration of alcohol).

Furthermore, courts regularly take judicial notice of alcohol tests and standards. In *U.S. v. Horn*, 185 F.Supp.2d 530, 537 (D. Md. 2002), the court held that judicial notice of a field test for the presence of exaggerated horizontal gaze nystagmus in the defendant's eyes could prove the causal connection between it and the defendant's alcohol consumption. *Id.* at 561. The court concluded that "[t]he existence of a causal connection between alcohol ingestion and visible horizontal gaze nystagmus is the type of discrete adjudicative fact that may be judicially noticed under Rule 201 because it is a fact that can be accurately and readily determined by resort to sources whose accuracy cannot reasonably be questioned." *Id.* at 555, n.44. That BACs of 0.17% result in impairment in functioning is that kind of fact.

In another case, *VanHaverbeke v. Berband*, 654 F.Supp. 255 (S.D. Ohio 1986), the court took "judicial notice of the fact that a person who has a blood alcohol level of .18 two hours *after* an incident, has an even higher blood alcohol content at the time *of* the incident." *Id.* at 257 (emphasis in original).

Therefore, courts have had experience with judicial notice of alcohol facts in general. For these reasons, this Court's judicial notice of the symptoms of intoxication is appropriate under F.R.E. 201.

Indeed, this Court may take judicial notice of the fact that elevated BACs impair coordination and judgment. Our society's laws outlawing driving while intoxicated are based upon this fact. *See* Connecticut Selected Jury Instructions Criminal, § 11.23 Driving While Intoxicated § 14-227a(a)("Such person's physical or mental capabilities must have been impaired to such a degree that the person no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under the same or similar circumstances."). There can be no doubt that alcohol consumption impairs coordination and increases the risk of accident, and resources that so state are accurate and inherently reliable. Judicial notice of these resources is appropriate under F.R.E. 201. Plaintiff's motion to strike should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, Bankers respectfully requests that this Court deny Plaintiff's motion to strike in its entirety.

>THE DEFENDANT
>BANKERS LIFE AND CASUALTY
>COMPANY
>
>BY _____
>   John T. Shaban, ct14075
>   Whitman Breed Abbott & Morgan LLC
>   100 Field Point Rd.
>   Greenwich, CT 06830
>   203-869-3800 (telephone)
>   203-869-1951 (facsimile)
>   jshaban@wbamct.com
>
>   and
>
>   Andrew Muscato ct15073
>   Skadden, Arps, Slate, Meagher &
>   Flom LLP
>   Four Times Square
>   New York, New York 10036
>   212-735-3000 (telephone)
>   212-735-2000 (facsimile)

62226

## CERTIFICATION OF SERVICE

This is to certify that a true and correct copy of the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Strike Declaration of Robert J. Pandina was mailed via First Class Mail, postage pre-paid on this the 29 day of April 2005, to the following counsel of record:

Everett H. Madin, Jr.
Riscassi and Davis, P.C.
131 Oak Street
Hartford, CT 06106

Counsel for Plaintiff Philip Glynn

John T. Shaban

62226