# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------------------------------x
                                        :
PHILIP GLYNN,                           :        CIVIL NO. 3-02CV1802 (AVC)
                                        :
        Plaintiff,                      :
                                        :
v.                                      :
                                        :
BANKERS LIFE AND CASUALTY CO.,          :
                                        :
        Defendant.                      :        APRIL 29, 2005
-----------------------------------------------------x
```

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR <u>SUMMARY JUDGMENT DISMISSING THE COMPLAINT</u>

Defendant Bankers Life and Casualty Company ("Bankers") respectfully submits the within reply memorandum of law in further support of its motion for summary judgment to address more fully the following:

- a New Jersey court has held that Bankers had the discretion to deny claims under the Policy.

- Under *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir.), *cert. denied*, 498 U.S. 1013 (1990), it is a subjective/objective analysis, and not the testimony of strangers to the Decedent, that determines whether a death while driving intoxicated is accidental under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

- Plaintiff's failure to preserve other tissue samples from the Decedent's body constitutes spoliation of evidence.

## ARGUMENT

**I.     THE *PRECOPIO* COURT HELD THAT
        BANKERS HAD IMPLICIT DISCRETION TO
        INTERPRET PLAN TERMS.**

Although Plaintiff relies heavily upon the decision of the District of New Jersey in the *Precopio* case, he disagrees with that court on the issue of whether the Plan granted Bankers discretion to interpret plan terms.

The *Precopio* court held that the Decedent's employer's "Plan *does* confer general discretion upon Bankers Life to interpret plan terms, although that grant of discretion is not explicit, but implied." *Precopio v. Bankers Life and Casualty Company, the Pension Committee of the Board of Directors of Johnson & Johnson, Johnson & Johnson Employee Benefits Plan Accident Insurance, and Johnson & Johnson*, Civil. No. 01-5721 (D.N.J. Aug. 10, 2004) (Kugler, J.), at 22.[1] That court reviewed Bankers' denial of benefits under an arbitrary and capricious standard. *Id.* at 23.

Bankers submits that Plaintiff has proffered no good reason for deviating from that holding.

Furthermore, if Bankers did not have the discretionary authority to deny Plaintiff's claim, then Plaintiff failed to exhaust his administrative remedies because he failed to appeal the denial to a Plan fiduciary.

Before filing suit in federal court under ERISA, a claimant seeking the payment of benefits under an ERISA-governed plan must first exhaust the internal administrative remedies provided by the plan. *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592, 594 (2d Cir. 1993); *see also Millane v. Becton Dickinson &*

---

[1]     Peter Glynn (the "Decedent") was employed by Johnson & Johnson ("J&J").

2

*Co.*, 84 F. Supp. 2d 282, 288 (D. Conn. 1999) (granting summary judgment to the defendant dismissing the complaint because of the plaintiff's failure to exhaust administrative remedies under an ERISA-governed retirement plan).

Here, Bankers notified Plaintiff that an appeal could be made within 60 days by writing to Bankers. Plaintiff was invited to appeal and "[i]nclude any documentation that you feel supports this claim." Krol Aff., Exhibit C, D087.[2] But Plaintiff never provided further documentation.

The *Precopio* court found that the J&J defendants were "proper defendants" because a plan can have more than one administrator, and an employer can be considered an administrator notwithstanding the existence of another, named plan administrator. *Precopio*, at 31-32.

Here, assuming *arguendo* that Bankers did not have the discretion to deny Plaintiff's claim, a position with which Bankers vehemently disagrees, then some entity, perhaps J&J, had to have that discretion. There is no evidence on the record that Plaintiff appealed Bankers' denial to J&J. If Plaintiff failed to exhaust administrative remedies, then his failure should result in judgment to Bankers. *See Kennedy*, 989 F.2d at 596 (affirming grant of judgment dismissing the complaint for failure to exhaust ERISA-plan remedies); *Millane*, 84 F. Supp. at 288 (granting of summary judgment dismissing complaint for failure to exhaust ERISA-plan remedies).

---

[2]    The Affidavit of Robert Krol submitted in support of Bankers' motion for summary judgment is referred to herein as the "Krol Aff."

62229

## II. A *WICKMAN* ANALYSIS DETERMINES WHETHER DEATH WHILE DRIVING INTOXICATED IS NOT AN ACCIDENT AND NOT THE STATEMENTS OF STRANGERS.

The opinion of the Court of Appeals for the First Circuit in *Wickman v. Northwestern National Insurance Co.* provides the standard under federal common law in this District for determining when a particular event is an "accident" for purposes of an accidental death benefits plan governed by ERISA, and not the testimony of persons who never met the Decedent. Plaintiff clings to the misguided hope that he can twist the testimony of Bankers' Robert Krol, its expert Robert J. Pandina, Ph.D., and its brief into vague support of Plaintiff's proposition that these strangers to the Decedent somehow "know" the Decedent's subjective intent on the night he died. *See* Plaintiff's opposing memorandum of law, at 5 to 10.

