UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------x
PHILIP GLYNN,                 :   CIVIL NO. 3-02CV1802 (AVC)
                              :
    Plaintiff,                :
                              :
v.                            :
                              :
BANKERS LIFE AND CASUALTY CO.,:
                              :
    Defendant.                :   JULY 8, 2005
------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AMENDED INITIAL DISCLOSURES**

Defendant Bankers Life and Casualty Company ("Bankers") respectfully submits the within memorandum of law in opposition to Plaintiff's motion to strike Bankers' amended initial disclosures.[1] Bankers respectfully requests that this Court deny Plaintiff's motion because it has no basis in fact or law.

Briefly, this case involves a beneficiary's claim to benefits under a group accidental life policy, issued as part of an employee welfare plan, where the insured Peter Glynn (the "Decedent") died on June 8, 2001, in a single-vehicle crash while driving intoxicated with a 0.17% blood alcohol concentration ("BAC"). Plaintiffs' claim is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

---

[1]  A copy of Bankers' Amended Initial Disclosures are attached hereto as Exhibit 1.

64190

This motion has no basis in fact. Contrary to Plaintiff's unfounded assertions, Bankers' amended initial disclosures disclose only information already produced to Plaintiff during discovery in this litigation or known to Plaintiff before this litigation began. Bankers served the amended initial disclosures to clarify the record as to the items disclosed.[2] The motion has no basis in law because the amended disclosures were neither a surprise to Plaintiff nor untimely.[3]

## FACTS AND PROCEDURAL HISTORY

Plaintiff filed his initial Complaint in Connecticut Superior Court in or about September 2002. In October 2002, Bankers removed the matter to this Court on the ground that it was an ERISA action. By Order dated May 29, 2003, this Court permitted Plaintiff to amend his complaint to assert additional pendent state claims. Thereafter, Plaintiff moved twice more to amend his Complaint – on July 18, 2003 and November 17, 2003 – ultimately asserting an ERISA claim. On October 29, 2003 Bankers filed a motion to dismiss the pendent state claims on the ground that they were preempted by ERISA. By Order dated December 9, 2003, this Court granted Bankers' motion to dismiss all state claims, leaving as Plaintiff's sole claim the ERISA claim. On January 14, 2004, this Court permitted the further amendment of Paragraph 7 of the ERISA claim.

---

[2] The courtesy of a telephone call to Bankers' counsel could have resolved Plaintiff's concerns regarding the amended disclosures without the filing of yet another motion.

[3] Although Plaintiff comments that "the defendant apparently is not disclosing an expert," Pb5, Bankers has already disclosed its expert to Plaintiff in December 2004.

2
64190

By Order dated November 9, 2004 this Court denied without prejudice the parties' respective motions for summary judgment, granted Bankers leave to name an alcohol expert, whom Plaintiff later deposed, and reopened discovery for limited purposes. Plaintiff was given leave to name a rebuttal expert, John W. Soper, Ph.D.

In or about March 2005, Bankers and Plaintiff filed motions for summary judgment which are pending before this Court. As part of Plaintiff's motion for summary judgment, Dr. Soper submitted his Declaration dated February 3, 2005 (the "Soper Declaration"), attached as Exhibit I to Plaintiff's March 17, 2005 memorandum in support of his motion for summary judgment ("Plaintiff's SJM"). Dr. Soper questioned the conditions under which the funeral home transported the Decedent's body to the medical examiner's office, the conditions under which the medical examiner's office held the body pending autopsy, the procedures used to conduct the autopsy, the medical examiner's analysis of the tissue samples, and the conclusion drawn in the toxicology report. *See* Plaintiff's SJM, Exhibit I.

The parties' joint pretrial memorandum is not due to be filed until 30 days after the Court's decision on the pending summary judgment motions. No trial date has been set.

64190

ARGUMENT

BANKERS' AMENDED INITIAL DISCLOSURES WERE PROPER AND
PLAINTIFF'S MOTION TO STRIKE THEM SHOULD BE DENIED.

Plaintiff's motion has no basis in fact or law because no prejudice or surprise was created by disclosing facts already known to Plaintiff, and the amended disclosure was timely.

A.  Bankers Disclosed Facts Already Known to Plaintiff.

As to the six persons Bankers disclosed, all have been known to Plaintiff since before this litigation began:

- Before this litigation began, Bankers' representative Robert Krol corresponded with Plaintiff. Krol denied Plaintiff's claim. Plaintiff deposed Krol on May 18, 2004. Bankers disclosed Krol to Plaintiff in Bankers' answers to Plaintiff's interrogatory nos. 1, 3, and 4 dated May 16, 2003.[4]

- Before this litigation began, Plaintiff knew that toxicologist Sherwood C. Lewis, Ph.D., of the Connecticut Medical Examiner's Office, had analyzed the Decedent's blood sample in June 2001 and concluded that the Decedent's BAC was 0.17% because Dr. Lewis's Toxicology Report is one

---

[4] A copy of Krol's March 4, 2002 letter to Plaintiff is attached as Exhibit T to Plaintiff's SJM. A copy of a portion of Krol's May 18, 2004 deposition is attached to Plaintiffs' SJM as Exhibit K. A copy of Bankers' answers to Plaintiff's interrogatories is attached as Exhibit 1 to Plaintiff's motion to compel discovery dated July 7, 2003.

