UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

PHILLIP GLYNN,                    :          2005 AUG 23  A 8: 51
   Plaintiff                     :
                                 :              DISTRICT COUR:
                                 :                   ORD, CT.
                                 :  Civil No: 3:02CV1802 (AVC)
                                 :
                                 :
BANKERS LIFE AND                 :
CASUALTY COMPANY,                :
   Defendant                     :

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This is an action for damages in which the plaintiff, Philip

Glynn, the beneficiary of an insurance policy, claims that the

defendant, Bankers Life and Casualty Company ("Bankers"),

wrongfully denied payments due under the provisions of a life

insurance policy. This action is brought pursuant to the

Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §

1001, et. seq., specifically under 29 U.S.C. § 1132(a)(1)(B).

The parties have filed the within cross-motions for summary

judgment pursuant to Fed. R. Civ. P. 56, arguing that the

opposing party has not raised any genuine issue of material fact

and that the movant is entitled to judgment as a matter of law.

The issues presented are: 1) whether the language of the

insurance contract confers upon Bankers Life discretionary

authority to construe the meaning of ambiguous terms within the

insurance policy; 2) whether such language thereby confers

fiduciary responsibility upon Bankers Life, requiring their

1

determinations be reviewed under an arbitrary and capricious standard; 3) whether the specific circumstances surrounding one Peter Glynn's death falls within the meaning of the term "accident," as described in the insurance policy; 4) whether the plaintiff has exhausted his administrative remedies.

For the following reasons, the court concludes: 1) the language of the insurance policy is too vague and ambiguous to be consistent with the Second Circuit's requirement that explicit language be used to reserve discretionary authority to interpret plan terms governed by ERISA; 2) accordingly, the court will review Bankers Life's denial of benefits de novo; 3) the developing federal common law governing ERISA-related claims indicates that an "accidental" death includes death occurring while driving under the influence of alcohol; 3) while ERISA requires that the insured exhaust all administrative remedies, Bankers Life did not articulate the appeals procedures with the requisite particularity. Moreover, the plaintiff made a timely and official notice of appeal and has made a clear and positive showing that pursuing further administrative remedies would be futile, thereby relieving the plaintiff of the exhaustion requirement.

Therefore, the defendant's motion for summary judgment (document no. 130) is DENIED, and the plaintiff's motion (document no. 127) for summary judgment is GRANTED.

## FACTS

Examination of the amended complaint, affidavits, pleadings, D. Conn. L. Civ. R. 56 statements, exhibits, and supplemental materials accompanying motions for summary judgment, and the responses thereto, discloses the following undisputed, material facts:

On June 8, 2001, Peter Glynn ("the decedent"), died as a result of injuries sustained in a single car motor vehicle accident.

The certificate of death issued by the chief medical examiner indicated that the decedent had been wearing his seat belt at the time of the accident. It noted that head injuries were the immediate cause of death and listed ethanol intoxication as a contributing condition. The autopsy revealed that the decedent's blood alcohol concentration ("BAC") was 0.17 %.

Since 1994, Johnson & Johnson had employed the decedent as a "tech leader." During the course of his employment, Johnson & Johnson rewarded the decedent with steady salary increases, regular promotions and strong performance reviews. In addition, they insured the decedent pursuant to a group accident policy issued by Bankers Life and Casualty Company designated as policy SR 84001.

During his employment, the decedent lived with his father, on Phillip Glynn ("the plaintiff"), and had designated him as the

3

primary beneficiary of his insurance policy. The plaintiff stated
that while the decedent did not have a girlfriend or regular
circle of friends, the decedent did have an active life with his
family. The decedent had purchased a plane ticket for a winter,
2001 vacation to Florida with his sister and was planning a road
trip with his father for the following spring of 2002 to an
aviation museum in Ohio and to a baseball game in St. Louis.
Moreover, the plaintiff indicated that the decedent was
financially secure and had not given the plaintiff any indication
that he was depressed.

The decedent's insurance policy is part of Johnson &
Johnson's 24-hour accident insurance plan. Johnson & Johnson
issued this policy as part of their employee welfare benefit plan
governed by the Employee Retirement Income Security Act
("ERISA"), and designated Bankers as the plan administrator.

