UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHILIP GLYNN,<br>Plaintiff, | :<br>:<br>: |
| v. | :    Civil No. 3:02CV1802 (AVC) |
| BANKERS LIFE AND CASUALTY<br>COMPANY,<br>Defendant | :<br>:<br>:    OCTOBER 5, 2005 |

**AMENDED PETITION FOR**
**REASONABLE ATTORNEYS' FEES**

    The plaintiff originally filed his petition for attorneys' fees on September 6, 2005. On September 22, 2005, the petition was denied without prejudice and the plaintiff was given until October 20, 2005 to refile the petition. Specifically, the order to deny the petition indicated that the plaintiff should address five factors that the Second Circuit has directed district courts to consider in its evaluation of attorneys' fees and costs. The present petition, as amended, contains an analysis of the five factors at section III, *infra*.

I.    Background

    This action was brought pursuant to the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq., specifically under 29 U.S.C. § 1132(a) (1) (B). The

complaint contains a demand for payment of the insurance policy at issue in the amount of $420,000.00 as well as reasonable attorney's fees and costs. A cross-motion for summary judgment was filed by the plaintiff pursuant to Fed. R. Civ. P. 56, which also contained the claim for attorney's fees and costs. Thereafter, on August 23, 2005, the plaintiff's cross-motion for summary judgment was granted by the Court, Covello, J., and the defendant's cross-motion was denied. Judgment was entered on September 28, 2005. Accordingly, pursuant to the provisions of the Employment Retirement Security Act of 1974 including 29 U.S.C. §1132 (g)(1), the plaintiff requests an award of a reasonable attorney's fee.

II.     Fee Amount Requested

Plaintiff's counsel has undertaken this matter on a contingency fee basis which provides for a sliding fee schedule starting at 20% of the entire amount and concluding at 33 1/3 % of the entire amount if the matter was not settled within 180 days of the contract. Please see fee agreement attached as Exhibit A. More than 180 days have elapsed and the 33 1/3 % provision is presently operative. The fee on this matter, based on the contract, is $140,000.00. In addition, plaintiff's counsel has also maintained a record of hours actually spent in litigation in this matter. The hours do not include telephone conversations, mental processes, conversations with clients, witnesses, expert witnesses, investigatory time, or pre-litigation

time. The hours, which total 367.3, represent time spent in depositions or drafting motions and memorandums of law. Of that 367.3 hours, 73.5 hours represent time spent by the undersigned and the balance of 293.8 hours represent time spent by law clerks under the direction of the undersigned. A reasonable attorney's fee is suggested to be $300 per hour. Indeed, this may be even less than a reasonable amount. Please see Affidavit of Attorney Eldergill attached as Exhibit B. It is also suggested that a reasonable fee for the law clerks is $200 per hour. Based upon those figures, the total award of attorney's fee would be $80,810.00. Please see Affidavit and statement of billable hours attached as Exhibit C.

      Accordingly, the plaintiff requests that an attorney's fee be awarded that is based upon the contractual agreement between client and counsel. Second, in the alternative, the plaintiff requests a reasonable attorney's fee be awarded within the Court's discretion based upon the work performed as represented by hours spent on the file. Third, as another alternative, the plaintiff requests that an attorney's fee be awarded that is consistent with the time billed by defense counsel, Skadden, Arps, Slate, Meagher & Flom.

III.  The Five Factors

Pursuant to Miller v. United Welfare Fund, 72 F.3d1066, 1074 (2d Cir. 1995), district courts are directed to review five factors in considering an award of attorneys' fees. The factors and their application to this case are as follows:

a.  The Degree of the Offending Party's Culpability or Bad Faith

The defendant's culpability and bad faith are evident on at least three bases. First, in denying this claim, and other similar claims, the defendant misrepresented the law in its letters to claimants in an obvious attempt to dissuade claimants from pursuing their legal rights. In this case, this misrepresentation was first made in the defendant's denial letter of March 4, 2002. ("Federal courts, in applying federal common law to claims for accidental death under ERISA plans, have uniformly held that death resulting from driving while intoxicated is not accidental.") See Ruling on Cross Motions for Summary Judgment at page 5.

The misrepresentation was then repeated and amplified to include federal regulations in the defendant's letter dated May 22, 2002. ("Our letter of Mar 4, 2002 had explained ERISA regulations, and how federal courts have ruled on cases involving driving while intoxicated.")

See Id. at 7. The defendant's designee and author of the two letters, Robert Krol, when deposed, admitted that he knew of no ERISA law or regulations supporting a denial of the claim when he wrote the letter or at any time thereafter. Exhibit D (exhibit K to plaintiff's motion for summary judgment (Krol deposition) at pages 104-105). At the time the letter was written, it was not true that federal courts had, as Mr. Krol wrote, "uniformly held that death resulting from driving while intoxicated is not accidental." See, e.g., West v. Aetna Life Ins. Co., F. Supp.2d 856 (N.D.Iowa 2001).

Second, the defendant has exhibited bad faith in that it has attempted to utilize ERISA law as a sword to deprive employees of federally protected rights. This attempt would undermine the Congressional purpose to "protect . . . the interests of participants in employee benefits plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions and ready access to the Federal courts." 29 U.S.C. § 1001(b). In a somewhat surprising admission, the defendant acknowledged that it routinely pays claims, pursuant to the same insurance policy at issue here, involving intoxicated drivers, *when ERISA is not involved.* Exhibit D (exhibit K to plaintiff's motion for summary judgment (Krol deposition) at page 23). Conversely, when ERISA is involved, the defendant denies such

claims because it believes that it can use ERISA, albeit misrepresented, to devalue employee benefit plans. This conduct should not be permitted to continue.

