## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PHILIP GLYNN,                                  :     CIVIL NO. 3-02CV1802 (AVC)
                                               :
    Plaintiff,                                 :
                                               :
v.                                             :
                                               :
BANKERS LIFE AND CASUALTY CO.,                 :
                                               :
    Defendant.                                 :     October 28, 2005

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST
## FOR ATTORNEYS' FEES

Pursuant to District of Connecticut Local Civil Rule 11(a) and/or 54(b) of the
United States District Court for the District of Connecticut, Defendant Bankers Life and
Casualty Company ("Bankers") respectfully submits the within opposition to Plaintiff's
petition for attorneys' fees. Bankers respectfully requests that this Court deny the
requested attorneys fees as not permitted under D. Conn. L. Civ. R. 11(a) and 54(b) and
28 U.S.C. § 1132(g)(1).

### FACTS AND PROCEDURAL HISTORY

Briefly, this case involves a beneficiary's claim to benefits under a group
accidental life policy, issued as part of a Johnson & Johnson ("J&J") employee welfare
plan, where the J&J employee Peter Glynn (the "Decedent') died on June 8, 2001, in a
single-vehicle crash while driving intoxicated with a 0.17% blood alcohol concentration.
Bankers denied Plaintiff's request for accidental death benefits on March 2, 2002.

Plaintiff's claim is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

By Ruling on Cross Motions for Summary Judgment filed on August 23, 2005, this Court granted Plaintiff's motion for summary judgment and denied Bankers' motion for summary judgment. Judgment for summary judgment in favor of Plaintiff was filed on September 28, 2005.

Plaintiff requests the sum of $140,000.00 in attorneys' fees under three theories: (1) a written contingent fee agreement between Plaintiff and his counsel; (2) the time counsel claims to have spent on the file; and (3) defense counsel's fee. See Pb at 3.[1] Under any theory, the amount requested is excessive, unreasonable, unsupported, and unwarranted under applicable law.

## ARGUMENT

### PLAINTIFF'S ATTORNEYS' FEES ARE NOT AUTHORIZED BY LOCAL CIVIL RULES AND 28 U.S.C. § 1132(g)(1).

The decision of whether to award attorney's fees under ERISA, Section 1132(g) lies within the discretion of the district court. 29 U.S.C.§ 1132(g)(1); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995); *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). The district court considers the following factors:

1.    the degree of the offending party's culpability or bad faith;

2.    the ability of the offending party to satisfy an award;

---

[1]    The term "Pb" refers to Plaintiff's petition for attorneys' fees.

3.   the deterrent effect on others from an award against the offending

party;

4.   the relative merits of the parties' positions; and

5.   the common benefit conferred on the group of pension plan

participants.

*Miller*, 72 F.3d at 1074; *Chambless*, 815 F.2d at 871. The factors are flexible guidelines
– not every factor must be considered and no one factor is determinative. *Gray v. New
England Telephone and Telegraph Co.*, 792 F.2d 251, 257-258 (1st Cir. 1986).

## A.   **Plaintiff Is Not Entitled to Attorney's Fees Under *Miller*.**

As set forth below, an analysis of the *Miller* factors favors Bankers: Bankers did

not act in bad faith because the law was unsettled; an award would not deter others

because Bankers' denial of benefits would be upheld in at least two Courts of Appeals

and many district courts; the relative merits of the parties' positions favors Bankers

because of the recent change in case law; and this action does not confer a common right

on a group of plan participants because Plaintiff is the sole beneficiary of the judgment.

*See Miller*, 72 F.3d at 1074.

### 1.   There was no"culpability or bad faith" on Bankers' part.

For "culpability or bad faith" to attach, the law at the time of the alleged bad faith

must be settled. *N.Y. Teamsters Con. Pension Fund v. Boening Bros.*, 92 F.3d 127, 130

(2d Cir. 1996)(affirming lower court's denial of attorneys' fees under ERISA because

lower court noted that "there is no evidence that [defendants acted] in bad faith," and that

"[t]he law in this area was unsettled."); *Critchlow v. First UNUM Life Insurance
Company of America*, 377 F. Supp. 2d 337, 344 (W.D.N.Y. 2005). To prevail, a plaintiff

3

must show much more than the plan administrator's denial of benefits – this factor requires "conduct normally involving something more than simple negligence . . . [It] implies that the act or conduct spoken of is reprehensible or wrong." *Critchlow*, 377 F. Supp. 2d at 345 (quoting *Perreca v. Gluck*, No. 99 Civ. 1779, 2004 WL 2793270, at *3 (S.D.N.Y. Dec. 6, 2004); and *McPherson v. Employees' Pension Plan of American Re-Insurance Co.*, 33 F. 3d 253, 256-57 (3d Cir. 1994)). A party is not culpable merely because it took a position that did not prevail in litigation. *Id.* An insurer's "wrong position on coverage" is not so "egregiously wrong as to outweigh the other factors under *Chambless.*" *Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375, 383 (2d Cir. 2002).

Here, the facts do not justify an award of attorney's fees because Bankers did not exhibit bad faith or culpable conduct. Bankers denied Plaintiffs' claim on March 2, 2002. At that time, the generally-accepted standard for determining whether a death was accidental under ERISA was the decision of the Court of Appeals for the First Circuit in *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1081 (1st Cir.), *cert. denied*, 498 U.S. 1013 (1990). At the time of Bankers' decision, only two other Courts of Appeals had addressed the specific issue in this case, *i.e.*, whether a death while driving intoxicated is an "accident" in the context of an ERISA-governed accidental policy. Upholding summary judgment below, both Courts of Appeals held that an intoxicated driving death is not an "accident" under an ERISA governed accidental life policy. *See, Baker v. Provident Life & Accident Ins. Co.*, 171 F.3d 939, 943 (4th Cir. 1999)(holding that "a reasonable person in Baker's position would have known that death or serious injury was a reasonably foreseeable result of driving while intoxicated"); and *Cozzie v.*

4

*Metropolitan Life Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998)(holding that death or serious injury is a reasonably foreseeable consequence of driving while intoxicated).

