UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHILIP GLYNN, : | |
|   Plaintiff, : | |
| : | |
| v. : | Case No. 3:02-CV-1802(AVC) |
| : | |
| BANKERS LIFE AND CASUALTY CO.,: | |
|   Defendant. : | |

**RULING GRANTING THE PLAINTIFF'S AMENDED PETITION
FOR REASONABLE ATTORNEY'S FEES**

    This is an action for damages filed pursuant to the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. The plaintiff, Phillip Glynn, alleges that the defendant, Bankers Life and Casualty Co. ("Bankers"), wrongfully denied payments due under the provisions of a life insurance policy. On August 23, 2005, the court granted Glynn's motion for summary judgment against Bankers. Glynn has now filed the within amended petition for reasonable attorney's fees pursuant to 29 U.S.C. § 1132(a)(1)(B).

    For the reasons that follow, the petition for reasonable attorney's fees is GRANTED.

**DISCUSSION**

    ERISA provides that "in any action under this subchapter... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[A]ttorney's fees may be awarded to the prevailing party under ERISA in the

absence of some particular justification for not doing so." Birmingham v. Sogen-Swiss Intern. Corp. Retirement Plan, 718 F.2d 515, 523 (2d Cir. 1983).  Furthermore, "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights..." Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 872 (2d Cir. 1987).

The Second Circuit has directed district courts to consider five factors when evaluating a request for attorneys' fees and costs under ERISA:

1. The degree of the offending party's culpability or bad faith;
2. The ability of the offending party to satisfy an award of attorney's fees;
3. Whether an award of fees would deter other persons from acting similarly under like circumstances;
4. The relative merits of the parties' positions; and
5. Whether the action conferred a common benefit on a group of pension plan participants.

Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987).  "The Second Circuit appears to have contemplated that these factors will be weighed, rather than applied as a check list." Dobson v. Hartford Fin. Servs. Group, Inc., 2002 U.S. Dist. LEXIS 17682, 2-3 (D. Conn. 2002)(citing Lauder v. First Unum Life Ins. Co., 284 F.3d 375, 382 (2d Cir. 2002)).

1.   <u>Culpability or Bad Faith</u>

Glynn argues that Bankers' culpability and bad faith are evident on the basis that: 1) Bankers misrepresented the law in its letters to Glynn; and 2) Bankers made no meaningful investigation before denying Glynn's claim, relying instead on a blanket policy of denial based on blood alcohol level. Bankers responds that there was no culpability or bad faith on its part because "for culpability or bad faith to attach, the law at the time of the alleged bad faith must be settled." Here, Bankers argues, "at the time Bankers denied benefits to Plaintiff, the law was more favorable to Bankers than Plaintiff."

In support of its claim that the law was in their favor at the time, Bankers first explain that at the time it denied Glynn's claim, "the generally-accepted standard for determining whether a death was accidental under ERISA was the decision of the Court of Appeals for the First Circuit in <u>Wickman v. Northwestern Nat'l Ins. Co.</u>, 908 F.2d 1077 (1st Cir. 1990), <u>cert. denied</u>, 498 U.S. 1013 (1990)." The <u>Wickman</u> decision laid out the following procedure:

> [T]he reasonable expectations of the insured when the policy was purchased is the proper starting point for a determination of whether an injury was accidental under its terms....If the fact-finder determines that the insured did not expect an injury similar in type or kind to that suffered, the fact-finder must then examine whether the suppositions which underlay that expectation were reasonable....If the fact-finder determines that the suppositions were unreasonable, then the injuries shall be deemed not accidental. The determination of what

3

> suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences....Finally, if the fact-finder, in attempting to ascertain the insured's actual expectation, finds the evidence insufficient to accurately determine the insured's subjective expectation, the fact-finder should then engage in an objective analysis of the insured's expectations.  In this analysis, one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct. An objective analysis, when the background and characteristics of the insured are taken into account, serves as a good proxy for actual expectation. Requiring an analysis from the perspective of the reasonable person in the shoes of the insured fulfills the axiom that accident should be judged from the perspective of the insured.

Wickman, 908 F.2d 1088 (internal citations omitted).

Wickman thus set out a quite extensive procedure to be followed when determining whether a death was accidental under ERISA.  Bankers, however, based its decision "solely on its interpretation of ERISA standards and the decedent's 0.17% BAC." (Document no. 161).  Therefore, by its own admission, Bankers did not follow "the generally-accepted standard for determining whether a death was accidental under ERISA."

Bankers further argues that at the time "a solid majority of federal district courts [had] found intoxicated driving deaths to be non-accidental in the context of ERISA-governed accidental life policies."  Reviewing the citations offered by Bankers in its opposition memorandum, it appears that at the time of Bankers denial of Glynn's claim, decisions in five federal circuits

4

supported Bankers position while decisions in two circuits did not. There was no reported decision on the issue in the second circuit. Therefore, while the citations provided by Bankers show that the issue was not settled in this jurisdiction at the time, it is somewhat of a stretch to conclude that the law was in Bankers favor.