*Wickman* focuses not on what later-named witnesses believe but, rather, on the Decedent's subjective and objective intent. It requires the fact-finder to ascertain whether the insured subjectively expected an injury similar in type to the one that occurred, and if he did not, whether his belief was reasonable. Where the insured's subjective expectations cannot be ascertained because of death, the fact-finder then engages in an objective analysis of a reasonable person's expectations: whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of his intentional conduct. *Wickman*, 908 F.2d at 1088.

Here, the undisputed facts establish that

62229

- the Decedent never attempted to brake his vehicle[3]

- the Decedent was a secret drinker[4]

- the Decedent was speeding[5]

- the Decedent's blood alcohol content was 0.17%.[6]

Here, under *Wickman*, where the Decedent's subjective expectations cannot be ascertained because of death, the inquiry is whether a reasonable person, with background and characteristics similar to the Decedent's, would have viewed the injury as highly likely to occur as a result of his intentional conduct. *See Wickman*, 908 F.2d at 1088.

It is a matter of common sense that individuals with BACs of 0.17% experience some symptoms of intoxication that would alert them to the fact that they are impaired, such as visual distortions including double vision, difficulty with eye-hand coordination and difficulty walking and standing as well as a general sense of being under the influence. Therefore, the Decedent would have been aware that he was intoxicated and that, as a result of his intoxication, would have known that his ability to operate a motor vehicle was impaired at the time he was operating his motor vehicle on June 8, 2001. *See also* Pandina Decl., ¶ 9.

Under *Wickman,* a reasonable person who suddenly experienced visual distortions including double vision, difficulty with eye-hand coordination, difficulty

---

[3]    Krol Aff., Exhibit B, Police Report, at 6 (D063).

[4]    Declaration of Andrew Muscato in opposition to Plaintiff's summary judgment motion ("Muscato Opp. Decl."), Exhibit 1, T39-8 to T40-21, T43-9 to –23.

[5]    Krol Aff., Exhibit B, at 9 (D066).

[6]    Krol Aff., Exhibit B, Toxocology Report (D077).

62229

walking and standing, would have believed that serious injury or death was likely to occur if he drove his automobile, and would have decided not to drive with those physical symptoms at almost twice the speed limit downhill through a series of sharp curves.

### III.    PLAINTIFF'S ARGUMENT DISCOUNTING THE DECEDENT'S 0.17% BAC IS DISINGENUOUS BECAUSE HE HAD THE OPPORTUNITY TO TEST OTHER TISSUE SAMPLES AND DID NOT.

Plaintiff offers several unsubstantiated reasons for his conclusion that the Defendant was not intoxicated:

- in reliance upon studies of airplane crash fatalities subject to the jurisdiction of the Federal Aviation Authority, Plaintiff claims that ethanol may have been created postmortem in the Decedent's body; *except that the Decedent did not die in an airplane crash.*

- Plaintiff claims that the Decedent was treated for diabetes and that "the Decedent's diabetic and/or elevated glocal glucose level" contributed to his body's production of alcohol; *except that Plaintiff testified that the Decedent did not have diabetes.*[7]

- Plaintiff contends that the Decedent's body was kept under such poor conditions as to invalidate the accuracy of the Medical Examiner's blood toxicology analysis. Pb at 64; *except that the record is devoid of any facts establishing that contention.*

---

[7]    Plaintiff testified that "I don't think [the Decedent] developed diabetes," and denied that the Decedent was taking "anything that I know of of the insulin family or anything like that."  Muscato Opp. Decl., Exhibit 1, T30-6 to –19.

62229

A.     **Plaintiff Knew for Four Years That Blood Analysis Concluded
The Decedent Was Intoxicated When He Died.**

Almost four years ago, on June 22, 2001, the Connecticut Medical

Examiner issued its Toxicology Report that states:  (1) specimens submitted for analysis

included blood, urine, and vitreous samples; (2) only the blood sample was tested for the

presence of ethanol; (3) "[b]lood was analyzed for the presence of ethanol [which] was

found at a concentration of 0.17%"; and (4) "tissue specimens retained in this case will be

destroyed one year after the date of the report."  Krol Aff., Exhibit B, D077.  Plaintiff

waited until 2005, after the destruction of the Decedent's tissue specimens, before

challenging the accuracy of the 2001 Toxicology Report.

Although, from the outset, Plaintiff understood that one blood sample was

used to analyze the Decedent's blood when he received the Toxicology Report and

submitted it to Bankers, and understood that Bankers denied his claim because that blood

analysis established that the Decedent was driving while intoxicated,[8] he made no effort

to request analysis of additional tissue samples while they still existed.