4

64190

of the documents relied upon by Bankers in denying Plaintiff's claim.[5]

Furthermore, on March 16, 2004 Bankers served Plaintiff with another copy of the Report, bates-stamped D077.[6] Plaintiff's knowledge about Dr. Lewis's report is evidenced by his 2003 response during discovery.[7]

- Before this litigation began, Plaintiff knew that Associate Medical Examiner Malka B. Shaw, M.D., also of the Chief Medical Examiner's

---

[5]  In a Declaration dated February 3, 2005, attached as Exhibit I to Plaintiff's SJM, Plaintiff's expert Dr. John W. Soper acknowledged that he had reviewed Dr. Shaw's autopsy report, Dr. Lewis's Toxicology Report, noted that Dr. Mirabelli had pronounced the Decedent dead, and noted that the O'Brien Funeral Home had transported the Decedent's body to the Medical Examiners' Office. Exhibit I at 3 – 4, ¶¶ 8 - 17.

[6]  A copy of Bankers' letter of transmittal dated March 16, 2004 is attached hereto as Exhibit 2.

[7]  On or about April 17, 2003, Bankers served interrogatories upon Plaintiff. Interrogatory No. 10 asked whether he contended that the Toxicology Report's blood alcohol level was incorrect:

> 10. Do you contend that the decedent's blood alcohol levels were incorrect as stated in the Toxicology Report issued by the State of Connecticut, Office of the Chief Medical Examiner, M.E. Case No. 1-07155, regarding deceased Peter Glynn, dated June 22, 2001.

Conceding that he had considered that possibility, he answered:

> The plaintiff will certainly demonstrate that the blood alcohol content of the decedent does not directly correlate to the blood alcohol content of the decedent prior to his death. This will be the subject of expert opinion which will be disclosed in the appropriate time.

*See* Plaintiff's answer to Interrogatory No. 10, attached as Exhibit D to the Declaration of Andrew Muscato dated January 14, 2005 in opposition to Plaintiff's motion for permission to disclose rebuttal expert witness.

office, had conducted the Decedent's autopsy on June 9, 2001 because Dr. Shaw's Postmortem Report was one of the documents that Bankers' reviewed when it denied Plaintiff's claim. On March 16, 2004, Bankers served Plaintiff with another copy of the Report, bates-stamped D070 to D076. *See* Exhibit 2 hereto.

- Before this litigation began, Plaintiff knew that Assistant Medical Examiner Vittorio Mirabelli, M.D., also of the Chief Medical Examiner's office, responded to the scene of the crash and pronounced the Decedent dead because Dr. Mirabelli's Report of Investigation was one of the documents that Bankers' reviewed when it denied Plaintiff's claim. On March 16, 2004, Bankers served Plaintiff with another copy of the Report, bates-stamped D069. *See* Exhibit 2 hereto.

- Before this litigation began, Plaintiff knew that the O'Brien Funeral Home had transported the Decedent's body to the Medical Examiner's Office because that information is contained in the documents that Bankers' reviewed when it denied Plaintiff's claim. *See* Krol Affidavit, Exhibit B, D069. On March 16, 2004, Bankers served Plaintiff with another copy of the document bates-stamped D069. *See* Exhibit 2 hereto.

- Before this litigation began, Plaintiff knew that Officer William Kenney of the Bristol Police Department had investigated the crash because Kenney's Traffic Accident Investigation Report was relied upon by Bankers in denying Plaintiff's claim. On March 16, 2004, Bankers served Plaintiff with another copy of the Report, bates-stamped D056 to D066. *See*

6

64190

Exhibit 2 hereto. In his October 24, 2003 designation of experts, Plaintiff named Officer William Kenny as his expert on the investigation of the Decedent's motor vehicle death. *See* Exhibit 3 hereto.

As to the documents, copies have been produced either by Bankers to Plaintiff during discovery or by Plaintiff to Bankers as part of this litigation:

- documents related to the Plaintiff's claim, including police, autopsy and toxicology reports (produced by Bankers to Plaintiff as D001 to D093 on March 16, 2004) (*see* Exhibit 2 hereto);

- documents between Bankers and the Decedent's employer regarding the Decedent (produced by Plaintiff for the first time during this litigation as Exhibit H to Plaintiff's SJM);

- documents relied upon by Bankers in denying Plaintiff's claim (produced by Bankers to Plaintiff as D081 to D088 on March 16, 2004)[8] (*see also* Exhibit 2 hereto); and

- documents related to Bankers' denial of Plaintiff's claim (produced by Bankers to Plaintiff as D001 to D093 on March 16, 2004) (*see* Exhibit 2 hereto).