Johnson & Johnson provided the decedent with a summary plan
description ("SPD") that contains the following language:

> If your claim for a benefit is denied... you will
> be notified in writing by the Administrator for
> that benefit plan [here, Bankers].
>
> ... If you disagree with the denial, [you may
> request a review] in writing and [send it] to the
> Administrator for that benefit plan [here,
> Bankers].
>
> ... you will be notified in writing of the final
> and binding decision on your claim.

4

Following the accident, Bankers refused to pay the proceeds of the insurance policy to the plaintiff. Bankers provided the plaintiff with two reasons for their refusal to pay: 1) ERISA, and; 2) the 0.17 % BAC. Although the insurance plan contains neither a specific exclusion for injuries sustained while intoxicated nor a specific definition of the term "accident," Bankers construed the term "accident" to mean that the decedent's death was not an "accident" within the meaning of the insurance policy and was not covered under the plan.

On March 4, 2002, one Robert Krol, Bankers' special risk benefits analyst and corporate designee assigned to administer the plaintiff's claim, issued a letter of benefits denial to the plaintiff. The letter stated, in part:

> The medical records we have show Peter Glynn had a blood alcohol content of 0.17% at the time of his death...
>
> Federal courts, in applying federal common law to claims for accidental death under ERISA plans, have uniformly held that death resulting from driving while intoxicated is not accidental.
>
> If you wish to appeal this decision, you may do so within 60 calendar days... Include any documentation you feel supports this claim.

On April 30, 2002, the plaintiff's attorney responded with a letter that read, in part:

> First, I am requesting an appeal of the decision in accordance with your letter to Mr. Glynn dated March 4, 2002...

Please give me a call when you have an opportunity
to discuss this matter further. It is Mr. Glynn's
position that the policy is fully payable under
the facts and circumstances of this case.

In a letter dated May 9, 2002, Krol responded:

We wrote to your client on March 4, 2002 (copy
attached) explaining why this policy would not
permit payment of benefits.

... An appeal usually consists of additional
information and/or reasons why a decision should
be reconsidered. We invite you to submit whatever
information you have which may have a bearing on
our decision.

In a letter dated May 15, 2002, the plaintiff's attorney

again responded:

I have viewed the policy at issue in this case. I
find no language excluding coverage for deaths
which were caused solely by an accident in which
alcohol may have been associated. I do note that
the policy does provide specific exclusions, but
not one that is relevant to the issues in this
manner.

Please make immediate payment to Mr. Glynn at this
time.

In the final letter dated May 22, 2002, Krol

wrote on behalf of Bankers to the plaintiff's attorney.

Specifically, the letter stated:

While there is no listed exclusion specifically
addressing driving while intoxicated, we remind
you that this is an Accident policy, paying
benefits for covered losses caused by accidental
bodily injuries.

6

Our letter of Mar 4, 2002 had explained ERISA
regulations, and how federal courts have ruled on
cases involving driving while intoxicated.

Without further investigation into the accident, Bankers

admits that it based its decision to deny the plaintiff benefits

solely on its interpretation of ERISA standards and the

decedent's 0.17 % BAC.

The undisputed evidence on the record, however indicates

that a 35-year-old male driver, operating a car with a BAC over

0.15 %, traveling a distance of 20 miles, has a 772 out of 10

million chance of being involved in a fatal car accident in

Connecticut.

### STANDARD OF REVIEW

The court appropriately grants summary judgment when the

evidentiary record shows that there are no genuine issues of

material fact and that the moving party in entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(c). In determining whether

the record presents genuine issues for trial, the court must view

all inferences and ambiguities in a light most favorable to the

non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d

Cir. 1991), cert denied, 502 U.S. 849 (1991). A plaintiff raises

a genuine issue of material fact if "the jury could reasonably

find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 252 (1986). Rule 56 provides that "the mere existence

of some alleged factual dispute between the parties will not

7

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48(1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

**DISCUSSION**

## I. Standard of Review for Denial of ERISA Benefits.

Bankers first argues that a court should review determinations of eligibility and interpretations of plan terms under ERISA pursuant to an arbitrary and capricious standard. Accordingly, Bankers maintains that the court's review should be limited to the administrative record and that the court should only disturb Bankers' determination that the decedent's death was not an accident if Bankers' decision was without reason, unsupported by substantial evidence or erroneous as a matter of law.