Third, the defendant has exhibited bad faith in that it made no meaningful investigation before denying Philip Glynn's claim. In fact, no information uncovered by the investigation was taken into consideration by Bankers except for the BAC. See exhibit D (exhibit K to plaintiff's motion for summary judgment (Krol deposition) at page 32). This was true even though the investigation failed to yield any evidence of alcohol ingestion on the day of the crash. See exhibit D (exhibit K to plaintiff's motion for summary judgment (Krol deposition) at pages 38-40). As noted by this Court in Section III of its ruling, the defendant had a blanket policy for ERISA claims of denying them solely on the basis of a blood alcohol content. Ruling on Cross Motions for Summary Judgment at page 24.

    b.    <u>The Ability of the Offending Party to Satisfy an Award of Attorney's Fees</u>

In this case, the offending party is a large insurance company and has the ability to pay an award of attorney's fees. This is manifest in at least two ways. First, the defendant has retained two prominent law firms to defend this case: Skadden, Arps, Slate, Meagher & Flom, LLP and Whitman Breed Abbot & Morgan. It is reasonable to assume that the defendant has agreed to pay these firms a significant amount for the voluminous legal services provided in

this matter. The amount of legal work on this file is reflected partially in the court's docket sheet.

Second, according to its website, www.bankerslife.com/Web/AboutUs.aspx, the defendant is one of the largest and most respected insurance companies in the country. It is a subsidiary of Conseco, Inc. which has annual revenues in excess of four billion dollars.

The financial ability of the company to pay attorneys' fees is also manifest in its filings with Connecticut State Insurance Commissioner which reflect assets of nearly nine billion dollars. Exhibit E (2005 quarterly statement); Exhibit F (2004 annual report)

Accordingly, the offending party's ability to pay is substantial.

c.  Whether an Award of Fees Would Deter Other Persons From Acting Similarly Under Like Circumstances

An award of fees would provide a deterrence that is otherwise unavailable. Because the damages in this type of case are limited to benefits owed under the contract, if there is no award of attorney's fees, there is no incentive for plan administrators/insurers to pay claims. At worst, a defendant in the place of Bankers Life and Casualty only has to pay what it would have had to pay originally. In the meanwhile the defendant has the benefit of interest and the use of the money. As Mr. Krol admitted in his deposition, the defendant routinely denies these claims when ERISA is involved. This business practice allows the defendant to reap a windfall

either because the claimant gives up or because the defendant has the use of the funds during litigation.

Moroever, in this case, the plaintiff had originally alleged violations of CUTPA and CUIPA. Subsequenlty, those counts were dismissed as not being available in an action brought pursuant to 29 U.S.C. § 1132(a) (1) (B). If they had been available, there would have been the possibility of multiplying the damages and thereby deterring the conduct of this defendant and others similarly situated. At present, however, the only deterrent that is available here is an award of attorney's fees.

Consequently, an award of attorney's fees is the sole mechanism that the Court has to provide a disincentive for the wrongful denial of ERISA claims for employee benefit.

d.  The Relative Merits of the Parties' Positions

There is little to suggest that the defendant's refusal to pay an employee benefit in this case is meritorious. First, the defendant, as plan administrator, took upon itself the task of deciding whether to pay, out of its own assets, the claim made by Philip Glynn. This, in itself, suggests a conflict of interest.

Second, there was simply no valid reason to deny Mr. Glynn's claim. As discussed at length in the plaintiff's motion for summary judgment, the claim for benefits was made on a

policy that: (1) contained no exclusion for the conduct involved; (2) routinely considered similar claims involving intoxicated drivers as accidents and paid those claims as long as the claim was not governed by ERISA; and (3) contained no definition of the word "accident" although the defendant's corporate designee, Robert Krol, defined an accident as something that is "highly likely" to occur.  See exhibit D (exhibit K to plaintiff's motion for summary judgment at pages 41-43).  It was undisputed in the cross motions for summary judgment that Peter Glynn's death was not "highly likely." In addition, as admitted by Mr. Krol, there was no claim that Peter Glynn's death was intentional.  See exhibit D (exhibit K to plaintiff's motion for summary judgment at page 38).  Likewise, despite the defendant's limited investigation, there was no evidence of alcohol ingestion.

Moreover, as discussed, *supra*, the defendant's denial of the claim asserted a misrepresentation of ERISA law seemingly designed to dissuade claimants from pursuing federally secured rights.

Accordingly, the plaintiff's claim was made in good faith in and rested upon the plain language of the insurance policy.  On the other hand, the defendant's denial of the claim rested on a formerly successful use of misstated ERISA law as a sword against employees and beneficiaries.

e.  **Whether the Action Conferred a Common Benefit on a Group of Pension Plan Participants**

This action was brought by a single beneficiary. Consequently, the result, itself, does not confer a benefit on a group of participants. However, the effect of this decision, coupled with an award of attorney's fees, will likely benefit a group of participants by altering the conduct of the defendant in treating similar claims for employee benefits.

Accordingly, for all of the above reasons, the plaintiff respectfully requests an award of attorney's fees in the amount of $140,000 or some other amount as the Court sees fit.

PLAINTIFF,

By_____
Everett H. Madin, Jr.
Federal Bar No.: CT 12297
RISCASSI & DAVIS, P.C.
131 Oak Street
Hartford, CT 06106
Ph: 860-522-1196

This is to certify that a copy of the foregoing has been mailed to all counsel of record on the above date:

Andrew Muscato, Esquire
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036-6522

John T. Shaban, Esq.
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830

_____
Everett H. Madin, Jr.