Between the announcement of the *Wickman* test and Bankers' decision, a solid majority of federal district courts have found intoxicated driving deaths to be non-accidental in the context of ERISA-governed accidental life policies. *See, e.g. Fowler v. Metropolitan Life Ins. Co.*, 938 F. Supp. 476, 480 (W.D. Tenn. 1996); *Miller v. Auto-Alliance Int'l, Inc.*, 953 F. Supp. 172, 176 (E.D. Mich. 1997); *Nelson v. Sun Life Assur. Co. of Canada*, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997); *Schultz v. Metropolitan Life Ins. Co.*, 994 F. Supp. 1419, 1421 (M.D. Fla. 1997); *Walker v. Metropolitan Life Ins. Co.*, 24 F. Supp. 2d 775 (E.D. Mich. 1997); *Cates v. Metropolitan Life Ins. Co.*, 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996); *aff'd* 149 F.3d 1182 (6th Cir. 1998); *Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486 (D.R.I. 2000); *Sorrels v. Sun Life Assur. Co. of Canada*, 85 F. Supp. 2d 1221, 1234 (S.D. Ala. 2000). At the time Bankers denied benefits to Plaintiff, only two district courts had held otherwise. *See, Metropolitan Life Ins. Co. v. Potter*, 992 F. Supp. 717 (D.N.J. 1998); *West v. Aetna Life Ins. Co.*, 171 F. Supp. 2d 856 (N.D. Iowa 2001).

Furthermore, in March 2002, the Second Circuit and its included district courts had not issued a reported decision on the issue presented in this case. Bankers had no authoritative case law to follow in this district and circuit.

Thus, at the time Bankers denied benefits to Plaintiff, the law was more favorable to Bankers than Plaintiff. In fact, the Second Circuit's initial decision in *Critchlow v. First UNUM Life Ins. Co. of America*, 340 F.3d 130, 133 (2d Cir. 2003) held that under ERISA, the insured's death from autoerotic asphyxiation was excluded from coverage

5

under an accidental life policy as intentionally self-inflicted. That decision supported

Bankers' position in this case. It was not until the Second Circuit vacated that decision

and issued another on August 9, 2004 that the law in this Circuit may have tilted towards

Plaintiff. *See Critchlow v. First UNUM Life Ins. Co. of America*, 378 F.3d. (2d Cir.

2004). Thus, based upon the state of the law at the time of its decision, Bankers' denial of

benefits cannot be seen as culpable, bad faith, or reprehensible conduct.

Furthermore, Bankers' position was consistent throughout and not based upon

"malice or a guilty purpose." *McPherson*, 33 F.3d at 257; *see also Maiuro v. Federal

Express Corp.*, 843 F. Supp. 935, 944 (D.N.J. 1994)(declining to award attorneys' fees

because the defendant had not acted in bad faith, notwithstanding that the Court's

decision benefited pension plan participants). At most, Bankers took a "wrong position

on coverage," and that error was not so "egregiously wrong" as to be labeled

reprehensible conduct. *Lauder*, 284 F.3d at 383.

This first *Miller* factor favors Bankers.

2.    Whether Bankers Can Pay an Attorneys' Fees Award Is Not Dispositive.

Whether Bankers would be able to satisfy an award of attorneys' fees is not

dispositive here. *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199 (2d Cir. 2003). There, the

Second Circuit upheld the lower court's denial of an award of attorneys' fees in an ERISA

action. *Id.* at 210-211. Both lower and appeal courts found that (1) the defendant "did

not act in bad faith"; (2) "the common benefit was minimal"; (3) "the case was close on

the merits"; and (4) there was no reason to infer that an award of fees would have any

greater deterrent effect. *Id.* at 211. In fact, the only factor that favored an award of

attorney's fees was AlliedSignal's ability to pay an award. *Id.* at 210. On this basis, the

Second Circuit upheld the lower court's decision not to award attorneys' fees to the plaintiff. *Id.*

That same analysis applies to this case. Bankers should not be ordered to pay an award of attorneys' fees where it has not acted in bad faith. This second *Miller* factor favors Bankers.

        3.     An Award Against Bankers Would Not Deter Others.

As set forth herein, there is a split in the federal courts on the issue of whether a death while driving intoxicated is accidental with two Courts of Appeals and many district courts weighing in on Bankers' side. In fact, had the Decedent died while driving intoxicated in, for example, Maryland or Michigan, Plaintiff would not have prevailed. Only three district courts, Connecticut in this case, New Jersey, and Iowa, and no Court of Appeals, have held that dying while driving intoxicated is an accident.

Therefore an award of attorneys' fees in this case would not deter other ERISA insurers from denying accidental death benefits, especially if the decedent was driving intoxicated in the states of Maryland, North Carolina, South Carolina, Virginia, and West Virginia (all located in the Fourth Circuit and governed by *Baker v. Provident Life & Accident Ins. Co.*, 171 F.3d 939, 943 (4th Cir. 1999)), Illinois, Indiana, and Wisconsin (all located in the Seventh Circuit and governed by *Cozzie v. Metropolitan Life Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998)), as well as Florida ( *see Schultz v. Metropolitan Life Ins. Co.*, 994 F. Supp. 1419, 1421 (M.D. Fla. 1997)), and Rhode Island (*see Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486 (D.R.I. 2000)) because a denial on that basis in those district courts would be upheld under ERISA.

Furthermore, because the outcome of this case was largely dependent on the language of the specific J&J Plan and Policy, "there is little reason to believe that an award of attorneys' fees would serve a deterrent effect on other offending parties." *Smith v. Estate of Smith and Dupont Pension and Retirement Plan*, 248 F. Supp. 2d 348, 360 (D.N.J. 2003).

Thus, this third *Miller* factor favors Bankers.