It is indisputable, however, that the representation Bankers made to Glynn that "[f]ederal courts...have uniformly held that death resulting from driving while intoxicated is not accidental" was untrue. It is also indisputable that <u>Wickman</u>, the admitted standard at the time, required Bankers to make a substantially more thorough review of Glynn's case before rejecting his claim than it did.

The court therefore concludes that Bankers demonstrated culpability or bad faith when it rejected Glynn's claim solely on the basis of his blood alcohol level and its interpretation of ERISA standards, and also when it misrepresented the current law in its communication with Glynn. Consequently, the first factor favors Glynn.

2.  <u>Ability to Satisfy an Award</u>

Bankers is a large insurance and has the ability to pay an award of attorney's fees. Therefore, the second factor favors Glynn.

5

3. <u>Deterrence</u>

Glynn argues that an award of attorney's fees would provide a deterrence that is otherwise unavailable as damages in this type of action is limited to benefits owed under the contract. Bankers respond that an award would not have a deterrent effect because: 1) in a number of states, courts have held that dying while driving intoxicated is not an accident; and 2) the outcome of this case was largely dependent on the language of the specific policy.

The court has concluded that Bankers demonstrated culpability or bad faith when it rejected Glynn's claim solely on the basis of his blood alcohol level and its interpretation of ERISA standards as well as in misrepresenting the current law in its communication with Glynn. The wrongfulness of these actions were not dependent on any particular jurisdiction or policy language then and are not so now. Furthermore, the court agrees with Glynn that an award of attorney's fees may provide a deterrent effect against similar behavior by other ERISA insurers that would not otherwise be available. Therefore, the third factor favors Glynn.

4. <u>The Relative Merits of the Parties' Positions</u>

Glynn prevailed on summary judgement and the forth factor therefore favors Glynn. <u>See</u> <u>Coram Healthcare Corp. v. CIGNA</u>, 236

F. Supp. 2d 312, 313 (S.D.N.Y. 2002) (deciding that the merits factor favored the party who prevailed at summary judgment).

5.   Common Benefit

Bankers argues that the fifth factor favors it "'given the apparent and fortunate rarity of fatalities from the practice of' driving while intoxicated." (Quoting from Critchlow v. First Unum Life Ins. Co. of Am., 377 F. Supp. 2d 337, 346 (W.D.N.Y. 2005). Although the court agrees that such circumstances are mercifully rare, they are surely far more common than fatalities resulting from the practice of autoerotic asphyxiation, which is the practice that Critchlow refers to.  However, even if the fifth factor favors Bankers, "failure to satisfy this factor need not preclude an award of attorney's fees." Mendez v. Teachers Ins. & Annuity Ass'n & College Retirement Equities Fund, 982 F.2d 783, 789 (2d Cir. 1992).

In sum, the court concludes that a weighing of the five factors favors Glynn.  He is therefore entitled to an award of reasonable attorney's fees.

Determining Reasonable Attorney's Fees

"The lodestar method is ordinarily the starting point in determining the amount of [attorney's] fees that may be awarded.

The lodestar method entails two findings: (1) the reasonable hourly rate; and (2) the number of hours reasonably expended. The time component reflects the hours worked by the lawyer (supported by time records) that are neither excessive nor duplicative, and that do not reflect work done only in connection with unrelated claims on which the party did not succeed." <u>Seitzman v. Sun Life Assur. Co. of Can.</u>, 311 F.3d 477, 487 (2d Cir. 2002)(internal citations omitted).  Prevailing market rates in the relevant community are the basis for determining a reasonable hourly rate.  <u>Miele v. New York State Teamsters Conference Pension & Retirement Fund</u>, 831 F.2d 407, 408-409 (2d Cir. 1987).

  Glynn suggests that $300 per hour is a reasonable fee for work done by Attorney Madin, the plaintiff's counsel, and that $200 per hour is reasonable for work done by "the law clerks." Glynn further submits that 367.3 hours have been spent working on this matter.  Of these hours, 73.5 were billed by Madin while the remaining 293.8 hours were billed by law clerks.  In sum, Glynn asks for $80,810.00 to be awarded as attorney's fees.

  Bankers responds that "neither the requested hourly rate nor the hours claimed to be billable are reasonable."  Specifically, Bankers contend that the plaintiff's time records are too vague and riddled with errors.  Furthermore, Bankers argue that much of the time billed was wasteful and vexations and, finally, that the

8

plaintiff offers no support for his assertion that $200 per hour is a reasonable fee for a law clerk and insufficient support for his claim that $300 is a reasonable fee for the attorney.

Having examined the documentation supplied by Glynn and applied its own knowledge of the prevailing market rates in the community, the court agrees with Bankers that the award requested by Glynn is excessive. The court concludes that $40,000.00 is in this case a reasonable award for attorney's fees.

## **CONCLUSION**

For the foregoing reasons, the plaintiff's amended petition for reasonable attorney's fees (document no. 171), is GRANTED in the amount of $40,000.00.

It is so ordered this 17th day of November, 2005, at Hartford, Connecticut.

```
          _____/s/_____
          Alfred V. Covello
          United States District Judge
```