Furthermore, Plaintiff's "scientific literature" is based upon aircraft

crashes.[9]  Because aircraft accidents can occur in remote places, the bodies of the

deceased may be exposed to the elements, delaying the collection of tissue specimens,

and thus alcohol results can be skewed. Plaintiff's scientific literature states that

postmortem ethanol production is possible because of those delays: "Collection and

---

[8]     Muscato Opp. Decl. Exhibit 2, T32-3 to –7, T36-10 to –14, T40-13 to –24, T65-2
to –8; T89-17 to –24.

[9]     A copy of the article cited by John Plaintiff's aircraft expert, "Postmortem Alcohol
Production in Fatal Aircraft Accidents," by Dennis V. Carfield, Ph.D., Thomas
Kuprie, M. Ed., and Edwin Huffine, M.S., is attached as Exhibit 4 to the Muscato
Opp. Decl.

62229

shipment of specimens from these accidents are sometimes delayed and the possibility of postmortem ethanol production does exist." Muscato Opp. Decl., Exhibit 4 at 915.

Automobile fatalities such as the Decedent's do not involve the recovery of bodies from remote places.

B.    **Plaintiff's Failure to Preserve the Samples for Analysis Constitutes Spoliation.**

"Spoliation is . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). "It has long been the rule that spoliators should not benefit from their wrongdoing." *Id.* A district court has broad discretion in crafting a proper sanction for spoliation. *Id.* The Second Circuit recommends that "[t]he sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence of the opposing party.'" *Id.*

Query: Why did Plaintiff allow the Decedent's tissue samples to be destroyed? Answer: So that, after the destruction of the Decedent's tissue samples, Plaintiff could argue *theoretically* the accuracy of the reported blood alcohol level when he had an opportunity to *actually* analyze existing tissue samples. Plaintiff's failure to protect the tissue samples constitutes spoliation.

C.    **Plaintiff Proffers No Reason to Deviate From Connecticut Law, Requiring Only One Blood Sample To Determine Intoxication.**

Connecticut law requires "the investigation of any motor vehicle accident resulting in a fatality." See Conn. Gen. Stat. § 14-227c. In such instances, Connecticut

8

62229

law mandates the chief medical examiner, or any associate medical examiner, to "order that a blood sample be taken from the body of any operator or pedestrian who dies as a result of such accident." *Id.* This sample "shall be examined for the presence and concentration of alcohol . . . by the Office of the Chief Medical Examiner":

> As part of the investigation of any motor vehicle accident resulting in a fatality, the Chief Medical Examiner, Deputy Chief Medical Examiner, an associate medical examiner, a pathologist as specified in section 19a-405, or an authorized assistant medical examiner, as the case may be, shall order that a blood sample be taken from the body of any operator or pedestrian who dies as a result of such accident.
>
> Such blood samples shall be examined for the presence and concentration of alcohol by the Division of Scientific Services within the Department of Public Safety or by the Office of the Chief Medical Examiner.

*Id.*[10] Therefore, to this day, Connecticut law requires only a single blood sample to determine whether a vehicle operator was driving while intoxicated: "<u>a</u> blood sample be taken from the body of any operator or pedestrian who dies as a result of such accident." *Id.* (emphasis supplied).

Here, the single sample of the Decedent's blood, analyzed for the concentration of alcohol, satisfied the requirement of Connecticut law to determine intoxication. Plaintiff proffers no reason why this Court should not apply Connecticut Law on this issue.

---

[10]    Since the Decedent's death, Conn. Gen. Stat. § 14-227c was repealed and restated effective October 1, 2003, and repealed and restated again effective October 1, 2004. The first restatement simply changed the word "fatality" to "death of a person" and denominated that paragraph as part (a) of the statute. The second restatement left part (a) unchanged.

62229

## **CONCLUSION**

Because Plaintiff's decedent's death was not an accident as a matter of

law, Bankers respectfully requests that this Court grant its motion and dismiss the

complaint in its entirety.

THE DEFENDANT
BANKERS LIFE AND CASUALTY
COMPANY

BY_____
John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com

Andrew Muscato, ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

62229

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a true and correct copy of the Reply Memorandum of Law in

Further Support of Defendant's Motion for Summary Judgment Dismissing the

Complaint was mailed via First Class Mail, postage pre-paid on this the ___ day of April

2005, to the following counsel of record:


    Everett H. Madin, Jr.
    Riscassi and Davis, P.C.
    131 Oak Street
    Hartford, CT 06106

    Counsel for Plaintiff Philip Glynn

                                John T. Shaban

11

62229