As to the policy, before he filed the Complaint in this matter, Plaintiff's counsel wrote to Krol on May 15, 2002 and stated that "I have reviewed the policy at

---

[8] A copy of the documents relied upon by Bankers in denying Plaintiff's claim are attached as Exhibit B to the Affidavit of Robert Krol dated January 31, 2005 in support of Bankers' motion for summary judgment (the "Krol Affidavit"). The documents are bates-stamped D081 to D088, and D081 bears a May 18, 2004 mark from the Krol deposition.

64190

issue."⁹ Furthermore, Bankers served Plaintiff with a copy of the Group Accident Policy, SR 84,001B bates-stamped D001 to D019 on March 16, 2004. *See* Exhibit 2 hereto. The Policy was marked as an Exhibit Krol #7 during Krol's 2004 deposition, and a copy is attached as Exhibit J to Plaintiff's SJM.

Here, Bankers agrees that "[t]he purpose of Rule 26(a) is to prevent an ambush, resulting in surprise or prejudice, of undisclosed or late disclosed evidence." *Equant Integ. Serv. V. United Rentals (North Am)*, 217 F.R.D. 113, 117 (D.Conn. 2003) (citing *Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992). These concerns do not arise here because Bankers disclosed facts already known to Plaintiff.

Furthermore, a failure to disclose the name of potential witnesses known to all parties is deemed harmless. *Newman v. GHS Osteopathic*, 60 F.3d 153, 156 (3d Cir. 1995; *see also* Advisory Committee Note to Fed. R, Civ.P. 37(c) (1993), reproduced at 7 Moore's Federal Procedure 3d ed, § 37 App.07[2].

Here, Bankers disclosed the names of six persons already known to Plaintiff, one of whom (Robert Krol) Plaintiff had already deposed on May 18, 2004, one of whom (Officer William Kenney) Plaintiff has named as his expert trial witness, one of which (O'Brien Funeral Home) was known to Plaintiff from the date of the Decedent's death because it had transported the Decedent's body from the crash scene to the medical Examiner's Office, and three of whom (assistant medical examiners Sherwood C. Lewis, Ph.D., Malka B. Shaw, M.D., and Vittorio Mirabelli, M.D.) were fully known to Plaintiff because they had issued reports that Plaintiff submitted to Bankers and whose procedures

---

⁹ A copy of counsel's May 15, 2002 letter to Krol stating that "I have reviewed the policy in issue" is attached as Exhibit D to the Krol Affidavit.

Plaintiff's Dr. Soper has brought into question in this matter. *See* Soper Declaration at 8 – 10, ¶¶ 35 to 45.

The one specific document disclosed by Bankers is the policy at issue in this matter, Group Accident Policy SR 84,001B, a copy of which Plaintiff has had since at least May 15, 2002, according to his counsel who wrote to Krol that day and stated that "I have reviewed the policy at issue." See n.8, *supra*.

Similarly, Plaintiff has had full knowledge of the four categories of documents disclosed by Bankers because copies have been produced to Plaintiff during discovery. *See* discussion at 6 - 7, *supra*.

Thus, Bankers' disclosures by amendment presented no possibility of harm or surprise to Plaintiff. Plaintiff already had knowledge of the amended disclosures before the litigation began. *See Newman*, 60 F.3d at 156. And, as Plaintiff so eloquently quoted, "[m]utual knowledge of all of the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, 460 (1947). Here, Bankers disclosed for the record relevant facts already known to both parties from at least the commencement of the litigation.

B.  <u>The Amended Disclosures Were Timely Under Rule 26 (e).</u>

Initially, Plaintiff made no effort to challenge the conclusion of the Toxicology Report that the Decedent's BAC was 0.17%. *See* n.5, *supra*. It was only after the parties had filed motions for summary judgment and after this Court gave Bankers permission to name an alcohol expert, that Plaintiff challenged the accuracy of the toxicology report, the conditions under which the Decedent's body was maintained by the funeral home and the Medical Examiner's Office, and their respective procedures.

9

64190

*See* Soper Declaration at 8 – 10, ¶¶ 35 to 45. Given that it was not until his March 17, 2005 motion for summary judgment that Plaintiff first raised criticized the medical examiners' and the funeral home's procedures, and for the first time challenged the accuracy of their work, Bankers' amended disclosure of these persons, whose identities were known to all parties, as having information relevant to the litigation is timely. *See Newman*, 60 F.3d at 156.

## CONCLUSION

For the foregoing reasons, Bankers respectfully requests that this Court deny Plaintiff's motion to strike in its entirety.

THE DEFENDANT
BANKERS LIFE AND CASUALTY
COMPANY

BY _____
John T. Shaban, ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com
    and
Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

10

64190

## CERTIFICATION OF SERVICE

This is to certify that a true and correct copy of the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Strike Defendant's Amended Initial Disclosures was mailed via First Class Mail, postage pre-paid on this the 8th day of July 2005, to the following counsel of record:

Everett H. Madin, Jr.
Riscassi and Davis, P.C.
131 Oak Street
Hartford, CT 06106
*Counsel for Plaintiff Philip Glynn*

John T. Shaban

64190