Specifically, Bankers contends that specific language contained within the insurance contract confers upon Bankers discretionary authority to determine the claimant's eligibility for benefits and to construe ambiguous terms under the insurance

8

plan. Bankers suggests that under ERISA, the following language
implies that Bankers reserved such authority:

> If your claim for a benefit is denied... you will
> be notified in writing by the Administrator for
> that benefit plan [here, Bankers].
>
> ... If you disagree with the denial, [you may
> request a review]. This request should be in
> writing in writing and sent to the Administrator
> for that benefit plan [here, Bankers].
>
> The reviewer will issue a decision within 60 days.
>
> ... you will be notified in writing of the *final
> and binding decision* on your claim.
>
> (emphasis added).

The plaintiff contends that the language of the insurance
contract does not satisfy Bankers' burden of demonstrating that
it reserved discretionary authority. Specifically, the plaintiff
reminds the court that Bankers made no explicit reservation of
discretionary authority and urges that the language referenced in
the SPD is not susceptible to interpretation as an implied
reservation of such authority. Accordingly, the plaintiff asserts
that in the absence of such discretion, the court must review
Bankers' determination de novo.

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101
(1989), the United States Supreme Court concluded that decisions
to deny benefits under an ERISA-regulated plan, "is to be
reviewed under a de novo standard unless the benefit plan gives
the plan administrator or fiduciary discretionary authority to

9

determine eligibility for benefits or to construe the terms of

the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,

115 (1989)(emphasis added). Moreover, the burden is on the plan

administrator to "overcome the presumption of de novo review and

to permit review instead under the arbitrary and capricious

standard..." Jordan v. Retirement Comm. of Rensselear Polytechnic

Inst., 46 F.3d 1264, 1269 (2d Cir. 1995).

The court must determine whether a policy grants

discretionary authority to the insurer from the specific language

of the insurance contract. "While magic words such as

'discretion' and 'deference' may not be absolutely necessary...

Courts that have found that alleged grants of discretion did not

justify arbitrary and capricious review have noted the absence of

such language." Jordan v. Retirement Comm. of Rensselear

Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995).

Furthermore, since this is a claim arising under ERISA, "...

ambiguities in an insurance policy are to be construed against

the insurer..." particularly when such ambiguities are being

interpreted to deny benefits. Masella v. Blue Cross & Blue Shield

of Conn., 936 F.2d 98, 107 (2d Cir. 1991). Otherwise, ERISA would

effectively afford less protection to employees and their

beneficiaries, and "would be at odds with the congressional

purposes [in enacting ERISA] of promoting the interests of

employees and beneficiaries and protecting contractually defined

benefits." Masella v. Blue Cross & Blue Shield of Conn., 936 F.2d 98, 107 (2d Cir. 1991).

Accordingly, Bankers' first contention that identifying a plan administrator impliedly reserves discretionary authority is without merit. "If the plan did not give the employer or administrator discretionary authority to construe uncertain terms, the court reviews the employee's claim as it would have any other contract claim..." Firestone  Tire & Rubber Co. v Bruch, 489 U.S. 101, 112 (1989). Moreover, the Second Circuit has determined that a policy stating, "trustees have final authority to determine all matters of eligibility for the payment of claims ... merely describes the trustees mandatory role in accepting or rejecting claims ..." Jordan v. Retirement Comm. of Rensselear Polytechnic Inst., 46 F.3d 1264, 1270 (2d Cir. 1995) (citations omitted). Naming a plan administrator merely fulfills Bankers' duty to manage the policy and handle the administration of claims.