4.    The Relative Merits of the Parties' Positions Favors Bankers.

As to the relative merits of the parties' positions in this ERISA dispute, "the arguments raised by [both] counsel were meritorious and their interpretations of [the Plan] were such that reasonable minds could differ." *Trucking Employees of North Jersey Welfare Fund, Inc. v. Brockway Fast Motor Freight Co.*, 130 F.R.D. 314, 325 (D.N.J. 1989)(applying five factors identical to *Miller's* in denying attorneys' fees). Until the Second Circuit vacated its initial decision in *Critchlow*, the then existing law favored Bankers. Given the case law supporting Bankers' position, "there was not a gross disparity between the merits of plaintiff's position and that of [Bankers]." *Critchlow*, 377 F. Supp. 2d at 346. Had the decedent died while driving intoxicated in many other federal districts, Bankers would have prevailed. Given the randomness of geography, this matter is a close one. Had this case been decided before the 2004 vacation of the initial *Critchlow* decision, Bankers may have been the prevailing party. The mere fact that the Court did not sustain Bankers' position is not reason enough to favor an award of attorneys' fees. *McPherson*, 33 F.3d at 258.

Thus, this fourth *Miller* factor favors Bankers.

5.     This Action Did Not Confer a Common Right on Other Plan Participants.

As Plaintiff correctly acknowledges, as a sole plaintiff, his action "does not confer a benefit on a group of participants." Pb at 10.

Furthermore, "given the apparent and fortunate rarity of fatalities from the practice of " driving while intoxicated that buttressed this Court's grant of summary judgment to Plaintiff, "presumably few people stand to benefit from [this Court's] decision." *See, Critchlow*, 377 F. Supp. 2d at 346 (finding that the plaintiff was not entitled to an award of attorneys' fees in the district court proceedings).

Thus, this fifth *Miller* factor favors Bankers.

**B.    The Amount of the Attorneys' Fees Requested Is Excessive.**

If this Court determines that Plaintiff is entitled to fees, then the fees for which he petitions are excessive. Plaintiff has failed to establish the reasonableness of the rates requested, the necessity of the work performed, the amount of hours claimed to be billable, and the identity of the persons who actually performed the work. Despite Plaintiff's request, under ERISA, awards of attorneys' fees are not governed by a written contingent fee agreement with counsel, by the number of hours claimed to be billable, or by the adversary's legal fees, but by the lodestar method. *See* Pb at 3.

"The lodestar method is ordinarily the starting point in determining the amount of fees that may be awarded" under § 1132(g)(1). *Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F. 3d 477, 487 (2d Cir. 2002). This method "entails two findings: (1) the reasonable hourly rate; and (2) the number of hours reasonably expended." *Id.*, (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The time component reflects the hours worked by the lawyer (supported by time records) that are neither excessive nor

9

duplicative, and that do not reflect work done only in connection with unrelated claims on which the party did not succeed." *Id.* (citing *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). The lodestar is based on prevailing market rates for comparable attorneys with comparable skill and standing in the pertinent legal community. *Kirsch v. Fleet Street Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998). "[P]laintiff[] bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Trustees of the Elevator Division Retirement Benefit Plan v. Premier Elevator*, No. 03 Civ. 2703, 2003 WL 2212 7912 at *2 (S.D.N.Y. Sept. 16, 2003).

In other words, courts require attorneys to justify the reasonableness of the hours worked and the requested rates. As for the number of hours worked, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch*, 148 F. 3d at 173 (citing *Hensley*, 461 U.S. at 437 n.12). Courts exclude hours that are "excessive, redundant, or otherwise unnecessary" (*Hensley*, 461 U.S. at 434) and may deduct a reasonable percentage of the number of hours claimed "as a practical means of trimming fat from a fee application." *Kirsch*, 148 F.3d at 173 (citing *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983). Time entries such as "work on motion" are too vague to sufficiently document the hours claimed." *Kirsch*, 148 F.3d at 173.

As a rule, fees may not be recovered for distinct unsuccessful claims. *See Hensley*, 461 U.S. at 434-35. To the extent that a fee applicant's actions were "vexatious" and "wasteful," he should be "obviously penalized by not recovering any attorneys' fees for those efforts." *Chambless*, 815 F.2d at 872.

10

Here, neither the requested hourly rate nor the hours claimed to be billable are reasonable. Plaintiff failed to submit the requisite "contemporaneously created time records" and instead submitted an after-the-fact written estimate of hours that he admits is only "reasonably accur[ate]." *Compare*, *Kirsch*, 148 F.3d at 173 ("applications for fee awards should generally be documented by contemporaneously created time records") with Affidavit of Everett H. Madin, Jr. ("Madin Aff."), ¶ 9 ("the hours of the attorney and law clerks working for the attorney have been tracked with reasonable accuracy"). Moreover, Plaintiff's counsel's time entries are "too vague to sufficiently document the hours billed." *Compare* "Additional research (7/7/03-7/11/03) - 12 hours" Madin Aff., Billable Hours, with *Kirsch*, 148 F.3d at 173.

Plaintiff's written estimate is riddled with errors. Plaintiff's record of "billable hours" fails to identify the persons who performed each task, *i.e.*, whether it was an attorney or "the law clerks working for the attorney." *See* Madin Aff., ¶ 9. Given the $100 per hour difference between the requested attorney billable rate and that of the law clerks, Plaintiff's failure to identify the billing party could lead to a windfall. Moreover, several billed tasks fail to identify the date upon which the work was performed. And, on 12/9/04, counsel billed 30 hours in a 24 hour period of time.

Furthermore, much of the time billed was "vexatious" and "wasteful." *Chambers*, 815 F.2d at 872. As to "wasteful" time claimed to be billable, Plaintiff filed his initial Complaint in Connecticut Superior Court in or about September 2002, alleging only state claims. In October 2002, Bankers removed the matter to this Court on the ground that the action was governed by ERISA. Plaintiff waited until April 2003 to amend his complaint but only asserted additional pendent state claims. He failed time and time again to assert

11

an ERISA claim, notwithstanding that Plaintiff moved twice more to amend his

Complaint – on July 18, 2003 and November 17, 2003. He ultimately asserted an ERISA

claim. By Order dated December 9, 2003, this Court granted Bankers' motion to dismiss

all state claims, leaving as Plaintiff's sole claim the ERISA claim. On January 14, 2004,

this Court permitted Plaintiff to further amend Paragraph 7 of the ERISA claim. It was

not until February 2004, that issue was joined when Bankers answered the Complaint as

amended. For amending his complaint and defending against Bankers' motions to

dismiss the state claim, Plaintiff claims 78.5 "billable" hours in an unsuccessful effort to

establish distinct state claims:

| | |
|---|---|
| 4/10/03 | 3 hours |
| 7/7/03 | 3 |
| 7/7/03 to 7/11/03 | 12 |
| 7/10/03 | .5 |
| 7/18/03 | 1 |
| undated | 3.5 |
| 8/4/03 | 4 |
| 8/18/03 | 6 |
| 10/29/03 | 6 |
| 12/15/03 | 5 |
| 1/26/04 | 3 |