The court cannot construe the phrase as a reservation of discretionary authority. See Masella v. Blue Cross & Blue Shield of Conn., 936 F.2d 98, 103 (2d Cir. 1991)("We cannot accept the conclusion that the discretion to establish the terms of a plan is the same as the discretion to interpret them later. Such reasoning would eliminate the Firestone distinction between plans that give an administrator or fiduciary discretionary authority

to interpret them and those that do not").[1] Bankers only identified the identity of the administrator, but it did not identify what authority the administrator retains. Therefore, such language alone is not sufficient to confer discretionary authority.

Bankers also points to language in the "Claim Appeals" section of the SPD that states that Bankers' decision on an appeal for a claim denial is "final and binding." This language, however, is easily distinguished from the language of other plans that courts have found to contain an implied reservation of discretionary authority. For example, the Second Circuit in Jordan v. Retirement Committee of Rensselear Polytechnic Institute, 46 F.3d 1264 (2d Cir. 1995), points the court to the type of language that unambiguously grants discretionary authority to the plan administrator: "The Retirement Committee shall pass upon all questions concerning the application or interpretation of the provisions of the plan." Id. at 1264. The Second Circuit in Pagan v. Nynex Pension Plan, 52 F.3d 438 (2d Cir. 1995), also found that the following language grants discretionary authority: "...the NYNEX Committee shall determine

_____

[1] Similarly, Bankers Life's contention that the clause: "Bankers Life & Casualty will evaluate your claim," also fails as support for a reservation of discretionary authority. Such language only describes Bankers Life's purely administrative and duty-bound function to process claims and generally manage their ERISA plan. As illustrated above, the Second Circuit has rejected the proposition that performing basic administrative tasks for the proper functioning of an ERISA plan constitutes an implicit grant of discretionary authority. Masella v. Blue Cross & Blue Shield of Conn., 936 F.2d 98 (2d Cir. 1991)

conclusively for all parties all questions arising in the
administration of the [Pension] plan and any such decision of
such Committee shall not be subject to further review..." Pagan
v. Nynex Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995).

The court in Jordan v. Retirement Committee of Rensselear
Polytechnic Institute, 46 F.3d 1264 (2d Cir. 1995) also cites a
number of cases involving language that is not sufficient to
confer discretionary authority: Scalamandre v. Oxford Health Ins.
Plans (N.Y.), Inc., 823 F. Supp. 1050, 1058-60 (E.D.N.Y. 1993)
(lack of "explicit discretion to construe the insurance contract"
requires that interpretation be reviewed de novo); Guisti v.
General Elec. Co., 733 F. Supp. 141, 146 (N.D.N.Y. 1990) ("Terms
such as 'discretion', 'deference', or 'power to interpret' are
not found in this clause").

Here, the provision in the SPD that refers to Bankers'
"final and binding" decision regarding the appeal of the denied
claim bears striking resemblance to the latter set of cases in
which courts have held a contract's language too ambiguous to
confer discretionary authority. The SPD is void of any hallmark
terms that might suggest that Bankers has the power to interpret
ambiguous plan language. The language of the plan at issue here
is simply neither explicit enough to reserve discretionary
authority to interpret disputed terms within the plan nor broad

13

enough to warrant sweeping discretionary authority to interpret any ambiguities arising during the administration of the plan.

Since the language contained in the SPD is neither explicit in its reservation of discretionary authority nor capable of being construed to imply that such authority is being reserved, the defendant has not raised any genuine issue of material fact as to whether they have the authority to interpret the term "accident." Accordingly, the court will review Bankers' decision to deny benefits de novo.

## II. De Novo Review of the Denial of Benefits

### A. The Critchlow Standard Governs

Bankers next argues that even under de novo review, the denial of benefits is still appropriate. Specifically, Bankers contends that even without discretionary authority, a judicial construction would still conclude that the decedent's death does not fall within the meaning of the term "accident."

The plaintiff responds that the Second Circuit has determined that under ERISA, hazardous activities resulting in death are deemed an "accident" as a matter of law only if death is "highly likely" to result from that activity. Here, the decedent has presented uncontested statistical evidence that indicates that death while driving intoxicated is not "highly likely" to occur.