Moreover, Plaintiff again failed to disclose to this Court the identity of the

persons who actually performed this work. All of the "billable" time was unnecessary –

all Plaintiff had to do was plead a proper ERISA claim – instead, he filed repeated

motions to amend his pleading. In the end, Plaintiffs' efforts were unsuccessful because

his state court claims were dismissed by this Court on December 9, 2003. Under

*Hensley*, Plaintiff cannot recover these fees. *See Hensley*, 461 U.S. at 434-35. Bankers

should not pay for Plaintiff's wasteful litigation strategy.

12

Furthermore, Plaintiff filed vexatious motions: on July 7, 2003, he filed an unsuccessful motion to compel discovery; on February 17, 2004, he filed another motion to compel discovery that he later withdrew on March 17, 2004; on September 21, 2004 he unsuccessfully moved to strike portions of Bankers initial summary judgment motion; on April 7, 2005, he unsuccessfully moved to strike a portion of Bankers' expert's declaration, and on June 24, 2005, he unsuccessfully moved to strike Bankers' amended initial disclosures. For these unsuccessful motions, Plaintiff claims 23.5 "billable" hours:

| | |
|---|---|
| 7/7/03 | 5 hours |
| 2/17/04 | 4 |
| 9/21/04 | 6 |
| 10/18/04 | 6 |
| undated | 2.5 |

Again, Plaintiff failed to disclose to the Court the identity of the persons who actually performed this work. Bankers should not pay counsel for his vexatious and unsuccessful motion practice.

Apart from the unreasonable and excessive written estimate of hours claimed to be billable, Plaintiff's hourly rates for attorneys and legal assistants have no basis in fact and are unreasonable. There is simply no support for counsel's bald assertion that "$300 per hour is a reasonable fee for [counsel] and that $200 per hour is reasonable for a law clerk." Madin Aff., ¶ 12. Counsel has no established billing rate to support his conjecture about his own billable time and no established billing rate for work performed by his unidentified law clerks. He offers no information about the law clerks and no basis whatsoever for his proposed $200 per hour billing rate for law clerks, a rate in excess of the rates of many first-year attorneys.

13

Plaintiff's proffer of the Affidavit of Kathleen Eldergill ("Eldergill Aff.") is similarly without merit. She "litigat[es] civil cases, including employment cases." Eldergill Aff., ¶ 4. She does not litigate ERISA cases. *See id.* And her only knowledge about Plaintiff's counsel's practice is "based on my discussions with him." *Id.*, ¶ 6. In fact, Eldergill establishes that Plaintiff's counsel is a personal injury and medical malpractice attorney who does not practice in the ERISA area. Eldergill admits that she has referred clients to Riscassi and Davis who "seek[] representation in connection with claims of personal injury and medical malpractice." *Id.*, ¶ 7. Eldergill has no basis to speculate that a rate of $300 per hour "is more than reasonable." *Id.*, ¶ 8. And Eldergill is remarkably silent on the billing rates of law clerks, avoiding the issue altogether. At the end of the day, the only support for a $200 billing rate for counsel's unidentified law clerks is counsel's representation "that $200 per hour is reasonable for a law clerk." Madin Aff., ¶ 12.

In addition, this Court should deny Plaintiff's demand for fee parity with Bankers' counsel. As the Second Circuit stated in *Chambless v. Masters, Mates & Pilots Pens.*, 885 F.2d 1053 (2d Cir. 1989), "the prevailing market rate test does not mandate equal fees for opposing counsel." *Id.* at 1059. Furthermore, the amount of fees Bankers paid its attorneys is not helpful in setting a reasonable rate for Plaintiff's attorneys because "[t]he two parties had entirely different stakes in the litigation." *Id.* "[T]he difference in the precedential value of the case to their respective clients could vary markedly and could well justify a divergence between the fees they charged. " *Id.* For example, this may well be the only time that this Plaintiff litigates the issue of death from driving while intoxicated. But Bankers markets insurance products in many states, and may well be

14

required to re-litigate this issue in other cases. Therefore, Bankers' attorneys' fees have

no relevance to Plaintiff's counsel fees.

## CONCLUSION

For the foregoing reasons, Bankers respectfully requests that this Court deny

Plaintiff's request for attorney's fees.

THE DEFENDANT
BANKERS LIFE AND CASUALTY
COMPANY

BY

John T. Shaban ct14075
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800 (telephone)
203-869-1951 (facsimile)
jshaban@wbamct.com
        and
Andrew Muscato ct15073
Skadden, Arps, Slate, Meagher &
Flom LLP
Four Times Square
New York, New York 10036
212-735-3000 (telephone)
212-735-2000 (facsimile)

## CERTIFICATION OF SERVICE

This is to certify that a true and correct copy of the Defendant's Opposition to

Plaintiff's Request for Attorneys' Fees was mailed via First Class Mail, postage pre-paid

on this the 28th day of October, 2005 to the following counsel of record:

> Everett H. Madin, Jr.
> Riscassi and Davis, P.C.
> 131 Oak Street
> Hartford, CT 06106
> *Counsel for Plaintiff Philip Glynn*

John T. Shaban

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2793270 (S.D.N.Y.), 34 Employee Benefits Cas. 2856
**(Cite as: 2004 WL 2793270 (S.D.N.Y.))**

# H

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
Alfred PERRECA, et al., Plaintiffs,
v.
Michael GLUCK, et al., Defendants.
**No. 99 Civ. 1779(RLE).**

Dec. 6, 2004.

OPINION AND ORDER

ELLIS, Magistrate J.

## I. INTRODUCTION

*1 Before this Court is a motion by plaintiffs Alfred and Marie Perreca seeking attorney's fees and costs pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C.A. § 1132. For the following reasons, the motion is DENIED.