14

In Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077,
1081 (1st Cir.), cert. denied, 498 U.S. 1013 (1990), the United
States Supreme Court developed a two-part test for determining
whether a particular death is "accidental." However, in Critchlow
v. First UNUM Life Ins. Co. of America, 378 F.3d 246 (2d Cir.
2004), the Second Circuit refined the Wickman analysis, and
illustrated how that standard is to be applied in the Second
Circuit:

> [1a)] the court first asks whether the insured
> subjectively lacked an expectation of death or injury;
> [1b)] if so, the court asks whether the suppositions
> that underlay the insured's expectation were
> reasonable, from the perspective of the insured,
> allowing the insured a great deal of latitude and
> taking into account the insured's characteristics and
> experiences; and [2)] if the subjective expectations
> of the insured cannot be ascertained, the court asks
> whether a reasonable person, with the background and
> characteristics similar to the insured, would have
> viewed the injury as substantially certain to occur as
> a result of his intentional conduct.

Critchlow v. First UNUM Life Ins. Co. of Amer., 378 F.3d 246, 258
(2d Cir. 2004)(quoting Padfield v. AIG Life Ins. Co., 290 F.3d
1121, 1127-28 (9th Cir), cert. denied, 537 U.S. 1067 (2002)).

Critchlow involved a young man who died during "autoerotic
asphyxia" ("AEA"). AEA refers to the practice of deliberately
inducing hypoxia (a state of diminished oxygen supply to the
brain) with the intention of producing sexual arousal. In
Critchlow, the decedent had tied ligatures to various parts of

his body, including his neck, to limit the flow of oxygen to his brain.

While the focus of the Critchlow court's analysis is on whether the decedent's injuries were self-inflicted, the court recognized that the same analysis applies by analogy to determining whether a death is accidental: "... having determined ... that Critchlow had a subjective expectation of survival and that his expectation was objectively reasonable because death was not likely to result, we must conclude that Critchlow's death was accidental ..." Critchlow v. First UNUM Life Ins. Co. of Amer., 378 F.3d 246, 264 (2d Cir. 2004).

Although the district court concluded on the basis of Critchlow's injuries that there was "no evidence in the record that would support a finding that decedent's death was not the result of an intentionally inflicted injury," the Second Circuit Court of Appeals disagreed. Critchlow v. First UNUM Life Ins. Co. of Amer., 378 F.3d 246, 260 (2d Cir. 2004). The Second Circuit concluded that Critchlow's death was unintended and that he subjectively expected to survive:

> The conclusions that Critchlow's death was
> subjectively unintended and that he subjectively
> expected to survive were amply supported by the police
> reports that Critchlow had escape measures built into
> his binds... attached to a set of counter weights
> which were meant to give him an 'out' if he started to
> lose consciousness.

Id. at 259. Moreover, just hours before his death, "Critchlow had shopped at a grocery store and left items on the kitchen counter indicating that he was planning supper." Critchlow v. First UNUM Life Ins. Co. of Amer., 378 F.3d 246, 260 (2d Cir. 2004). On that basis, the court concluded that, "Given this record, no rational fact finder could fail to conclude that Critchlow intended and expected to survive his February 27, 1999 episode of autoerotic asphyxiation." Id.

Given the standard that the Second Circuit laid out in Critchlow, there is ample evidence to conclude that the decedent also intended to survive his car ride home the evening of the accident.

The record indicates that the decedent was thriving at Johnson & Johnson. His employment record indicates that he received regular raises, periodic promotions, and consistent performance reviews that repeatedly describe his work habits as "exceeding expectations." Furthermore, the plaintiff indicated in a sworn affidavit that the decedent had plans to meet his sister the following day, had purchased an airline ticket for a vacation to Florida that November, and was planning a road trip to Ohio and St. Louis the following spring. The plaintiff also stated that the decedent was financially secure and had not given any indication to anyone that he was depressed. Moreover, the chief

17

medical examiner indicated that when the decedent was found in his car, his seatbelt was fastened across his lap.

The record illustrates that the decedent had a very stable short-term employment and financial situation as well as established long-term leisure plans. The court agrees with the plaintiff that Bankers' attempt to characterize the decedent's injuries as somehow self-inflicted is without merit. More than mere conclusory statements of the decedent's possible subjective intent are needed to raise a genuine issue of material fact. The record is void of any evidence, medical or otherwise, that the decedent intentionally inflicted any injury upon himself.