## II. BACKGROUND

The facts of this case have been set forth in *Perreca v. Gluck,* 295 F.3d 215, 218-20 (2d Cir.2002). Following that decision, a jury trial was held on February 24-28, 2003. The first question on the Special Verdict Form asked whether Alfred Perreca had been promoted to the job of night manager before January 1, 1965. The second question asked whether he should be credited with service back to his original start date of 1959. The jury answered "Yes" to the first question and "No" to the second. Judgment was thereupon entered for defendant. Plaintiffs moved to amend the judgment pursuant to Federal Rule of Civil Procedure 59, asking this Court to order that Perreca recover benefits from January 1, 1965, because the jury had found that he had been promoted before that date. The Court granted the motion, and this application followed.

## III. DISCUSSION
### A. General Standard For Fees Under ERISA

ERISA provides that "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g); *see also Jones v. Unum Life Ins. Co. of America,* 223 F.3d 130, 138 (2d Cir.2000); *Miller v. United Welfare Fund,* 72 F.3d 1066, 1074 (2d Cir.1995); *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987) ("Chambless"). Although the Court has discretion, "this circuit strongly favors awarding reasonable attorney's fees and costs to a prevailing plaintiff absent a 'particular justification' or 'special circumstances [which] would make it unjust." ' *Zervos v. Verizon New York, Inc.,* 2002 WL 31553484, at *2 (S.D.N.Y. Nov. 13, 2002) (citations omitted).

Defendants assert that special circumstances exist in this case which warrant denial of the application for fees and costs. They argue that the jury's negative response on the credited service date, as well as the narrow issue presented to it, constitute such circumstances. *See* Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Attorney's Fees ("Def.Mem.") at 8. They maintain that Perreca raised numerous claims that were not considered by the jury, and the jury found against him on the central issue presented for its consideration, that is, whether he was entitled to pension benefits from his 1959 hire date. This fact alone does not preclude recovery. "Litigants in good faith may raise alternative legal grounds for a desired outcome" without being penalized in attorney's fees and costs. *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). In addition, the jury verdict was returned with a finding that a promotion had occurred earlier than defendants had claimed, and Perreca received some relief with the amended judgment. From the record, this Court finds no special circumstances warranting a dismissal of plaintiffs' motion.

### B. Was Perreca a Prevailing Party?

*2 A plaintiff must be a prevailing party to recover an attorney's fee under ERISA. *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 89 (1982). Defendants argue that the plaintiffs are not the prevailing party because of the original judgment for defendants. "An altogether sufficient support for the court's decision not to award attorney's fees under ERISA is that the attorney obtained no relief under that statute." *Fase v. Seafarers Welfare and Pension Plan,* 589 F.2d 112,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 2
Not Reported in F.Supp.2d, 2004 WL 2793270 (S.D.N.Y.), 34 Employee Benefits Cas. 2856
(Cite as: 2004 WL 2793270 (S.D.N.Y.))

116 (2d Cir.1978). However, that judgment was later amended to grant partial relief. As in *Hensley,* which involved a § 1988 award, "a district court considering a motion for attorney's fees under ERISA should apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Smith v. CMTA-IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984). Defendants argue nevertheless that the jury was only asked by plaintiffs to decide a very narrow issue of fact. However, plaintiffs may meet the standard for a prevailing party if they win on a significant issue. *See, e.g., Smith,* 746 F.2d at 589-90.

Here, the central issue at trial, as well as in the original complaint, was the date of Perreca's promotion to night manager. Defendants maintained that the promotion occurred in 1966, but conceded that, if Perreca had been promoted before 1966, he would be entitled to benefits from 1965. *See* Defendants' Reply Affirmation to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Def.Repl.Aff.") at 7. The jury found for Perreca on this issue. The jury's finding was a significant victory for plaintiffs, and established Perreca's entitlement to coverage based on the earlier promotion date. Therefore, this Court finds plaintiffs to be the prevailing party for ERISA purposes.

C. Application of the *Chambless* Factors

In order to determine whether a prevailing party in an ERISA action can recover attorney's fees, the Second Circuit relies on a five-pronged test: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." *Chambless,* 815 F.2d at 871. "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980). Additionally, the balancing of these five factors allows the Court sufficient flexibility to review a fee request by considering which party requests fees, the relative culpability of the parties and the potential harmful effect of a fee award. *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund,* 902 F.2d 185, 188 (2d Cir.1990).

1. Factor One--Culpable Conduct and Bad Faith

*3 A party is only culpable when its conduct is intentional, blameworthy, and results in the breach of a legal duty. *See Priority Solutions, Inc. v. Cigna and Price Waterhouse Health Plan,* 1999 WL 1057202, at *4 n. 4 (S.D.N.Y. Dec. 20, 1999); *Algie v. RCA Communications, Inc.,* 891 F.Supp. 875, 891 (S.D.N.Y.1994). Although this Circuit has not always required a showing of malice or bad faith, a plaintiff must show "something more than an ERISA plan administrator's determination that benefits are not to be allowed in a particular case." *DeFelice v. American Int'l Life Assurance Co. of New York,* 1996 WL 304542, at *1 (S.D.N.Y. June 5, 1996). Additionally, this factor requires "conduct [that] normally involves something more than simple negligence.... [It] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." *Algie,* 891 F.Supp. at 891 (quoting *McPherson v. Employees' Pension Plan of American Re-Insurance Co.,* 33 F.3d 253, 256-57 (3d Cir.1994)).

Although plaintiffs allege that defendants' position on the start date was culpable, the trial record does not support this contention. The jury did not find bad faith, nor was it asked to consider the issue. While it did not agree with the date claimed by defendants, it also rejected Perreca's claimed start date of 1959. The cases cited by plaintiffs are inapposite. In *Priority Solutions,* the issue was the payment of health care services at wholesale prices. 1999 WL 1057202, at *4. There, the court found that since the health plan included a retail price payment provision, the plan was unambiguous and the plain meaning was clear. The court reasoned that when the defendant violated the plain meaning of an agreement, it was culpable because of the arbitrary and capricious nature of the violation. *Id.* at *4. Here, the dispute arose as a result of differing recollections of an employee start date. Conflicting evidence was placed in the record, some supporting plaintiffs' position, some defendants' position. Unlike *Priority Solutions,* this case did not present a situation where a definite written document was violated.