**B. Reasonableness of the Decedent's Expectations**

Once the court has ascertained Peter Glynn's subjective expectations, Critchlow requires that the court next determine whether those expectations were reasonable in light of the particular hazardous activity that the decedent engaged in. Critchlow strictly applies the Wickman standard requiring the "reasonableness" of the decedent's expectations of survival be evaluated by determining whether death or serious injury was "highly likely" or "substantially certain" to occur. Critchlow v. First UNUM Life Ins. Co. of America, 378 F.3d 246, 258 (2d Cir. 2004).

The Critchlow court concluded that "[b]ecause death by autoerotic asphyxiation is *statistically rare*, [the decedent's]

18

expectation of survival certainly was reasonable." Critchlow v.
First UNUM Life Ins. Co. of Amer., 378 F.3d 246, 258 (2d Cir.
2004)(quoting Padfield v. AIG Life Ins. Co., 290 F.3d 1121 (9th
Cir.) cert. denied, 537 U.S. 1067 (2002)(emphasis added)). The
court maintained that "[e]ven if we could not determine [the
decedent's] subjective expectations, the same conclusion would be
warranted under a purely objective analysis because death is not
the 'substantially certain' result of [AEA]..." Id. Moreover, the
Critchlow court concluded: "Given the uniform medical and
behavioral science evidence indicating that autoerotic activity
ordinarily has a nonfatal outcome, the likelihood of death from
autoerotic activity falls far short of what would be required to
negate coverage under an accidental death policy." Critchlow v.
First UNUM Life Ins. Co. of America, 378 F.3d 246, 258 (2d Cir.
2004).

Accordingly, the court may rely on statistical evidence to
determine whether death while driving intoxicated is
"substantially certain" to occur. The undisputed evidence on the
record indicates that a male driver, 35 years or older, driving
with a blood alcohol level above 0.15%, and traveling a distance
of 20 miles, has a 772 in 10 million chance of being involved in
a fatal car accident. While Bankers disputes the proposed
distance that Peter Glynn traveled on the night of the accident,
the court is convinced that no proposed alternative would augment

19

the reasonableness of relying on a 99.999228% chance of survival.[2]

The clandestine nature of the behavior associated with AEA understandably deprived the Critchlow court of access to any statistics regarding the chance of being killed while involved in an autoerotic act. However, the court appeared to be satisfied that "AEA practitioners did not intend to be killed" and that, "more often than not, such activities had a non-fatal outcome." Critchlow v. First UNUM Life Ins. Co. of Amer., 378 F.3d 246, 258 (2d Cir. 2004). While the court does not interpret that to mean that reasonableness is fixed at a "better than 50%" chance of survival, the court is confident that the statistical chance of being involved in a fatal accident while intoxicated, satisfies the Second Circuit Court of Appeals' requirement that death not be substantially certain to occur.

Accordingly, the court concludes that the decedent's subjective expectation was to return home safely and that expectation was reasonable under the circumstances. Accord West v. Aetna Life Ins. Co., 171 F. Supp.2d 856, 904 (N.D. Iowa 2001).

---

[2] Bankers asserts that a driver with a BAC of 0.15 % is 380 times more likely to die in a single vehicle crash than a non-drinker. The court acknowledges, and the plaintiff agrees, that driving with elevated blood alcohol content is irresponsible and dangerous. However, Bankers' reasoning is misplaced. The standard is not whether death or serious injury is "substantially more likely" when compared to some other activity. The relevant inquiry is whether "the deceased had a subjective expectation of survival, and... that such expectation was objectively reasonable, *which it is if death is not substantially likely to result from the insured's conduct*." Critchlow v. First UNUM Life Insurance Co., 378 F.3d 246, 263 (2d Cir. 2004)(emphasis added).

(concluding that common knowledge should actually tell a person "that he or she is far more likely to be arrested for driving while intoxicated than to die or be injured in an alcohol-related crash, and far more likely to arrive home than to be either arrested, injured, or killed.")