Plaintiffs' position is also not supported by *Juliano v. HMO of N.J., Inc.,* 2001 U.S. Dist. LEXIS 17066, at *3 (S.D.N.Y. Sept. 24, 2001). In that case, the issue was the denial of home care benefits. The defendant had told the plaintiff that a benefit was not covered, but later asserted that coverage was within the company's discretion. *Id.* at *5-6. While the court

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2793270 (S.D.N.Y.), 34 Employee Benefits Cas. 2856
(Cite as: 2004 WL 2793270 (S.D.N.Y.))

considered this inconsistency in information, it deliberately identified the second factor to be the most crucial, which was the hindrance of the case's resolution by delay and failure to inform. *Id.* at *6-7. Here, Gluck did not hinder resolution of the case, nor fail to inform Perreca. Indeed, Gluck informed Perreca of the conflicting dates before benefits were even due. *See* Plaintiffs' Notice of Cross-Motion Affidavit and Exhibits at Exhibit 26 ("Pl.Exh."). Even if the records relied on by defendants were erroneous, an "honest, if mistaken, assumption" about the benefit date is not an indication of bad faith. *Algie,* 891 F.Supp. at 891. Based on the record in this case, the date relied on by defendants was such a mistake.

*4 Perreca asks the Court to find bad faith essentially because the jury found in his favor on one element of the start date issue. This finding alone does not support a determination of bad faith. Defendants offered reasonable evidence to support their position. While some of the evidence was testimonial, it was also undisputed that there were written records supporting defendants' position, including company documents showing a start date in 1966 and union documents showing payments on Perreca's behalf until the end of April 1966. At best, the record shows there was some conflicting information, not bad faith. This factor favors defendants.

2. Factor Two--Ability to Satisfy Fee

Perreca asserts that the ability to satisfy the fee here is met. *See* Plaintiffs' Reply Memorandum of Points and Authorities ("Pl.Repl.") at 13. Although defendants state that their insurance company has refused to cover an award, they offered no evidence that the award could be met in another fashion. *See* Def. Mem. at 10. This factor narrowly favors plaintiffs.

3. Factor Three--Deterring Others from Acting Similarly

This factor "looks to whether an award would tend to deter others from engaging in similar behavior." *Juliano,* 2001 U.S. Dist. LEXIS 17066 at *8. Although misconduct is not necessary in applying this factor, it will be considered by courts. *Id.* Perreca argues that this factor favors him by deterring "other employers in similar kinds of cases from concocting phony claims to deprive their employees of their full pension benefits." *See* Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Award of Attorney's Fees and Costs ("Pl.

Mem .") at 8-9. However, Perreca did not show that defendants' position was "concocted." Indeed, as noted above, defendants produced documentary evidence to support the date claimed. Moreover, the evidence was not recently manufactured. In *Juliano,* the court required a showing of intransigence on the part of defendants, noting particularly the failure of the insurance company to provide information to the plaintiffs during the claims process. *Id.* Here, plaintiffs offer no evidence that Gluck's action constituted intransigence, or resulted from a phony claim.

Plaintiffs have offered no evidence on the possible occurrence of a similar factual dispute in an ERISA lawsuit. *Algie,* 891 F.Supp. at 893. Witnesses relied on memory in recalling the start date. While most ERISA cases involve a denial of benefits, they are generally not factually specific to a single employee and do not rely on competing memories. Absent misconduct and a common behavior to be deterred, I find that this factor favors defendants.

4. Factor Four--Relative Merits of the Parties' Positions

This factor "looks to the relative merits of the parties' respective positions." *Algie,* 891 F.Supp. at 893. In *Zervos v. Verizon New York,* 2002 WL 31553484 at *3, the court found that even when a plaintiff succeeded on the merits, "in very close cases, courts have found that this factor should favor defendants." Furthermore, in *Schachner v. Connecticut General Life Ins. Co.,* 1994 WL 132143, at *1 (S.D.N.Y. Nov. 13, 2002), the court rejected a request for fees where plaintiff had narrowly succeeded. Additionally, courts will consider that the opposing claim was "sufficiently factually grounded to force a trial." *Algie,* 891 F.Supp. at 893.

*5 Here, as in *Algie,* defendants had a non-frivolous claim, sufficiently based in fact to force a jury trial. *Id.* The jury rejected the plaintiffs' contention that the promotion occurred in 1959, and judgment was entered for defendants. Although the judgment was amended later to grant partial relief to the plaintiffs, Perreca received an additional thirteen months of coverage, not the extra seven years he sought. Moreover, plaintiffs have not shown defendants' position to be frivolous. "In fact, awarding attorney's fees simply because benefits denied in good faith should have been granted would undermine ERISA's goal of encouraging soundness and stability of employee benefit plans." *Schachner,* 1994 WL 132143, at *1. Absent a showing that defendants'

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2793270 (S.D.N.Y.), 34 Employee Benefits Cas. 2856
**(Cite as: 2004 WL 2793270 (S.D.N.Y.))**

position was frivolous or not grounded in fact, this
Court finds that this factor favors defendants.

5. Factor Five--Common Benefit

The final factor is to examine whether the plaintiff's
victory in the ERISA claim will have a beneficial
effect on other insured employees. *Zervos*, 2002 WL
31553484 at *4. Perreca concedes that this element
favors defendants. *See* Pl. Mem. at 10 and Pl. Repl. at
15.

## IV. CONCLUSION
Nearly all the Chambless factors here favor Gluck,
with the exception of the financial ability to meet an
award. Balancing the factors, the Court easily
concludes that an award of attorney's fees would be
unfair to Gluck and would not further ERISA's goals.
Perreca's motion is therefore DENIED.

The Clerk of Court is directed to close this case file.

SO ORDERED

Not Reported in F.Supp.2d, 2004 WL 2793270
(S.D.N.Y.), 34 Employee Benefits Cas. 2856

**Motions, Pleadings and Filings (Back to top)**

•          1:99cv01779        (Docket)
(Mar. 10, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22127912 (S.D.N.Y.)
**(Cite as: 2003 WL 22127912 (S.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
TRUSTEES OF THE ELEVATOR DIVISION
RETIREMENT BENEFIT PLAN, Plaintiff,
v.
PREMIER ELEVATOR CO., Defendant.
**No. 03Civ.2703(RLC)(AJP).**

Sept. 16, 2003.