The evidence indicates that the decedent subjectively intended to return home safely and the statistics indicate that those expectations were well within reason. Accordingly, the court concludes that the decedent's death was an "accident" as a matter of law.

## III. Exhaustion of Administrative Remedies

Bankers next contends that the plaintiff failed to exhaust his administrative remedies as required under ERISA as a prerequisite to initiating this action. Specifically, Bankers maintains that the plaintiff failed to provide further documentation for the requested claim review. Furthermore, while Bankers contends that the plaintiff "sought a claim review from Bankers, there is no evidence on the record that he appealed Bankers Life's denial to Johnson & Johnson."

The plaintiff maintains that he exhausted all of his administrative remedies as set forth by Bankers. Specifically, the plaintiff contends that the language contained in the appeals section of the SPD is too vague to establish a binding appeals procedure, and therefore, no exhaustion was required. Moreover,

the plaintiff insists that since Bankers relied exclusively on its own interpretation of ERISA regulations and the report concerning the decedent's BAC, further administrative appeals or the production of additional documents would have been futile, and the plaintiff is thereby released from any exhaustion requirement.

The Second Circuit has held that "ERISA... requires that all benefit plans provide for carrier review... Thus, exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993). In addition:

> [the SPD and letter of denial] must notify the claimant of the appeals procedure under the particular plan. A written notice of denial must be comprehensible and provide the claimant with the information necessary to perfect his claim... A notice that fails to substantially comply with those requirements relieves the insured of his duty to exhaust his administrative remedies.

Burke v. Kodak Retirement Income Plan and Kodak Retirement Income Plan Comm., 336 F.3d 103 (2d Cir. 2003). See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. Moreover, "[w]here claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release

the claimant from the requirement." <u>Kennedy v. Empire Blue Cross</u>
<u>& Blue Shield</u>, 989 F.2d 588, 594 (2d Cir. 1993) (emphasis added).

There is ample evidence on the record to support the
conclusion that the plaintiff has made a clear and positive
showing that pursuing further administrative remedies would be
futile releasing him from that requirement.[3]

The Second Circuit has discussed two instances where the
plaintiffs failed to demonstrate futility. The plaintiffs in
<u>Kennedy v. Empire Blue Cross & Blue Shield</u>, 989 F.2d 588, 595 (2d
Cir. 1993), failed because "[t]here is no evidence in the record
that any ERISA plaintiff even *notified* Empire of any disputed
claim." (emphasis in original). Similarly, in <u>Davenport v. Harry</u>
<u>N. Abrams, Inc.</u>, 249 F.3d 130, 133 (2d Cir. 2001), the Second
Circuit did not excuse the exhaustion requirement because the
"correspondence did not amount to an unambiguous application for
benefits" and an official administrative denial of the
plaintiff's claims was never issued. The <u>Davenport</u> court
specifically cites to <u>Wilson v. Globe Specialty Products</u>, 117 F.

---

[3] In <u>Burke v. Kodak Retirement Income Plan and Kodak Retirement Income Plan</u>
<u>Committee</u>, 336 F.3d 103 (2d Cir. 2003), the Second Circuit concluded: "the
language [outlining the appeals procedure] is opaque... the use of the word
"should" is grossly uninformative... Kodak could easily have used unambiguous
mandatory language." Bankers' use of the words "you *can* apply for a claim
review...," "This request *should* be in writing..." and "if you wish to
appeal...you *may* do so within 60 calendar days..." does not comport with the
Second Circuit's requirement of explicit and mandatory language. <u>See</u> <u>Burke</u>,
336 F.3d at 109 (2d Cir. 2003). However, like the <u>Burke</u> court, it is not
necessary here to hold that "can," "should" or "usually" is never mandatory,
as the plaintiff has made a clear and positive showing that even if he were
bound by the vague appeals parameters, it would have been futile to pursue
them any further.

Supp. 2d 92, 99 (D. Mass. 2000) to support its determination that the plaintiff had not demonstrated futility: "[While the] plan administrator arguably [had] evidenced an intent to refuse [the plaintiff's] claim, [the] court required exhaustion because it would not predict how [the administrator] would have decided [the plaintiff's] claim on review." Wilson v. Globe Specialty Products, 117 F. Supp. 2d 92, 99 (D. Mass. 2000).