*REPORT AND RECOMMENDATION*

PECK, Magistrate J.

*1 On August 6, 2003, Judge Carter referred this case to me for an inquest on damages after entering a default judgment for plaintiff Trustees of the Elevator Division Retirement Benefit Plan ("Trustees"). (Dkt. No. 7: 8/6/03 Order.) The plaintiff in this ERISA action seeks delinquent contributions to the Elevator Division Retirement Benefit Plan in the amount of $14,678.53, plus interest, liquidated damages, and attorney fees. (Pergue 9/10/03 Aff. ¶ 3; Dkt. No. 1: Compl. ¶ 11.)

For the reasons set forth below, the Court should enter judgment for plaintiff Trustees against defendant Premier Elevator Company ("Premier Elevator") in the amount of $14,678.53, plus accrued interest in the amount of $1,117.59, statutory liquidated damages of $2,935.71, attorneys' fees of $860.00, and costs of $177.00, for a total of $19,768.83.

*FACTS*

"Where, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." ' *Chen v. Jenna Lane, Inc.,* 30 F.Supp.2d 622, 623 (S.D.N.Y.1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 3d § 2688* at 58-59 (3d ed.1998)). [FN1]

FN1. *Accord, e.g., Cablevision Sys. New York City Corp. v. Torres,* 02 Civ. 7602, 2003 WL 22078938 at *3 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); *Eastern Freight Ways v. Eastern Motor Freight,* 02 Civ. 3138, 2003 WL 21540382 at *1 (S.D.N.Y. July 9, 2003) (Peck, M.J.), *report & rec. adopted as modified on other grounds,* 2003 WL 21921270 (S.D.N.Y. Aug. 11, 2003); *Schruefer v. Winthorpe Grant, Inc.,* 99 Civ. 9365, 2003 WL 21511157 at *1 (S.D.N .Y. July 2, 2003) (Peck, M.J.); *Joy Lud Distribs. Int'l, Inc. v. Contini,* 00 Civ. 5011, 2003 WL 554616 at *1 (S.D.N.Y. Feb. 28, 2003) (Peck, M.J.); *Rolex Watch U.S.A., Inc. v. Brown,* 01 Civ. 9155, 2002 WL 1226863 at *1 (S.D.N.Y. June 5, 2002) (Peck, M.J.); *King Vision Pay-Per-View Corp. v. Drencia Rest. Corp.,* 01 Civ. 9777, 2002 WL 1000284 at *1 (S.D.N.Y. May 15, 2002) (Peck, M.J.); *Ainbinder v. Bernice Mining & Contracting, Inc.,* 01 Civ. 2492, 2002 WL 461576 at *2 (S.D.N.Y. Mar. 26, 2002) (Peck, M.J.); *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.,* 00 Civ. 7352, 2002 WL 461574 at *3 (S.D.N.Y. Mar. 26, 2002) (Peck, M.J.); *King Vision Pay-Per-View Corp. v. Pupacito Lidia Luncheonette, Inc.,* 01 Civ. 7575, 2001 WL 1558269 at *1 (S.D.N.Y. Dec. 6, 2001) (Peck, M.J.); *Trustees of the Pension & Welfare Funds of the Moving Picture Mach. Operators Union, Local 306 v. Gordon's Film & Co. (New York) Int'l Inc.,* 00 Civ. 8452, 2001 WL 1415145 at *1 (S.D.N.Y. Nov. 13, 2001) (Peck, M.J.); *Coast To Coast Fabrics, Inc. v. Tracy Evans, Ltd.,* 00 Civ. 4417, 2001 WL 5037 at *1 (S.D.N.Y. Jan. 2, 2001) (Peck, M.J.); *Starbucks Corp. v. Morgan,* 99 Civ. 1404, 2000 WL 949665 at *1 (S.D.N.Y. July 11, 2000) (Peck, M.J.); *King Vision Pay-Per-View, Ltd. v. New Paradise Rest.,* 99 Civ. 10020, 2000 WL 378053 at *1 (S.D.N.Y. Apr. 11, 2000) (Peck, M.J.); *Independent Nat'l Distrib., Inc. v. Black Rain Communications, Inc .,* 94 Civ. 8464, 1996 WL 238401 at *2 (S.D.N.Y. Apr. 4, 1996) (Keenan, D.J. & Peck, M.J.).

The Elevator Division Retirement Benefit Plan is an employee benefit plan within the meaning of ERISA.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22127912 (S.D.N.Y.)
(Cite as: 2003 WL 22127912 (S.D.N.Y.))

(Dkt. No. 1: Compl. ¶ 4.) Defendant Premier Elevator is a member of the Elevator Industry Association, which entered into a series of collective bargaining agreements with the Local Union No. 3 International Brotherhood of Electrical Workers covering the terms and conditions of Premier Elevator's employees for the period from March 2, 1997 to February 23, 2003. (Compl.¶ ¶ 6-7.) Those agreements obligate Premier Elevator to make contributions to the Retirement Benefit Plan on behalf of covered employees. (Compl.¶ 10.) Premier Elevator failed to make these required payments. (Compl.¶ 11.)

The complaint asserts that Premier Elevator "has failed to remit contributions to the Plan in the estimated amount of $18,377.00." (Compl.¶ 11.) On August 8, 2003, the Court directed plaintiff Trustees to provide support for that amount. (Dkt. No. 8: 8/11/03 Order). However, because plaintiff Trustees merely filed a courtesy copy of their papers in support of their "Argument to Enter Default Judgment," the Court directed plaintiff Trustees on September 4 to file a proper inquest damages submission. (Dkt. No. 9:9/5/03 Order). On September 11, 2003, plaintiff Trustees filed an affidavit and worksheet prepared by the Manager of the Elevator Division Retirement Benefit Plan showing a principal amount due of $14,678.53 for 2002 and 2003. (Pergue 9/10/03 Aff. ¶ 3 & Ex. A: Aff. of Plan Manager Karen Campbell ¶ ¶ 3-4 & Attachment.)