Bankers, however, gave the plaintiff an official letter of claim denial. The plaintiff proceeded to make a timely and official notice of appeal and maintained correspondence with the plan administrator for nearly three months after the initial refusal of benefits. Moreover, the correspondence of Bankers' special risk benefits analyst, one Robert Krol, indicated Bankers had a blanket policy of denying life insurance benefits for ERISA claims involving intoxicated drivers.

On April 30, 2002, the plaintiff's attorney submitted a letter to Bankers that officially requested an appeal in accordance with the letter of denial. In response, on May 9, 2002, Krol stated that an appeal "usually consists of additional information and/or reasons why a decision should be reconsidered" (emphasis added). Krol also referenced the original denial letter to reiterate Bankers' reliance on federal law and ERISA regulations. On May 15, 2002, the plaintiff's attorney then submitted a letter explaining that he could find no applicable

24

exclusions for driving while intoxicated within the policy, that
Bankers had therefore improperly denied benefits and requested
immediate payment.

On May 22, 2002, Krol responded by denying the significance
of the absence of a specific exclusionary clause by relying on
ERISA regulations and the federal court's "uniform" position on
cases involving driving while intoxicated. Krol reiterated
Bankers' policy of denying ERISA benefits for deaths involving
intoxicated drivers.

It is undisputed that the plaintiff formally requested an
appeal to Bankers and included the reasons why he felt Bankers
had improperly denied benefits. In the exchange of correspondence
it became clear that additional documentation would not have
affected, and indeed was not relevant to the issue under dispute
on appeal. It was Krol who repeatedly aligned Bankers' position
with ERISA regulations, highlighting that the center of the
dispute was on the proper application of federal law. Krol made
it unequivocally clear that Bankers' stance was entrenched in the
belief that ERISA permitted the universal denial of benefits for
deaths resulting from driving while intoxicated. Krol articulated
Bankers' blanket policy of denying benefits for accidents
occurring while the insured was intoxicated. See e.g. Harrow v.
Prudential Ins. Co. of America, 279 F.3d 244, 250 (3d Cir. 2002)
(factors weighed in the evaluation of insured's claim of futility

include *inter alia* "...(1) whether plaintiff diligently pursued administrative relief...(3) *existence of a fixed policy of denying benefits...* (5) testimony of plan administrators that any administrative appeal was futile")(emphasis added).

Accordingly, the plaintiff has made a clear and positive showing the futility of pursuing further administrative remedies. The plaintiff made a timely notice of appeals, fulfilled the only mandatory appeals requirement, and maintained correspondence with the plan administrator for a period of almost three months following the initial letter of denial. Accordingly, the plaintiff has demonstrated that any further pursuit of such remedies would have been futile.

Furthermore, the evidence does not support Bankers' argument that an appeal to Johnson & Johnson was a requirement of the administrative appeals process. While giving a brief overview of the review process, the SPD specifically refers the insured to the letter of denial to obtain the specific appeals procedure for a given insurance plan. Neither the denial letter nor any further correspondence between the parties indicated any need to perfect an appeal to Johnson & Johnson.

Moreover, while there is language in the SPD to suggest that an appeal to Johnson & Johnson was appropriate, there is also evidence in the record that suggests that Bankers never contemplated such an appeal. The district court of New Jersey in

26

Precopio v. Bankers Life & Casualty Co. et al., Civil No. 01-5721
(D.N.J. Aug. 10, 2004), passed upon this exact language in
Bankers' SPD in a very similar action less than a year ago.
There, Bankers conceded that an appeal to Johnson & Johnson was
not permitted and that such language in the SPD was the result of
a 1999 drafting error. Id. at 7, n.2. Accordingly, an appeal to
Johnson & Johnson was not required.

### Conclusion

For the foregoing reasons, the defendant's motion for
summary judgment (document no. 130) is DENIED, and the
plaintiff's motion (document no. 127) for summary judgment is
GRANTED.

It is so ordered this _22nd_ day of August 2005, at Hartford,
Connecticut.

_____
Alfred V. Covello
United States District Judge

27