*Procedural Background*

Judge Carter granted plaintiff a default judgment against defendant Premier Elevator and referred the matter to me for an inquest on August 6, 2003. (Dkt. No. 7: 8/6/03 Order.) By Orders dated August 8 and September 4, 2003, this Court directed an inquest on written submissions, with opposition papers due on August 29 and September 11, 2003. (Dkt.Nos.8-9.) The Court has not received any submissions from defendant Premier Elevator.

*ANALYSIS*

*Inquest Damages*

**\*2** The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, " 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." ' *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d

Cir.1989)). [FN2]

> FN2. *Accord, e.g.*, cases cited in fn.1 above; *see also, e.g., Chen v. Jenna Lane, Inc.*, 30 F.Supp.2d 622, 624 (S.D .N.Y.1998) (Carter, D.J. & Peck, M.J.); *Semi Conductor Materials, Inc. v. Agriculture Inputs Corp.*, 96 Civ. 7902, 1998 WL 388503 at \*8 (S.D.N.Y. June 23, 1998) (Kaplan, D.J. & Peck, M.J.).

Plaintiff has provided sufficient proof of the principal amount of Plan contributions sued for, $14,678.53, in the form of the Plan Manager's affidavit and worksheets. (Pergue 9/10/03 Aff. ¶ 3 & Ex. A: Campbell Aff. ¶ ¶ 3-4 & Attachment.) Accordingly, the Court should award plaintiff Trustees *$14,678.53* as the *principal amount* owed to the Retirement Benefit Plan.

In addition to the principal amount, ERISA entitles the Plan to interest, liquidated damages and attorneys' fees:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan -
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of -
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.
> 29 U.S.C. § 1132(g)(2).

The plaintiff initially calculated, in its proposed judgment dated June 19, 2003, the interest due under the Plan (at 12% annually) on unpaid contributions to be $1,1117.59. (Dkt. No. 5: Pergue 6/19/03 Aff. Ex. B.) Plaintiff's worksheet, submitted September 11, 2003, demonstrates that the correct amount of interest due is $1,461.45, but plaintiff declines to seek this larger amount. (Pergue 9/10/03 Aff. ¶ 4 & Ex. B.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22127912 (S.D.N.Y.)
(Cite as: 2003 WL 22127912 (S.D.N.Y.))

Accordingly, the Court should award plaintiff Trustees *interest* of *$1,117.59.*

ERISA provides for liquidated damages of up to 20% of the principal amount, and since Premier Elevator has not responded in connection with the inquest, the Court sees no reason not to award the maximum. The Court should award plaintiff Trustees *liquidated damages* under ERISA of *$2,935.71.*

Plaintiff Trustees also seeks $860.00 in attorneys' fees. (Perguc 9/10/03 Aff. ¶ 5.) As the fee applicant, plaintiff Trustees (and its attorney, Mr. Pergue) "bear[ ] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *General Elec. Co. v. Compagnie Euralair, S.A.,* 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.). [FN3]

> FN3. *Accord, e.g., Cablevision Sys. New York City Corp. v. Torres,* 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); *Sowemimo v. D.A.O.R. Sec., Inc.,* 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), *aff'd,* No. 00)-7342, 1 Fed. Appx. 82, 2001 WL 38267 (2d Cir.2001); *Lavin-McEleney v. Marist College,* 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), *aff'd,* 239 F.3d 476 (2d Cir.2001); *N.S.N. Int'l Indus. N.V. v. E.I. DuPont de Nemours & Co.,* 1996 WL 154182 at *2; *see, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983).

*3 The Trustees' counsel has asserted that his law firm devoted seven hours of paralegal work and two hours of attorney work on this case, amounting to

$860.00. (Perguc 9/10/03 Aff. ¶ 5 & Ex. C.) In support of the fee amounts, Mr. Pergue has submitted his affidavit and documentation detailing his firm's time expenditures on this case. (*Id.*) Based on that affidavit and the Court's " 'own knowledge of private firm hourly rates in the community," ' *Schruefer v. Winthorpe Grant, Inc.,* 99 Civ. 9365, 2003 WL 21511157 at *3 (S.D.N.Y. July 2, 2003) (Peck, M.J.) (quoting *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir.1987)); *accord, e.g., Cablevision Sys. New York City Corp. v. Torres,* 2003 WL 22078938 at *5; *Eastern Freight Ways v. Eastern Motor Freight,* 02 Civ. 3138, 2003 WL 21540382 at *2 (S.D.N.Y. July 9, 2003) (Peck, M.J.), *report & rec. adopted as modified on other grounds,* 2003 WL 21921270 (S.D.N.Y. Aug. 11, 2003), the Court finds the Trustees counsel's and paralegals' time spent and hourly rates [FN4] to be reasonable and appropriate, and the costs incurred [FN5] also to be reasonable. The Court thus finds that plaintiff is entitled to *$860.00* in *attorneys' fees* and *$177* in *costs.*

> FN4. Plaintiff's counsel billed two hours of attorney work at a rate of $220.00 an hour and seven hours of paralegal work at $60.00 an hour. (Pergue 9/10/03 Aff. Ex. C.)

> FN5. Plaintiff incurred costs of $150.00 for the filing fee and $27.00 for service of process upon the defendant. (Perguc 9/10/03 Aff. ¶ 7.)

### CONCLUSION

For the reasons set forth above, the Court should award plaintiff $19,768.83, as follows:

| | |
|---|---|
| Principal Amount | $14,678.53 |
| Interest | 1,117.59 |
| Liquidated Damages | 2,935.71 |
| Attorneys' Fees | 860.00 |
| Costs | 177.00 |
| Total | $ 19,768.83 |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22127912 (S.D.N.Y.)
**(Cite as: 2003 WL 22127912 (S.D.N.Y.))**

## *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Robert L. Carter, 500 Pearl Street, Room 2220, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Carter. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Not Reported in F.Supp.2d, 2003 WL 22127912 (S.D.N.Y.)

## Motions, Pleadings and Filings (Back to top)

•       1:03cv02703 _____ (Docket)

(Apr. 17, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.